1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
 2
     Case No. 20-cv-2765-RBJ-MEH
 3   _____

 4   JANE DOE,

 5       Plaintiff,

 6   vs.

 7   PAUL WANG,

 8       Defendant.
     _____
 9

10          Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for the

12   District of Colorado, commencing 1:04 p.m., April 8, 2021, in

13   the United States Courthouse, Denver, Colorado.

14   _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                      APPEARANCES

19          CLARISSA COLLIER, Attorneys at Law,

20   appearing for the Plaintiff.

21          KATAYOUN DONNELLY, Attorney at Law, appearing for

22   the Defendant.

23   _____

24                   STATUS CONFERENCE

25
```

1                    P R O C E E D I N G S

2                (Whereupon, the within electronically recorded

3    proceedings are herein transcribed, pursuant to order of

4    counsel.)

5                THE COURT:  Case Number 20-cv-02765, Jane Doe vs.

6    Paul Wang.  Go ahead and make your appearances, please.

7                MS. COLLIER:  Clarissa Collier on behalf of the

8    plaintiff, Jane Doe.

9                THE COURT:  Thank you.

10               MS. DONNELLY:  Katayoun Donnelly on behalf of Mr.

11   Wang.

12               THE COURT:  Thank you.

13               All right, let's talk first about the pending

14   motions.  We have a motion for order to pay expenses in

15   making service of summons.  And are you prepared to argue

16   that one?

17               MS. COLLIER:  I did not come prepared to argue that

18   motion, but I probably could get prepared.

19               THE COURT:  It's basic stuff.  You don't have to

20   know much about it to do it.

21               MS. COLLIER:  Okay.

22               THE COURT:  So is there anything you want to say,

23   in addition to what's in the brief?

24               MS. COLLIER:  No.  I read the briefing and I don't

25   think there's much to add to it.

1           THE COURT:  Okay.  And isn't this purely kind of

2    administerial, Ms. Donnelly?

3           MS. DONNELLY:  That is my understanding, Your

4    Honor.

5           THE COURT:  So you really don't have a principled

6    opposition under the law; would you say that?

7           MS. DONNELLY:  As an attorney, I've been trained

8    not to ever admit that, so I don't know exactly how I should

9    answer the question.

10          THE COURT:  Sure.  Well, do you have any -- sure.

11   Do you have any Rule 11 basis for disagreeing with the law

12   cited by the motion?

13          MS. DONNELLY:  No, Your Honor, but for the fact

14   that it doesn't seem to be, really, Mr. Wang's fault that the

15   $65 has been incurred.

16          THE COURT:  Well -- sorry.  So -- all right.

17          So -- I'm sorry, is there a response to it?  Okay.

18          So, Mr. Wang, why don't you just stand there at the

19   podium, please.  Raise your right hand.

20                      PAUL WANG,

21   called as a witness, having first been duly sworn, testified

22   as follows:

23          THE COURT:  Okay.  So did you receive in the mail,

24   a notice of the lawsuit and request to waive service?

25          MR. WANG:  Yes, I did.

1          THE COURT:  Okay.  And then you also were later

2   served with a process in person, correct?

3          MR. WANG:  Yes.

4          THE COURT:  Okay, thank you.  You may sit down.

5   I'll grant the motion.  How much is it?  $65?

6          MS. COLLIER:  I believe it was $65.

7          THE COURT:  Okay.  And then let's look at -- that's

8   Docket 31.

9          Let's look at Docket 45.  Are you prepared on that

10  one?  This is a motion to dismiss defendant's counterclaims.

11         MS. COLLIER:  I believe the counterclaims that were

12  included would have been rendered moot, I believe, by one of

13  your orders, because she filed an amended complaint, but I

14  can't recall.  I'd have to pull up that pleading to see if it

15  included the counterclaims that were rendered moot by her

16  filing of that.

17         THE COURT:  Ms. Donnelly, do you believe the issue

18  is moot?

19         MS. DONNELLY:  Yes, Your Honor --

20         THE COURT:  Okay.

21         MS. DONNELLY:  -- because the amended complaint was

22  filed, I believe, that weekend before the Court order.  So

23  the Court didn't have notice of that, which means right now

24  they're back on page 1.

25         THE COURT:  Okay.  Then --

1          MS. COLLIER:  Yeah.

2          THE COURT:  -- Docket 45, based on representation

3   of counsel, is denied as moot.  And so -- and I'll call you

4   Ms. Doe, even though we all know the -- your real name for

5   now, but -- and Mr. Wang.

6          So you are volunteer counsel, correct?

7          MS. COLLIER:  Yes, I am.

8          THE COURT:  And Kata, you are retained?

9          MS. DONNELLY:  Correct, Your Honor.

10         THE COURT:  All right.

11         MS. DONNELLY:  Is that okay if we sit down, Your

12   Honor?

13         THE COURT:  And it's okay to be masked, it's okay

14   not to be masked.  It's up to you.

15         So let me just give you some aspects of a lawsuit

16   in Federal Court.

17         Nothing gets decided in less than a year or two and

18   COVID is actually stretching that out to more, like up to

19   three or three-and-a-half years.  So that's a very tedious,

20   time-consuming, distracting thing, which you have a --

21   actually, you know, constitutional and statutory right to

22   engage in the process of bringing a civil lawsuit in federal

23   court, as long as the jurisdictional -- subject matter

24   jurisdictional requirements are met.  And they appear to be

25   here.

6

1          So I'm just encouraging you that litigation is

2    ultimately often an unfulfilling procedure, even if you

3    eventually win, because it's a -- you know, there's often

4    important rights involved here, but sometimes even, you know,

5    constitutional rights.  But at the same time, there are

6    sometimes cases that just can be worked out and should be.

7    And, in fact, of all the 3000 or 3500 cases filed every year

8    in court, we have maybe 30 trials.

9          So one out of 100 cases ever goes to trial.  Many

10   cases are dropped, either because a person just decides that

11   it's in their best interest, or that the parties settle a

12   case, or sometimes the Court dismisses it under the law.  So

13   only 1 percent of the cases really ever see a trial.

14          But, again, it's just not a great way to spend your

15   life, litigating.

16          It's -- for lawyers, it's fine.  Right?  And that's

17   how you make your living, that's how you make your living.

18   Nobody's going to make a living off of this case, but it's

19   how you do otherwise make your living and you enjoy it.

20          But for nonlawyers, litigants, my experience,

21   through handling settlement conferences, like I already tried

22   once in this case, is that people end up, you know, not any

23   better and maybe worse, no matter what the outcome is of a

24   trial.  So -- if you do get a trial.

25          So that's what I wanted to encourage you to think

1   about, and I'd be happy to facilitate any process that could

2   help this be resolved, short of full-blown litigation.

3            But until that happens, here we are.

4            So we have to deal with a schedule.  And so I

5   thought we might as well do that today, since we're all here.

6            MS. COLLIER:  Okay.

7            THE COURT:  Is that good?

8            MS. COLLIER:  Yes.

9            THE COURT:  And then you guys can take and draft up

10  a scheduling order with the appropriate information in it,

11  okay?

12           MS. COLLIER:  Okay.

13           THE COURT:  So let's talk about the nature of the

14  discovery here.  From your perspective, what do you see as

15  far as the needs of your client?

16           MS. COLLIER:  I think it would be just within the

17  presumptive limits provided by the federal rules.  I

18  anticipate only retaining one expert, possibly, to do a

19  psychiatric evaluation on my client and testify as to the

20  impacts of the emotional distress that she has endured at the

21  hands of Mr. Wang, and I had -- would depose him.

22           I'm still trying to figure out how I will get all

23  the records that I potentially --

24           THE COURT:  And so you would depose your own

25  expert?

1          MS. COLLIER:  No.  I already -- would propose --

2    depose Mr. Wang, excuse me.

3          THE COURT:  Okay.  Depose Mr. Wang?

4          MS. COLLIER:  Yes, sorry about that.

5          THE COURT:  Okay.  And so possibly one fact

6    deposition?

7          MS. COLLIER:  Yes.

8          THE COURT:  And if they would take the expert's

9    deposition, there would be that expert deposition?

10          MS. COLLIER:  Yes.  Yes, that as well.

11          THE COURT:  Excuse me.

12          MS. DONNELLY:  Bless you.

13          MS. COLLIER:  And we also, of course, which I was

14    going to mention before my client reminded me to as well,

15    we're trying to figure out and process how to get information

16    from the criminal proceeding that occurred in relation to Mr.

17    Chen's prosecution in China.  And I --

18          THE COURT:  Stop.

19          MS. COLLIER:  Yeah.

20          THE COURT:  I mean, I just -- I believe that to be

21    impossible, but the easiest way, in my view, would be an

22    informal way.  The problem with getting him informally would

23    be authentication.

24          MS. COLLIER:  Absolutely.  We do have the forensic

25    analysis, as well as the complaint, which I didn't have in

1   time to be translated before the settlement conference.  I

2   now have a translation of that, but I don't have what

3   happened after the complaint was filed and all of that

4   information.

5          So I will need to try and figure that out.

6          THE COURT:  Right.  And did you -- you probably

7   explained to your client what we all believe happened, based

8   on the records that we were able to see, right?

9          You talked to her about that?

10         MS. COLLIER:  Yes.  I advised her on the

11  defendant's position regarding the matter, yes.

12         THE COURT:  Very good.  And Mr. Chen is still in

13  China; is that correct?  Or is he -- he is.  Has he ever

14  visited the United States?  You don't know?

15         Okay.  So some written discovery, possibly --

16         MS. COLLIER:  Yes.

17         THE COURT:  -- and a few interrogatories, some

18  document requests?

19         MS. COLLIER:  Yes.

20         THE COURT:  A deposition and an involvement of one

21  expert?

22         MS. COLLIER:  Yes.

23         THE COURT:  On your side, at least?

24         MS. COLLIER:  Yes.  If the issue of the passport --

25  with respect to the issue of the passport, I may need to

1    subpoena records, but that would be a Rule 45 subpoena to the

2    travel insurance company.  But I don't see anything else.

3              THE COURT:  Okay.  And then -- very good.  From

4    your perspective, probably a deposition?  Any expert

5    involvement?

6              MS. DONNELLY:  I think, Your Honor, unless and

7    until we see an amended complaint when -- that can meet the

8    Rule 12 requirements, it would be premature for me to make

9    that determination.

10             THE COURT:  Okay.  I'm not -- yeah, I'm not trying

11   to box you in.  Just want you to estimate so I can craft an

12   appropriate schedule.

13             Did we -- do we have a deadline set on that?

14             MS. COLLIER:  Set on --

15             THE COURT:  Well, so there is no motion to dismiss

16   right now.  Are you expecting one or hasn't that time already

17   passed?

18             MS. DONNELLY:  Your Honor, so the amended complaint

19   was filed, literally, I think the weekend before counsel was

20   appointed and I entered my appearance.  And since then, we

21   had requested that all deadlines be stayed.  So we have had

22   that stay in place.

23             THE COURT:  Oh, it's stayed?

24             MS. DONNELLY:  Everything is -- has been --

25             MS. COLLIER:  Everything --

1            MS. DONNELLY:  -- stayed.

2            THE COURT:  Okay.  Would you like to set a motion

3   date now?

4            MS. DONNELLY:  So our question would actually be,

5   in the interest of justice -- I understand that counsel has

6   -- was not aware of the last amended complaint that was

7   filed.  So we would be amenable to giving that opportunity to

8   amend the complaint without us filing a motion --

9            THE COURT:  I agree completely.  So the best

10   process would be for you two to talk, for you to discuss with

11   her what you think the infirmities are and -- not to tell her

12   how to get around them, but just what the infirmities are.

13   And instead of mooting a motion to dismiss by the filing of

14   an amended complaint, just go to -- you know, go all the way

15   around the board and pass Go and -- without doing that

16   motions practice.

17            I think that would be a good idea.  Are you stating

18   your nonopposition to the filing of a second amended

19   complaint now?

20            MS. DONNELLY:  Yes, Your Honor.

21            THE COURT:  Okay.

22            MS. COLLIER:  Okay.

23            THE COURT:  Okay.  So we -- do we need a deadline

24   for that?

25            MS. COLLIER:  Yes.

1           THE COURT:  Go ahead.

2           MS. COLLIER:  You want me to stay -- set my own

3    deadline?  That's dangerous.

4           THE COURT:  I'll tell you what, when you're in

5    front of a magistrate judge, justice looks real cool.

6           MS. COLLIER:  How about two weeks?  April 22?

7           THE COURT:  That would be fine.

8           MS. COLLIER:  Okay.

9           THE COURT:  Now, before -- would you want to

10   probably not start discovery until you have a chance to look

11   at that second amended complaint to see if -- I mean, there's

12   a possibility you would move to dismiss and file a motion to

13   stay.  Is that a --

14          MS. DONNELLY:  Strongly, Your Honor, because as you

15   know, the First Amendment cases, all of them, they -- the

16   focus is going to be on the motion to dismiss --

17          THE COURT:  Right.

18          MS. DONNELLY:  -- and especially in a case like

19   this, I -- obviously, no offense to the existence of the fact

20   that, you know, yes, we had a pro se complaint, but even with

21   counsel, based on what I know on this, we would be really

22   surprised by new facts.  I don't see a complaint that could

23   pass Rule 12.

24          THE COURT:  Well, and so, fortunately, we have what

25   I consider to be very accomplished counsel who would not

1    intentionally file anything that wouldn't be in compliance

2    with the rules.  So -- not that that's presumptive, but it's

3    a little better than what we had before.

4          So why don't we have you do your amended complaint

5    by April 22.  You then -- typically, that's a ten-day

6    response time, which is, I think, even under the current set

7    of rules is -- is that -- would that be 14 calendar days, 10

8    business days?

9          CLERK:  Yes.

10          THE COURT:  Yep.  So 29th, 30th, 1st, 2nd, 3rd,

11    4th, 5th, 6th -- so April 6 would be responsive pleading date

12    --

13          MS. DONNELLY:  May 6.

14          THE COURT:  May 6.

15          MS. DONNELLY:  I apologize, Your Honor.  I have a

16    Colorado Supreme Court argument on May 4.

17          THE COURT:  Okay.

18          MS. DONNELLY:  Is that possible to extend that one

19    week so I don't have to scramble there?

20          THE COURT:  That's fine.

21          MS. DONNELLY:  Thank you.

22          THE COURT:  Well, a week from May 4 or a week from

23    May 6?

24          MS. DONNELLY:  A week from May 4.

25          THE COURT:  Okay.  May 11.

1          Then what -- if you do file a motion to dismiss and

2     you do intend to request a stay, you need to file two

3     separate motions simultaneously, okay?  But I will go ahead

4     and have plaintiff's counsel be in charge of drafting a

5     scheduling order --

6          MS. COLLIER:  Okay.

7          THE COURT:  -- that will be self-executing at some

8     point in the future.  Does that make sense?

9          MS. COLLIER:  It does.

10          THE COURT:  All right.  So go ahead and -- you'll

11     have your jurisdictional section, your claim section, get

12     Kada's defense section.  Be as clear as you can on damages,

13     because I always believe that that -- you know, the defendant

14     needs to be on fair notice of the kind of consequences they

15     would be facing and -- in the event that the plaintiff

16     achieves what they set out to achieve.

17          You can put Rule 26 disclosures as a blank date.

18          MS. COLLIER:  Okay.

19          THE COURT:  All right?  I'll insert that date.

20     Then just -- you can also have blank dates or deadlines which

21     I will then insert as well.

22          MS. COLLIER:  Okay.

23          THE COURT:  Six months -- if the case proceeds in

24     discovery, do you think the standard six months is okay?

25          MS. COLLIER:  That's totally fine.

1          THE COURT:  Okay.  And how about you?

2          MS. DONNELLY:  Yes, Your Honor.

3          THE COURT:  All right, good.

4          And then I'll insert a date for final pretrial

5     conferences, as long as that's referred to me.  And let me

6     make sure, because you never know, with Judge Jackson, what

7     he's referring.

8          MS. DONNELLY:  The only other issue, Your Honor, is

9     that considering the pending criminal against Ms. Doe, we

10    would rather have the result of that trial and that might

11    have an impact on the discovery in this case.

12         THE COURT:  Right.  So my preferred way of handling

13    that would be to allow for limited reopening of a deposition

14    post-verdict if you need to further ask questions about that,

15    but I think -- and you'll be getting records, presumably,

16    once the case is all over, which I -- the prosecution is --

17    would never give up during the prosecution, I think.

18         We usually have to wait until a criminal case is

19    finished until we can get any record at all from the

20    proceeding.  Is that --

21         MS. DONNELLY:  So we have multiple issues and

22    actually, I apologize, I should have probably brought that up

23    before we got into the scheduling order piece.

24         As the Court is aware, we have -- if this case does

25    not settle, we will be moving for a challenge of the Jane Doe

1   status, based on all the cases that are currently pending in

2   multiple states.  And also asking that the Court would allow

3   us to communicate with other counsel in all of those cases

4   and get information so the Court can take judicial notice of

5   every proceeding that is held to this case.

6          So I would ask that -- the criminal prosecution of

7   Ms. Doe is going to be a very important part of this big

8   picture that would have a huge impact on our case.

9          So in a way, it would -- it might make sense to, to

10  some extent, stay discovery until the trial is over.  Can Ms.

11  Doe provide the Court some information as to what is the

12  current status?

13         THE COURT:  The last we heard, there was an

14  appearance set for May, I think it was.  But what's your

15  understanding of it right now?

16         MS. COLLIER:  There's no trial date been set yet.

17         THE COURT:  Right.  But I thought we had seen that

18  an appearance was set for some kind of preliminary

19  proceeding, either --

20         MS. DONNELLY:  The pretrial hearing.

21         THE COURT:  -- pretrial hearing?

22         MS. COLLIER:  There's one set for May 7.

23         THE COURT:  That's what I thought.  Sometime end of

24  May.

25         Okay.  So yeah, I mean, you know, stays are

1    disfavored, unfortunately, but I don't -- what's your

2    position?

3          MS. COLLIER:  I don't think we need to stay, based

4    on the resolution of her criminal case.  It doesn't directly

5    involve the allegations made between these two parties.  I'm

6    assuming counsel wants the information, because the alleged

7    victim in that case is alleging similar type of conduct, as

8    Mr. Wang would be alleging in his counterclaims.

9          THE COURT:  Right.

10         MS. COLLIER:  But I don't think that's a sufficient

11   reason.  There isn't, like, multiple of these types of cases,

12   there isn't enough -- she's not in criminal court, it's not

13   modus operandi.  So I don't really understand why we would

14   wait until a criminal proceeding in another jurisdiction

15   would completely resolve before we proceed with this case.

16         THE COURT:  It would be most efficient, but we

17   can't really necessarily choose the most efficient path.

18   Although, Rule 1 it encourages us to be as efficient as

19   possible.  But I think that given the fact that things are so

20   slow anyway during COVID, that my preferred route would be to

21   build in a healthy discovery deadline, which would then

22   account for the likelihood that the criminal proceedings

23   would be concluded by then, and you could have all the

24   discovery you need involved in that.

25         MS. DONNELLY:  Understand that, Your Honor.  So

1   assuming that you're going with the understanding that at

2   some point we might need to push back, at least, on the

3   deposition date --

4              THE COURT:  Yeah.

5              MS. DONNELLY:  -- we still have the issue of the

6   Jane Doe status that has been granted here without the

7   discussion of the realities of what Ms. Doe has been doing in

8   various litigations and the fact that actually, if there's

9   anyone who needs to protected, it is Mr. Wang here, not Ms.

10  Doe.

11             So we would be asking that we address that issue.

12  And if the Court is willing to provide us with some

13  scheduling deadlines on that --

14             THE COURT:  That's fine.

15             MS. DONNELLY:  -- we would appreciate it.

16             THE COURT:  Yeah.  I mean, and -- you know, I will

17  just say this:  I think there's a strong presumption that

18  proceedings in federal court are open.  That's just the way

19  it is.

20             So -- but I think there's -- I'm not putting any

21  limits on you.  So you can file that at any time, because

22  it's ripe right now, right?

23             MS. DONNELLY:  Okay, Your Honor.  Thank you so

24  much.

25             THE COURT:  Okay.  Then just have a briefing

1    schedule controlled by the Local Rules.

2         I didn't get it referred for a final pretrial

3    conference.  Leave that date blank again.

4         MS. COLLIER:  Okay.

5         THE COURT:  I'll see if Judge Jackson would want me

6    to do that.  Often, he has a different procedure with me,

7    maybe, then with other people.  And so they're just on a

8    cruise control and setting -- and checking boxes and they

9    don't really tailor it to the magistrate judge involved.

10        So I think you would probably want me to hold upon

11   a pretrial conference, but I'll get back to you guys on that.

12   But for now, I think I've given you all the information you

13   need for a form.

14        Limit it to one expert per side.  And then I'll

15   keep that on my desk and enter it at an appropriate time

16   relative to seeing what they file in response to the second

17   amended complaint.  Okay?

18        What else could we do today in order to accommodate

19   your client, who I appreciate your traveling today.  Thank

20   you so much.

21        Ms. Collier?

22        MS. COLLIER:  Yes.

23        THE COURT:  What else can we do today?  Make sure

24   she --

25        MS. COLLIER:  I don't --

1           THE COURT:  -- understands the nature of all the

2    proceedings and whether she has any questions.

3           MS. COLLIER:  Absolutely, absolutely.

4           THE COURT:  Okay.

5           MS. COLLIER:  She understands.

6           THE COURT:  Thank you.  What else?

7           MS. DONNELLY:  Your Honor, the only other issue is

8    related to the counterclaims.  As the Court is aware, we have

9    some serious concerns about the content that Ms. Doe has

10   posted online, that is currently online.  As she's aware,

11   every day that that content is up, it will be added to the

12   damages on Mr. Wang's side.  I don't know if this is

13   something that we could address at this point.

14          THE COURT:  Well, we're geared up for emergency

15   injunctive relief whenever parties request it and it's

16   justified under the law.  So I'm not -- what else -- I'm not

17   sure what else I could do, other than advise you that we're

18   open 24/7 for business.

19          MS. DONNELLY:  I understand that and, you know,

20   she's here now.  And again, in the interest of justice, we

21   can address this issue right now.  Or we can ask her to come

22   back to Colorado.

23          THE COURT:  And I will give you permission to put

24   on the record what you think she should hear.

25          MS. DONNELLY:  Your Honor --

1           THE COURT:  And you --

2           MS. DONNELLY:  -- I think the first question --

3           THE COURT:  And you can speak directly to her if

4    you want.

5           MS. DONNELLY:  -- if that's okay?

6           So Ms. Doe, the content that you have posted online

7    is causing severe emotional damage to Mr. Wang and his

8    family.  I don't know to what extent you understood what is

9    going on right now.  There's going to be an amended complaint

10   that you will be filing.  So you will be in these proceedings

11   for awhile.  And if this content is up, eventually the damage

12   that is being caused on a daily basis, every minute that that

13   content is up, is going to add up to the damages that we will

14   be asking -- or requesting on Mr. Wang against you.

15          Your Honor, I would -- if I could make that

16   specific request to take it down now?

17          THE COURT:  People do it all the time.  I mean,

18   prior to -- for example, prior to intellectual property

19   cases, you often see a demand letter to take material down or

20   to stop -- to cease and desist.  So this is -- what you're

21   essentially doing is doing an oral cease and desist.  Would

22   you agree?

23          MS. DONNELLY:  Yes, Your Honor.

24          THE COURT:  Okay.

25          MS. DONNELLY:  So in that capacity, I would -- we

1    would be asking you officially, on the record, to take down

2    every content that you have posted on any website regarding

3    Mr. Wang or his family, regarding any facts that are related

4    to this case.

5            THE COURT:  And you don't have to respond, Ms. Doe.

6    You've heard it and your counsel has heard it.  You can do

7    with that information whatever you want; but as a matter of

8    record, then, there's been a cease and desist request made in

9    open court.

10           Okay?  Anything else?

11           MS. COLLIER:  No, Your Honor.

12           THE COURT:  Okay.  And so this is partially for Ms.

13   Collier, but some for the plaintiff.  Sometimes we do things

14   and we don't know the potential consequences and the law

15   forgives someone for that.  Then sometimes we reach a state

16   of knowledge where somebody later may determine, at this

17   point in time, you knew or should have known of this and then

18   it can create new categories of damages.

19           Now, I'm not saying it's doing that here, but that

20   generally can happen.  And Ms. Collier will explain to you

21   what I mean by that.  But new categories of damages may be

22   opened, depending on the level of knowledge that you have at

23   any given moment on whether something you're doing is a good

24   thing or a bad thing.

25           So okay.  Thank you all for your appearance today.

1   I'm available, you know, for any kind of either settlement or

2   discovery disputes.  I'll watch the record for whatever Mr.

3   Wang is going to do in response to the seconded amended

4   complaint and enter appropriate orders, including -- I mean,

5   this is the only time I'm -- probably, unless there's a

6   justification -- needing to see people -- parties in person,

7   because I just needed to make sure, Ms. Doe, that you're

8   serious about the case, because federal court is a very

9   serious place to bring lawsuits.

10          We mean business and anybody who comes before the

11  Court should mean business too.  So I'm now satisfied that

12  you do, because your appearance here demonstrates that you

13  understand the nature and consequences of being in federal

14  court.

15          Okay?  We're good?  Thank you --

16          MS. COLLIER:  Yes, Your Honor.  Thank you.

17          THE COURT:  Guys.  I appreciate you.  We'll be in

18  recess.

19          (Whereupon, the within hearing was then in

20  conclusion at 1:34 p.m.)

21

22

23

24

25

```
 1                  TRANSCRIBER'S CERTIFICATION

 2     I certify that the foregoing is a correct transcript to the

 3     best of my ability to hear and understand the audio recording

 4     and based on the quality of the audio recording from the

 5     above-entitled matter.

 6

 7     /s/ Dyann Labo                    June 4, 2021

 8     Signature of Transcriber          Date

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```