FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2022 AUG 24 AM 9: 21

JEFFREY P. COLWELL
CLERK

BY_____ DEP. CLRK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

Plaintiff,

v.

PAUL WANG,

Defendant.

## PLAINTIFF'S MOTION TO RESTRICT AND REDACT

Pursuant to D.C.COLO.LCivR 7.2(b), and the Court's June 13, 2022 Order (ECF 165)[1],

Plaintiff respectfully requests that the Court impose Level 2 restriction to ECF 065, 079-1, 081-

1, 085, 092, 106, 115, 128, 144, 144-3, 160, 160-2, 160-3, 162, 162-1, 162-2, 167, 174, 174-1,

181-1 and replace them with redaction of information[2] that inappropriately reveals her identity in

connection with other cases she has been permitted to proceed pseudonymously.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiff has conferred with defendant Paul Wang

(Wang) and intervenor Eugene Volokh (Volokh). Both have indicated they would oppose.

Volokh moved to intervene in this case for the limited purpose of unrestricting access to

the Nov. 8, 2021 Order Granting Motion for Reconsideration, unrestrict documents No. 101, 105

& 109, and unrestrict access to the District Court's June 13, 2022 Order. Dkts. 116, 125, 166. His

---

[1] Plaintiff may file a motion to restrict the other documents in this case that she believes are inappropriately revealing her identity in connection with those other cases to maintain Plaintiff's anonymity. ECF 165 p. 18.

[2] Each proposed redaction is the information, alone or combined with other information, inappropriately reveals plaintiff's identity in connection with those other cases she has received a protective order.

motions do not set out the claim or defense for which intervention is sought. Volokh did not move to represent Wang. This court granted Volokh's motions to intervene solely to challenge the restriction of certain documents. Dkt. 143.

Courts have interpreted FRCP Rule 24(a)(2) to require a party seeking intervention as a right to demonstrate that:

(1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

Volokh bears the burden of proof to establish **all four bases** for intervention as a matter of right. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989); *Stone*, 371 F.3d at 1308.

Since Wang has indicated he would oppose this motion, Volokh has no right to intervene as he cannot establish all four bases for intervention. In the event Volokh files any opposition to this motion Plaintiff will move the court to strike his opposition.

Dated: August 24, 2022                    Respectfully submitted,

                                          */s/ Xingfei Luo*

2

## DECLARATION OF XINGFEI LUO

I, Xingfei Luo, declare and state:

1.   I am the plaintiff in this case. I have personal knowledge of the facts in this declaration. If called on to testify, I could and would competently do so under oath.

2.   A true and correct copy of the proposed redacted ECF 65 is attached hereto as Exhibit 1.

3.   A true and correct copy of the proposed redacted ECF 79-1 is attached hereto as Exhibit 2.

4.   A true and correct copy of the proposed redacted ECF 81-1 is attached hereto as Exhibit 3.

5.   A true and correct copy of the proposed redacted ECF 85 is attached hereto as Exhibit 4.

6.   A true and correct copy of the proposed redacted ECF 92 is attached hereto as Exhibit 5.

7.   A true and correct copy of the proposed redacted ECF 106 is attached hereto as Exhibit 6.

8.   A true and correct copy of the proposed redacted ECF 115 is attached hereto as Exhibit 7.

9.   A true and correct copy of the proposed redacted ECF 128 is attached hereto as Exhibit 8.

10.   A true and correct copy of the proposed redacted ECF 144 is attached hereto as Exhibit 9.

11.   A true and correct copy of the proposed redacted ECF 144-3 is attached hereto as Exhibit 10.

12.   A true and correct copy of the proposed redacted ECF 160 is attached hereto as Exhibit 11.

13.   A true and correct copy of the proposed redacted ECF 160-2 is attached hereto as Exhibit 12.

14. A true and correct copy of the proposed redacted ECF 160-3 is attached hereto as Exhibit 13.

15. A true and correct copy of the proposed redacted ECF 162 is attached hereto as Exhibit 14.

16. A true and correct copy of the proposed redacted ECF 162-1 is attached hereto as Exhibit 15.

17. A true and correct copy of the proposed redacted ECF 162-2 is attached hereto as Exhibit 16.

18. A true and correct copy of the proposed redacted ECF 167 is attached hereto as Exhibit 17. ???????????

19. A true and correct copy of the proposed redacted ECF 174 is attached hereto as Exhibit 18.

20. A true and correct copy of the proposed redacted ECF 174-1 is attached hereto as Exhibit 19.

21. A true and correct copy of the proposed redacted ECF 181-1 is attached hereto as Exhibit 20.

I declare under penalty of perjury, that the foregoing is true and correct.

Dated: August 24, 2022

*/s/ Xingfei Luo*

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that I filed the foregoing with the Clerk of Court. Parties registered with the CM/ECF system will be notified of such filing through CM/ECF system.

*/s/ Xingfei Luo*

EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RBJ-MEH

JANE DOE,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

---

## SECOND AMENDED COMPLAINT AND JURY DEMAND

---

Pursuant to Fed. R. Civ. P. 15 and this Court's April 8, 2021 Minute Order (ECF 64),

Plaintiff Jane Doe, for her Second Amended Complaint states as follows:

### PARTIES

1.     Plaintiff, Jane Doe, is a resident of the State of California.

2.     Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

because the parties are diverse, and the amount in controversy exceeds $75,000.

4.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because

Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5.      Plaintiff and Defendant attended school together in China from 1990 through 1993.

6.      The two parted ways when Defendant left China to attend college in the United States.

7.      In late 2012, Defendant returned to China to visit.

8.      During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9.      Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10.     On May 18, 2013, Plaintiff attended a karaoke party.

11.     Guochang Chen, a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12.     Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13.     At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14.     The Dalangtaosha Elite Club was a massage center in the area.

15.     Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

16.     Plaintiff awoke in a massage room and suspected that something happened to her as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution (which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr. Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

3

28.     On information and belief, the woman was an employee of the massage center.

29.     Given Plaintiff's inability to walk on her own or even stay awake, she did not possess the mental capacity to consent to have sex.

30.     Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored national laws and violated the wishes of women by forcibly having sex with her. His behavior violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.     The procuratorate found that "[t]he facts of the crime were clear and the evidence was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.     At that time, the prosecution was confidential.

33.     In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was not permitted to observe the trial.

34.     Mr. Chen was ordered to pay Plaintiff restitution.

35.     By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of the rape charge.

36.     However, Plaintiff does not know whether Mr. Chen suffered any other penalties, fines or imprisonment as a result of the rape.

## Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter

37.     In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the United States to live with Defendant in Aurora, Colorado.

38.     Plaintiff and Defendant lived together until October 2013.

39.     At one point during that time, Defendant had purchased Plaintiff a plane ticket to return to China.

4

40.     Plaintiff, however, lost her passport so she did not take that flight.

41.     At that time, Plaintiff did not know whether her passport was lost or stolen.

42.     As a result, she reported her lost passport to the Aurora Police Department, which is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that situation.

43.     On information and belief, the police report states that Plaintiff reported the passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not know that for sure. Rather, she simply knew her passport was missing and that missing passports should be reported to the police.

44.     Plaintiff found her passport shortly thereafter, and therefore, did not pursue further remedies or investigation through the Aurora Police Department.

45.     In October 2013, Plaintiff ended her relationship with Defendant and moved to California alone.

46.     Defendant was angry after Plaintiff's termination of their relationship and repeatedly texted her after, but she never responded.

### Seven Years Later, Plaintiff Learns that Defendant is Spreading False Information About Her

47.     In 2020, Plaintiff learned through a separate lawsuit (███████████████████ ███████████████████)), that is wholly unrelated to her allegations against Defendant in this case, that Defendant had made several false and incredibly damaging statements against Plaintiff.

48.     First, Plaintiff learned through the *Weamer* litigation that Defendant made statements that Plaintiff falsely accused Mr. Chen of sexual assault.

49.     On information and belief, prior to Defendant revealing that information to the
defense in *Weamer*, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff.

50.     In fact, China is well-known for closed door proceedings, especially with respect
to sexual assault criminal prosecutions.

51.     Further, in China, sexual assault is considered taboo and victims of sexual assault
are often rejected by society as the culture views women as solely responsible for the rape.
Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but
Defendant, her own mother and her attorney.

52.     Second, Plaintiff learned through the lawsuit that Defendant made written and
oral statements that Plaintiff filed a false police report when she reported to the Aurora Police
Department that she had lost her passport.

53.     Both of these statements are objectively false because (a) Mr. Chen did rape
Plaintiff and (b) Plaintiff's passport was lost at the time she reported it a lost.

54.     Both of these statements are highly offensive because they accuse Plaintiff of
committing crimes—making false police reports.

55.     Neither of these statements are of public concern not only because they are false,
but because Plaintiff is a private citizen.

56.     If Defendant truly believed these were matters of public concern, he would have
reported them to the appropriate authorities around the time they occurred. Instead, Defendant
only made these statements after Plaintiff terminated their relationship and to help another party
in another unrelated civil lawsuit.

57.     Further, Plaintiff suffering a sexual assault eight years ago in another country is not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

58.     Defendant's conduct is malicious, vindictive and outrageous.

59.     Further, Defendant's statements regarding the sexual assault have caused the re-victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries to her.

## FIRST CLAIM FOR RELIEF
### (Defamation Per Se)

60.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 59 as if fully set forth herein.

61.     Defendant knowingly made and/or published two false and defamatory oral and written statements about Plaintiff—(1) that Plaintiff falsely accused Mr. Chen of rape and (2) that Plaintiff filed a false police report in relation to her lost passport.

62.     These statements directly referred to Plaintiff and were directed towards and heard by multiple parties, including the defendant and counsel in the *Weamer* litigation.

63.     The substance of these statements were false at the time they were made.

64.     At the time of the publication or utterance, Defendant knew that the statements were false or made the statements with reckless disregard as to whether they were false.

65.     Because Defendant's statement accuses Plaintiff of committing crimes—filing false police reports—they are defamatory per se.

66.     Defendant's defamatory statements have caused irreparable damage to Plaintiff and have opened her up to criminal prosecution.

67.     As a result of Defendant's defamatory statements, Plaintiff has suffered and
continues to suffer damages and losses, including special damages, in an amount to be
determined at trial.

**SECOND CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress/Outrageous Conduct)**

68.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 67 as if
fully set forth herein.

69.     Defendant engaged in the conduct of making false accusations against Plaintiff—
namely, that she falsely accused Mr. Chen of sexual assault of her and filed a false police report.

70.     Defendant engaged in this conduct and made these statement recklessly or with
the intent to cause Plaintiff severe emotional distress.

71.     Accusing Plaintiff of committing two separate crimes and re-traumatizing a rape
survivor is extreme and outrageous.

72.     Defendant's actions were attended by circumstances of malice and willful and
wanton conduct.

73.     As a result of Defendant's conduct and statements, Plaintiff has been re-
traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

74.     Plaintiff has suffered severe emotional distress for which Plaintiff receives
ongoing therapy.

75.     As a result of Defendant's conduct and statements, Plaintiff has suffered and
continues to suffer damages and losses, including special damages, in an amount to be
determined at trial.

## THIRD CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

76.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 75 as if fully set forth herein.

77.     Plaintiff's sexual assault and her allegations against Mr. Chen were personal and private in nature because Mr. Chen's prosecution was behind closed doors in China and Plaintiff only told Defendant, her own mother and her attorney about the sexual assault.

78.     Defendant unreasonably disclosed these personal and private facts to several individuals, including the defendant in the *Weamer* lawsuit.

79.     Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

80.     The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

81.     Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

82.     Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

83.     The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

84.     As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against

Defendant, awarding economic, non-economic and exemplary damages in an amount to be

determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness

fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated:  April 22, 2021.                    Respectfully submitted,


                                           *s/ Clarissa M. Collier*
                                           David J. Schaller
                                           Clarissa M. Collier
                                           Wheeler Trigg O'Donnell LLP
                                           370 Seventeenth Street, Suite 4500
                                           Denver, CO 80202
                                           Telephone:  303.244.1800
                                           Facsimile:  303.244.1879
                                           Email:  schaller@wtotrial.com
                                                   collier@wtotrial.com

                                           Attorneys for Plaintiff,
                                           Jane Doe

EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR~~BJ~~-MEH

JANE DOE,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

## ~~SECOND~~ THIRD AMENDED COMPLAINT AND JURY DEMAND

---

Pursuant to Fed. R. Civ. P. 15 and this Court's ~~April 8~~June 11, 2021 Minute Order (ECF

~~64~~76), Plaintiff Jane Doe, for her ~~Second~~ Third Amended Complaint states as follows:

### PARTIES

1.     Plaintiff, Jane Doe, is a resident of the State of California.

2.     Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

because the parties are diverse, and the amount in controversy exceeds $75,000.

4.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because

Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5.      Plaintiff and Defendant attended school together in China from 1990 through 1993.

6.      The two parted ways when Defendant left China to attend college in the United States.

7.      In late 2012, Defendant returned to China to visit.

8.      During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9.      Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10.     On May 18, 2013, Plaintiff attended a karaoke party.

11.     ~~Guochang Chen~~Chen Guochang ("Mr. Chen"), a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12.     Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13.     At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14.     The Dalangtaosha Elite Club was a massage center in the area.

15.     Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

2

16.     Plaintiff awoke in a massage room and suspected that something happened to her as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution (which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr. Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

3

28.     On information and belief, the woman was an employee of the massage center.

29.     Given Plaintiff's inability to walk on her own or even stay awake, she did not
possess the mental capacity to consent to have sex.

30.     Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored
national laws and violated the wishes of women by forcibly having sex with her. His behavior
violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.     The procuratorate found that "[t]he facts of the crime were clear and the evidence
was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.     At that time, the prosecution was confidential.

33.     In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was
not permitted to observe the trial.

34.     Mr. Chen was ordered to pay Plaintiff restitution.

35.     By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of
the rape charge.

36.     However, Plaintiff does not know whether Mr. Chen suffered any other penalties,
fines or imprisonment as a result of the rape.

## Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter

37.     In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the
United States to live with Defendant in Aurora, Colorado.

38.     Plaintiff and Defendant lived together until October 2013.

39.     At one point during that time, Defendant had purchased Plaintiff a plane ticket to
return to China.

40.     Plaintiff, however, lost her passport so she did not take that flight.

41.     At that time, Plaintiff did not know whether her passport was lost or stolen.

42.     As a result, she reported her lost passport to the Aurora Police Department, which is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that situation.

43.     On information and belief, the police report states that Plaintiff reported the passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not know that for sure. Rather, she simply knew her passport was missing and that missing passports should be reported to the police.

44.     Plaintiff discovered that she misplaced her passport and found her passport shortly thereafter, and. Therefore, she did not pursue further remedies or investigation through the Aurora Police Department.

45.     In October 2013, Plaintiff ended her relationship with Defendant and moved to California alone.

46.     Defendant was angry after Plaintiff's termination of their relationship and repeatedly texted her after, but she never responded.

### Seven Years Later, Plaintiff Learns that Defendant is Spreading False Information About HerMaking False and Defamatory Statements

47.     In 2020, Plaintiff learned through a separate lawsuit (, ███████████████████
███████████████████ )), ) (the "Weamer Litigation"), that is wholly unrelated to her allegations against Defendant in this case, that Defendant had made several false and incredibly damaging statements against Plaintiff.

48.     First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport. Specifically, in the Weamer Litigation, Plaintiff propounded written discovery that requested "Copies of any and all e-mails, chat history, or other electronically stored information that contain your communication discussing or commenting upon Plaintiff. This includes documents, communications or correspondence sent or received by you."

49.     On August 23, 2020, Mr. Weamer responded to Plaintiff's written discovery (through his attorney, ███████████████████████████ ) and produced documents responsive to Plaintiff's request.

50.     The responsive documents produced by Mr. Weamer included a written statement from Defendant.

51.     On information and belief, Defendant posted this written statement online before Plaintiff filed the Weamer Litigation.

52.     In the written statement, Defendant states that Plaintiff "filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price."

53.     This statement is false because, as explained above, Plaintiff reported her passport as lost/stolen based on her actually losing her passport.

54.     Further, Defendant himself purchased the airline ticket and presumably the travel insurance—not Plaintiff.

55.     Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department.

56.     On information and belief, ▮▮▮▮▮ later requested a copy of the police report from the Aurora Police Department based on Defendant's statement.

~~47.~~57.  Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault.

58.     ~~First, Plaintiff learned through the *Weamer* litigation that Defendant made statements that Plaintiff falsely accused Mr. Chen of sexual assault.~~Specifically, on June 17, 2020, Mr. Weamer propounded Special Interrogatories to Plaintiff. -In the Special Interrogatories, Mr. Weamer requested that Plaintiff: (a) "Identify the individual in China whom YOU alleged raped you in 2012" and (b) "Identify all allegations [she had] made against Chen GuoChang RELATED TO alleged sexual assault."

59.     Plaintiff objected to these interrogatories on numerous grounds.

60.     In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ▮▮▮▮▮, stated that the requests related to a claim that "defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her."

61.     On information and belief, Mr. Weamer and ▮▮▮▮▮ based their "belief" on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Chen.

62.     On information and belief, Defendant also posted this same statement online. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, ... and filed a frivolous police report in Colorado about losing her passport."

48.63.  On information and belief, Defendant authored this blog post because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket.

49.64.  On information and belief, prior to Defendant revealing that information to the defense in *Weamer*this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff.

50.65.  In fact, China is well-known for closed door proceedings, especially with respect to sexual assault criminal prosecutions.

51.66.  Further, in China, sexual assault is considered taboo and victims of sexual assault are often rejected by society as the culture views women as solely responsible for the rape. Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but Defendant, her own mother and her attorney.

52.67.  Second, Plaintiff learned through the lawsuit that Defendant made written and oral statements that Plaintiff filed a false police report when she reported to the Aurora Police Department that she had lost her passport.

53.68.  Both of these statementsDefendant's statements against Plaintiff are objectively false because (a) Mr. Chen did rape Plaintiff and ; (b) Plaintiff's passport was lost at the time she reported it as lost; and (c) Plaintiff did not ever purchase or have travel insurance in 2013.

54.69.  Both of these statements are highly offensive because they accuse Plaintiff of committing crimes—making false police reports and committing insurance fraud.

8

55.70.  Neither of these statements are of public concern not only because they are false, but because Plaintiff is a private citizen.

71.    If Defendant truly believed these were matters of public concern, he would have reported them to the appropriate authorities around the time they occurred. Instead, Defendant only made these statements after Plaintiff terminated their relationship. and to help another party in another unrelated civil lawsuit.

56.72.  Defendant did not make these statements as a testifying witness in the Weamer Litigation or any other litigation. He has never been subpoenaed for documents or testimony in that case or any other case involving Plaintiff. Further, he is not involved in or closely connected with any other litigation involving Plaintiff.

57.73.  Further, Plaintiff suffering a sexual assault eight years ago in another country is not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

58.74.  Defendant's conduct is malicious, vindictive and outrageous.

59.75.  Further, Defendant's statements regarding the sexual assault have caused the re-victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries to her.

## FIRST CLAIM FOR RELIEF
**(Defamation Per Se—Statement Regarding Plaintiff Filing a False Police Report and Committing Insurance Fraud in Relation to Her Lost Passport)**

60.76.  Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 7559 as if fully set forth herein.

61.77.  Defendant knowingly made and/or published two the false and defamatory oral and written statements about Plaintiff   (1) that Plaintiff falsely accused Mr. Chen of rape and

(2) that Plaintiff filed a false police report in relation to her lost passport and obtained a refund from the travel insurance company based on that false report.

78.     These This statements directly referred to Plaintiff, is publicly accessible and were was directed towards and heard by multiple parties, including, but not limited to the defendant and counsel in the *Weamer* litigationMr. Weamer and ▮▮▮▮▮▮▮.

62.79.  Plaintiff first became aware that Defendant made this statement on August 23, 2020.

63.80.  The substance of thisese statements were was false at the time they wereit was made.

64.81.  At the time of the publication or utterance, Defendant knew that thise statements were was false or made the statements with reckless disregard as to whether they wereit was false.

65.82.  Because Defendant's statement accuses Plaintiff of committing a crimes—filing a false police reports and committing insurance fraud—they are defamatory per se.

66.83.  Defendant's defamatory statements have has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution.

84.     As a result of Defendant's defamatory statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Statement Regarding Plaintiff Falsely Accusing Chen of Sexual Assault)

85.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 84 as if fully set forth herein.

86.     Defendant knowingly made and/or published the false and defamatory statement that Plaintiff falsely accused Chen of sexual assault.

87.     This statement directly referred to Plaintiff and was directed towards and heard by multiple parties, including , but not limited to Mr. Weamer, ▮▮▮▮▮ and Ms. Amanda G. Papac.

88.     Plaintiff first became aware that Defendant made this statement on September 18, 2020 and then again on January 4, 2021.

89.     The substance of this statement was false at the time it was made.

90.     At the time of the publication or utterance, Defendant knew that this statement was false or made this statement with reckless disregard as to whether it was false.

91.     Because Defendant's statement accused Plaintiff of committing a crime—filing a false police report—it is defamatory per se.

92.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution and humiliation.

93.     As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress/Outrageous Conduct)

94.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 92 93 as if fully set forth herein.

95.      Defendant engaged in the conduct of making false accusations against Plaintiff—

namely, that she falsely accused Chen of sexual assault, filed a false police report and committed

insurance fraud.

96.      Defendant engaged in this conduct and made these statements recklessly or with

the intent to cause Plaintiff severe emotional distress.

97.      Accusing Plaintiff of committing three separate crimes and re-traumatizing a rape

survivor is extreme and outrageous.

98.      Defendant's actions were attended by circumstances of malice and willful and

wanton conduct.

99.      As a result of Defendant's conduct and statements, Plaintiff has been re-

traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

100.     Plaintiff has suffered severe emotional distress for which Plaintiff receives

ongoing therapy.

101.     As a result of Defendant's conduct and statements, Plaintiff has suffered and

continues to suffer damages and losses, including special damages, in an amount to be

determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

102.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through ~~100~~ 101 as

if fully set forth herein.

103.     Plaintiff's sexual assault and her allegations against Chen were personal and

private in nature because Chen's prosecution was behind closed doors in China and Plaintiff only

told Defendant, her own mother and her attorney about the sexual assault.

104.     Defendant unreasonably disclosed these personal and private facts to several individuals, including but not limited to Mr. Weamer, ████████ and Ms. Papac. His statements are also publicly accessible online.

105.     Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

106.     The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

107.     Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

108.     Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

109.     The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

110.     As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against Defendant, awarding economic, non-economic and exemplary damages in an amount to be determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated: ~~June 15~~ July___, 2021.                Respectfully submitted,


                                                 *s/ Clarissa M. Collier*_____
                                                 David J. Schaller
                                                 Clarissa M. Collier
                                                 Wheeler Trigg O'Donnell LLP
                                                 370 Seventeenth Street, Suite 4500
                                                 Denver, CO 80202
                                                 Telephone:   303.244.1800
                                                 Facsimile:   303.244.1879
                                                 Email:   schaller@wtotrial.com
                                                          collier@wtotrial.com

                                                 Attorneys for Plaintiff,
                                                 Jane Doe

EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR~~BJ~~-MEH

JANE DOE,

    Plaintiff,

v.

PAUL WANG,

    Defendant.

---

## ~~SECOND~~ THIRD AMENDED COMPLAINT AND JURY DEMAND

---

Pursuant to Fed. R. Civ. P. 15 and this Court's ~~April 8~~June 11, 2021 Minute Order (ECF
~~64~~76), Plaintiff Jane Doe, for her ~~Second~~ Third Amended Complaint states as follows:

### PARTIES

1.      Plaintiff, Jane Doe, is a resident of the State of California.

2.      Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

because the parties are diverse, and the amount in controversy exceeds $75,000.

4.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because

Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5. Plaintiff and Defendant attended school together in China from 1990 through 1993.

6. The two parted ways when Defendant left China to attend college in the United States.

7. In late 2012, Defendant returned to China to visit.

8. During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9. Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10. On May 18, 2013, Plaintiff attended a karaoke party.

11. ~~Guochang Chen~~Chen Guochang ("Mr. Chen"), a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12. Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13. At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14. The Dalangtaosha Elite Club was a massage center in the area.

15. Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

16.     Plaintiff awoke in a massage room and suspected that something happened to her
as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited
recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen
right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report
the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and
her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of
Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution
(which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of
Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk
on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr.
Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

28.     On information and belief, the woman was an employee of the massage center.

29.     Given Plaintiff's inability to walk on her own or even stay awake, she did not possess the mental capacity to consent to have sex.

30.     Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored national laws and violated the wishes of women by forcibly having sex with her. His behavior violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.     The procuratorate found that "[t]he facts of the crime were clear and the evidence was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.     At that time, the prosecution was confidential.

33.     In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was not permitted to observe the trial.

34.     Mr. Chen was ordered to pay Plaintiff restitution.

35.     By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of the rape charge.

36.     However, Plaintiff does not know whether Mr. Chen suffered any other penalties, fines or imprisonment as a result of the rape.

### Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter

37.     In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the United States to live with Defendant in Aurora, Colorado.

38.     Plaintiff and Defendant lived together until October 2013.

39.     At one point during that time, Defendant had purchased Plaintiff a plane ticket to return to China.

40.      Plaintiff, however, lost her passport so she did not take that flight.

41.      At that time, Plaintiff did not know whether her passport was lost or stolen.

42.      As a result, she reported her lost passport to the Aurora Police Department, which is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that situation.

43.      On information and belief, the police report states that Plaintiff reported the passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not know that for sure. Rather, she simply knew her passport was missing and that missing passports should be reported to the police.

44.      Plaintiff discovered that she misplaced her passport and found her passport shortly thereafter, and. Therefore, she did not pursue further remedies or investigation through the Aurora Police Department.

45.      In October 2013, Plaintiff ended her relationship with Defendant and moved to California alone.

46.      Defendant was angry after Plaintiff's termination of their relationship and repeatedly texted her after, but she never responded.

**Seven Years Later, Plaintiff Learns that Defendant is ~~Spreading False Information About Her~~ Making False and Defamatory Statements**

47.      In 2020, Plaintiff learned through a separate lawsuit (, ████████████████

████████████████ )), ) (the "Weamer Litigation"), that is wholly unrelated to her allegations against Defendant in this case, that Defendant ~~had~~ made several false and incredibly damaging statements against Plaintiff.

48.     First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport. Specifically, in the Weamer Litigation, Plaintiff propounded written discovery that requested "Copies of any and all e-mails, chat history, or other electronically stored information that contain your communication discussing or commenting upon Plaintiff. This includes documents, communications or correspondence sent or received by you."

49.     On August 23, 2020, Mr. Weamer responded to Plaintiff's written discovery (through his attorney, ████████████████████████████ ) and produced documents responsive to Plaintiff's request.

50.     The responsive documents produced by Mr. Weamer included a written statement from Defendant.

51.     On information and belief, Defendant posted this written statement online before Plaintiff filed the Weamer Litigation.

52.     In the written statement, Defendant states that Plaintiff "filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price."

53.     This statement is false because, as explained above, Plaintiff reported her passport as lost/stolen based on her actually losing her passport.

54.     Further, Defendant himself purchased the airline ticket and presumably the travel insurance—not Plaintiff.

55.     Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department.

56. ___ On information and belief, ▓▓▓▓ later requested a copy of the police report from the Aurora Police Department based on Defendant's statement.

~~47.~~57. Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault.

58. ___ ~~First, Plaintiff learned through the *Weamer* litigation that Defendant made statements that Plaintiff falsely accused Mr. Chen of sexual assault.~~ Specifically, on June 17, 2020, Mr. Weamer propounded Special Interrogatories to Plaintiff. In the Special Interrogatories, Mr. Weamer requested that Plaintiff: (a) "Identify the individual in China whom YOU alleged raped you in 2012" and (b) "Identify all allegations [she had] made against Chen GuoChang RELATED TO alleged sexual assault."

59. ___ Plaintiff objected to these interrogatories on numerous grounds.

60. ___ In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ▓▓▓▓, stated that the requests related to a claim that "defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her."

61. ___ On information and belief, Mr. Weamer and ▓▓▓▓ based their "belief" on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Chen.

62. ___ On information and belief, Defendant also posted this same statement online. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport."

48.63.  On information and belief, Defendant authored this blog post because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket.

49.64.  On information and belief, prior to Defendant revealing that information to the defense in *Weamer*this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff.

50.65.  In fact, China is well-known for closed door proceedings, especially with respect to sexual assault criminal prosecutions.

51.66.  Further, in China, sexual assault is considered taboo and victims of sexual assault are often rejected by society as the culture views women as solely responsible for the rape. Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but Defendant, her own mother and her attorney.

52.67.  Second, Plaintiff learned through the lawsuit that Defendant made written and oral statements that Plaintiff filed a false police report when she reported to the Aurora Police Department that she had lost her passport.

53.68.  Both of these statementsDefendant's statements against Plaintiff are objectively false because (a) Mr. Chen did rape Plaintiff and ; (b) Plaintiff's passport was lost at the time she reported it as lost; and (c) Plaintiff did not ever purchase or have travel insurance in 2013.

54.69.  Both of these statements are highly offensive because they accuse Plaintiff of committing crimes—making false police reports and committing insurance fraud.

8

55.70.  Neither of these statements are of public concern not only because they are false,
but because Plaintiff is a private citizen.

71.  If Defendant truly believed these were matters of public concern, he would have
reported them to the appropriate authorities around the time they occurred. Instead, Defendant
only made these statements after Plaintiff terminated their relationship, and to help another party
in another unrelated civil lawsuit.

56.72.  Defendant did not make these statements as a testifying witness in the Weamer
Litigation or any other litigation. He has never been subpoenaed for documents or testimony in
that case or any other case involving Plaintiff. Further, he is not involved in or closely connected
with any other litigation involving Plaintiff.

57.73.  Further, Plaintiff suffering a sexual assault eight years ago in another country is
not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

58.74.  Defendant's conduct is malicious, vindictive and outrageous.

59.75.  Further, Defendant's statements regarding the sexual assault have caused the re-
victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries
to her.

## FIRST CLAIM FOR RELIEF
**(Defamation Per Se—Statement Regarding Plaintiff Filing a False Police Report and
Committing Insurance Fraud in Relation to Her Lost Passport)**

60.76.  Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 7559 as if
fully set forth herein.

61.77.  Defendant knowingly made and/or published two the false and defamatory oral
and written statements about Plaintiff—(1) that Plaintiff falsely accused Mr. Chen of rape and

(2) that Plaintiff filed a false police report in relation to her lost passport and obtained a refund from the travel insurance company based on that false report.

78. These This statements directly referred to Plaintiff, is publicly accessible and were was directed towards and heard by multiple parties, including, but not limited to the defendant and counsel in the *Weamer* litigation Mr. Weamer and ▇▇▇▇▇▇▇.

62.79. Plaintiff first became aware that Defendant made this statement on August 23, 2020.

63.80. The substance of this ese statements were was false at the time they were it was made.

64.81. At the time of the publication or utterance, Defendant knew that this e statements were was false or made the statements with reckless disregard as to whether they were it was false.

65.82. Because Defendant's statement accuses Plaintiff of committing a crimes—filing a false police reports and committing insurance fraud—they are defamatory per se.

66.83. Defendant's defamatory statements have has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution.

84. As a result of Defendant's defamatory statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Statement Regarding Plaintiff Falsely Accusing Chen of Sexual Assault)

85. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 84 as if fully set forth herein.

86. Defendant knowingly made and/or published the false and defamatory statement that Plaintiff falsely accused Chen of sexual assault.

87. This statement directly referred to Plaintiff and was directed towards and heard by multiple parties, including, but not limited to Mr. Weamer, █████████ and Ms. Amanda G. Papac.

88. Plaintiff first became aware that Defendant made this statement on September 18, 2020 and then again on January 4, 2021.

89. The substance of this statement was false at the time it was made.

90. At the time of the publication or utterance, Defendant knew that this statement was false or made this statement with reckless disregard as to whether it was false.

91. Because Defendant's statement accused Plaintiff of committing a crime—filing a false police report—it is defamatory per se.

92. Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution and humiliation.

67.93. As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

### SECOND THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress/Outrageous Conduct)

68.94. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 67 93 as if fully set forth herein.

69.95.  Defendant engaged in the conduct of making false accusations against Plaintiff—namely, that she falsely accused Mr. Chen of sexual assault of her and filedassault, filed a false police report and committed insurance fraud.

70.96.  Defendant engaged in this conduct and made these statements recklessly or with the intent to cause Plaintiff severe emotional distress.

71.97.  Accusing Plaintiff of committing two three separate crimes and re-traumatizing a rape survivor is extreme and outrageous.

72.98.  Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

73.99.  As a result of Defendant's conduct and statements, Plaintiff has been re-traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

74.100.Plaintiff has suffered severe emotional distress for which Plaintiff receives ongoing therapy.

75.101.As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## THIRD FOURTH CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

76.102.Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 10175 as if fully set forth herein.

77.103.Plaintiff's sexual assault and her allegations against Mr. Chen were personal and private in nature because Mr. Chen's prosecution was behind closed doors in China and Plaintiff only told Defendant, her own mother and her attorney about the sexual assault.

12

~~78.~~104. Defendant unreasonably disclosed these personal and private facts to several individuals, including ~~the defendant in the *Weamer* lawsuit~~but not limited to Mr. Weamer, ▮▮▮ and Ms. Papac. His statements are also publicly accessible online.

~~79.~~105. Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

~~80.~~106. The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

~~81.~~107. Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

~~82.~~108. Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

~~83.~~109. The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

~~84.~~110. As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against Defendant, awarding economic, non-economic and exemplary damages in an amount to be determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated: ~~April 22~~July___, 2021.          Respectfully submitted,


*s/ Clarissa M. Collier*
David J. Schaller
Clarissa M. Collier
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:  303.244.1800
Facsimile:  303.244.1879
Email:  schaller@wtotrial.com
           collier@wtotrial.com

Attorneys for Plaintiff,
Jane Doe

14

EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

JANE DOE,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

## THIRD AMENDED COMPLAINT AND JURY DEMAND

---

Pursuant to Fed. R. Civ. P. 15 and this Court's June 11, 2021 Minute Order (ECF 76) and Order Denying Defendant's Renewed Motion to Dismiss Without Prejudice (ECF 84), Plaintiff Jane Doe, for her Third Amended Complaint states as follows:

### PARTIES

1.     Plaintiff, Jane Doe, is a resident of the State of California.

2.     Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are diverse, and the amount in controversy exceeds $75,000.

4.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5.      Plaintiff and Defendant attended school together in China from 1990 through 1993.

6.      The two parted ways when Defendant left China to attend college in the United States.

7.      In late 2012, Defendant returned to China to visit.

8.      During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9.      Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10.      On May 18, 2013, Plaintiff attended a karaoke party.

11.      Chen Guochang ("Mr. Chen"), a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12.      Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13.      At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14.      The Dalangtaosha Elite Club was a massage center in the area.

15.      Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

2

16.     Plaintiff awoke in a massage room and suspected that something happened to her as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution (which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr. Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

28.    On information and belief, the woman was an employee of the massage center.

29.    Given Plaintiff's inability to walk on her own or even stay awake, she did not
possess the mental capacity to consent to have sex.

30.    Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored
national laws and violated the wishes of women by forcibly having sex with her. His behavior
violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.    The procuratorate found that "[t]he facts of the crime were clear and the evidence
was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.    At that time, the prosecution was confidential.

33.    In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was
not permitted to observe the trial.

34.    Mr. Chen was ordered to pay Plaintiff restitution.

35.    By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of
the rape charge.

36.    However, Plaintiff does not know whether Mr. Chen suffered any other penalties,
fines or imprisonment as a result of the rape.

## Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter

37.    In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the
United States to live with Defendant in Aurora, Colorado.

38.    Plaintiff and Defendant lived together until October 2013.

39.    At one point during that time, Defendant had purchased Plaintiff a plane ticket to
return to China.

40.     Plaintiff, however, lost her passport so she did not take that flight.

41.     At that time, Plaintiff did not know whether her passport was lost or stolen.

42.     As a result, she reported her lost passport to the Aurora Police Department, which is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that situation.

43.     On information and belief, the police report states that Plaintiff reported the passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not know that for sure. Rather, she simply knew her passport was missing and that missing passports should be reported to the police.

44.     Plaintiff discovered that she misplaced her passport and found her passport shortly thereafter. Therefore, she did not pursue further remedies or investigation through the Aurora Police Department.

45.     In October 2013, Plaintiff ended her relationship with Defendant and moved to California alone.

46.     Defendant was angry after Plaintiff's termination of their relationship and repeatedly texted her after, but she never responded.

**Seven Years Later, Plaintiff Learns that Defendant is Making False and Defamatory Statements**

47.     In 2020, Plaintiff learned through a separate lawsuit, ████████████████ ████████████████████████ (the "Weamer Litigation"), that is wholly unrelated to her allegations against Defendant in this case, that Defendant made several false and incredibly damaging statements against Plaintiff.

5

48.     First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport. Specifically, in the Weamer Litigation, Plaintiff propounded written discovery that requested "Copies of any and all e-mails, chat history, or other electronically stored information that contain your communication discussing or commenting upon Plaintiff. This includes documents, communications or correspondence sent or received by you."

49.     On August 23, 2020, Mr. Weamer responded to Plaintiff's written discovery (through his attorney,                                                    ) and produced documents responsive to Plaintiff's request.

50.     The responsive documents produced by Mr. Weamer included a written statement from Defendant.

51.     On information and belief, Defendant posted this written statement online before Plaintiff filed the Weamer Litigation.

52.      In the written statement, Defendant states that Plaintiff "filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price."

53.     This statement is false because, as explained above, Plaintiff reported her passport as lost/stolen based on her actually losing her passport.

54.     Further, Defendant himself purchased the airline ticket and presumably the travel insurance—not Plaintiff.

55.     Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department.

6

56.     On information and belief, ████████ later requested a copy of the police report from the Aurora Police Department based on Defendant's statement.

57.     Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault.

58.     Specifically, on June 17, 2020, Mr. Weamer propounded Special Interrogatories to Plaintiff. In the Special Interrogatories, Mr. Weamer requested that Plaintiff: (a) "Identify the individual in China whom YOU alleged raped you in 2012" and (b) "Identify all allegations [she had] made against Chen GuoChang RELATED TO alleged sexual assault."

59.     Plaintiff objected to these interrogatories on numerous grounds.

60.     In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ████████, stated that the requests related to a claim that "defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her."

61.     On information and belief, Mr. Weamer and ████████ based their "belief" on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Mr. Chen.

62.     On information and belief, Defendant also posted this same statement online. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, ... and filed a frivolous police report in Colorado about losing her passport."

63.     On information and belief, Defendant authored this blog post because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Mr. Chen. Further, he is the only person who

knew that Plaintiff filed a police report regarding her passport and would know the specific dates

of her travel since he purchased her original airline ticket.

64.     On information and belief, prior to Defendant revealing this information, no one

in the United States knew of Mr. Chen's sexual assault of Plaintiff.

65.     In fact, China is well-known for closed door proceedings, especially with respect

to sexual assault criminal prosecutions.

66.     Further, in China, sexual assault is considered taboo and victims of sexual assault

are often rejected by society as the culture views women as solely responsible for the rape.

Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but

Defendant, her own mother and her attorney.

67.     Defendant's statements against Plaintiff are objectively false because (a) Mr.

Chen did rape Plaintiff; (b) Plaintiff's passport was lost at the time she reported it as lost; and (c)

Plaintiff did not ever purchase or have travel insurance in 2013.

68.     All of these statements are highly offensive because they accuse Plaintiff of

committing crimes—making false police reports and committing insurance fraud.

69.     Neither of these statements are of public concern not only because they are false,

but because Plaintiff is a private citizen.

70.     If Defendant truly believed these were matters of public concern, he would have

reported them to the appropriate authorities around the time they occurred. Instead, Defendant

only made these statements after Plaintiff terminated their relationship.

71.     Defendant did not make these statements as a testifying witness in the Weamer

Litigation or any other litigation. He has never been subpoenaed for documents or testimony in

that case or any other case involving Plaintiff. Further, he is not involved in or closely connected with any other litigation involving Plaintiff.

72.     Further, Plaintiff suffering a sexual assault eight years ago in another country is not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

73.     Defendant's conduct is malicious, vindictive and outrageous.

74.     Further, Defendant's statements regarding the sexual assault have caused the re-victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries to her.

## FIRST CLAIM FOR RELIEF
### (Defamation Per Se—Statement Regarding Plaintiff Filing a False Police Report and Committing Insurance Fraud in Relation to Her Lost Passport)

75.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 74 as if fully set forth herein.

76.     Defendant knowingly made and/or published the false and defamatory statement that Plaintiff filed a false police report in relation to her lost passport and obtained a refund from the travel insurance company based on that false report

77.     This statement directly referred to Plaintiff, is publicly accessible and was directed towards and heard by multiple parties, including, but not limited to Mr. Weamer and ███████.

78.     Plaintiff first became aware that Defendant made this statement on August 23, 2020.

79.     The substance of this statements was false at the time it was made.

80.     At the time of the publication or utterance, Defendant knew that this statement
was false or made the statements with reckless disregard as to whether it was false.

81.     Because Defendant's statement accuses Plaintiff of committing crimes—filing a
false police report and committing insurance fraud—they are defamatory per se.

82.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and
have opened her up to criminal prosecution.

83.     As a result of Defendant's defamatory statement, Plaintiff has suffered and
continues to suffer damages and losses, including special damages, in an amount to be
determined at trial.

## SECOND CLAIM FOR RELIEF
**(Defamation Per Se—Statement Regarding Plaintiff Falsely Accusing Mr. Chen of Sexual
Assault)**

84.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 83 as if
fully set forth herein.

85.     Defendant knowingly made and/or published the false and defamatory statement
that Plaintiff falsely accused Mr. Chen of sexual assault.

86.     This statement directly referred to Plaintiff and was directed towards and heard by
multiple parties, including, but not limited to Mr. Weamer,               and Ms. Amanda G.
Papac.

87.     Plaintiff first became aware that Defendant made this statement on September 18,
2020 and then again on January 4, 2021.

88.     The substance of this statement was false at the time it was made.

89.     At the time of the publication or utterance, Defendant knew that this statement was false or made this statement with reckless disregard as to whether it was false.

90.     Because Defendant's statement accused Plaintiff of committing a crime—filing a false police report—it is defamatory per se.

91.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution and humiliation.

92.     As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress/Outrageous Conduct)**

93.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 92 as if fully set forth herein.

94.     Defendant engaged in the conduct of making false accusations against Plaintiff— namely, that she falsely accused Mr. Chen of sexual assault, filed a false police report and committed insurance fraud.

95.     Defendant engaged in this conduct and made these statements recklessly or with the intent to cause Plaintiff severe emotional distress.

96.     Accusing Plaintiff of committing three separate crimes and re-traumatizing a rape survivor is extreme and outrageous.

97.     Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

98.   As a result of Defendant's conduct and statements, Plaintiff has been re-traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

99.   Plaintiff has suffered severe emotional distress for which Plaintiff receives ongoing therapy.

100.   As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

101.   Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 100 as if fully set forth herein.

102.   Plaintiff's sexual assault and her allegations against Mr. Chen were personal and private in nature because Chen's prosecution was behind closed doors in China and Plaintiff only told Defendant, her mother and her attorney about the sexual assault.

103.   Defendant unreasonably disclosed these personal and private facts to several individuals, including but not limited to Mr. Weamer, ▆▆▆▆▆ and Ms. Papac. His statements are also publicly accessible online.

104.   Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

105.   The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

106.   Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

12

107.     Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

108.     The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

109.     As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against Defendant, awarding economic, non-economic and exemplary damages in an amount to be determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated: July 28, 2021.                    Respectfully submitted,

                                         *s/ Clarissa M. Collier*
                                         David J. Schaller
                                         Clarissa M. Collier
                                         Wheeler Trigg O'Donnell LLP
                                         370 Seventeenth Street, Suite 4500
                                         Denver, CO 80202
                                         Telephone:  303.244.1800
                                         Facsimile:  303.244.1879
                                         Email:  schaller@wtotrial.com
                                                 collier@wtotrial.com

                                         Attorneys for Plaintiff,
                                         Jane Doe

EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

JANE DOE,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

---

Mr. Paul Wang, pursuant to Fed. R. Civ. P. 12(b)(6), respectfully requests that the Court

dismiss, with prejudice, Plaintiff's Third Amended Complaint for failure to state a claim

upon which relief can be granted. As grounds therefor he states:

### I.  *Relevant procedural history*

1.      On September 11, 2020, Plaintiff filed a *pro se* complaint.

2.      On February 28, 2021, Plaintiff filed a *pro se* amended complaint.

3.      On March 3, 2021, the Court appointed *pro bono* counsel to represent

Plaintiff.

4.      On April 8, 2021, after Mr. Wang pointed out the amended complaint's

deficiencies, the Court granted Plaintiff's motion to file a second amended complaint with

assistance of counsel.

5.      On April 22, 2021, Plaintiff filed her second amended complaint.

1

6.      On May 25, 2021, Mr. Wang filed a motion to dismiss the Second

Amended Complaint.

7.      On May 26, 2021, the then-presiding judge, the Honorable Brooke

Jackson, issued an order pursuant to his unique practice standards denying the motion to

dismiss without prejudice and directing the parties to exchange letters regarding the

motion to dismiss.

8.      On June 11, 2021, after reviewing the letters, Judge Jackson issued a

minute order:

> The Court agrees with Judge Hegarty's advice. The two parties are now
> represented by experienced and able counsel. A motion to dismiss is likely
> to be denied and a waste of time. You good lawyers should confer and
> either resolve this case or agree that plaintiff will file one more amended
> complaint *that **takes into account defendant's issues** and **pleads only**
> what she believes **she has evidence to prove**.* This does appear to be
> Marbury v. Madison.

The June 11, 2021 Minute Order (emphasis added).

9.      On June 11, 2021, Mr. Wang reached out to plaintiff.

> The Court order states that you might be able to file "one more amended
> complaint *that takes into account defendant' issues* <u>and</u> pleads <u>only</u> what
> she believes *she has evidence to prove*." (emphasis added). Could you
> please, as soon as possible, send me the evidence you plan to rely on to
> prove any claims made in a third amended complaint (considering the
> deficiencies pointed out in our previous conversations, letter, and the
> motion to dismiss)?
>
> Specifically, could you **please provide copies of all written statements
> you contend Mr. Wang offered or published concerning your client,
> which could serve as the basis for your claims** and also identify by
> name and provide contact information for any witnesses who you know, at
> this time, will testify under oath that Mr. Wang made oral statements to
> them concerning your client? Please include the specific date and
> circumstances under which your client discovered each statement. May I
> anticipate receiving them by early next week, since you already have this
> is information in hand?

2

> Relevant portion of the June 11, 2021 email correspondence between counsel
> (italics in original; bolded text for emphasis).

10.     Plaintiff did not provide any of the requested information. Instead, she

provided Mr. Wang only with a copy of her proposed Third Amended Complaint—but

not a single document evidencing any of the  statements or publications she has pleaded to

be false and defamatory that might serve as the basis for her claim against Mr. Wang.

11.     On July 9, 2021, Mr. Wang notified Plaintiff's counsel that the proposed

Third Amended Complaint did not comply with the Court's June 11, 2021 order.

> As to a motion for leave to file a third amended complaint, I am afraid
> *your draft does not cure the deficiencies we have pointed out in our
> previous conversations and the motion to dismiss; your new allegations
> involve statements that were made by third-parties – not Mr. Wang*; and
> you have not provided the evidence that could support your request to file
> a third amended complaint. (See attached [asking you to "please provide
> copies of all written statements you contend Mr. Wang offered or
> published concerning your client, which could serve as the basis for your
> claims and also identify by name and provide contact information for any
> witnesses who you know, at this time, will testify under oath that Mr.
> Wang made oral statements to them concerning your client? Please
> include the specific date and circumstances under which your client
> discovered each statement."]) *We are available to discuss this further, in a
> meaningful way, after you provide the evidence that could actually
> support your request.*
>
> Also, you are correct, Judge Rodriguez does not have the same practice
> standards. So, as a courtesy, we are notifying you that in light of this
> change we are renewing our motion to dismiss the pending complaint.

Relevant portion of the July 9, 2021 email correspondence between counsel
(emphasis added).

12.     Plaintiff's counsel stated that Plaintiff did not have an obligation to provide

the requested information in support of the allegations in the proposed Third Amended

Complaint.

13.     This motion addresses the deficiencies already identified by Mr. Wang in

Plaintiff's Third Amended Complaint, filed on July 28, 2021.

## II.    *Applicable legal standards*

### A.    Motions to dismiss for failure to state a claim—generally

14.    In considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's complaint is reviewed for a determination of whether it "'contains enough facts to state . . . claim[s] that [are] plausible on [their] face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Facts," under the *Twombly* standard, need not be "detailed," but they must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

### B.    Plaintiff's Libel Claims Are Time-barred

15.    In Colorado, a libel or defamation claim must be filed within a year of the "date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Burke v. Greene*, 963 P.2d 1119, 1121 (Colo. App. 1998); Colo. Rev. Stat. § 13-80-103. The cause of action for libel accrues when the defamatory statements are published. *Deatley v. Allard*, No. 14-CV-00100-RM-KMT, 2015 WL 134271, at *5 (D. Colo. Jan. 9, 2015) (citing *Russell v. McMillen*, 685 P.2d 255, 258

4

(Colo. App. 1984); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *4 (D. Colo. Jan. 18, 2013).

16.     Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim. *See, e.g., Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir.1997) (applying *de novo* review to district court's dismissal on the grounds that claim was time-barred for failure to state a claim).

17.     Even though, generally, the sufficiency of a complaint rests exclusively on its contents, *see Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010), in deciding a motion to dismiss courts may also consider:

> (1) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Oxendine*, 241 F.3d at 1275[1] (documents attached as exhibits to the complaint); (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); and (3) "matters of which a court may take judicial notice," *Tellabs, Inc.*, 551 U.S. at 322, 127 S.Ct. 2499.

*Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Therefore, the statute of limitations may be presented as a defense in a motion to dismiss when the complaint itself (*and documents referred to therein*) establish that the claim is time-barred as a matter of law. *See, e.g., id.; Tellabs, Inc.*, 551 U.S. at 322-23.

## C.     The heightened pleading requirements in defamation/libel cases

18.     "Each *publication* of a defamatory statement must be pled as a separate claim." *Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385, 1390 (Colo. App. 1985)

---

[1] *Oxendin v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

(emphasis added) (citing *Lininger v. Knight*, 123 Colo. 213, 226 P.2d 809 (1951)).[2] And

because of the First Amendment implications of any defamation action, *see Diversified*

*Mgmt., Inc. v. Denver Post, Inc*., 653 P.2d 1103 (Colo. 1982), particularity is required in

the pleading of a defamation suit. *See, e.g., id.* (*citing Walters v. Linhof*, 559 F. Supp.

1231 (D. Colo. 1983); *Martinez v. Winne*r, 548 F. Supp. 278 (D. Colo. 1982)).

19.     A plaintiff asserting a defamation claim must plead the exact statements

claimed to be false and defamatory. *See, e.g., Walters v. Linhof*, 559 F. Supp. 1231, 1234

(D. Colo. 1983) (applying Colorado law and granting motion to dismiss defamation claim

for failure to state a claim where "[p]laintiffs have not substantially set forth the words

alleged to be defamatory and untrue"); *see also Asay v. Hallmark Cards, Inc.*, 594 F.2d

692, 698-99 (8th Cir. 1979) ("[T]he use of *in haec verba* pleadings on defamation charges

is favored in the federal courts because generally knowledge of the exact language used is

necessary to form responsive pleadings").

20.     In her Third Amended Complaint, Plaintiff identifies two statements

(apparently in an unspecified number of *separate publications*) that she alleges Mr. Wang

published online—although, tellingly, not with specificity (she did not identify, among

other things, the dates and places of publication).

### III.     Facts: Statements at issue

21.     Plaintiff claims that Mr. Wang published the below two statements (1) in

communications with counsel for Mr. Weamer in the litigation she filed against him in

---

[2] Notwithstanding that Plaintiff and her counsel were notified of this pleading requirement
through Defendant's prior motion to dismiss and the Court's specific instructions, the Third
Amended Complaint continues to plead multiple *publications* within a single count.

███████████████████████████████████████████████), Third Am.

Compl. ¶¶ 47-62, and (2) in certain unidentified publication(s) he allegedly posted online

prior to making the statements in the *Weamer* case. *Id.* ¶¶ 51, 55, 62.

> First statement ("false report of missing passport in Colorado")

- "Defendant stated that Plaintiff filed a false police report in relation to her lost passport." ¶ 48,
- "On information and belief, **Defendant posted this written statement online** *before* Plaintiff filed the Weamer Litigation." ¶ 51 (emphasis added),
- "In the written statement, Defendant states that Plaintiff 'filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price.'" ¶ 52
- "***Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department***." ¶ 55 (emphasis added).

> Second statement ("report of false rape accusation in China")

- "Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault." ¶ 57,
- "In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ██████, stated that the requests related to a claim that 'defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her.'" ¶ 60,
- "On information and belief, Mr. Weamer and ██████ based their "belief" on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Mr. Chen." ¶ 61,
- "On information and belief, Defendant also posted **this same statement online**. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that ***Plaintiff 'has [] made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport*.'" ¶ 62 (emphasis added).

7

### IV.    *Applying law to facts*

**A.    The Court should dismiss Plaintiff's claims with prejudice for failure to state a claim because the statements at issue, as Plaintiff admits, have been online since 2013 and are therefore time-barred**

22.    Here, in her *fourth* attempt to state a claim, Plaintiff has asserted, "on information and belief," that *"the author"* of a blog posting she allegedly received on January 4 of this year falsely charged her with having made a false rape accusation. *Id.*, at ¶ 62.

23.    Plaintiff also claims that:

"On information and belief, Defendant authored this blog post [that she claims to have discovered only within the past eight months] because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Mr. Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket.

*Id.*, ¶ 63, *see also id.* ¶¶ 55, 64.

24.    Finally, Plaintiff states:

"This statement directly referred to Plaintiff, is **publicly accessible** and was directed towards and heard by multiple parties, including, but not limited to Mr. Weamer and ▮▮▮▮▮▮▮."

*Id.,* ¶ 77 (emphasis added).

25.    The critical problem with Plaintiff's intentional failure to plead her claims with specificity is best illustrated by the fact that a year after filing her initial complaint she still refuses to provide even a link to this "publicly accessible" online publication, on which she is basing her Third Amended Complaint. Having now provided her three opportunities to remedy this deficiency, the Court should dismiss her claims with

prejudice.

26.     Based on Plaintiff's allegations and the quote in ¶ 62 of the Third

Amended Complaint, and pursuant to *Tellabs*, 551 U.S. 322, *Gee*, 627 F.3d at 1186, and

Fed. R. Evid. 201(b)(2), Mr. Wang attaches the publication he believes is referenced (i.e.,

quoted verbatim) in the Complaint and requests that the Court take judicial notice of it, [3]

https://█████wordpress.c█████████/███████better-known-██|████████

████████████/ (last visited on Aug. 25, 2021); *see also*

https://█████wordpress.com████████/ (last visited on Aug. 25, 2021). (Attachment

A.) [4]

27.     Comparing the quote from ¶ 62 and the content of

https://█████wordpress.com/███████/████████better-known-██|████████

████████████/ and https://█████wordpress.c████████/ ("Monthly

Archives: December 2013") ("If you see or meet this person, be aware, she has already

made false allegation of rape, false claims about other people as well, filed a frivolous

police report in Colorado about losing her passport . . . .") (last visited on Aug. 25, 2021),

there can be only one conclusion: the quote in ¶ 62 is from this online blog and was

published in December 2013, almost eight years ago.

---

[3]  The Court may take judicial notice of information appearing on the internet at a particular
point in time. *See People v. Harper*, 294 P.3d 161, 162 n.2 (Colo. 2012) (taking judicial notice of
attorney's address as it appears on a public website); *Shook v. Pitkin Cnty. Bd. of Cnty. Comm'rs*,
411 P.3d 158, 161 n.4 (Colo. App. 2015) (taking judicial notice of a publicly available website,
noting that "[t]he contents of a webpage on a specific date and time are not subject to reasonable
dispute").

[4] Due to her request to proceed under the pseudonym Jane Doe, Mr. Wang is redacting the
information that could reveal her real identity in this public document but pursuant to
D.C.COLO.LCivR 7.2(b), subject to Level 1 restrictions, is attaching an unredacted version of
this motion and its attachments for the record.

28.     Therefore, taking Plaintiff's allegations as true, her claims must be
dismissed with prejudice as time-barred because they are premised on statements
published in December 2013.[5] *See, e.g., Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114,
1122 (W.D. Wash. 2011) ("In the internet context, the statute of limitations begins to run
when the allegedly infringing material is first posted on the internet.") (*citing Canatella v.
Van De Kamp*, 486 F.3d 1128, 1134–36 (9th Cir. 2007)); *Bloom v. Goodyear Tire &
Rubber Co.*, 2006 WL 2331135at *7 (D. Colo. Aug. 10, 2006); *Hoai Thanh v. Ngo*, No.
PJM 14-448, 2016 WL 3958584, at *10–12 (D. Md. July 22, 2016), *aff'd sub nom. Hoai
Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017); *Wolk v. Olson*, 730 F. Supp. 2d
376, 378 (E.D. Pa. 2010); *Deatley v. Allard*, 2015 WL 134271, at *5; *Int'l Acad. of Bus.
& Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at *4.[6]

---

[5] Plaintiff filed her complaint on September 11, 2020. (Doc. # 1.)  Therefore, her claims are
barred. *See* Colo. Rev. Stat. § 13–80–102, § 13–80–103, or § 13-80-108.

[6] In addition, as Plaintiff and her counsel are aware, the blog post was *not* authored by
Mr. Wang. A side-by-side review of the publication where the quoted statement in ¶ 62
appears ( https://████████wordpress.com/████████████████████████
████████████ (last visited on Aug. 25, 2021) with Plaintiff's blogs
(Mr. Wang requests that the Court take judicial notice of these online publications as
well. *See, supra,* fn 3.): https://████████wordpress.com/ (last visited on Aug. 25, 2021)
(Attachment B) and http://████████blogspot.com/ ) (last visited on Aug. 25, 2021)
(Attachment C) establishes that:

- Mr. Wang is not the author of the publication;
- Morgann Paraskevas, whom Plaintiff knows very well, is the author;
- Since at least December of 2013 Plaintiff has known (or should have
  known) about the publications; and
- Taking her own allegations as true that Mr. Wang was the only one (beside
  her, in the United States) who knew of the underlying facts, Third. Am.
  Compl ¶¶ 55, 63, then she knew (or should have known) about the causes
  of action in her Complaint in December 2013.

**B.      Mr. Wang's publication made in his capacity as a potential witness in Plaintiff's other litigations are absolutely privileged**

29.      In addition, pursuant to Restatement (Second) of Torts, "[a] witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." Restatement (Second) of Torts § 588; *see also id.*, cmt. e ("As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding.").

30.      Colorado has adopted the absolute litigation privilege as recognized by the Restatement (Second) of Torts. *See, e.g., Club Valencia Homeowners Ass'n. v. Valencia Associates*, 712 P.2d 1024, 1027-1028 (Colo. App. 1985); *Merrick v. Burns*, 43 P.3d 712, 714 (Colo. App. 2001); *McDonald v. Lakewood Country Club*, 461 P.2d 437, 444 (Colo. 1969); *Renner v. Chilton*, 142 Colo. 454, 351 P.2d 277 (1960). "The absolute privilege to defame in the course of judicial proceedings is not limited to statements during trial, but

---

Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.

*Tellabs,* 551 U.S. 322–23 (internal citations omitted).

may extend to steps taken prior to trial such as conferences and other communications preliminary to the proceeding." *Club Valencia*, at 1027. "All doubt should be resolved in favor of its relevancy or pertinency. No strained or close construction will be indulged to exempt a case from the protection of privilege. Thus, letters sent to persons having collateral interests in the litigation are privileged to the extent that the alleged defamatory statements have some relation to the subject matter of the proposed litigation and are made in furtherance of the objective of the litigation." *Id.* (citations omitted). "The privilege applies, even though the publication was made outside the courtroom and no official function of the court or its officers was invoked." *Id.* at 1028.

31.     "The determination of privilege is a question of law for the trial court." *Id.* at 1027.

32.     The privilege provides a shield not only "from defamation claims arising from statements made during the course of litigation, but it also bars other non-defamation claims that stem from the same conduct" such as "claims of invasion of privacy[7] and intentional infliction of emotional distress." *Buckhannon v. U.S. West Communs.*, 928

---

[7] Even if Mr. Wang's alleged statement concerning the prosecution against the Chinese man Plaintiff accused of raping her were not absolutely privileged, those statements are also non-actionable for "invasion of privacy" as a matter of law. *See, e.g., Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997) (requiring that any statement alleged to invade one's privacy "cannot be of legitimate concern to the public"). It cannot be disputed that a prosecution for criminal rape is not a purely private matter under the law of the United States. In addition, "the requirement of public disclosure . . . requires communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997). Because the quoted statement was published by Mr. Paraskevas and because the Third Amended Complaint does not include any allegation that Mr. Wang's alleged statements in the *Weamer* litigation were made to the public in general or to a large number of persons, it fails to state a claim upon which relief can be granted.

P.2d 1331, 1335 (Colo. App. 1996) (citing *Barker v. Huang*, 610 A.2d 1341 (Del. 1992));

*see also Peterson v. Grisham*, 594 F.3d 723, 730 (10th Cir. 2010); *Kesner v. Dow Jones &*

*Co., Inc.*, No. 20-CV-3454 (PAE), 2021 U.S. Dist. LEXIS 14358, at 81-82, 2021 WL

256949, at *10-11 (S.D.N.Y. Jan. 26, 2021) (because each of Plaintiff's non-defamation

claims duplicate her failed defamation claims, the non-defamation claims must be

dismissed as a matter of law).

33.     Here, Plaintiff alleges that she first learned about the two sets of statements

at issue in this litigation during the *Weamer* case. *See, e.g.,* Third. Am. Compl. ¶ 47; *but*

*see supra* ¶ 26 . Plaintiff quotes Ms. ██████████ Esq. (Mr. Weamer's attorney). Third

Am. Compl. ¶ 60.

34.     Pursuant to *Tellabs*, 551 U.S. 322 *and Gee*, 627 F.3d at 1186, and Fed. R.

Evid. 201(b)(2), Mr. Wang attaches ██████████ referenced September 18, 2020

Declaration from the *Weamer* case file, (Attachment D), which specifically refers to Mr.

Wang as a witness in that case.

> 5. As part of preparing a defense in this matter, I have researched Ms. Doe on the
> Internet and **reached out to *witnesses*** who I believe may have relevant
> information about Ms. Doe's past false claims of sexual assault. My research has
> revealed that she has made claims of being taken advantage of sexually by Charlie
> Suarez (who she claims in publicly filed court records raped her after they went to
> dinner and got drunk together), ***Paul Wang*** (who she claims cheated on her and
> against whom she posted complaints on social media), and Morgann Paraskevas
> who she claims sexually harassed her while she couch[-]surfed at his home. ...."

Attachment D, Affidavit of ██████████ Esq., ████████████████████



██████████████ ), the referenced September 18, 2020 Declaration of ██████████ in

Support of Defendant Weamer's Motion to Compel Further Responses to Discovery and

for Monetary Sanctions Against Jane Doe, at ¶ 5 (emphasis added).[8]

35.     Because any allegedly false and defamatory statements about the Plaintiff made by Mr. Wang in his communications with attorney ███████ were in his capacity as a potential witness, conveying information that ███████ quite reasonably considered to be "pertinent" to that litigation, those statements are protected by the absolute litigation privilege as a matter of law. The court should therefore dismiss Plaintiff's claims with prejudice on this ground as well.

### *V.     Conclusion*

In her Third Amended Complaint, Plaintiff has provided what she claims are the false and defamatory "statements" Mr. Wang made, yet she continues to refuse to point Defendant or the Court to what she avers is a "publicly accessible" web posting.  Taking Plaintiff's allegations as true—that Mr. Wang (not the actual blog post author)— published statements about her online in December 2013, establishes that that mass publication occurred in December 2013, which is when her claims "accrued" for purposes of the statute of limitations. Thus, any claims Plaintiff may have had premised on that eight-year old publication are time barred, as a matter of law. In addition, because Mr. Wang was/is a witness, identified as such in the *Weamer* litigation, any statements he made in the course of that litigation (including during pre-trial discovery) are protected by the absolute litigation privilege, under settled Colorado law.

---

[8] Also, in her Second Amended Complaint, Plaintiff  affirmatively pleaded that Mr. Wang made his statements "to help another party [Mr. Weamer] in another unrelated civil lawsuit." *See* Sec. Am. Compl. ¶ 56.

WHEREFORE, the Court should dismiss Plaintiff's claims with prejudice.

Respectfully submitted this 25th day of August 2021.

*/s/ Katayoun A. Donnelly*
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO  80238
Tel. (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Paul Wang*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2021, I served an electronic copy of the foregoing via

CM/ECF to counsel of record.


Clarissa M. Collier
David J. Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
303.244.1800
collier@wtotrial.com
schaller@wtotrial.com

/s/ Katayoun A. Donnelly
Katayoun A. Donnelly

16

EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

JANE DOE,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

## REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (DOC. 90)

Mr. Wang's motion to dismiss explained how the substantive and procedural laws governing Plaintiff's claims reveal the fatality of the flaws in her Third Amended Complaint. Plaintiff's response does not address the key arguments in Mr. Wang's motion and contains a series of requests to disregard the applicable law and information referenced in her own complaint.[1]

### I.    Plaintiff asks the Court to disregard the applicable legal standards and information referenced in her complaint

### A.    Plausibility and heightened pleading standards apply

Plaintiff claims: "'[T]he complaint should not be dismissed for failure to state a

---

[1] Although Plaintiff appears displeased with the Motion's description of Mr. Wang's failed efforts to persuade her to comply with Judge Jackson's June 11, 2021 order, she nonetheless does not contest the accuracy of any of the statements in the Motion's recitation of the procedural history.

claim unless it appears **beyond doubt** that the plaintiff can prove **no set of facts** in support
of [her] claim that would entitle [her] to relief.'" (Pl.'s Resp. at 2) (quoting *Stearns v.
McGuire*, No. CIV.02-RB-1912(OES), 2004 WL 3174423, at *1 (D. Colo. July 26, 2004)
(quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (emphasis added))).

Plaintiff's contention disregards the facts that (1) the United States Supreme Court
in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct.
1937 (2009) transformed federal civil litigation by abolishing "notice" pleading—for
which she is advocating—in favor of the heightened "plausibility" pleading regime, and (2)
the plausibility standard applies to pleading elements of all civil claims, including
defamation and other torts. *See, e.g., Michel v. NYP Holdings, Inc*., 816 F.3d 686, 702
(11th Cir. 2016).

Plaintiff also mistakenly contends that the requirement of pleading allegedly
defamatory statements with particularity (and the circumstances surrounding each
challenged publication) is solely a creature of Colorado procedural law, hence not
applicable in federal court. *But see Walters v. Linhof,* 559 F. Supp. 1231 (D. Colo. 1983)
("Plaintiffs have not substantially set forth the words alleged to be defamatory and untrue
nor any facts that would establish publication. The fourth claim for relief is dismissed for
failure to state a claim."); *Martinez v. Winne*r, 548 F. Supp. 278 (D. Colo. 1982) ("It is
almost axiomatic that in defamation cases a certain degree of specificity is an essential in
pleadings, that the language complained of must be set forth in words or words to that
effect and that the **defendant should not be required to resort to the ofttimes expensive
discovery process to drag from a litigant what he really intends to do to his adversary
by a vehicle shrouded in mystery**." (citation omitted) (emphasis added)).

2

**B.**    **In deciding the motion to dismiss, the Court may take judicial notice of pleadings in another case, blog posts, and documents referenced in the complaint without converting the motion into one for summary judgment**

Contrary to Plaintiff's assertion, Pl. Resp., 3-5, the Court may take judicial notice of Attachments[2] A (blog post [the verbatim quote of the statements at issue, referenced in ¶ ¶ 62, 63 of the Third Amended Complaint]), B (blog post [Plaintiff's knowledge of the statements at issue, *see* ¶¶ 55, 63]), C (blog post [Plaintiff's knowledge of the statements at issue, *see* ¶¶ 55, 63]), and D (pleading from another case [Declaration of ███████ in Support of Defendant Weamer's Motion to Compel Further Responses to Discovery and for Monetary Sanctions ██████████, referenced in ¶ 60 of the Third Amended Complaint]; *see also* ¶¶ 61, 63) without converting the motion to dismiss it into one for summary judgment. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998); *see also Mirlis v. Greer*, 952 F.3d 51, 63 n.11 (2d Cir. 2020) ("The court was entitled to take judicial notice of Dressler's blog posts, as are we. See Fed. R. Evid. 201. Further, their public availability on the internet site that Dressler concededly controlled cannot reasonably be contested; they continue to be available as of this writing."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings filed in another action as a public record pursuant to Federal Rule of Evidence 201(b) in deciding a motion to dismiss without converting that motion into a motion for summary judgment); *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F .3d 396, 401 n. 15 (3d Cir. 2006) (courts may "'take

---

[2] These are attachments to Mr. Wang's Unredacted Motion to Dismiss the Third Amended Complaint. (Doc. 90)

judicial notice of newspaper articles for the fact of their publication'" (citation omitted));

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (district courts may consider

"documents incorporated by reference in the complaint . . . without converting the motion

to dismiss into a motion for summary judgment.").

## C. Plaintiff's claims are both improperly pled and time-barred

The Third Amended Complaint continues to plead multiple *publications* within a

single count. It identifies two statements (apparently in an unspecified number of separate

publications) that Plaintiff alleges Mr. Wang published online—although, tellingly, not

with specificity (she did not identify, among other things, the dates and places of

publication). And in her response, Plaintiff seems to allege that the state law requirements

do not apply to her but fails to explain how the body of federal case law cited above, which

include these same requirements, does not apply to her.

Relying on the only quote in ¶ 62 of the Third Amendment Complaint, which

includes both statements at issue, and taking judicial notice of the publication (Attachment

A to Doc. 90) and its date (it was published in 2013) and ¶ 63 and taking them as true, the

Court should dismiss the Third Amended Complaint with prejudice.[3] *See, e.g., Phillips v.*

*World Pub. Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("In the internet context,

the statute of limitations begins to run when the allegedly infringing material is first posted

on the internet.") (*citing Canatella v. Van De Kamp*, 486 F.3d 1128, 1134–36 (9th Cir.

2007)); *Bloom v. Goodyear Tire & Rubber Co.*, 2006 WL 2331135at \*7 (D. Colo. Aug. 10,

---

[3] Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim. *See,*
*e.g., Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997) (applying de novo review to
district court's dismissal on the grounds that claim was time-barred for failure to state a claim).

2006); *Hoai Thanh v. Ngo*, No. PJM 14-448, 2016 WL 3958584, at \*10–12 (D. Md. July

22, 2016), *aff'd sub nom. Hoai Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017);

*Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010); *Deatley v. Allard*, 2015 WL

134271, at \*5; *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at \*4.[4]

### D.   Any of Mr. Wang's Statements Made to Counsel in the *Weamer* Litigation are Absolutely Privileged

Plaintiff argues that Mr. Wang's statements made to an attorney actively engaged in

civil litigation, in response to her inquiry seeking information from him *for use in that*

*litigation*, is not subject to the "litigation communications" privilege.  Pl. Resp., 6-8. That

it is incorrect. Any allegedly false and defamatory statements about the Plaintiff that Mr.

Wang may have communicated to attorney ▆▆▆▆▆ were unquestionably in his

capacity as a potential witness, and that information was quite reasonably considered to be

"pertinent" to that litigation. And, indeed, Plaintiff has expressly so pleaded. *See* Sec. Am.

Compl. ¶ 56 (averring that Mr. Wang made his statements "to help another party [Mr.

Weamer] in another unrelated civil lawsuit."); *see also* Attachment D to Doc. 90

(Declaration of ▆▆▆▆ in Support of Defendant Weamer's Motion to Compel

Further Responses to Discovery and for Monetary Sanctions ▆▆▆▆▆, referenced

in ¶ 60 of the Third Amended Complaint). Accordingly, those statements are protected by

the absolute litigation privilege as a matter of law. *See* Def. Mot. Dismiss Third Am.

Compl., 11-14; *see also Carter v. Spirit Aerosystems, Inc.*, No. 16-1350-EFM-GEB, 2017

WL 5270428, at \*4 (D. Kan. Nov. 13, 2017), aff'd, 827 F. App'x 864 (10th Cir. 2020)

("Carter's defamation claim relies entirely on statements Shulda made to the DOL

---

[4] Plaintiff does not address these legal authorities either.

investigator during Carter's administrative proceedings. Shulda's communications to the

DOL investigator are entitled to an absolute privilege, which is an affirmative defense to

Carter's defamation claim. Therefore, Carter's defamation claim is dismissed and it is

unnecessary for the Court to consider whether Carter's claim was brought within the

statute of limitations."). The court should therefore dismiss Plaintiff's claims with

prejudice on this ground as well.

## II.    *Conclusion*

Despite repeated requests that she do so, Plaintiff refuses to point Defendant or the

Court to what she avers is a "publicly accessible" web posting, upon which she premises

her claims. Such conduct is consistent with how Plaintiff has litigated multiple other

cases— ███████████████████████████ —and for which she has been

sanctioned by other courts. The Court should not countenance tactics such as claiming

that the court should not consider the online publications that recite verbatim the

statements she alleges are defamatory because she intentionally did not attach them to her

complaint, while refusing to identify the online, publicly available statements referenced

in her complaint; and at once relying on the publicly available online blog post as a

sufficiently reliable source on which she can base her claims, Third Am. Compl., ¶¶ 62,

62, but denying the blog post's trustworthiness when it comes to application of the statute

of limitations. Pl. Resp. at 2, 4.

Taking Plaintiff's allegations as true establishes that her claims "accrued" in 2013.

Thus, any claims Plaintiff may have had premised on that eight-year-old publication are

time barred, as a matter of law. In addition, because the Complaint affirmatively pleads

that Mr. Wang was/is a witness, identified as such in the *Weamer* litigation, any statements he made in the course of that litigation (including during pre-trial discovery) are protected by the absolute litigation privilege, under settled Colorado law.

WHEREFORE, the Court should dismiss Plaintiff's claims with prejudice.

Respectfully submitted this 28[8h] day of September 2021.

*/s/ Katayoun A. Donnelly*
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO  80238
Tel. (720) 675-8584
katy@kdonnellylaw.com


*Attorney for Paul Wang*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2021, I served an electronic copy of the foregoing

via CM/ECF to counsel of record.

Clarissa M. Collier
David J. Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
303.244.1800
collier@wtotrial.com
schaller@wtotrial.com

*/s/ Katayoun A. Donnelly*
Katayoun A. Donnelly

8

EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

---

## [PROPOSED] SCHEDULING ORDER

---

## I.   DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

A.   Date of Conference: **December 1, 2021**

B.   **Counsel for Plaintiff:**

       Clarissa M. Collier
       Wheeler Trigg O'Donnell LLP
       370 17 Street, Suite 4500
       Denver, CO 80202
       (303) 244-1800
       collier@wtotrial.com

C.   **Counsel for Defendant:**

       Katayoun Azizpour Donnelly
       Azizpour Donnelly LLC
       2373 Central Park Blvd., Suite 100
       (720) 675-8584
       Katy@kdonnellylaw.com

## II.      STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

## III.     STATEMENT OF CLAIMS AND DEFENSES

### A.      **Plaintiff's Claims**

This case concerns certain false and damaging statements made by Defendant about Plaintiff that have caused her significant emotional distress and opened her up to potential criminal prosecution. Plaintiff and Defendant have a long history starting as two peers in junior high school in China and evolving into a romantic relationship. While the couple was dating, in May 2013, a mutual acquaintance of the parties sexually assaulted Plaintiff while she was still living in China. Plaintiff told Defendant about the assault and reported her attacker to the Chinese authorities. Plaintiff's attacker was arrested by Chinese authorities and referred for prosecution.

After the assault, Plaintiff came to the United States to live with Defendant. During their time living together, Plaintiff lost her passport. She reported the lost passport to the Aurora Police Department, which is what the U.S. Department of State—Bureau of Consular recommends passport holders do in that situation. Plaintiff later found her passport and did not pursue further remedies or investigation through the Aurora Police Department.

Eventually, Plaintiff and Defendant ended their relationship. After ending the relationship, and in 2020, Plaintiff learned through another lawsuit that Defendant had made several false and damaging statements about her. First, she learned that Defendant had stated that Plaintiff filed a false police report for her lost passport. In this statement, Defendant also claimed that Plaintiff was issued a refund from the travel insurance company for half the ticket price

2

based on Plaintiff filing the false police report. In other words, Defendant accused Plaintiff of

making a false police report and committing insurance fraud. Second, she learned that Defendant

stated that Plaintiff falsely accused her attacker in China of sexual assault. Thus, again,

Defendant is claiming that Plaintiff made a false police report. These statements have caused

Plaintiff emotional injuries and opened her up to criminal prosecution. Based on these

statements, Plaintiff asserts four claims for relief:

1. **First Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Filing a False Police and Committing Insurance Fraud in Relation to Plaintiff's Lost Passport.

2. **Second Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Falsely Accusing Her Chinese Attacker of Sexual Assault

3. **Third Claim**: Intentional Infliction of Emotional Distress/Outrageous Conduct

4. **Fourth Claim**: Unreasonable Disclosure of Private Facts

B. **Defendant's Defenses**

Mr. Wang categorically denies that he has committed any tortious act. To the contrary, it

is he who has been victimized by Ms. Luo's conduct both prior to, and throughout, this frivolous

and vexatious lawsuit. Plaintiff's abuse of the judicial system has been the subject of numerous

sanctions, yet she persists in continuing that pattern.

Mr. Wang will pursue all defenses available to him. *See* briefings in Mr. Wang's Motions

to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to

Proceed Under Pseudonym. In addition, he will seek the entry of an order requiring both the

Plaintiff and her counsel to reimburse him for having to defend this action.

## IV.   UNDISPUTED FACTS

The following facts are undisputed:

A.      Plaintiff and Defendant attended middle school together in China.

B.      In 2013, the Plaintiff reported to the Aurora Police Department that her passport had been lost or stolen.

## V.   COMPUTATION OF DAMAGES

**Plaintiff:** Plaintiff seeks nominal, compensatory, and special damages to the fullest extent permitted by the law, as well as reasonable attorneys' fees and costs. Plaintiff seeks compensatory damages for her emotional injuries. At this time, she does not seek lost past or future wages. She reserves the right to seek punitive damages.

**Defendant:** Defendant seeks attorney fees and costs, jointly and severally, against Plaintiff and her counsel.

## VI.   REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

A.      Rule 26(f) meeting was held on: November 17, 2021

B.      Names of each participant and party he/she represents:

Counsel for Plaintiff, Clarissa Collier and counsel for Defendant, Katayoun Donnelly participated.

C.      Statement as to when Rule 26(a)(1) disclosure will be made:

December 1, 2021 per Fed. R. Civ. P. 26(a)(1)(C).

D.      Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1)

Not applicable.

E.      Statement concerning any agreements to conduct informal discovery.

None

F.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit number system.

The parties agree to take all reasonable steps to reduce discovery and reduce costs to the extent feasible. Accordingly, considering Plaintiff's litigation history, *see* Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym and his replies in support of those motions, Defendant, at the appropriate time, will be filing a motion to stay all discovery pending the Court's ruling on his motion to dismiss.

G.      Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

Plaintiff anticipates that her claims or defenses will involve discovery of electronically stored information, including, but not limited to, social media information (including posts, messages, chats), email, and text messages. To the extent that Plaintiff has any electronically stored information subject to discovery in this case in her possession or control, Plaintiff will take steps necessary to preserve that information.

Defendant anticipates the same.

H.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

There is little possibility of settlement.

## VII.    CONSENT

All parties do not consent to the exercise of jurisdiction of a magistrate judge.

## VIII.    DISCOVERY LIMITATIONS

A.    Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

No modifications. The presumptions of 10 depositions per side and 25 interrogatories per party shall apply.

B.    Limitations which any party proposes on the length of depositions.

None. The presumption of 1 day for 7 hours shall apply.

C.    Limitations which any party proposes on the number of requests for production and/or requests for admissions.

The parties agree to limit the number of requests for production and requests for admission to no more than 25 each per party.

D.    Other Planning or Discovery Orders

Plaintiff anticipates the need for a protective order allowing for designation of certain records as Confidential; such records may include documents such as Plaintiff's medical records and potentially financial records. Plaintiff will endeavor to provide the Court with a Joint Motion and proposed Protective Order regarding the same.

Considering Plaintiff's litigation history, *see* Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym and his replies in support of those motions, at the appropriate time, Defendant will be filing a motion to stay discovery pending the Court's ruling on his motion to dismiss.

IX.     **CASE PLAN AND SCHEDULE**

A.      Deadline for Joinder of Parties and Amendment of Pleadings: **Deadline expired.**

**May only join or amend with leave of Court.**

B.      Discovery Cut-Off: **August 1, 2022**

C.      Dispositive Motion Deadline**: September 16, 2022**

D.      Expert Witness Disclosure:

      1.      The parties shall identify anticipated fields of expert testimony, if any:

            a.      Plaintiff anticipates calling one expert to opine on Plaintiff's damages and the effects of disseminating false information.

            b.      Defendant anticipates calling an expert to opine on the impact of vexatious litigation.

      2.      Limitations which the parties propose on the use or number of expert witnesses: The parties will each be limited to 2 experts.

      3.      The parties shall designate all experts and provide opposing counsel and any pro se parties with all information required under Fed. R. Civ. P. 26(a)(2) on or before **April 16, 2022.**

      4.      The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **May 31, 2022.**

E.      Identification of Persons to be Deposed:

| Name of Deponent | | Expected Length of Deposition |
|---|---|---|
| Xingfei Luo | | TBD |
| Paul Wang | | TBD |
| ███████████ | | TBD |
| ██████████ | | TBD |
| Chen Guochang | | TBD |
| Amanda G. Papac | | TBD |

## X.      DATES FOR FURTHER CONFERENCES

None.

## XI.      OTHER SCHEDULING MATTERS

A.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: Plaintiff does not agree that all discovery in this case should be stayed, as Defendant maintains is the appropriate course, pending the resolution of the Defendant's motion to dismiss with prejudice.

B.      Anticipated length of trial and whether trial is to the court or jury: The parties are agreeable to a 4-day jury trial.

C.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Avenue, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2505; or the U.S.

Courthouse/Federal Building, La Plata County Courthouse, 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.

Not applicable.

## XII.   NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## XIII.   AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at this _____ day of ___, 2021

BY THE COURT

_____

United States Magistrate Judge

APPROVED ON NOVEMBER 18, 2021

*s/ Clarissa M. Collier*

Clarissa M. Collier
David Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: collier@wtotrial.com
        schaller@wtotrial.com

*Attorneys for Plaintiff*

*s/Katayoun Donnelly*

Katayoun Donnelly
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO 80238
Telephone: (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Defendant*

EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

---

## SCHEDULING ORDER

---

## I.  DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

A.  Date of Conference: **December 1, 2021**

B.  **Counsel for Plaintiff:**

Clarissa M. Collier
Wheeler Trigg O'Donnell LLP
370 17 Street, Suite 4500
Denver, CO 80202
(303) 244-1800
collier@wtotrial.com

C.  **Counsel for Defendant:**

Katayoun Azizpour Donnelly
Azizpour Donnelly LLC
2373 Central Park Blvd., Suite 100
(720) 675-8584
Katy@kdonnellylaw.com

## II.     STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

## III.    STATEMENT OF CLAIMS AND DEFENSES

### A.     Plaintiff's Claims

This case concerns certain false and damaging statements made by Defendant about
Plaintiff that have caused her significant emotional distress and opened her up to potential
criminal prosecution. Plaintiff and Defendant have a long history starting as two peers in junior
high school in China and evolving into a romantic relationship. While the couple was dating, in
May 2013, a mutual acquaintance of the parties sexually assaulted Plaintiff while she was still
living in China. Plaintiff told Defendant about the assault and reported her attacker to the
Chinese authorities. Plaintiff's attacker was arrested by Chinese authorities and referred for
prosecution.

After the assault, Plaintiff came to the United States to live with Defendant. During their
time living together, Plaintiff lost her passport. She reported the lost passport to the Aurora
Police Department, which is what the U.S. Department of State—Bureau of Consular
recommends passport holders do in that situation. Plaintiff later found her passport and did not
pursue further remedies or investigation through the Aurora Police Department.

Eventually, Plaintiff and Defendant ended their relationship. After ending the
relationship, and in 2020, Plaintiff learned through another lawsuit that Defendant had made
several false and damaging statements about her. First, she learned that Defendant had stated that
Plaintiff filed a false police report for her lost passport. In this statement, Defendant also claimed
that Plaintiff was issued a refund from the travel insurance company for half the ticket price

2

based on Plaintiff filing the false police report. In other words, Defendant accused Plaintiff of making a false police report and committing insurance fraud. Second, she learned that Defendant stated that Plaintiff falsely accused her attacker in China of sexual assault. Thus, again, Defendant is claiming that Plaintiff made a false police report. These statements have caused Plaintiff emotional injuries and opened her up to criminal prosecution. Based on these statements, Plaintiff asserts four claims for relief:

1.  **First Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Filing a False Police and Committing Insurance Fraud in Relation to Plaintiff's Lost Passport.

2.  **Second Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Falsely Accusing Her Chinese Attacker of Sexual Assault

3.  **Third Claim**: Intentional Infliction of Emotional Distress/Outrageous Conduct

4.  **Fourth Claim**: Unreasonable Disclosure of Private Facts

B.  **Defendant's Defenses**

Mr. Wang categorically denies that he has committed any tortious act. To the contrary, it is he who has been victimized by Ms. Luo's conduct both prior to, and throughout, this frivolous and vexatious lawsuit. Plaintiff's abuse of the judicial system has been the subject of numerous sanctions, yet she persists in continuing that pattern.

Mr. Wang will pursue all defenses available to him. *See* briefings in Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym. In addition, he will seek the entry of an order requiring both the Plaintiff and her counsel to reimburse him for having to defend this action.

3

## IV.   UNDISPUTED FACTS

The following facts are undisputed:

A.   Plaintiff and Defendant attended middle school together in China.

B.   In 2013, the Plaintiff reported to the Aurora Police Department that her passport had been lost or stolen.

## V.   COMPUTATION OF DAMAGES

**Plaintiff:** Plaintiff seeks nominal, compensatory, and special damages to the fullest

extent permitted by the law, as well as reasonable attorneys' fees and costs. Plaintiff seeks

compensatory damages for her emotional injuries. At this time, she does not seek lost past or

future wages. She reserves the right to seek punitive damages.

**Defendant:** Defendant seeks attorney fees and costs, jointly and severally, against

Plaintiff and her counsel.

## VI.   REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

A.   Rule 26(f) meeting was held on: November 17, 2021

B.   Names of each participant and party he/she represents:

Counsel for Plaintiff, Clarissa Collier and counsel for Defendant, Katayoun Donnelly

participated.

C.   Statement as to when Rule 26(a)(1) disclosure will be made:

December 1, 2021 per Fed. R. Civ. P. 26(a)(1)(C).

D.   Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1)

Not applicable.

E.   Statement concerning any agreements to conduct informal discovery.

4

None

F.     Statement concerning any other agreements or procedures to reduce discovery and

other litigation costs, including the use of a unified exhibit number system.

The parties agree to take all reasonable steps to reduce discovery and reduce costs to the

extent feasible. Accordingly, considering Plaintiff's litigation history, *see* Mr. Wang's Motions

to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to

Proceed Under Pseudonym and his replies in support of those motions, Defendant, at the

appropriate time, will be filing a motion to stay all discovery pending the Court's ruling on his

motion to dismiss.

G.     Statement as to whether the parties anticipate that their claims or defenses will

involve extensive electronically stored information, or that a substantial amount of disclosure or

discovery will involve information or records maintained in electronic form.

Plaintiff anticipates that her claims or defenses will involve discovery of electronically

stored information, including, but not limited to, social media information (including posts,

messages, chats), email, and text messages. To the extent that Plaintiff has any electronically

stored information subject to discovery in this case in her possession or control, Plaintiff will

take steps necessary to preserve that information.

Defendant anticipates the same.

H.     Statement summarizing the parties' discussions regarding the possibilities for

promptly settling or resolving the case.

There is little possibility of settlement.

5

**VII.   CONSENT**

All parties do not consent to the exercise of jurisdiction of a magistrate judge.

**VIII.   DISCOVERY LIMITATIONS**

A.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

No modifications. The presumptions of 10 depositions per side and 25 interrogatories per party shall apply.

B.      Limitations which any party proposes on the length of depositions.

None. The presumption of 1 day for 7 hours shall apply.

C.      Limitations which any party proposes on the number of requests for production and/or requests for admissions.

The parties agree to limit the number of requests for production and requests for admission to no more than 25 each per party.

D.      Other Planning or Discovery Orders

Plaintiff anticipates the need for a protective order allowing for designation of certain records as Confidential; such records may include documents such as Plaintiff's medical records and potentially financial records. Plaintiff will endeavor to provide the Court with a Joint Motion and proposed Protective Order regarding the same.

Considering Plaintiff's litigation history, *see* Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym and his replies in support of those motions, at the appropriate time, Defendant will be filing a motion to stay discovery pending the Court's ruling on his motion to dismiss.

6

Before filing a motion for an order relating to a discovery dispute, the movant must request a conference with the Court by submitting an email, copied to all parties, to hegarty_chambers@cod.uscourts.gov. *See* Fed. R. Civ. P. 16, cmt. 2015 Amend. The Court will determine at the conference whether to grant the movant leave to file the motion.

## IX. CASE PLAN AND SCHEDULE

A.  Deadline for Joinder of Parties and Amendment of Pleadings: January 15, 2022.

B.  Discovery Cut-Off: **August 1, 2022**

C.  Dispositive Motion Deadline**: September 16, 2022**

D.  Expert Witness Disclosure:

    1.  The parties shall identify anticipated fields of expert testimony, if any:

        a.  Plaintiff anticipates calling one expert to opine on Plaintiff's damages and the effects of disseminating false information.

        b.  Defendant anticipates calling an expert to opine on the impact of vexatious litigation.

    2.  Limitations which the parties propose on the use or number of expert witnesses: The parties will each be limited to 2 experts.

    3.  The parties shall designate all experts and provide opposing counsel and any pro se parties with all information required under Fed. R. Civ. P. 26(a)(2) on or before **April 16, 2022.**

    4.  The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **May 31, 2022.**

E.      Identification of Persons to be Deposed:

| Name of Deponent | | Expected Length of Deposition |
| --- | --- | --- |
| Xingfei Luo | | TBD |
| Paul Wang | | TBD |
| ███████████ | | TBD |
| ████████ | | TBD |
| Chen Guochang | | TBD |
| Amanda G. Papac | | TBD |

## X.      DATES FOR FURTHER CONFERENCES

None.

## XI.      OTHER SCHEDULING MATTERS

A.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: Plaintiff does not agree that all discovery in this case should be stayed, as Defendant maintains is the appropriate course, pending the resolution of the Defendant's motion to dismiss with prejudice.

B.      Anticipated length of trial and whether trial is to the court or jury: The parties are agreeable to a 4-day jury trial.

C.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Avenue, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2505; or the U.S.

8

Courthouse/Federal Building, La Plata County Courthouse, 1060 E. 2nd Avenue, Suite 150,

Durango, Colorado 81301.

Not applicable.

## XII.   NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's

client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial

Procedures or Practice Standards established by the judicial officer presiding over the trial of this

case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information

must be reported and filed with the Court pursuant to the applicable local rule.

## XIII.   AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at this 1st day of December, 2021

BY THE COURT

S/Michael E. Hegarty
United States Magistrate Judge

APPROVED ON NOVEMBER 18, 2021

*s/ Clarissa M. Collier*
Clarissa M. Collier
David Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:   collier@wtotrial.com
          schaller@wtotrial.com

*Attorneys for Plaintiff*


*s/Katayoun Donnelly*
Katayoun Donnelly
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO 80238
Telephone: (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Defendant*

EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

### REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR IMPOSITION OF SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AGAINST PLAINTIFF AND HER COUNSEL

Burying one's head in the sand does not provide a cognizable exemption to the non-delegable duty to investigate under Federal Rule of Civil Procedure 11.

**Ms. Luo's Counsel Violated Rule 11 and More**

Ms. Luo and Mr. Wang were *pro se* litigants. The Court appointed *pro bono* counsel for Ms. Luo. Mr. Wang retained counsel. Counsel for the parties entered their appearances within days of each other. Acknowledging that both counsel needed time to prepare and to avoid imposing on Mr. Wang (the only party paying for legal services) the additional cost of briefing motions to dismiss the First Amended Complaint and opposition to filing a second amended complaint, Mr. Wang did not object to allowing Ms. Luo to amend her complaint for the second time. The Court granted this request and set the deadline for Plaintiff to file her second amended complaint. *See* Exhibit 1 [Tr. Apr. 8, 2021], at 11-12.

1

Ms. Luo's counsel, however, before filing the second amended complaint or providing a draft of it to Mr. Wang's counsel, requested that Mr. Wang's counsel provide grounds for dismissal of Ms. Luo's complaint. Resp. Rule 11 Mot. (hereinafter "Resp."), Exh 2. Considering that, by then, the Court had already ruled that Ms. Luo could file a second amended complaint, Mr. Wang's counsel explained that she would be happy to confer and discuss the infirmities of the second amended complaint after she was provided a copy—it would not be possible to state grounds for dismissal before seeing the complaint—and before filing a motion to dismiss. *Id.* This was consistent with the practice standards of the judges of this court. Federal Rule of Civil Procedure 12 does not require conferral before filing a motion to dismiss. Judge Jackson's relatively new practice standards (applicable to cases filed after December 1, 2019) state: "***Before filing a motion to dismiss***, the parties *should* meet and confer in a good faith, substantive, and meaningful way." Hon. R. Brooke Jackson, Practice Standards, at 1 (emphasis added). As such, contrary to Ms. Luo's counsel's assertions, Resp. at 3, neither the federal rules of civil procedure nor the practice standards in this district put a burden on defense counsel to, in violation of their duties to their clients, assist plaintiffs' counsel in drafting their complaint and curing deficiencies before even a draft of the amended complaint is provided. Ms. Luo's counsel's court-appointed status does not create an exception.

Ms. Luo's counsel also contends that Judge Jackson considered Mr. Wang's argument "a waste of time." Resp. at 4, 7. They, however, fail to provide the context for this remark. The Second Amended Complaint did not include the actual alleged statements made by Mr. Wang. (It only generally described statements Ms. Luo allegedly received in the course of the *Weamer* litigation. Sec. Am. Compl., ¶¶ 47-48, 52-56, 62.) It did, however, specifically state that "***Defendant only made these statements . . . to help another party in another unrelated civil***

2

*lawsuit*." *Id.*, ¶ 56 (emphasis added). Based on this admission, Mr. Wang asserted the doctrine of

absolute litigation privilege. ECF 71. In her response letter regarding the motion to dismiss, ECF

75, Ms. Luo stated for the first time that her allegations were not limited to the statements made

in the course of the *Weamer* litigation but will include statements Mr. Wang allegedly made to

the public within the statute of limitations and not in connection with any litigation. *Id.*, at 3.

Based on these specific representations, Judge Jackson concluded that *if* Ms. Luo in fact has such

evidence then addressing the motion to dismiss *would* be a waste of time. He therefore

specifically directed Ms. Luo's counsel to "file one more amended complaint that takes into

account *defendant's issues* and pleads only what she believes she *has evidence to prove*." ECF

76 (emphasis added). In other words, before filing the Third Amended Complaint, Ms. Luo's

counsel received specific direction from the Court to plead only those claims she "has evidence

to prove"; i.e., to plead with requisite specificity the precise statements allegedly made by Mr.

Wang to the public unrelated to his role as a potential witness.

Ms. Luo sent Mr. Wang a draft of the Third Amended Complaint. Mr. Wang brought to

her counsel's attention that the draft did not address the above-mentioned concerns, Rule 11 Mot.

(hereinafter "Mot."), Exh. 3, and asked counsel to provide the evidence that could support the

claims. *Id*. Ms. Luo's counsel refused and asserted that they had no obligation to produce the

evidence until initial disclosures. *Id*. They then filed the Third Amended Complaint, without, as

the Court required, taking into account the legal issues that had been raised in Mr. Wang's letter

setting forth the bases for a motion to dismiss and the email correspondence between counsel. *Id*.

Mr. Wang's briefings of the motions to Dismiss the Third Amended Complaint

(hereinafter "Motion to Dismiss"), ECF 92, 106, and Reconsideration of the November 10, 2020

Order Allowing Plaintiff to Proceed Under Pseudonym (hereinafter "Motion for

3

Reconsideration"), ECF 101, 109, further highlighted the lack of factual and legal support for the claims and explained why Ms. Luo's counsel could not reasonably rely on her statements to state a claim. Mr. Wang then provided the requisite notice of his intent to file a Rule 11 sanctions motion, which allowed Ms. Luo's counsel adequate time to withdraw the Third Amended Complaint.[1]

When Ms. Luo's counsel finally produced the documents that form the basis for the Third Amended Complaint, on December 2, 2021, those documents confirmed that (1) the online quoted statement in ¶ 62 is in fact from https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments—a link that Ms. Luo's counsel had asked the Court to strike, and on its face shows that it **was published in 2013 by Morgann Paraskevas** and (2) there is no representation from anyone in the *Weamer* or ██████ litigations that the quoted statements in ¶ 52 and ¶ 62 were Mr. Wang's statements.

The following day, Mr. Wang specifically asked Ms. Luo's counsel to provide the URLs for the statements from Mr. Wang that they claimed he had published to the public, Third. Am. Compl. ¶¶ 51, 55, 62, 103 ("***His statements*** are also publicly accessible online." (emphasis added). Mot. Exh. 1. Ms. Luo's counsel responded: "My office ***produced the document you are referencing in the same form that it was provided to us*** and ***I did not retrieve the document from the internet***. So your request for a 'link' is puzzling, especially in light of your knowledge of the bases for my client's claim." Mot. Exh. 1 (emphasis added). In other words, counsel

---

[1] Ms. Luo's counsel claim that Mr. Wang represented to this court that he served a "copy" of the Rule 11 motion on November 5, 2021. This is incorrect. Mr. Wang's motion specifically uses the term "draft" not "copy" because Mr. Wang explained his December 3 efforts in the motion. A redline comparison of the draft and the filed motion is attached, which illustrates that the only substantive changes are on pages 4 and 8 explaining the events of December 3. *See* Exhibit 2 (moving a part of footnote 3 to the text on page 7-8). Mr. Wang would withdraw and refile the Rule 11 motion but Ms. Luo's counsel have specifically waived any argument regarding adequacy of notice and opportunity to correct and have requested that the Court reach the merits of the motion. Resp. fn 4.

acknowledge that they had not themselves even attempted to access the document online. And when asked to supply the URL—the only way to publicly access an online document—counsel expressed puzzlement! This conduct, and admission of it, demonstrates conclusively that Plaintiff's counsel have failed to comply with their Rule 11 duties of independent factual investigation and justifies imposing appropriate sanctions for the severe consequences of that violation for Mr. Wang.

First, Judge Jackson allowed filing a third amended complaint based on Ms. Luo's counsel's representation that she was in possession of actual documentary evidence to support the claim that "His [Mr. Wang's] statements are also publicly accessible online." However, Ms. Lou's counsel admit that before filing the third amended complaint they did not investigate whether the statements at issue were Mr. Wang's and actually publicly accessible online—not even a simple Google search with three or four words from the first page of the document, *e.g.*, Xingfei Luo, Chinese, and scam, which could have given them the URL for the document, so they could confirm that the quoted statement was in fact published online *and by whom* (i.e., not Mr. Wang) before pleading that it was Mr. Wang's statement. *See, e.g., Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir.2006) (stating that an attorney has a duty "to conduct a reasonable inquiry into the facts or law before filing the lawsuit" (internal quotations omitted)). These obligations are "personal [and] nondelegable," *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1989). This violation is particularly significant because Ms. Luo does not question the trustworthiness of the date this statement was published. As such, on its face, any defamation claim based on that 2013 publication is unquestionably time-barred.[2] *See, e.g,*

---

[2] When the tort claims are based on online publications, the date of the publication triggers the "should have known" requirement for the purpose of the discovery rule. *See* Mot. Dismiss at 10, Reply 4-5 (citing *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("In the internet context, the statute of limitations begins to run when the allegedly infringing material is first posted on the internet.") (citing *Canatella v. Van De Kamp*, 486 F.3d

*White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990) (finding assertion of a claim

with a clear, insurmountable procedural or jurisdictional defect sanctionable conduct).

Second, contrary to Ms. Luo's counsel's representation, Resp. fn 9, they did not produce

the documents in the same form that they were provided to them. Ms. Luo did *not* produce the

complete version of the document produced in *Weamer*, which included the page she created

about Mr. Wang, to which the quote in ¶ 52 responded, nor did she produce the document

authored by Mr. Morgann Paraskevas, which contained the quote in ¶ 62. Similarly, she did *not*

produce the initial version of Ms. Papac's declaration, which included the quoted statements in ¶

62 as Exhibit L. Compare Exhibit 3 (Ms. Luo's related initial disclosures) [3] with Exhibit 4

██████████ ., attaching *Weamer* production as Exhs. A and B) and Exhibit 5 (Papac Decl.,

attaching ██████ production as Exh. A). And, contrary to Ms. Luo's counsel's representation,

the documents produced in both *Weamer* and ██████, which Ms. Luo did *not* include in her

initial disclosures, *included the URLs for the quoted statements. See* Exh. 4 (WEAMER 0003-

0009, Exh 5 at 1, ¶ 4.

Third, these omissions demonstrate that Ms. Luo, who has possession and control of the

documents necessary to establish whether her claim based on the quoted statement in ¶ 52 is

time-barred, failed to disclose this information to the Court and in her initial disclosures. She

could tell the Court when she created the page and when the comment to her defamatory post

about Mr. Wang, quoted statement in ¶ 52, was published. *See* Exh. 4, at 4-5 (WEAMER 0003-

---

1128, 1134–36 (9th Cir. 2007)); *Bloom v. Goodyear Tire & Rubber Co.*, 2006 WL 2331135at *7 (D. Colo. Aug. 10, 2006); *Hoai Thanh v. Ngo*, No. PJM 14-448, 2016 WL 3958584, at *10–12 (D. Md. July 22, 2016), *aff'd sub nom. Hoai Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017); *Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010); *Deatley v. Allard*, 2015 WL 134271, at *5; *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at *4). Neither in her response to the motion to dismiss nor here does Ms. Luo provide any authority contrary to these holdings, including this Court's holding in *Bloom*.

[3] Mr. Wang objects to Ms. Luo's designation of these documents as confidential. He files Exhibits 3 and 5 under Level 1 restriction pending the Court's decision on whether they should remain restricted.

0004). But she has not. And she has failed to carry her burden. Where, as here, the defendant timely raises a statute-of-limitations defense, the plaintiff bears the burden of establishing compliance with the statute of limitations by presenting evidence that the tort was committed within the limitations period or by establishing an exception to the limitations period. *United States v. DeLia*, 906 F.3d 1212, 1217 (10th Cir. 2018); *see also Hansen v. Lederman*, 759 P.2d 810 (Colo. App. 1988). Ms. Luo has failed to establish that the response to her post was published within the one-year statute of limitations.

Fourth, in light of Ms. Luo's counsel's representation that their client's claims are based on documents obtained from the *Weamer* and ▓▓▓▓ litigations, the bare minimum for any reasonable investigation to satisfy their Rule 11 obligation would have been to contact the counsel who produced those documents. They did not contact ▓▓▓▓ or Ms. Papac, *See* Exh. 4 at 1; Exh. 5 at 1, both of whom came across these statements in the course of their own independent investigation about Ms. Luo, *see* Exh. 4 at 1; Exh. 5 at 6-7 (pdf)—which Ms. Luo's counsel admit they did not do. Furthermore, Mr. Wang's name was not mentioned in Ms. Papac's declaration, on which Ms. Luo relied. *See* Exh. 5, Exh. A. And in neither litigation was there any allegation that the quoted statements in ¶ 52 and ¶ 62 were authored by Mr. Wang. *See* Exh. 4, ¶ 3; Exh. 5, ¶ 3. Mr. Wang's name is mentioned in the *Weamer* litigation only in discovery, in relation to the fact that he was listed as a witness in that case. *See* Exh. 4, ¶¶ 3-4[4] Therefore, even if Rule 11 would have allowed Ms. Luo's counsel to delegate their duty to

---

[4] Ms. Luo and her counsel still seem to insist that "they"—not the counsel for the opposing party—are in charge of deciding who is a witness. *See* Resp. at 12-3; *id.* Exh. 9, ¶ 9. It is not surprising that they cannot provide any legal authority for this argument. *But see Marley v. Wright*, 137 F.R.D. 359, 363 (W.D. Okla. 1991) (civil rights suit against judges was sanctionable because of well-settled precedent of absolute judicial immunity), *aff'd without o*p., 968 F.2d 20 (10th Cir. 1992).

7

investigate to other counsel—which it does not[5]—there was nothing here on which they could rely.

Fifth, long after being put on notice of Ms. Luo's online publication of the statements at issue, Ms. Luo's counsel submitted a declaration from Ms. Luo that re-represents to this Court that "I did not know that Defendant Paul Wang had made any false statements regarding the sexual assault or the police report I filed in relation to my lost passport until 2020." Resp. Exh. 9, ¶¶ 7-8. She also re-asserted that she knew Mr. Wang was the author of the "blog" because "he was the only person who knew about Plaintiff's rape allegations against Mr. Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket." *Id.*, at ¶¶ 3-4; Third Am. Compl., ¶ 63.

Ms. Luo's counsel submitted this affidavit, even though, when confronted with the facts that Ms. Luo herself in 2013 published a letter in her page, https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/ from Mr. Morgann Paraskevas, the author of the "blog", i.e., statements at issue in ¶ 62, which were published at https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments, Ms. Luo *did not deny* that

- she is the author of https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/; https://cserinusa.wordpress.com/, or

---

[5]

> Rule 11 imposes the obligation, *at the time of certification*, of personal knowledge that the paper is well-grounded in fact—not the opportunity to gamble on the certification of some other lawyer that *at the time he or she signed the pleading, it was well-grounded in facts known to that lawyer*.

*In re Marathon Home Loans Fed. Sec. Litig.*, 995 F.2d 232 (9th Cir. 1993) (emphasis added); *see also White*, 908 F.2d at 682.

- a side-by-side comparison of https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments and https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/ reveals that the author of https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments, morgann070 or anonymous123177, is Morgann Paraskevas, whose ID, morgann070, is also included in Ms. Luo's 2013 post about him, https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/; https://cserinusa.wordpress.com/. *See* Exhibit 6 (comparing Ms. Luo's and Mr. Paraskevas's 2013 online publications). It is important to note that Ms. Luo knows Mr. Paraskevas very well and that in the case in which she was criminally convicted, she moved to suppress the evidence of her relationship with Mr. Paraskevas. *See* Exhibit 7 at 18 ("7/27/21: "Motion by Defense made to exclude any and all past interactions or relationship between Ms. Luo and one Morgan [sic] Paraskevas."

Ms. Luo's counsel's only response is to incorrectly state that Mr. Paraskevas' letter which Ms. Luo posted in 2013, https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/, does not mention her alleged rape in China. Resp. at 11. As Ms. Luo and her counsel are aware, that letter, like his post, https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments, included facts about both statements. In addition, minimal investigation (such as opening Ms. Luo's page on a LG 4K IPS monitor and using the FPS gaming setting, which Mr. Wang is prepared to demonstrate in court) allows anyone to read the text beneath the poorly redacted letter, which specifically mentions the alleged rape. Exhibit 8 (Mr. Paraskevas' 2013 letter to Ms. Luo [which included both statements] in the 2013 post on Ms. Luo's page).

9

The repeated knowing misrepresentations to this Court by Ms. Luo and her counsel

regarding the timing of her discovery of the statements at issue violate Rule 11, especially

considering Ms. Luo's counsel's actual knowledge about Ms. Luo's conduct, as summarized in

the briefing of the Motion for Reconsideration. Applying the objectively reasonable standard,

under these circumstances no reasonable counsel would rely on statements from a client with

Ms. Luo's history, without independent investigation. *See Battles v. City of Ft. Myers*, 127 F.3d

1298, 1300 (11th Cir. 1997) (affirming sanctions on attorney where district court found that the

attorney did not make reasonable inquiry prior to trial to ensure that he could procure evidence to

support his client's positions); *Lloyd v. Schlag*, 884 F.2d 409, 412-13 (9th Cir. 1989) (sanctions

imposed on counsel who relied on client's mistaken assurance that all necessary steps had been

taken to record and protect copyright); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ.

10175 (JSM), 2002 U.S. Dist. LEXIS 491 at *2 (S.D.N.Y. Jan. 16, 2002) (sanctioning attorneys

who "simply closed their eyes to the overwhelming evidence that statements in [their] client's

affidavit were not true"); *Schiebel Elektronische Geraete Gmbh v. Polestar Tech., Inc.*, No. 97-

10231, 1998 U.S. Dist. LEXIS 17998, at *5 (D. Mass. Aug. 3, 1998) (despite earlier dealings

with client, "the very nature of the assurances [the lawyer] was receiving . . . created a

compelling need for him to press for more supporting information from his own client"); *Bayan*

*El Dada v. Oil Mart Corp.*, No. 94 C 3829, 1995 U.S. Dist. LEXIS 13740, at *2-3 (N.D. Ill.

Sept. 19, 1995) (sanctioning attorney under Rule 11 and 28 U.S.C. § 1927 where attorney

"continued to press ahead with [the] lawsuit well after a reasonable attorney should have become

suspicious of his client's assertions").

Other courts have awarded fees and costs to the litigants, as an appropriate sanction under

Rule 11, for much less severe violations. *See, e.g., Worrell v. Houston Can! Acad.*, 287 F. App'x

10

320, 326 (5th Cir. 2008) (affirming district court's grant of $6,000 for twelve hours of work at a rate of $500.00 per hour against plaintiff's law firm to have improperly named defendant dismissed); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 348–49 (N.D. Iowa 2007); *Marceaux v. Lafayette Consol. Gov't*, 2014 U.S. Dist. LEXIS 50649, 32–33 (W.D. La. Jan. 9, 2014) (imposing $2,500 award for attorney's fees for hours spent writing briefs and opinions as well as ten hours spent in hearings dealing with erroneous allegations raised in the pleadings); *TXCAT v. Phoenix Group Metals*, LLC, 2010 U.S. Dist. LEXIS 132614, 2010 WL 5186824 (S.D. Tex. Dec. 14, 2010) (awarding fees and expenses incurred in Defendant's preparation and filing of their reply and the motions for sanctions). Mr. Wang's respectfully requests that the Court do the same.

## Conclusion

Sanctions should be sufficient to deter repetition of similar conduct. See Fed. .R. Civ. .P. 11(c)(4). Mr. Wang respectfully requests that this Court hold Ms. Luo and her counsel jointly and severally liable for all costs and reasonable attorney's fees he has been, and will be, forced to incur.

Respectfully submitted this 23rd day of December 2021.

*/s/ Katayoun A. Donnelly*
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO 80238
Tel. (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Paul Wang*

11

EXHIBIT 10

**Affidavit of** █████████

1. My name is ██████████. I am an attorney in the State of California and I represented Mr. ████████████████████████████ e No. ██████ (███████████ █████████████████, the case referenced in the Second Amended Complaint in *Doe v. Wang*, Case No. 20-cv-02765-RMR-MEH (D. Colo).

2. I came across Paul Wang's name as a potential witness when I was doing research on other lawsuits and claims published by Ms. Doe in which she claimed emotional distress due to alleged █████████████ in furtherance of my investigations of her claims against my client. During that research, I found information that she apparently posted about Mr. Wang.

3. The only times and places in which I recollect Mr. Wang's name has been mentioned in ████████████ Case No. ████████ (█████████ █████████ have been in discovery requests, responses, and related discovery motions. Attached hereto as <u>Exhibit A</u> (WEAMER 0002-0004) is a copy of the post about Mr. Wang that I found and produced in Mr. Weamer's lawsuit as part of Mr. Weamer's discovery responses. Also attached, as <u>Exhibit B</u> are copies of the posts involving Morgann Paraskevas that I found and produced as part of Mr. Weamer's document production in response to discovery, in ████████ (WEAMER 0005-0009).

4. On ████████████, the case was dismissed with prejudice as the result of terminating sanctions imposed for Ms. Doe's refusal to comply with her discovery obligations. Mr. Wang remained on my witness list as a potential witness for trial.

5. To this date, December 10, 2021, I have not been contacted by Ms. Doe's counsel in Doe v. Wang, Case No. 20-cv-02765-RMR-MEH (D. Colo).


FURTHER AFFIANT SAYETH NAUGHT


       I declare under penalty of perjury under the law of the State of California that the foregoing affidavit is true and correct.



Page **1** of **1**

# EXHIBIT A

# pppwang ~ A fine WordPress.com site

IMAGE

# Paul Ming Wang

## 06 Tuesday May 2014

POSTED BY PPPWANG IN UNCATEGORIZED

≈ LEAVE A COMMENT

| | | |
|---|---|---|
| **katiemass** | Sep 22, 2011 | ☐ |
| **ClinkPourSwizzle {Lizabeth}** | Sep 14, 2011 | ☐ |
| **kara02535** | Sep 8, 2011 | ☐ |
| **meindenver22** | Sep 8, 2011 | ☐ |
| **victa7778** | Sep 7, 2011 | ☐ |
| **RunsInTheSun** | Sep 2, 2011 | ☐ |
| **sapientsaphead** | Aug 31, 2011 | ☐ |
| **AmazingGrace66** | Aug 30, 2011 | ☐ |
| **heythereMN** | Aug 11, 2011 | ☐ |
| **mollybatchett** | Aug 27, 2011 | ☐ |
| **hydy425** | Aug 23, 2011 | ☐ |
| **amypants15** | Aug 21, 2011 | ☐ |
| **Mojavejo** | Aug 20, 2011 | ☐ |
| **Nutmeg_taco** | Aug 20, 2011 | ☐ |

Paul Wang cheats a lot. He has a profile on okcupid named zerogas in order to fufill his gross purpose. He's a complete pig in a suit.

Create a free website or blog at WordPress.com.   Do Not Sell My Personal Information

WEAMER 0002

≡ **CheaterLand** Report Liars and Cheaters    f t

## Cheater Search

Search ...    Q



## Paul Wang, Highlands Ranch, CO

📅  💬 1  📁 Colorado

lands-ranch-co.html

Anonymous

Paul Wang, aka Paul Ming Wang, born in [redacted], originally from China. [redacted]

While his girlfriend was living with him he went on dating sites looking for new dates. At the time he worked at DISH Network as a software engineer.

His Add:

[redacted],
Highlands Ranch, CO 80129
11505 E Virginia Pl.
Aurora, CO 80012

🏷 co, Highlands Ranch, Paul Wang

**Author:** Anonymous

← Amanda Harrison, Nevada

Greg from Madison, Wisconsin likes Asian hookers and

### Cheater Search

Search ...    Q

### Cheaters By Location

Select Category    ⌄

### Random Cheaters

Julian Headley
Carol Ann Erwin, Vision Works
Philie Blunt / Phil spiess, Missouri
Cambridge, Ontario, Canada, real
estate broker Steve Bailey strikes
deal to avoid discipline hearing
'PECO has failed the public' says
realtor who was set to testify
against Cambridge's Steve Bailey
Nick "Biggie Biegler

### Recent Comments

**Babe** on Chuck Golson Trussville
& Selma Alabama

**Babe** on Chuck Golson Trussville
& Selma Alabama
**Authorized Personnel Only** on
Chuck Golson Trussville & Selma
Alabama
**Barry Manalow** on Chuck Golson
Trussville & Selma Alabama
**Nichole** on Kenneth Michael Hall
Jr. aka Mike Hall/Mike Griffith
**Anonymous** on Chuck Golson
Trussville & Selma Alabama

WEAMER 0003

transvestism →

# 1 thought on "Paul Wang, Highlands Ranch, CO"

**Paul Wang**

Xingfei "Ophelia" Luo is my classmate from middle school. We met for the first time in almost 20 years in a class reunion in China in October 2012, and started a long distance relationship. In the summer of 2013, I invited her to come visit me in the states. After living with her for a while, I started to find out more and more about her. She had hidden much from me, and her true personality was shown to both vindictive and vile. At the time we were supposed to be dating, she would constantly flirt with other men online. In August she left my place to go to New York to "visit her friends", who turned out to be another man she been dating online. I decided to break off the relationship with her. After about a month or two, she kept calling me to beg me to take her back. Being the nice person, I said okay, and took her back in. However, things were never back to normal. And our relationship was extremely strained to say the least. I originally purchased the round trip non refundable plane tickets for her to go back to China in early October, but she decided to stay in the US by any means. I don't have a problem with that, but she demanded that buy her a new ticket for departure after Xmas. I told her to buy her own ticket back. She later filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price. She used that refund to purchase a ticket to California. On the way to the airport, I once again broke up with her. This time I told her there's no chance we are getting back together.

After she went to California, she kept emailing and texting me, showing pictures of convertible she was riding in, or guns that her new boyfriend owns etc. I blocked her number and repeatedly told her in email response that I don't want to hear from her again. I don't want to have anything to do with such a crazy person.

A week later, I was at work when I was called into the HR department to explain some mysterious emails. Apparently someone created an email with my full name @163.net which is a free email service in China, and had been sending emails in my name to everyone I know, including my parents, friends, coworkers and my supervisor who is a female. In some of the emails was an attachedment of a photo that I immediately recognized as one of my most private pictures. This was a scanned Polaroid picture of a celebration of my 21st birthday in a gentleman's club in Dallas, Texas. It depicts me holding a naked porn star in a very compromised position, and the picture was signed by the porn star. I have never shown this picture to anyone. It had been kept in my private collection for sentimental reasons. I was in shocked but soon realized what happened and who sent those emails. It was Ophelia, who is the only person with unlimited access to all my personal properties when living at my house. She had stolen my private property and try to use it to make me look like a pervert. Fortunately everyone who knows me understood that these emails came from someone else. She was trying to get me into trouble but my company HR department stands by me and blocked this email address.

I confronted her via instance messages on a Wechat group for our classmates, and she uploaded the same picture to show that she was the one sending those emails. That's when I blocked her on Wechat as well and that was the last time I had any contact with this vile woman.

I got married in 2015, and have a young daughter now. Just a couple of days ago, a co worker called me and told me that when he searched for my name in google this page came up. I don't want my daughter or any one who doesn't know me came to this page to see this fabricated accusation without having the full context of what really happened. The cheater was her, not me.

If you have any questions regarding anything in this letter, you can contact me at my cell above. I will try to get this page removed from everywhere if it is possible. If not possible at least I can tell my side of the story.

Thanks

Paul

# EXHIBIT B

# Xingfei Luo ~ Beware of this scammer.

IMAGE

# Xingfei Luo, or Olivia Luo.

*16 Monday Dec 2013*



POSTED BY ANONYMOUS123177 | FILED UNDER UNCATEGORIZED

≈ **LEAVE A COMMENT**

# XINGFEI LUO BETTER KNOWN AS OPHELIA LUO or OLIVIA LUO , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIST.

*16 Monday Dec 2013*

POSTED BY ANONYMOUS123177 IN UNCATEGORIZED

WEAMER 0006 COMMENTS

Case 1:20-cv-02765-RMR-MEH   Document 183   Filed 08/24/22   USDC Colorado   Page 129 of
231
5/19/2020                                    XingFei Luo | Beware of this scammer.

*" XingFei Luo born in December of 1977 is a chinese woman who is a scammer. After hiring a private investigator, I found out that I am not the only target of this person."*

*"She posted a blog defaming my good name and coincidence, got 2 calls in the following months from a so-called company to have the blog removed first for $10,000 and the second call for $4,000. She changes her name frequently from Ophelia Luo to Olivia Luo and she has made numerous victims. She post pictures or defamatory post and later someone contacts you to take them out for a fee. I have received several calls from other victims. "*



"

*"If you see or meet this person, be aware, she has already made false allegation of rape, false claims about other people as well, filed a frivolous police report in Colorado about losing her passport then ironically used that same passport at a San Francisco airport on December 2nd 2013."*

*"I have filed a police report about her stealing money from me as well."*

There are a lot of lawsuits in which she is involved. As of now, we cannot reveal yet all the information since the cases are pending.

Advertisements

WEAMER 0006

5/19/2020                                          11  Xingfei Luo

More                                                Create Blog   Sign In

Xingfei Luo

**MONDAY, NOVEMBER 12, 2018**

Xingfei Luo - victim of sexual harassment

Xingfei Luo, born in China, has tremendous and tracked financial experience in multiple industries. She is a huge fan of traveling and photography. She holds traditional values with great sense of ethics.

While Xingfei Luo was traveling alone in 2013 she met a man named Morgann Paraskevas in Rockville , MD. Morgann Paraskevas sent her invitation via couchsurfing as he wanted to host her when she's visiting DC. During her stay with Morgann Paraskevas he sexually harassed her and forced her to leave after she refused to show him her breast as his request. She left Morgann Paraskevas a negative review on couchsurfing and that's the beginning of her getting various threats from Morgann Paraskevas and his friends. In order to seek retaliation Morgann Paraskevas also spread false statement about her character.

For more about Morgann Paraskevas, search Morgann Paraskevas in Google.



**ABOUT ME**

**Xingfei Luo**

View my complete profile

**BLOG ARCHIVE**

▼ 2018 (1)

  ▼ November (1)

    Xingfei Luo - victim of sexual harassment

WEAMER 0007



WEAMER 0008

Xingfei Luo

Posted by Xingfei Luo at 8:45 AM

# Home

Subscribe to: Posts (Atom)

Picture Window theme. Powered by Blogger.

WEAMER 0009

EXHIBIT 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

     Plaintiff,

v.

PAUL WANG,

     Defendant.

## SUPPLEMENT TO REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR IMPOSITION OF SANCTIONS, PURSUANT TO  RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AGAINST PLAINTIFF AND HER COUNSEL

In her discovery responses, which were recently provided (subsequent to the filing of Defendant's Reply), Ms. Luo now admits that she *is* the author of the blog that published, in 2013, a letter containing the "defamatory" statements at issue in this case. Plaintiff's counsel, however, have failed to notify the Court of the untrue averments of the Third Amended Complaint and the knowingly false testimony contained in the affidavit of their client. Instead, they opposed Mr. Wang's motion to stay discovery pending the Court's ruling on his motion to dismiss and have knowingly continued to burden Mr. Wang with the costs of this vexatious litigation.

**Ms. Luo's counsel have continuously represented to this Court that *until 2020* Ms. Luo did not know about the two statements at issue in this case.**

The Third Amended Complaint (TAC) states: "Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the

1

Aurora Police Department," ¶ 55, and "prior to Defendant revealing this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff." ¶ 64.

The TAC claimed that: "In 2020, Plaintiff [first] learned through a separate lawsuit . . . that Defendant made several false and incredibly damaging statements against Plaintiff." ¶ 47. "First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport." ¶ 48. "Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault." ¶ 57. It also claimed that "*on January 4, 2021, Plaintiff received a blog post* through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, ... and filed a frivolous police report in Colorado about losing her passport." ¶ 62 (emphasis added).

Plaintiff's counsel continued to rely on these averments of fact in defending against Mr. Wang's motion seeking dismissal of Ms. Luo's claims and against his motion seeking sanctions under Rule 11 (hereinafter "Sanctions Motion"). Specifically, in their Response to the Motion to Dismiss, Plaintiff's counsel continued to assert that Ms. Luo's claims are not time barred and, in response to the Sanctions Motion, they insisted on the accuracy of these representations and even submitted a declaration from Ms. Luo, which stated that she *"did not know* that Defendant Paul Wang had made any false statements regarding the sexual assault or the police report I filed in relation to my lost passport *until 2020*." Resp. Exh. 9, ¶¶ 7-8 (emphasis added). Ms. Luo also asserted that she knew Mr. Wang was the author of the "blog" because "he was the only person who knew about Plaintiff's rape allegations against Mr. Chen and the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket." *Id.,* at ¶¶ 3-4; Third Am. Compl., ¶ 63.

They conclude: "Plaintiff *first 'discovered'* Defendant's statements regarding her sexual assault in 2020 and gained further support for her claim in 2021." Response to Sanctions Motion,

2

at 10 (filed Dec. 9, 2021) (emphasis added). "Plaintiff filed her original Complaint in 2020 and

TAC in 2021. Therefore, under the discovery rule, Plaintiff's Second Claim is not time barred."

*Id.* "Surely, *if Plaintiff were as vexatious of a litigant as Defendant makes her out to be and she*

*had learned of this statement in 2013, she would have filed suit then*." *Id.* (emphasis added).

> **There is no difference between Ms. Luo's conduct in this case and her conduct in multiple other cases in which she has appeared *pro se*. Ms. Luo's counsel have been advocating for similar frivolous claims of a recognized vexatious litigant who has now admitted that she has known about both statements at issue since 2013.**

In her response to Mr. Wang's discovery requests, Ms. Luo has now admitted that she is

indeed the author of https://cserinusa.wordpress.com, *see* **Exhibit A** (Relevant part of Ms. Luo's

discovery responses), Ms. Luo discovery response to Request for Admission No. 3. It was at that

website where Ms. Luo posted, *on December 17, 2013*, the letter from Mr. Morgann

Paraskevas, which included information about both statements at issue—statements that her

complaint claims no one but Mr. Wang knew about. *See* Exhibit 8 to Reply in Support of

Sanctions Motion. In fact, in this post she tells Mr. Paraskevas that she "exactly" knows how he

got this information:

IMAGE

# Let's see what a funny jerk did



Morgann Paraskevas, if you could take legal actions why didn't you do it in Sep? Why did you find out your money was stolen ten days after I left your place? Why could I come back home if you did file a police report? I didn't steal anything so bluffing didn't work for me. I already called police department 1st District Station (Rockville) 240-773-6070 and told them what happened. Why do you think you can bluff me just because you got my private information? I exactly know where you got it from. I look weak but not as weak as you thought. I have bunch friends in legal enforcement too.

**December 17, 2013**          Posted in **Uncategorized**
                              Leave a reply

https://cserinusa.wordpress.com (last visited May 20, 2022).

4

As demonstrated in Mr. Wang's Reply in support of the Sanctions Motion and Exhibit 8 attached thereto, at page 9, a part of what Ms. Luo had redacted was a statement about the "rape case in China".



Despite this and despite Ms. Luo's admission that she knew the source for Mr. Paraskevas' accusation that she had falsely reported her passport stolen or lost (Mr. Wang) in December 2013, however, her counsel have not alerted the Court to the material inaccuracy of the averments in the TAC and in their responses to the Motion to Dismiss and the Sanctions Motion. Nor have they moved to voluntarily dismiss Ms. Luo's quite obviously time-barred claims. Instead, they successfully opposed Mr. Wang's Motion to Stay Discovery and continue to burden Mr. Wang with the cost of this vexatious litigation.

In short, Plaintiffs' counsel have enabled, aided, and abetted the same kind of litigation

abuse by Ms. Luo that has resulted in her being sanctioned by several other courts. *See* Mr.

Wang's Motion for Reconsideration of the November 10, 2020 Order Allowing Plaintiff to

Proceed Under Pseudonym (hereinafter "Motion for Reconsideration") and Reply in its support,

ECF 101, 109.[1]

---

[1] The recent opinions of the Ninth Circuit further support this conclusion. In two separate decisions in the past ███████, that court admonished Ms. Luo for flagrant abuse of the judicial process. Both there and here Ms. Luo has attempted to hide her identity and prevent other litigants from accessing information relevant to her frivolous claims against multiple innocent defendants. On ██████████, the Ninth Circuit held:

> [Ms. Lou]. has filed similar cases in other courts involving different individuals and municipalities. Decl. of Erin R. Dunkerly at 13–14, ██████████████ et al., No. ████████████████████), ECF No. 5; *see, e.g.,* ██████████████ ██████████████████████); ██████████████ *the Cent. Dist. of Cal.,* ██████████████████████ In those other cases, as here, she proceeds either as ████████████████████████████████). While ██. makes it ████████████████████████████s, *we* ██████████ *"[f]lagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants*." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990).

██████████████████████████████████████); *id.,* n. 2 (declining Ms. Luo's request to redact or seal documents on appeal). Similarly, here, Ms. Luo's counsel have filed an objection to Magistrate Judge Hegarty's decision not to allow her to proceed under a pseudonym.

On ██████████, the Ninth Circuit referred another case to the District Court to allow it to determine whether Ms. Luo's "in forma pauperis status should continue for this appeal or whether the appeal is frivolous or taken in bad faith." **Exhibit B (**████████████████████ Cir.). On ██████████, the District Court determined: "***Plaintiff's action has no arguable basis in fact or law, and her in forma pauperis status is consequently revoked***." **Exhibit C (**████████████████, ████████████████████████), at 3. Mr. Wang will be filing a motion challenging Ms. Luo's entitlement to proceed *in forma pauepris* in this action, which, if granted, would require her present counsel to withdraw.

**Conclusion**

Based on the foregoing and for the reasons fully briefed in Mr. Wang's motions and reply briefs, the Court should grant Mr. Wang's Sanctions Motion, bringing this frivolous and vexatious litigation to an end, and order both Ms. Luo and her counsel, jointly, to make him whole for having been forced to defend it.

Respectfully submitted this 20th day of May 2022.

/s/ Katayoun A. Donnelly
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO 80238
Tel. (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Paul Wang*

7

EXHIBIT 12

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT



MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

███████,

Plaintiff - Appellant,

v.

████████████; et al.,

Defendants - Appellees.

D.C. No. ████████████
U.S. District Court for ██████
████████████

**REFERRAL NOTICE**

This matter is referred to the district court for the limited purpose of determining whether in forma pauperis status should continue for this appeal or whether the appeal is frivolous or taken in bad faith. *See* 28 U.S.C. § 1915(a)(3); *see also Hooker v. American Airlines,* 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of forma pauperis status is appropriate where district court finds the appeal to be frivolous).

If the district court elects to revoke in forma pauperis status, the district court is requested to notify this court and the parties of such determination within 21 days of the date of this referral. If the district court does not revoke in forma pauperis status, such status will continue automatically for this appeal pursuant to Fed. R. App. P. 24(a).

This referral shall not affect the briefing schedule previously established by this court.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Cyntharee K. Powells
Deputy Clerk
Ninth Circuit Rule 27-7

EXHIBIT 13



Page 1 of 3

1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7

8

9   ███████████                    Case ████████████

            Plaintiff,
10
                                    **ORDER REVOKING PLAINTIFF'S**
11      v.                          **IN FORMA PAUPERIS STATUS**

12  ████████████, et al.,

            Defendants.
13

14          In ██████ pending appeal, the Ninth Circuit made a limited referral back to this Court

15  to determine whether a prior grant of in forma pauperis status should continue, or whether the

16  appeal is frivolous or taken in bad faith.  Dkt. No. 65.

17          An indigent party who cannot afford the expense of pursuing an appeal may file a motion

18  for leave to proceed in forma pauperis.  Fed. R. App. P. 24(a); 28 U.S.C. § 1915(a)(1).  Pursuant

19  to Federal Rule of Appellate Procedure 24(a), "a party to a district-court action who desires to

20  appeal in forma pauperis must file a motion in the district court."  The party must attach an

21  affidavit that (1) shows in detail "the party's inability to pay or to give security for fees and costs,"

22  (2) "claims an entitlement to redress," and (3) "states the issues that the party intends to present on

23  appeal."  Fed. R. App. P. 24(a)(1).  But even if a party provides proof of indigence, "[a]n appeal

24  may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good

25  faith."  28 U.S.C. § 1915(a)(3).  An appeal is in "good faith" where it seeks review of any issue

26  that is "non-frivolous."  *Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002).  An

27  issue is "frivolous" if it has "no arguable basis in fact or law."  *See O'Loughlin v. Doe*, 920 F.2d

28  614, 617 (9th Cir. 1990).



United States District Court
Northern District of California



1    The appeal is frivolous.  Despite amending her complaint twice, pro se plaintiff ▮▮▮

2    was unable to state a ▮▮▮▮▮ against defendants the ▮▮▮▮▮

3    ▮▮▮▮▮; and individuals in the ▮▮▮▮▮

4    Department, ▮▮▮▮▮, and

5    ▮▮▮▮▮.  ▮▮▮▮▮

6    ▮▮▮▮▮

7    ▮▮▮▮▮

8    ▮▮▮▮▮

9    ▮▮▮▮▮

10    ▮▮▮▮▮

11    ▮▮▮▮▮

12    ▮▮▮▮▮

13    ▮▮▮▮▮, *Thornton v. City of*

14    *St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005), which is not an adequate basis for pleading an

15    ▮▮▮▮▮ claim.  ▮▮▮▮▮ theory is also deficient as a matter

16    of law where, unlike the circumstances in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000),

17    ▮▮▮▮▮

18    ▮▮▮▮▮.  *See Engquist v. Oregon Dept. of Agriculture*, 553 U.S.

19    591, 601-02 (2008) (citations omitted).

20    Without a viable 42 U.S.C. ▮▮▮, ▮▮s conspiracy claim under ▮▮▮ and the

21    municipal liability claims, ▮▮▮▮▮, are also not viable.  *See Olsen v. Idaho State*

22    *Board of Medicine*, 363 F.3d 916, 930 (9th Cir. 2004); *Nurre v. Whitehead*, 580 F.3d 1087, 1092

23    n.3 (9th Cir. 2009).  And with no federal claim left at this early stage of the case, it is appropriate

24    to decline supplemental jurisdiction over the state claims.  28 U.S.C. § 1367(c)(3); *Parra v.*

25    *PacifiCare of Arizona, Inc.*, 715 F.3d 1146, 1156 (9th Cir. 2013).

26    //

27    //

28    //

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff's action has ████████ ████████, and her in forma pauperis status is

2    consequently revoked.  The Clerk is requested to forward this order to the Ninth Circuit in Case

3    ████████

4        **IT IS SO ORDERED.**

5    Dated: ████████



United States District Judge

3

EXHIBIT 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

### RESPONSE TO PLAINTIFF'S MOTION TO STRIKE AND REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENT TO HIS MOTION FOR IMPOSITION OF SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AGAINST PLAINTIFF AND HER COUNSEL

Ms. Luo and her counsel are asking the Court to wipe from the record in this case the supplemental evidence of the pattern of ***"flagrant abuse of the judicial process"***, ▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬) (describing Ms. Luo's behavior in the slew of litigation she has brought against several defendants) (emphasis added).

### Ms. Luo and Her Counsel Cannot and Do Not Deny That They Have Made Inaccurate Material Representations of Fact to This Court

Ms. Luo and her counsel admit that they have continuously represented to the Court that:

- "Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department," Third Amended Complaint (TAC), ¶ 55, and "prior to Defendant revealing this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff." *Id.*, ¶ 64; *see also* Resp. Motion for Sanctions, Exh. 9 Doc. No. 137-9), ¶¶ 4, 7 .

1

- **"[Ms. Luo] did not know that Defendant Paul Wang had made _any_ false statements regarding the sexual assault or the police report I filed in relation to my lost passport _until 2020_**." Exhibit 9 to her Response to Sanctions Motion (Ms. Luo's December 8, 2021 Declaration. Doc. No. 137-9) (emphasis added).

Ms. Luo and her counsel also admit that on May 4, 2022, in Ms. Luo's discovery responses, she finally acknowledged that she is the author of the blog where, on **_December 17, 2013_**, she, herself, posted a letter (from Mr. Morgann Paraskevas) that contained statements both regarding her allegation of sexual assault in China and her report of a stolen/missing passport to the police. And she told Morgann Paraskevas in that same post that she "exactly" knows how he got this information, https://cserinusa.wordpress.com—which, according to her complaint and sworn Declaration, could only have been Mr. Wang.

So, in fact, she now (finally) admits that she knew Mr. Wang had communicated that information to Mr. Paraskevas as early as 2013 and that the information had been published online in 2013. (She published the letter on her blog but, to this day, has not produced the unredacted version.)

IMAGE

# Let's see what a funny jerk did

**FROM**

[Do not respond directly to this email, use the link]

This is the last chance I am giving you to remove your blog.

I have received calls offering me money to get it removed, so apparently it's a typical chinese scam from what my lawyers told me. People write a bad blog, then someone contacts you and offers to remove it for a fee, or money. I will never pay for this of course.

We did not have a good experience but I don't think anyone wins by bringing harm to the other. We can put this behind now or there will be legal consequences.

**4ORGANN070**
Rockville
Maryland
**United States**

Take it off now and we can put it behind. If you don't, tomorrow I will file my police report (that I already made right after you left my place) and file it with the commissioners office. Meaning that at that point, they will put a warrant for your arrest when you return back to the US.

- VERIFIED
  MEMBER [3]
  more info
- Last seen: 2
  hrs ago
- Member since:
  March 29th,
  2010
- Gender: Male
- Username:
  4ORGANN070
- Couch
  Available: Yes
- Couchsurf
  Requests
  Replied To:
  100%

I hired a private investigator so I know more about you then you think. For example,



I have [] other people who you have

If I don't hear from you by tomorrow morning my time, I will be heading to the commissioners office. When your police friend in the US sees what you have been doing, I don't think he will be your friend anymore. I also have a copy of a passport you claimed was stolen or lost and then

Morgann Paraskevas, if you could take legal actions why didn't you do it in Sep? Why did you find out your money was stolen ten days after I left your place? Why could I come back home if you did file a police report? I didn't steal anything so bluffing didn't work for me. I already called police department 1st District Station (Rockville): 240-773-6070 and told them what happened. Why do you think you can bluff me just because you got my private information? I exactly know where you got it from. I look weak but not as weak as you thought. I have bunch friends in legal enforcement too.



December 17, 2013

Posted in **Uncategorized**
**Leave a reply**

3



**Even in The Motion to Strike Plaintiff and Her Counsel Continue to Make Inaccurate Material Representations of Fact to This Court**

Having published the letter from Morgann Paraskevas, which included both statements, in her blog in 2013, Ms. Luo also knew with certainty that Mr. Paraskevas, not Mr. Wang, was the author of the statement in paragraph 62 of the TAC, which accused her of having: "made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport." *See* Reply in Support of Motion for Sanctions, at 9.

In her Motion to Strike, filed May 23, 2022, though, Plaintiff again represents to this Court that she believes statements in a blog post she claims *to have first discovered in January 2021* (in the *Weamer* litigation) was authored by Mr. Wang. Motion to Strike, at 5 (citing ECF No. 137-10). Both Plaintiff and her counsel are well aware that upon receiving that document,

4

produced in the *Weamer* case, Ms. Luo knew that it was authored by one Morgann Paraskevas,

the same person whose letter she copied and posted on her own blog in 2013.

ECF No. 137-10 is a reproduction of a portion of a blog posting from December 16,

2013, on a website bearing the headline (in ALLCAPS text):

**16**
*Monday*
*Dec 2013*

XINGFEI LUO BETTER KNOWN
AS OPHELIA LUO *or* OLIVIA LUO
, AND HER CHINESE SCAM.
BEWARE,
DEFAMATION SPECIALIST.

POSTED BY ANONYMOUS123177 IN UNCATEGORIZED                ≈ 3 COMMENTS

*See* https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-

her-chinese-scam  (last visited May 24, 2022).

A side-by-side comparison of Mr. Paraskevas' blog post

(https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-

chinese-scam/#comments) and Ms. Luo's blog post

(https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/) reveals that the

author of the former blog post, "morgann070" or "anonymous123177," is the same Morgann

Paraskevas, whose "morgann 070" identifier appeared in Ms. Luo's **2013** post about him,

https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/ ; *See* Reply in

Support of Motion for Sanctions, Exhibit 6 (comparing Ms. Luo's and Mr. Paraskevas's 2013

online publications).

Mr. Wang respectfully requests that the Court grant him the opportunity to demonstrate

this in Court.

5



And if that were not enough, in his **December 16, 2013** blog post, Mr. Paraskevas, on the same page that the quote from TAC ¶ 62 appears, specifically refers to a police report *he* filed against Ms. Luo claiming that she stole money from him, making it unmistakably clear that he is

6

the author of the blog. (There are no allegations in this case that at any time Mr. Wang has claimed to have filed a police report against Ms. Luo for theft).



,,

*"If you see or meet this person, be aware, she has already made false allegation of rape, false claims about other people as well, filed a frivolous police report in Colorado about losing her passport then ironically used that same passport at a San Francisco airport on December 2nd 2013."*

*"I have filed a police report about her stealing money from me as well."*

https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/ (last visited May 24, 2022). (This is also in both "Exhibit L" to declaration of Amanda Papac Esq., which was produced in the ▇▇▇▇▇▇▇▇▇ case and in disclosures in *Weamer*. *See* **Exhibit A** (Ms. Papac's Declaration, which includes that declaration and Exhibit L thereto. The complete version of Ms. Papac's Declaration is attached to Mr.

7

Wang's Reply in Support of the Sanctions Motion [Doc. No. 144-5].); *id*., ¶ 4 ("[W]e provided ▆▆▆ the <u>unredacted links to all websites</u> cited in my declaration and <u>unredacted copies of their contents</u> were attached as exhibits to the declaration." [emphasis added]); **Exhibit B** (Declaration of ▆▆▆▆▆ Esq., Exhibit B (similar disclosures to Ms. Luo in *Weamer*).

This is the same police report about stolen money that on **December 17, 2013**, (i.e., **the very next day**), Ms. Luo addressed when she posted Mr. Paraskevas' letter on (what she now admits is) her own blog: "Morgann Paraskevas, if you could take legal actions why didn't you do it in Sep? Why did you find out your money was stolen ten days after I left your place? Why could I come back home if you did file a police report? I didn't steal anything so bluffing didn't work for me." https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/ (last visited May 24, 2022).

# Let's see what a funny jerk did



Morgann Paraskevas, if you could take legal actions why didn't you do it in Sep? Why did you find out your money was stolen ten days after I left your place? Why could I come back home if you did file a police report? I didn't steal anything so bluffing didn't work for me. I already called police department 1st District Station (Rockville): 240-773-6070 and told them what happened. Why do you think you can bluff me just because you got my private information? I exactly know where you got it from. I look weak but not as weak as you thought. I have bunch friends in legal enforcement too.

Yet, to this date, without a scintilla of evidence to support her allegation, and in the face

of the undeniable evidence to the contrary, Ms. Luo and her counsel continue to falsely represent

to this Court that she believes Mr. Wang (not Mr. Paraskevas) was the author of the blog post

referenced in TAC ¶ 62, *See* Motion to Strike, at 5.

Curiously, too, when she filed Mr. Paraskevas' blog post in this Court, as an exhibit to

her Declaration (ECF 137-9), she attached *only the first page* of what was, in fact, a 4-page

exhibit produced to her in the ▬▬▬▬▬▬ case. *Compare* **Exhibit A** (containing the complete 4-

page "Exhibit L" to Declaration of Amanda G. Papac) and **Exhibit B** (which also includes this

crucial information) with **Exhibit C** (The one-page version of the document that Ms. Luo

submitted to the Court, Doc. No. 137-10, which **leaves out** the sentence *"I have filed a police*

*report about her stealing money from me as well."*).

### The Attempts to Divert the Court's Attention From the Rule 11 Violations Fall Far Short and Introduce Additional Inaccurate Material Representations of Fact

Rather than acknowledge the undisputed evidence of their intentional inaccurate

representations to the Court, Ms. Luo and her counsel try to divert the Court's attention from the

pending motion seeking the imposition of appropriate sanctions.

First, they argue that Ms. Luo's pattern of defrauding the courts (and committing perjury

by filing knowingly false testimony) had not been included in Mr. Wang's original Rule 11

motion. That is incorrect. Whether Ms. Luo has knowingly prevaricated about her knowledge of

these statements since 2013 has been at the center of Mr. Wang's arguments in the Motion for

Sanctions and its reply, *see* Motion for Sanctions (Doc. No. 132), 4-5, 7-8; Reply in support of

Motion for Sanctions (Doc. No. 144), 4-5, 8-9, as well as his briefings of the Motion to Dismiss

(Doc. No. 92), 8-10, 14; Reply (Doc. No. 106); 4, 6. To pretend that this is a new issue and to

use it as the basis for filing the Motion to Strike is another attempt to drain Mr. Wang's financial

resources as punishment for agreeing to be a witness against Ms. Luo in the *Weamer* case.

Second, they argue that the Court should ignore their intentional inaccurate

representations because Mr. Wang also made both of these statements to Mr. Weamer in 2020.

This argument is even more intriguing since it both includes, on its face, an **additional**

inaccurate representation of a material fact and ignores the fact that this was a private one-on-one

conversation (exchange of instant messages) protected under the well-established "litigation

communications privilege".

Ms. Luo and her counsel represent to this Court that Mr. Wang made actionable

statements to Mr. Weamer and they imbed in their Motion to Strike a few text messages Mr.

Wang and Mr. Weamer exchanged in 2020. Thus, Ms. Luo's counsel represents to this Court that

her client's claim is not time barred because Mr. Wang made an actionable statement to Mr.

Weamer in 2020. Motion to Strike, at 9 ("Thus, it is now <u>undisputed</u> that Defendant made both

defamatory statements to Mr. Weamer in May 2020 just as Plaintiff has alleged all along.")

It is, however, striking that at no point during these private conversations between a

potential witness and defendant (in a case that has since been dismissed and during which Ms.

Luo has been sanctioned for litigation abuse) did Mr. Wang make any statement about a "**false**"

claim of rape. Motion to Strike, pp. 6-8. Mr. Wang's statements to Mr. Weamer regarding this

issue is nothing but an objective description of Ms. Luo's admitted actions: that she *accused*

someone of raping her, which she has admitted in her complaints and other pleadings. *See, e.g.,*

TAC, at 3.

10



She had accused someone else who was a middle school class mate of raping her. He went to jail for a week

They settle out of court

Do you know about when that

*Id.* at 6.

Thus, the "evidence" Ms. Luo herself advances shows, undisputedly, that there is nothing false or defamatory in his statement: she *did* accuse someone of rape (in fact, she has done so multiple times, here in the United States). Mr. Wang did *not* say she had done so "falsely."

Further, Ms. Luo and her counsel intentionally leave out a critical part of a document they present to this Court, namely, the very first exchange between Mr. Weamer and Mr. Wang, where Mr. Weamer asks him to provide information *for use in litigation*, and to potentially serve as a witness in Mr. Weamer's case.[1]

---

[1] Ms. Luo and her counsel also continue to disregard the declaration of Mr. Weamer's counsel specifically stating that Mr. Wang *is* a witness in the *Weamer* case (and remains one until she exhausts her appellate remedies). *See* Reply in Support of Sanctions Motion, at 7; *id.*, Exh. 4 (Decl.of⬛⬛⬛, Esq.), ¶¶ 3-4; **Exhibit B**, ¶¶ 3-4.

11



One would be hard-pressed, indeed, to demonstrate a clearer case of (1) a person responding to an express request for information by a self-proclaimed litigant for information to be used in that litigation (i.e., clear cut application of the "litigation communications privilege") or (2) a deliberate effort by Ms. Luo and her counsel to hide from this Court *the actual context* in which Mr. Wang's statements were communicated to Mr. Weamer.

Finally, even *if* arguendo, Mr. Wang's statements in private text messages to Mr. Weamer were not protected by the absolute litigation privilege (which they quite clearly are), she would still have the burden to prove her claims related to the statements she alleges that Mr.

12

Wang (not Mr. Paraskevas) *published on the internet,* TAC ¶ 52, 62, are not time-barred under

the single publication rule.[2] To date, she has failed to produce a single piece of evidence that

could prove anything Mr. Wang posted to the internet was within the statute of limitations.

### Conclusion

The Court should deny Ms. Luo's Motion to Strike. The intentional inaccurate

representations to this Court, now with the assistance of counsel, regarding when Ms. Luo first

learned of these statements and the nature and context of those statements are fully consistent

with her well-documented pattern of abuse of the judicial process. It is high time for this Court to

join the Ninth Circuit and put an end to it.


Respectfully submitted this 24th day of May 2022.

> */s/ Katayoun A. Donnelly*
> Katayoun A. Donnelly (#38439)
> Azizpour Donnelly, LLC
> 2373 Central Park Blvd., Suite 100
> Denver, CO  80238
> Tel. (720) 675-8584
> katy@kdonnellylaw.com
>
> *Attorney for Paul Wang*

---

[2] When tort claims are based on online publications, the date the material first appeared online triggers the "should have known" requirement for the purpose of the discovery rule. *See* Mot. Dismiss at 10, Reply 4-5 (citing *Phillips v. World Pub.Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("In the internet context, the statute of limitations begins to run when the allegedly infringing material is first posted on the internet.") (citing *Canatella v. Van De Kamp*, 486 F.3d 1128, 1134–36 (9th Cir. 2007)); *Bloom v. Goodyear Tire & Rubber Co.*, 2006 WL 2331135at *7 (D. Colo. Aug. 10, 2006); *Hoai Thanh v. Ngo*, No. PJM 14-448, 2016 WL 3958584, at *10–12 (D. Md. July 22, 2016), *aff'd sub nom.Hoai Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017); *Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010); *Deatley v. Allard*, 2015 WL 134271, at *5; *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at *4).

13

EXHIBIT 15

Declaration of Amanda Papac

I, Amanda G. Papac, declare and state as follows:

1. I am licensed to practice law in California and was an associate with the law firm of Collins
Collins Muir + Stewart, LLP. I was the counsel of record for defendants ███████████
███ the lawsuit titled ███████ , et al., Case Number ███████
███████ , which is now pending in the Ninth Circuit Court of
Appeals in ███████ ., Case Number ███████ . This declaration is based upon my
personal knowledge and my review of the pleadings and filings in the aforementioned actions. If
called upon as a witness, I could and would testify truthfully under oath as to the facts stated
herein. I understand that this declaration will be filed under seal for use in the case Luo v. Wang
(Civil Action No. 1:20-cv-02765-RMR-MEH).

2. Based on my review of the Third Amended Complaint filed on July 28, 2021, in Luo v. Paul
Wang (Civil Action No. 1:20-cv-02765-RMR-MEH) in the United States District Court for the
District of Colorado; the Complaint in ███████████████████ .
███ ) cited at paragraph number 47 in the Luo v. Wang action; my communication with counsel
for Mr. Wang; my communications with ███ ; as well as other research I have performed as to
the various names and aliases for ███ the plaintiff ███ " in our case is the plaintiff "Jane Doe"
in the ███████ case and Xingfei Luo in Luo v. Wang case.

3. Ms. Luo's Third Amended Complaint, in paragraphs 86 and 103, references my name as the
recipient of alleged statements made by Mr. Wang. I have not received any statements from Mr.
Wang and my declaration, which I understand Ms. Luo has produced in discovery in Luo v. Paul
Wang (Civil Action No. 1:20-cv-02765-RMR-MEH) as the basis of this claim, does not have any
reference to Mr. Paul Wang. See attached, Exhibit A (a copy of my full declaration and its
exhibits, which have been redacted to comply with the court order in ███████████ , et
al., Case ███████████████████ ).

4. In ███████████████ , et al., Case Number ███████████ , we provided
███ . the unredacted links to all websites cited in my declaration and unredacted copies of their
contents were attached as exhibits to the declaration.

5. To this date, December 21, 2021, I have not been contacted by Ms. Luo's counsel in Luo v.
Wang, Case No. 20-cv-02765-RMR-MEH (D. Colo).

FURTHER AFFIANT SAYETH NAUGHT

I declare under penalty of perjury under the law of the State of California that the foregoing affidavit is true and correct.

Executed this 21st day of December 2021, at Los Angeles, California.

Amanda Papac

# EXHIBIT A

1  Erin R. Dunkerly, Esq. (State Bar No. 260220)
2  Amanda G. Papac, Esq. (State Bar No. 328899)
   **COLLINS COLLINS MUIR + STEWART LLP**
3  1100 El Centro Street
4  South Pasadena, CA 91030
   (626) 243-1100 – FAX (626) 243-1111
5  Email:  edunkerly@ccmslaw.com
   Email:  apapac@ccmslaw.com
6
7  Attorneys for Defendants,
8  ██████████████████████████

9

10              **UNITED STATES DISTRICT COURT**

11          ████████████████████████████████████

12

13

14  ███           )  ████████████████████████
                  )  *[Reassigned to Magistrate Judge John D.*
15                )  *Early – Courtroom 6A]*
          Plaintiff, )
16                )
                  )  **DECLARATION OF AMANDA G.**
17     vs.        )  **PAPAC IN SUPPORT OF**
                  )  **DEFENDANTS' MOTION FOR**
18                )  **PROTECTIVE ORDER**
19                )
20                )
21                )
22                )
23                )
   inclusive,     )
24                )  Complaint Filed:  ████████
          Defendants. )
25                )  Trial Date:        None
26                )
27  ///
28  ///

22240

1

**DECLARATION OF AMANDA G. PAPAC RE: JOINT STIPULATION**

COLLINS COLLINS
MUIR + STEWART LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax   (626) 243-1111

## DECLARATION OF AMANDA G. PAPAC

I, Amanda G. Papac, declare and state as follows:

1.    I am licensed to practice law in California, and am an associate with the law firm of Collins Collins Muir + Stewart, LLP, counsel of record for defendants ███████████████████ I make this declaration in support of the Defendants' Motion for Protective Order. This declaration is based upon my personal knowledge, and if called upon as a witness, I could and would testify truthfully under oath as to the facts stated herein.

2.    Attached hereto as **Exhibit A** is a true and correct copy of defendant ██████ Responses to ████ 's Interrogatories, Set One.

3.    Attached hereto as **Exhibit B** is a true and correct copy of defendant ██████ Responses to ████ 's Requests for Production of Documents, Set One.

4.    Attached hereto as **Exhibit C** is a true and correct copy of defendant ████████████ to ████ 's Interrogatories, Set One.

5.    Attached hereto as **Exhibit D** is a true and correct copy of defendant ████████ s to ████ s Interrogatories, Set Three.

6.    Attached hereto as **Exhibit E** is a true and correct copy of defendant ████████ onses to ████ s Requests for Production of Documents, Set One.

7.    Attached hereto as **Exhibit F** is a true and correct copy of the ██████████ Sheriff's Department's Responses to ████ s subpoena for production of business records to the ██████████████ epartment.

8.    Attached hereto as **Exhibit G** is a true and correct copy of the ██████████ Sheriff's Department's Responses to ████ s second subpoena for production of business records to the ██████████████ s Department.

9.    On ██████████████████ filed an Ex Parte Application to Stay a Pending Deposition, by which she sought: (1) to stay her deposition, noticed by Defendants on ██████████████ , which was to take place on ███████████████ ; (2) to limit the length and topics covered at the deposition; (3) a protective order directing that she

COLLINS COLLINS
MUIR + STEWART LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax (626) 243-1111

22240

2

**DECLARATION OF AMANDA G. PAPAC RE: JOINT STIPULATION**

1  need not produce certain categories of documents requested by Defendants; and (4) an

2  award of sanctions against Defendants. (See Document No. 99, attached hereto as

3  **Exhibit H** for the convenience of the Court).

4     10.    On ██████████████████████████ Ex Parte Application,

5  finding that her request to limit the duration and scope of her deposition was not

6  supported by good cause and overruling her objections to Defendants' requests for

7  production of documents. (See Document No. 112, also attached hereto as **Exhibit I**

8  for the convenience of the Court).

9     11.    On ██████████████, after the Court denied her ex parte application, ████

10 emailed me stating that she would not appear for her deposition "until the motion for

11 protective order in regards to the production of documents is heard." I reminded ████

12 that her request to stay the deposition had been denied and her objections to the

13 document requests had been overruled. In response, ████ stated: "I will not attend any

14 deposition pending discovery disputes. I requested you to limit the time and scope of

15 your deposition and you refused to do so. My objections to the production of

16 documents were not complete. The court should not rule on a drafted stipulation. The

17 court's so called ruling was improper. You will proceed your deposition without me

18 on Nov 5, 2020." Attached hereto as **Exhibit J** is a true and correct copy of ████ s

19 email and our colloquy dated ██████████████.

20    12.    On ██████████████████ failed to appear for her deposition. Attached

21 hereto as **Exhibit K** is a true and correct copy of an affidavit of non-appearance

22 certifying ████'s failure to appear for her ██████████████ deposition.

23    13.    On February 26, 2020, I conducted an internet search using ████ s name.

24 In my search, I discovered the following internet postings, among others:

25        a.  On December 16, 2013, an individual posted a blog describing ████████

26            use of defamation, revenge porn, extortion, and frivolous police

27            reports. Attached hereto as **Exhibit L** is a true and correct copy of the

28            individual's    blog    post,    which    I    accessed    at

COLLINS COLLINS
MUIR + STEWART LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax   (626) 243-1111

22240

**DECLARATION OF AMANDA G. PAPAC RE: JOINT STIPULATION**

1    https://REDACT wordpress.com/ on February 26, 2020. Pursuant to

2    this Court's Order dated March 20, 2020 (Document No. 42), one of

3    the names associated with ▮ appears in the URL and as such,

4    defendants are barred from filing the unredacted URL. In the event the

5    Court requires the full URL, defendants would request an exception

6    from the March 20, 2020 order for the limited purpose of filing the

7    unredacted URL under seal.

8    b.  On November 11, 2018, ▮ posted a public blog with derogatory

9        remarks about a man, which contained his phone number and home

10       address. Attached hereto as **Exhibit M** is a true and correct copy of

11       O.L.'s  November  11,  2018  blog,  which  I  accessed  at

12       http://morgannparaskevas.blogspot.com/ on December 11, 2020.

13   c.  On November 12, 201▮ posted a public blog accusing another

14       man of sexual harassment. Attached hereto as **Exhibit N** is a true and

15       correct copy of ▮ s November 12, 2018 blog, which I accessed at

16       http://REDACT .blogspot.com/ on February 26, 2020. Pursuant to this

17       Court's Order dated March 20, 2020 (Document No. 42), one of the

18       names  associated  with ▮  appears  in  the  URL  and  as  such,

19       defendants are barred from filing the unredacted URL. In the event the

20       Court requires the full URL, defendants would request an exception

21       from the March 20, 2020 Order for the limited purpose of filing the

22       unredacted URL under seal.

23   14.    During my internet search using ▮ true name, I also discovered an

24   unpublished opinion from ▮ appeal of the Superior Court of Orange County's

25   issuance of a domestic violence restraining order against her. The unpublished opinion

26   contains a resuscitation of facts that led to the Superior Court's decision to issue a

27   restraining order against ▮ (see **Exhibit O**, at page 1.) Based on my reading of the

28   unpublished  opinion,  one  of ▮  previous  online  dating  companions  (further

COLLINS COLLINS
MUIR + STEWART LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone (626) 243-1100
Fax   (626) 243-1111

22240

4

1    referenced as ███ s "ex-boyfriend" to preserve his anonymity) obtained a restraining

2    order against ███ on the grounds that she posted revenge porn and vandalized the ex-

3    boyfriend's home. Upon hearing of the ex-boyfriend's desire to terminate the very

4    short-lived relationship, ███ created fake Facebook, Instagram, and Yelp accounts

5    with the ex-boyfriend's name and showing nude photos of him. ███ sent the revenge

6    porn to the ex-boyfriend's family, friends, and clients. She also appeared at the ex-

7    boyfriend's home and "scratched [his] door for about 20 minutes." Attached hereto as

8    **Exhibit O** is a true and correct copy of the unpublished opinion for ███ appeal from

9    the Superior Court of Orange County's domestic violence restraining order, case No.

10   G056955.

11       15.    As of April 9, 2020, ███ GoFundMe webpage was accessible on the

12   internet, which I accessed at : https://www.gofundme.com/f/2twqa2 on April 8, 2020,

13   and have attached a true and correct copy as **Exhibit P**. In advance of preparing this

14   declaration, I again tried to access the GoFundMe webpage from the same link and

15   found that the contents are not currently available on the internet. The same GoFundMe

16   Page was referenced in ███ operative pleading and produced by defendants in

17   discovery. That it is now no longer in existence on the internet and therefore prior

18   versions cannot be explored leads me to believe that ███ has caused evidence in this

19   pending lawsuit to not be preserved.

20       I declare under penalty of perjury under the laws of the State of California and the

21   United States of America that the foregoing is true and correct.

22       Executed on January 4, 2021, in Los Angeles, California.

23

24

25   By: _Amanda G Papac_

26       AMANDA G. PAPAC

27

28

COLLINS COLLINS
MUIR + STEWART LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone  (626) 243-1100
Fax    (626) 243-1111

22240

5

**DECLARATION OF AMANDA G. PAPAC RE: JOINT STIPULATION**

# EXHIBIT "L"

2/26/2020 REDACT BETTER KNOWN AS REDACTED , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIS...

Case 1:20-cv-02765-RMR-MEH   Document 183   Filed 08/24/22   USDC Colorado   Page 172 of 231

REDACTED ~ Beware of this scammer.

REDACTED BETTER KNOWN AS REDACTED

REDACTED or REDACTED , AND HER CHINESE SCAM.

# E_.WARE, DEFAMATION SPECIALIST.

Sponsored by Gundry MD

*16 Monday, Dec 2013*

POSTED BY ANONYMOUS123177 IN UNCATEGORIZED

≈ 3 COMMENTS

*" REDACT born in December of 1977 is a chinese woman who is a scammer. After hiring a private investigator, I found out that I am not the only target of this person."*

*"She posted a blog defaming my good name and coincidence, got 2 calls in the following months from a so-called company to have the blog removed first for $10,000 and the second call for $4,000. She changes her name frequently from O REDACT to O REDAC and she has made numerous victims. She post pictures or defamatory post and later someone contacts you to take them out for a fee. I have received several calls from other victims. "*



*"If you see or meet this person, be aware, she has already made false allegation of rape, false claims about other people as well, filed a frivolous police report in Colorado about losing her passport then ironically used that same passport at a San Francisco airport on December 2nd 2013."*

2/26/2020   REDACT BETTER KNOWN AS REDACTED , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIS…

*"I have filed a police report about her stealing money from me as well."*

There are a lot of lawsuits in which she is involved. As of now, we cannot reveal yet all the information since the cases are pending.

Advertisements

2/26/2020    REDACT BETTER KNOWN AS REDACTED , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIS...

Powered by wordads.co

Seen ad many times

Not relevant

Offensive

Covers content

Broken

REPORT THIS AD

Advertisements

Case 1:20-cv-02765-RMR-MEH   Document 183   Filed 08/24/22   USDC Colorado   Page 175 of

2/26/2020          REDAC   BETTER KNOWN AS REDACTED 43  , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIS...

Powered by wordads.co

Seen ad many times

Not relevant

Offensive

Covers content

Broken

REPORT THIS AD

thoughts on "REDACTED ) BETTER KNOWN AS REDACTED ) or REDACTED , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIST."

1. *said:*Secretagent

   April 23, 2015 at 10:49 pm

   She is back in the U.S. – living in old town Pasadena. I saw her on Wechat (the Chinese chatting app). Her alias there is REDACT. Thanks for posting this and warning others.

   **REPLY**

   o  *said:*morgann070

      April 24, 2015 at 2:28 am

      **REPLY**

      o  *said:*anonymous123177

         September 26, 2018 at 7:09 am

         Much appreciated.

Blog at WordPress.com.

EXHIBIT 16

**Affidavit of** ▇▇▇▇▇▇

1. My name is ▇▇▇▇▇▇. I am an attorney in the State of California and
   I represented Mr. ▇▇▇▇▇
   (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), the case referenced in the Second
   Amended Complaint in *Doe v. Wang*, Case No. 20-cv-02765-RMR-MEH (D.
   Colo).
2. I came across Paul Wang's name as a potential witness when I was doing
   research on other lawsuits and claims published by Ms. ▇▇ in which she
   claimed emotional distress due to alleged sexual assaults in furtherance
   of my investigations of her claims against my client. During that research, I
   found information that she apparently posted about Mr. Wang.
3. The only times and places in which I recollect Mr. Wang's name has been
   mentioned in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
   have been in discovery requests, responses, and related discovery motions.
   Attached hereto as <u>Exhibit A</u> (WEAMER 0002-0004) is a copy of the post
   about Mr. Wang that I found and produced in Mr. Weamer's lawsuit as
   part of Mr. Weamer's discovery responses. Also attached, as <u>Exhibit B</u> are
   copies of the posts involving Morgann Paraskevas that I found and
   produced as part of Mr. Weamer's document production in response to
   discovery, in August 2020 (WEAMER 0005-0009).
4. On ▇▇▇▇▇▇▇▇▇, the case was dismissed with prejudice as the
   result of terminating sanctions imposed for Ms. ▇▇'s refusal to comply
   with her discovery obligations. Mr. Wang remained on my witness list as a
   potential witness for trial.
5. To this date, December 10, 2021, I have not been contacted by Ms. ▇▇'s
   counsel in Doe v. Wang, Case No. 20-cv-02765-RMR-MEH (D. Colo).


FURTHER AFFIANT SAYETH NAUGHT


   I declare under penalty of perjury under the law of the State of California
that the foregoing affidavit is true and correct.




# EXHIBIT A

6/8/2020                                                Paul Ming Wang | pppwang

# pppwang ~ A fine WordPress.com site

IMAGE

# Paul Ming Wang

**06** *Tuesday* ___ *y 2014*

POSTED BY PPPWANG IN UNCATEGORIZED

≈ **LEAVE A COMMENT**

| | | | |
|---|---|---|---|
| katiemaxx | | Sep 22, 2011 | ☐ |
| CinkPourSwazzle (Lizabeth) | | Sep 14, 2011 | ☐ |
| kara02535 | | Sep 8, 2011 | ☐ |
| mnmdenver27 | | Sep 8, 2011 | ☐ |
| vicki7778 | | Sep 7, 2011 | ☐ |
| RunsInTheSun | | Sep 2, 2011 | ☐ |
| sapientsaphead | | Aug 31, 2011 | ☐ |
| AmazingGrace66 | | Aug 30, 2011 | ☐ |
| heythereMN | | Aug 27, 2011 | ☐ |
| mollyhatchett | | Aug 27, 2011 | ☐ |
| hydy425 | | Aug 24, 2011 | ☐ |
| amypaetx15 | | Aug 21, 2011 | ☐ |
| Mojaveje | | Aug 20, 2011 | ☐ |
| Nutmeg_taco | | Aug 20, 2011 | ☐ |

Paul Wang cheats a lot. He has a profile on okcupid named zerogas in order to fufill his gross purpose. He's a complete pig in a suit.

Create a free website or blog at WordPress.com.   Do Not Sell My Personal Information

WEAMER 0002

## ≡ CheaterLand  Report Liars and Cheaters

f  t

### Cheater Search

Search ...   Q



## Paul Wang, Highlands Ranch, CO

📅  💬 1  🗁 Colorado

lands-ranch-co.html

### Cheater Search

Search ...   Q

### Cheaters By Location

Select Category ⌄

### Random Cheaters

Julian Heaney
Carol Ann Erwin, Vision Works
Philie Blunt / Phil spiess, Missouri
Cambridge Ontario Canada, real
estate broker Steve Bailey strikes
deal to avoid discipline hearing
'RECO has failed the public,' says
realtor who was set to testify
against Cambridge's Steve Bailey
Nick "Biggie Beigler

### Recent Comments

Babe on Chuck Golson Trussville
& Selma Alabama

Babe on Chuck Golson Trussville
& Selma Alabama
Authorized Personnel Only on
Chuck Golson Trussville & Selma
Alabama
Barry Manalow on Chuck Golson
Trussville & Selma Alabama
Nichole on Kenneth Michael Hall
Jr. aka Mike Hall/Mike Griffith
Anonymous on Chuck Golson
Trussville & Selma Alabama

Anonymous

Paul Wang, aka Paul Ming Wang, born in June 1977, originally from China. Phone #: 720-323-1113.

While his girlfriend was living with him he went on dating sites looking for new dates. At the time he worked at DISH Network as a software engineer.

His Add:
2175 Ashwood Pl,
Highlands Ranch, CO 80129
11505 E Virginia Pl,
Aurora, CO 80012



🏷 co, Highlands Ranch, Paul Wang

 Author: Anonymous

← Amanda Harrison, Nevada          Greg from Madison, Wisconsin likes Asian hookers and

transvestism →

## 1 thought on "Paul Wang, Highlands Ranch, CO"


**Paul Wang**
√ #44:52am

Xingfei "Ophelia" Luo is my classmate from middle school. We met for the first time in almost 20 years in a class reunion in China in October 2012, and started a long distance relationship. In the summer of 2013, I invited her to come visit me in the states. After living with her for a while, I started to find out more and more about her. She had hidden much from me, and her true personality was shown to both vindictive and vile. At the time we were supposed to be dating, she would constantly flirt with other men online. In August she left my place to go to New York to "visit her friends", who turned out to be another man she been dating online. I decided to break off the relationship with her. After about a month or two, she kept calling me to beg me to take her back. Being the nice person, I said okay, and took her back in. However, things were never back to normal. And our relationship was extremely strained to say the least. I originally purchased the round trip non refundable plane tickets for her to go back to China in early October, but she decided to stay in the US by any means. I don't have a problem with that, but she demanded that buy her a new ticket for departure after xmas. I told her to buy her own ticket back. She later filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price. She used that refund to purchase a ticket to California. On the way to the airport, I once again broke up with her. This time I told her there's no chance we are getting back together.

After she went to California, she kept emailing and texting me, showing pictures of convertible she was riding in, or guns that her new boyfriend owns etc. I blocked her number and repeatedly told her in email response that I don't want to hear from her again. I don't want to have anything to do with such a crazy person.

A week later, I was at work when I was called into the HR department to explain some mysterious emails. Apparently someone created an email with my full name @163.net which is a free email service in China, and had been sending emails in my name to everyone I know, including my parents, friends, coworkers and my supervisor who is a female. In some of the emails was an attachedment of a photo that I immediately recognized as one of my most private pictures. This was a scanned Polaroid picture of a celebration of my 21st birthday in a gentleman's club in Dallas, Texas. It depicts me holding a naked porn star in a very compromised position, and the picture was signed by the porn star. I have never shown this picture to anyone. It had been kept in my private collection for sentimental reasons. I was in shocked but soon realized what happened and who sent those emails. It was Ophelia, who is the only person with unlimited access to all my personal properties when living at my house. She had stolen my private property and try to use it to make me look like a pervert. Fortunately everyone who knows me understood that these emails came from someone else. She was trying to get me into trouble but my company HR department stands by me and blocked this email address.

I confronted her via instance messages on a Wechat group for our classmates, and she uploaded the same picture to show that she was the one sending those emails. That's when I blocked her on Wechat as well and that was the last time I had any contact with this vile woman.

I got married in 2015, and have a young daughter now. Just a couple of days ago, a co worker called me and told me that when he searched for my name in google this page came up. I don't want my daughter or any one who doesn't know me came to this page to see this fabricated accusation without having the full context of what really happened. The cheater was her, not me.

If you have any questions regarding anything in this letter, you can contact me at my cell above. I will try to get this page removed from everywhere if it is possible. If not possible at least I can tell my side of the story.

Thanks

Paul

WEAMER 0004

# EXHIBIT B

# <u>Xingfei Luo</u> ~ Beware of this scammer.

IMAGE

## <u>Xingfei Luo, or Olivia Luo.</u>

*16 Monday Dec 2013*



POSTED BY <u>ANONYMOUS123177</u> | FILED UNDER <u>UNCATEGORIZED</u>

≈ **LEAVE A COMMENT**

# <u>XINGFEI LUO BETTER KNOWN AS OPHELIA LUO or OLIVIA LUO , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIST.</u>

*16 Monday Dec 2013*

POSTED BY <u>ANONYMOUS123177</u> IN <u>UNCATEGORIZED</u>

WEAMER 0006   6 **COMMENTS**

5/19/2020                                          Xingfei Luo | Beware of this scammer.

" *XingFei Luo born in December of 1977 is a chinese woman who is a scammer. After hiring a private investigator, I found out that I am not the only target of this person.*"

"*She posted a blog defaming my good name and coincidence, got 2 calls in the following months from a so-called company to have the blog removed first for $10,000 and the second call for $4,000. She changes her name frequently from Ophelia Luo to Olivia Luo and she has made numerous victims. She post pictures or defamatory post and later someone contacts you to take them out for a fee. I have received several calls from other victims.* "



"

"*If you see or meet this person, be aware, she has already made false allegation of rape, false claims about other people as well, filed  a frivolous police report in Colorado about losing her passport then ironically used that same passport at a San Francisco airport on December 2nd 2013.*"

"*I have filed a police report about her stealing money from me as well.*"

There are a lot of lawsuits in which she is involved. As of now, we cannot reveal yet all the information since the cases are pending.

Advertisements

WEAMER 0006

# Xingfei Luo

**MONDAY, NOVEMBER 12, 2018**

Xingfei Luo - victim of sexual harassment

Xingfei Luo, born in China, has tremendous and tracked financial experience in multiple industries. She is a huge fan of traveling and photography. She holds traditional values with great sense of ethics.

While Xingfei Luo was traveling alone in 2013 she met a man named Morgann Paraskevas in Rockville , MD. Morgann Paraskevas sent her invitation via couchsurfing as he wanted to host her when she's visiting DC. During her stay with Morgann Paraskevas he sexually harassed her and forced her to leave after she refused to show him her breast as his request. She left Morgann Paraskevas a negative review on couchsurfing and that's the beginning of her getting various threats from Morgann Paraskevas and his friends. In order to seek retaliation Morgann Paraskevas also spread false statement about her character.

For more about Morgann Paraskevas, search Morgann Paraskevas in Google.



**ABOUT ME**

**Xingfei Luo**

View my complete profile

**BLOG ARCHIVE**

▼ 2018 (1)

▼ November (1)

Xingfei Luo - victim of sexual harassment

WEAMER 0007

5/19/2020                                                                      Xingfei Luo



**Morgann Paraskevas**
you can also bring a swimsuit

ok

**Morgann Paraskevas**
or not lol

lol

**Morgann Paraskevas**
There are not a lot of people there and some places
are secluded so you can go au natural

lol

so I see chiropractor and get
massage often

oh, poor guy

so maybe you can give me a
massage

I know nothing about it

it's ok, you can practice
ahhahaha

hello

on the way home, will lose
internet

**Morgann Paraskevas**
ahahhahaha good one

well in DC I go to the river too, there is a spot where I
can go, it's like little islands, and I sunbathe naked too





WEAMER 0008

5/19/2020                                           Xingfei Luo

Posted by Xingfei Luo at 8:45 AM

# Home

Subscribe to: Posts (Atom)

Picture Window theme. Powered by Blogger.

EXHIBIT 17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

## ANSWER TO THIRD AMENDED COMPLAINT

---

Defendant, Paul Wang, by his attorney, answers Plaintiff's Third Amended Complaint and alleges as follows:

### ADMISSIONS AND DENIALS

1. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 1, and therefore denies them.

2. Admit that Mr. Wang resides in Colorado.

3. As to the allegations appearing under the title "Jurisdiction and Venue," Mr. Wang is without information sufficient to form a belief as to the truth of the allegations concerning whether there is diversity of citizenship among the parties, and therefore denies them.

4. As to the allegations appearing under the title "Jurisdiction and Venue," Mr. Wang is without information sufficient to form a belief as to the truth of the allegations

1

concerning whether there is diversity of citizenship among the parties, and therefore denies them.

5. Admit.

6.  Admit that Mr. Wang left China to attend college in United States, and otherwise deny the allegations of ¶ 6.

7. Admit.

8. Admit that during Mr. Wang's visit, the parties reconnected and began a relationship, and otherwise deny the allegations of ¶ 8. Mr. Wang also denies Ms. Luo's characterization of their relationship in ¶ 8 and throughout the Third Amended Complaint.

9. Admit that Mr. Wang returned to the United States and the parties continued their relationship, and otherwise deny the allegations of ¶ 9.

10. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 10, and therefore denies them.

11. Admit that Mr. Chen Guochang is a mutual friend of the parties. Mr. Wang is without sufficient information to admit or deny the remaining allegations in paragraph 11, and therefore denies them.

12. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 12, and therefore denies them.

13. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 13, and therefore denies them.

14. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 14, and therefore denies them.

15. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 15, and therefore denies them.

16. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 16, and therefore denies them.

17. Deny.

18. Deny.

19. Admit that Mr. Wang encouraged Ms. Luo to get a rape kit and to report the incident. Mr. Wang is without sufficient information to admit or deny the remaining allegations in paragraph 19, and therefore denies them.

20. Deny.

21. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 21, and therefore denies them.

22. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 22, and therefore denies them.

23. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 23, and therefore denies them.

24. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 24, and therefore denies them.

25. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 25, and therefore denies them.

26. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 26, and therefore denies them.

27. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 27, and therefore denies them.

28. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 28, and therefore denies them.

29. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 29, and therefore denies them.

30. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 30, and therefore denies them.

31. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 31, and therefore denies them.

32. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 32, and therefore denies them.

33. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 33, and therefore denies them.

34. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 34, and therefore denies them.

35. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 35, and therefore denies them.

36. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 36, and therefore denies them.

37. Deny. Mr. Wang also denies Ms. Luo's characterization of their relationship in ¶ 37 and throughout the Third Amended Complaint.

38. Deny. Mr. Wang also denies Ms. Luo's characterization of their relationship in ¶ 38 and throughout the Third Amended Complaint.

39. Admit that Mr. Wang purchased plane tickets for Ms. Luo and deny the remaining allegations in ¶ 39.

40. Deny.

41. Deny.

42. Deny and to the extent Ms. Luo is discussing the recommendations of the United States Department of State, Mr. Wang is without sufficient information to admit or deny those allegations, and therefore denies them.

43. Deny.

44. Deny.

45. Deny.

46. Deny.

47. Mr. Wang denies Ms. Luo's characterization of his statements as "false and incredibly damaging," in this paragraph and throughout the complaint. Mr. Wang does not have sufficient information to admit or deny Ms. Luo's allegations regarding the timing of when during the *Weamer* case she learned that Mr. Wang is a witness in that case, and therefore denies those allegations, and he denies the remaining allegations in ¶ 47.

48. Admit that Mr. Wang posted a comment in response to the defamatory statements Ms. Luo's posted about him on the page she created on cheaterland.com (Reply in Support of Defendant's Motion for Imposition of Sanctions, Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Against Plaintiff and Her Counsel ["Motion for

Sanctions"], Exhibit A to Exhibit 4 [WEAMER 0003- 0004). Mr. Wang is without

sufficient information to admit or deny the remaining allegations in paragraph 48, and

therefore denies them.

49. Mr. Wang is without sufficient information to admit or deny the allegations in

paragraph 49, and therefore denies them.

50. Mr. Wang is without sufficient information to admit or deny the allegations in

paragraph 50, and therefore denies them. *But see* Declaration of Ms. █████████

Esq., Motion for Sanctions, Exhibit 4.

51. Mr. Wang admits that his response to Ms. Luo's defamatory statements about him

was posted long before Ms. Luo filed the Weamer Litigation.

52. Mr. Wang's response, *see* "Motion for Sanctions", Exhibit A to Exhibit 4 (WEAMER

0003- 0004), speaks for itself.

53. Deny.

54. Admit that Mr. Wang purchased the tickets and travel insurance and deny the

remaining allegations (implied) in ¶ 54.

55. Deny.

56. Mr. Wang is without sufficient information to admit or deny the allegations in

paragraph 56, and therefore denies them.

57. Deny.

58. Mr. Wang is without sufficient information to admit or deny the allegations in

paragraph 58, and therefore denies them.

59. Mr. Wang is without sufficient information to admit or deny the allegations in

paragraph 59, and therefore denies them.

60. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 60, and therefore denies them.

61. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 61, and therefore denies them. Mr. Wang also denies Ms. Luo's characterization and speculations regarding ███████ beliefs and their basis.

62. Deny.

63. Deny.

64. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 64, and therefore denies them.

65. Mr. Wang is without sufficient information to admit or deny the allegations in paragraph 65, and therefore denies them.

66. To the extent Ms. Luo is describing her views regarding the Chinese culture, no response is necessary, and Mr. Wang denies the remaining allegations in paragraph 66.

67. Deny.

68. Deny and Mr. Wang denies Ms. Luo's characterizations.

69. Deny.

70. Deny.

71. Deny.

72. Deny.

73. Deny.

74. Deny.

75. Paragraph 75 is a statement of incorporation to which no response is required. To the extent a response is required, Mr. Wang incorporates his responses to paragraphs 1-74.

76. The allegations in paragraph 76 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

77. The allegations in paragraph 77 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

78. The allegations in paragraph 78 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

79. The allegations in paragraph 79 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

80. The allegations in paragraph 80 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

81. The allegations in paragraph 81 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

82. The allegations in paragraph 82 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

83. The allegations in paragraph 83 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

84. Paragraph 84 is a statement of incorporation to which no response is required. To the extent a response is required, Mr. Wang incorporates his responses to paragraphs 1-83.

85. The allegations in paragraph 85 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

86. The allegations in paragraph 86 of the Third Amended Complaint are legal conclusions to which no response is required. T the extent a response is required, Mr. Wang denies the allegations.

87. The allegations in paragraph 87 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

88. The allegations in paragraph 88 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

89. The allegations in paragraph 89 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

90. The allegations in paragraph 90 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

91. The allegations in paragraph 91 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

92. The allegations in paragraph 92 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

93. Paragraph 93 is a statement of incorporation to which no response is required. To the extent a response is required, Mr. Wang incorporates his responses to paragraphs 1-92.

94. The allegations in paragraph 94 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

95. The allegations in paragraph 95 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

96. The allegations in paragraph 96 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

97. The allegations in paragraph 97 of the Third Amended Complaint are legal conclusions to which no response is required; to the extent a response is required, Mr. Wang denies the allegations.

98. The allegations in paragraph 98 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

99. The allegations in paragraph 99 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

100.   The allegations in paragraph 100 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

101.   Paragraph 101 is a statement of incorporation to which no response is required. To the extent a response is required, Mr. Wang incorporates his responses to paragraphs 1-100.

102.   The allegations in paragraph 102 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

103.     The allegations in paragraph 103 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

104.     The allegations in paragraph 104 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

105.     The allegations in paragraph 105 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

106.     The allegations in paragraph 106 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

107.     The allegations in paragraph 107 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

108.     The allegations in paragraph 108 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

109.     The allegations in paragraph 109 of the Third Amended Complaint are legal conclusions to which no response is required. To the extent a response is required, Mr. Wang denies the allegations.

### SEPARATE AND ADDITIONAL DEFENSES

Plaintiff's claims are barred, in whole or in part, by statute of limitations and the substantial truth doctrine.

Defendant's statements are privileged under the absolute privilege doctrine and Plaintiff's claims are barred on grounds that all or material portions of Defendant's statements were made in his capacity as a witness.

Defendant's publication involved a matter of public or general concern, and as a consequence, Plaintiff may not recover unless Plaintiff proves, by clear and convincing evidence, that Defendant published materially false and defamatory facts about her, while knowing they were false, or with a high degree of awareness of their probable falsity.

Plaintiff's claims are barred, in whole or in part, by the incremental harm doctrine.

Defendant's publication is privileged, and the plaintiff's claims are barred, by article II, section 10 of the Constitution of Colorado, and by the First and Fourteenth Amendments to the Constitution of the United States.

To the extent Plaintiff has sustained any injuries, such injuries are due to the conduct of plaintiff or third persons over whom Defendant had no control.

Plaintiff has failed to mitigate her damages as required by law.

Plaintiff's claims for non-economic damages are subject to the limitations provided for under the laws of the State of Colorado.

Defendant reserves the right to assert additional affirmative defenses should discovery and investigation reveal facts in support.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Defendant hereby demands a trial by jury on all issues so triable.

WHEREFORE, Defendant Paul Wang, having answered Plaintiff's Third Amended Complaint, prays that it be dismissed, that Plaintiff takes nothing, and that judgment be entered against Plaintiff for his costs, attorneys' fees, and for such other and further relief as the Court may deem appropriate.

Respectfully submitted this 27th day of June 2022.

/s/ Katayoun A. Donnelly
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO  80238
Tel. (720) 675-8584
katy@kdonnellylaw.com

Attorney for Paul Wang

EXHIBIT 18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

---

## **MOTION TO WITHDRAW AS COUNSEL**

---

Pursuant to D.C.COLO.LAttyR 5(b) and Rule 1.16 of the Colorado Rules of Professional

Conduct, Clarissa M. Collier, Esq., David J. Schaller, Esq., and the firm of Wheeler Trigg

O'Donnell LLP (collectively, "Counsel") hereby submit this Motion to Withdraw as Counsel for

Plaintiff Xingfei Luo. In support of this Motion, Counsel states as follows:[1]

1.      D.C.COLO.LAttyR 5(b) permits an attorney to withdraw, with approval of the

Court, upon a showing of good cause.

2.      Good cause exists for Counsel to withdraw from representation of Plaintiff based

on Rule 1.16(1) and (7) of the Colorado Rules of Professional Conduct. *See* D.C.COLO.LAttyR

5(b) ("A motion to withdraw must state the reasons for withdrawal, unless the statement would

violate the rules of professional conduct."

---

[1]      Pursuant to D.C.COLO.LCivR 7.1(b)(4), a certificate of conferral is not necessary for
this Motion.

3.    In accordance with D.C.COLO.LAttyR 5(b), Counsel has served a Notice of Withdrawal "on all counsel of record, any unrepresented party, and" Plaintiff. *See* Notice of Withdrawal, attached hereto as **Exhibit 1**.

4.    Plaintiff has been notified that she is "personally responsible for complying with all court orders and time limitations established by applicable statutes and rules." *Id.*

5.    Plaintiff has also been notified that she has the burden of keeping the Court and the other parties informed where later notices, pleadings, and other papers may be served; that she has the obligation to prepare for trial or have other counsel prepare for trial; that failure or refusal to meet these burdens may subject her to legal consequences such as dismissal or default; and that the dates of any proceedings including trial and holding of such proceedings will not be affected by this withdrawal.

6.    This Motion is not made for purposes of delay and the relief requested is sought in good faith.

WHEREFORE, Counsel respectfully request the Court grant this Motion and enter an Order allowing them to withdraw as counsel for Plaintiff.

Dated:  July 7, 2022.                              Respectfully submitted,


                                        *s/ Clarissa M. Collier*
                                        David J. Schaller
                                        Clarissa M. Collier
                                        Wheeler Trigg O'Donnell LLP
                                        370 Seventeenth Street, Suite 4500
                                        Denver, CO 80202
                                        Telephone:  303.244.1800
                                        Facsimile:   303.244.1879
                                        Email:  schaller@wtotrial.com
                                                    collier@wtotrial.com

2

Attorneys for Plaintiff,

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on July 7, 2022, I electronically filed the foregoing **MOTION TO WITHDRAW AS COUNSEL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Xingfei Luo**
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- **Katayoun A. Donnelly**
  katy@kdonnellylaw.com

- **Eugene Volokh**
  volokh@law.ucla.edu

*s/ Catherine Lacey*

EXHIBIT 19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

        Plaintiff,

v.

PAUL WANG,

        Defendant.

---

## NOTICE OF WITHDRAWAL AS COUNSEL

---

Pursuant to D.C.COLO.LAttyR 5(b),Clarissa M. Collier, Esq., David J. Schaller, Esq., and the firm of Wheeler Trigg O'Donnell LLP (collectively, "Counsel") hereby serve this Notice of Withdrawal as Counsel "on all counsel of record, any unrepresented party, and" Plaintiff. Counsel notifies Plaintiff as follows:

    1.      Counsel has filed a Motion to Withdraw as Counsel.

    2.      Through the Motion, Counsel seeks to withdraw from representation of Plaintiff pursuant to D.C.COLO.LAttyR 5(b) and Rule 1.16(1) and (7) of the Colorado Rules of Professional Conduct.

    3.      Counsel's withdrawal "shall be effectively only on court order entered after service" of this Notice. *See* D.C.COLO.LAttyR 5(b).

    4.      Upon Counsel's withdrawal, Plaintiff will be personally responsible for complying with all court orders and time limitations established by applicable statutes and rules.

5.      Plaintiff has the burden of keeping the Court and the other parties informed where later notices, pleadings, and other papers may be served.

6.      Plaintiff has the obligation to prepare for trial or have other counsel prepare for trial.

7.      Plaintiff's failure or refusal to meet these burdens may subject her to legal consequences such as dismissal or default.

8.      The dates of any proceedings including trial and the holding of such proceedings will not be affected by this withdrawal.

9.      Because Counsel was appointed through the FFA Pro Bono Program, they have also notified Plaintiff that she may re-apply for the appointment of pro bono counsel. Whether the Court decides to appoint new pro bono counsel though the FFA Pro Bono Program is within the Court's discretion.

Dated: July 7, 2022.                          Respectfully submitted,


*s/ Clarissa M. Collier*
David J. Schaller
Clarissa M. Collier
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:  303.244.1800
Facsimile:   303.244.1879
Email:  schaller@wtotrial.com
            collier@wtotrial.com

Attorneys for Plaintiff

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2022, I electronically served the foregoing **NOTICE OF WITHDRAWAL AS COUNSEL** via email to the following:

- **Xingfei Luo**
  ███████████████████

- **Katayoun A. Donnelly**
  katy@kdonnellylaw.com

- **Eugene Volokh**
  volokh@law.ucla.edu

*s/ Catherine Lacey*

EXHIBIT 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Regina M. Rodriguez

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

    Plaintiff,

v.

PAUL WANG,

    Defendant.

---

## ORDER

---

Pending before the Court are Defendant Paul Wang's Motion to Dismiss the Third

Amended Complaint, ECF Nos. 90, 92;[1] Defendant's Motion for Imposition of Sanctions,

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Against Plaintiff and Her

Counsel, ECF No. 132; Plaintiff Xingfei Luo's Motion to Strike Defendant's Supplement

to Reply in Support of Defendant's Motion of Sanctions Pursuant to Rule 11, or in the

Alternative, Plaintiff's Supplemental Response to Defendant's Motion for Sanctions, ECF

No. 161; and Plaintiff's Objections to Magistrate Judge Hegarty's November 8, 2021

Order Granting Defendant's Motion to Reconsider (ECF 113), ECF Nos. 117, 123.

---

[1] Where the Court cites to a document filed under restriction, the Court's first citation is to the Electronic Case Filing ("ECF") numbers of both the restricted document and public filing; the Court's subsequent citations are to the ECF number of only the restricted document.

For the reasons stated below, Defendant's Motion to Dismiss, ECF No. 90, is
GRANTED IN PART and DENIED IN PART; Defendant's Motion for Sanctions, ECF No.
132, is DENIED; Plaintiff's Motion to Strike Defendant's Supplement to its Reply in
Support of its Motion for Sanctions, ECF No. 161, is DENIED AS MOOT; and Plaintiff's
Objections to Magistrate Judge Hegarty's Order Granting Defendant's Motion to
Reconsider, ECF No. 117, are OVERRULED, and Magistrate Judge Hegarty's Order,
ECF No. 113, is AFFIRMED.

## I. BACKGROUND

On September 11, 2020, Plaintiff, proceeding *pro se*, filed the first Complaint in
this case. ECF No. 1. In November of 2020, before Defendant was served and before
either party was represented by counsel, Magistrate Judge Hegarty granted Plaintiff's
Motion for Protective Order, ECF No. 11, and allowed Plaintiff to proceed under a
pseudonym (the "Pseudonym Order"). ECF No. 13. Defendant was served on January
25, 2021. ECF No. 23. On February 16, 2021, Magistrate Judge Hegarty entered an
order appointing pro bono counsel for Plaintiff. ECF No. 33. On March 5, 2021, Plaintiff's
counsel entered their appearances, ECF Nos. 52–53, and on March 8, 2021, Defendant's
counsel entered her appearance, ECF No. 54.

Over the next several months, without ruling on the substantive merits, the Court
denied without prejudice several motions to dismiss filed by Defendant, including one filed
before he was represented by counsel, *see* ECF Nos. 36, 54, either because Plaintiff filed
an Amended Complaint that superseded the previous pleading or because the motion
failed to comply with the Practice Standards of Judge R. Brooke Jackson, the previously

presiding District Judge. *See* ECF Nos. 36, 50, 69, 70. On May 27, 2021, Defendant filed a Letter, pursuant to Judge Jackson's Practice Standards, regarding Defendant's intention to file a Motion to Dismiss, ECF No. 71, to which Plaintiff responded on June 10, 2021, ECF No. 75. On June 11, 2021, Judge Jackson issued an order denying leave to file a motion to dismiss and ordering that the parties should either "resolve this case" or "agree that plaintiff will file one more amended complaint that takes into account defendant's issues and pleads only what she believes she has evidence to prove." ECF No. 76.

This matter was reassigned to the undersigned on July 6, 2021. ECF No. 77. Three days later, Defendant filed a Renewed Motion to Dismiss, ECF No. 78, which Magistrate Judge Hegarty denied without prejudice, noting that Judge Jackson's June 11, 2021 order was "still the order of the court" and that, pursuant to that order, Plaintiff had leave to file a Third Amended Complaint. On July 28, 2021, Plaintiff filed her Third Amended Complaint, which is now the operative complaint in this matter. ECF No. 85.

The Third Amended Complaint alleges that Plaintiff and Defendant have a personal relationship that began when they attended school together in China from 1990 through 1993 and that resumed when Defendant visited China in 2012 and "he and Plaintiff reconnected and began a romantic and intimate relationship." *Id.* ¶¶ 5, 8. The Third Amended Complaint goes on to describe an incident in May of 2013 in which Plaintiff, who was still in China, attended a karaoke party, after which she believed that she was sexually assaulted by a Mr. Chen Guochang while she was unconscious. *Id.* ¶¶ 10–16. Plaintiff alleges that Defendant was one of the only people whom she told

about this incident, other than the local authorities, her mother, and her attorney at the time. *Id.* ¶¶ 17–18, 20. According to the Third Amended Complaint, Plaintiff moved to Colorado to live with Defendant in July of 2013, until October of 2013, when Defendant purchased a plane ticket for Plaintiff to return to China. *Id.* ¶¶ 27–39. Plaintiff alleges that she lost her passport and did not take that flight and filed a police report regarding a "lost/stolen" passport with the Aurora Police Department, after which she "discovered that she misplaced her passport and found her passport shortly thereafter." *Id.* ¶¶ 40–44.

In the Third Amended Complaint, Plaintiff brings claims for defamation, intentional infliction of emotional distress, and unreasonable disclosure of private facts against Defendant. *Id.* ¶¶ 75–109. Plaintiff alleges that she "learned through a separate lawsuit" that Defendant has "made several false and incredibly damaging statements against Plaintiff":

- "First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport." *Id.* ¶ 48.
- "Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault." *Id.* ¶ 57.

Plaintiff alleges that these statements were made in blog posts on the internet and to individuals involved in the "separate lawsuit" through which Plaintiff claims to have learned that Defendant made these statements. *Id.* ¶¶ 51, 62, 77, 86. On August 25, 2021, Defendant moved to dismiss the Third Amended Complaint, and that motion is pending before the Court. ECF No. 90.

4

On November 8, 2021, Magistrate Judge Hegarty granted Defendant's motion to reconsider the Pseudonym Order, ECF No. 101, filed on August 31, 2021. ECF No. 113. Plaintiff filed objections to that order on November 22, 2021. ECF No. 117. Those objections are currently pending before the Court.

Finally, on December 3, 2021, Defendant filed a motion for the imposition of sanctions against Plaintiff and her counsel pursuant to Federal Rule of Civil Procedure 11. ECF No. 132. That motion is fully briefed and pending before the Court. In addition, on May 20, 2022, Defendant filed a supplement to his reply in support of the motion for sanctions, ECF No. 160, which Plaintiff has now moved to strike, ECF No. 161.

## II.    SUBJECT MATTER JURISDICTION

The claims in this case are for torts arising under state law. Therefore, the Court's jurisdiction arises under 28 U.S.C. § 1332(a) because, first, the parties are diverse. The allegations in the Third Amended Complaint suggest that, for purposes of diversity jurisdiction, Plaintiff is a citizen of California, while Defendant is a citizen of Colorado. *See* ECF No. 85 ¶¶ 1–2, 3, 45. Second, Plaintiff alleges that the amount in controversy exceeds $75,000. *Id.* ¶ 3.

## III.    LEGAL STANDARD

A defendant may move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* "Although for the purposes of a motion to dismiss, [courts] must take all of the factual allegations in the complaint as true," *id.*, "[c]ourts are permitted to review 'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the document's authenticity.'" *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)).

## IV.    ANALYSIS

### A.    Defendant's Motion to Dismiss

As stated, the Third Amended Complaint alleges that in 2020, Plaintiff "learned through a separate lawsuit,

) (the "Weamer Litigation") . . . that Defendant made several false and incredibly damaging statements against Plaintiff." ECF No. 85 ¶ 47. Plaintiff alleges that Defendant made two false statements against her, in particular: one regarding Plaintiff filing a false police report and one regarding Plaintiff making false accusations of rape or sexual assault in the past. *Id.* ¶¶ 51–52, 57–62, 75–83, 84–92. Plaintiff alleges that Defendant made these statements in blog posts prior to the Weamer Litigation, *id.* ¶¶ 51, 62, but also appears to allege that Defendant made these statements directly to participants in

the Weamer Litigation, *id.* ¶¶ 77, 86.  The Colorado Court of Appeals has held that "each separate publication constitutes a separate and distinct claim for libel."  *Russell v. McMillen*, 685 P.2d 255, 258 (Colo. App. 1984); *see also Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385, 1390 (Colo. App. 1985).  Therefore, to the extent Plaintiff alleges that Defendant published each of the statements twice (once in a blog post before the Weamer Litigation, ECF No. 85 ¶ 51, 62, and once to the participants in the Weamer Litigation, *id.* ¶ 77, 86), each of those statements constitute a "separate and distinct claim."  *See Russell*, 685 P.2d at 258.  Therefore, there are four operative defamation claims here:

1.  a statement posted on the internet before the Weamer Litigation, stating "that Plaintiff 'filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price,'" ECF No. 85 ¶¶ 51–52, 75–83;

2.  a statement to Mr. Weamer and ████████ during the Weamer Litigation "that Plaintiff 'filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price,'" *Id.* ¶¶ 51–52, 75–83;

Plaintiff alleges that she first became aware of these statements on August 23, 2020. *Id.* ¶ 78.

3.  a statement posted on the internet before the Weamer Litigation, stating "that Plaintiff 'has [] made false allegation[s] of rape" or "sexual assault," *id.* ¶¶ 57–62, 84–92; and

4. a statement to Mr. Weamer,      , and Ms. Papac during the Weamer
   Litigation, stating "that Plaintiff 'has [] made false allegation[s] of rape" or
   "sexual assault," *id.* ¶¶ 57–62, 84–92.

Plaintiff alleges that she first became aware of these statements on September 18, 2020
"and then again on January 4, 2021." *Id.* ¶ 87. Plaintiff filed her first Complaint in this
case on September 11, 2020, ECF No. 1, and she filed the currently operative Third
Amended Complaint on July 28, 2021, ECF No. 85.

Because this Court has subject matter jurisdiction over this case based on diversity
of citizenship, the substantive law of the forum state applies to the claims, including
Colorado law regarding the statutes of limitations applicable to Plaintiff's defamation
claims. *See, e.g.*, *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)
("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and
federal procedural law"); *Guaranty Tr. Co. v. York*, 326 U.S. 99, 109–10 (1945)
(discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)) (holding that "a federal court in
a diversity case should follow State law" regarding applicable statutes of limitations),
*overruled on other grounds by Hanna v. Plumer*, 380 U.S. 460 (1965). The parties do not
dispute that Colorado law governs Plaintiff's defamation claims. ECF No. 90 at 4; ECF
No. 104 at 6; ECF No. 106 at 4–6.

Defendant argues that Plaintiff's Third Amended Complaint should be dismissed
because Plaintiff does not meet the heightened pleading standards for defamation cases;
the defamation claims are time-barred; and Defendant's statements as a potential witness

in other litigations are absolutely privileged.   Each of these arguments are addressed below, in turn.

### 1.   Pleading Standard

The Court first addresses Defendant's argument that Plaintiff has failed to meet what Defendant describes as the "heightened" pleading standard for defamation cases. Defendant cites *Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983) for the proposition that "[a] plaintiff asserting a defamation claim must plead the exact statements claimed to be false and defamatory."[2]  ECF No. 90 at 6.  However, that case was decided at the motion for summary judgment stage, rather than the motion to dismiss stage. Defendant also cites *Martinez v. Winner*, 548 F. Supp. 278, 334 (D. Colo. 1982), in which the District Court granted a motion to dismiss.  ECF No. 90 at 5–6.  However, although that case states that "[i]t is almost axiomatic that in defamation cases a certain degree of specificity is an essential in the pleadings," it goes on to state that pleading the exact words of the defamatory statement is not necessary and that "the substance of the matter complained of must be alleged."  *Martinez*, 548 F. Supp. at 334, *reversed and remanded in part*, 771 F.2d 424 (10th Cir. 1985); *see also Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385, 1390 (Colo. App. 1985) (finding that the "degree of specificity" required for a defamation claim was "lacking" where the claim only alleged that "defendants published or did cause to be published . . . defamatory statements"), *cited in* ECF No. 90 at 5–6.

Here, the Third Amended Complaint sets forth the substance of the allegedly defamatory statements, as described above.  *See* ECF No. 85 ¶¶ 47–74, 76, 85.

---

[2] Defendant also cites an Eighth Circuit case, which the Court need not address.

Defendant has not cited to case law stating that the Plaintiff must provide a copy, URL,

or other reference to the exact publication(s) that she is alleging are defamatory in order

to withstand a motion to dismiss. Therefore, Plaintiff has, for now, withstood dismissal of

her claims regarding the two alleged statements that were published in blog posts.[3]

## 2. Statute of Limitations

Given that Plaintiff has not alleged or admitted the exact blog post or other

publication where Defendant allegedly made the defamatory statements, the Court is

unable at this time to address Defendant's statute of limitations arguments. Although

Defendant has provided a blog post with the author name "anonymous123177," dated

December 16, 2013, that he "believes" Plaintiff's claims refer to and that contains the

language Plaintiff alleges constitutes the defamatory statements, ECF No. 90 at 9, 18–

19, Plaintiff has not alleged or admitted that this is the blog post to which she refers in the

Third Amended Complaint.[4]

The "general weight and trend of authority" in this area of the law indicates that the

statute of limitations in this context is determined by the date of publication.[5] *See Wade*

*v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). Colorado statute provides

---

[3] However, it strikes the Court that the Plaintiff should know what blog posts serve as the basis for her claims and that, therefore, protracted discovery should not be necessary to answer that question. Further, the Court reminds the parties that in a prior order of the Court, Plaintiff was instructed to "file one more amended complaint that . . . pleads only *what she believes she has evidence to prove*." ECF No. 76 (emphasis added). Therefore, if, as Defendant suggests in his Motion for Sanctions, Plaintiff knows, and has known at least since before filing the Third Amended Complaint, that the blog posts at issue were not written by Defendant, ECF No. 132 at 3–4; ECF No. 144 at 4, or that for any other reason the claims based on the blog posts would be frivolous, *see, e.g.*, ECF No. 160 at 1–5, then the Court would advise the parties to proceed with caution in any further pursuit of such claims at the expense of the time and resources of both parties and this Court.

[4] *See supra* note 3.

[5] *See infra* Section IV.B.

10

that tort actions for libel and slander "shall be commenced within one year after the cause of action accrues, and not thereafter." Colo. Rev. Stat. § 13-80-103(1)(a). Further, "a cause of action for injury to person . . . [or] reputation . . . shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Id.* § 13-80-108(1).

The Court must "apply Colorado law in determining how best to interpret a Colorado statute in a case resting on diversity jurisdiction." *Allen v. United Servs. Auto. Ass'n*, 907 F.3d 1230, 1237 (10th Cir. 2018). "In cases arising under diversity jurisdiction, the federal court's task is . . . simply to ascertain and apply the state law." *Wade*, 483 F.3d at 665 (internal quotations and citations omitted). "The federal court must follow the most recent decisions of the state's highest court. Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* at 665–66 (internal quotations and citations omitted). "In doing so, [the Court] may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* at 666 (internal quotations and citations omitted).

In 1984, the Colorado Court of Appeals held that "[a] cause of action in libel accrues when the defamatory statements are published." *Russell*, 685 P.2d at 258. However, the Colorado Court of Appeals later held that this rule "ha[d] been superseded by the General Assembly's enactment in 1986 of § 13-80-108(1)." *Taylor v. Goldsmith*, 870 P.2d 1264, 1265 (Colo. App. 1994); *see also Burke v. Greene*, 963 P.2d 1119, 1121

(Colo. App. 1998) (citing Colo. Rev. Stat. § 13-80-108(1)) ("Such a claim accrues on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."), *cited in* ECF No. 90 at 4.

Neither the parties nor the Court has identified Colorado case law interpreting Colo. Rev. Stat. § 13-80-108(1)'s provision that a claim accrues when the injury and its cause "*should have been known* by the exercise of reasonable diligence," as providing that a plaintiff "should . . . know[]" of a defamatory statement upon the date of its publication. However, the Court finds that "appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority" in this area of the law, *Wade*, 483 F.3d at 666, indicate that the statute should be interpreted in this way, such that defamation claims accrue upon the date of publication. *See, e.g.*, *Deatley v. Allard*, No. 14-cv-00100-RM-KMT, 2015 WL 134271, at *5 (D. Colo. Jan. 9, 2015) (Moore, J.); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463-CMA-BNB, 2013 WL 212640, at *4 (D. Colo. Jan. 18, 2013) (Arguello, J.)); *Phillips v. World Publ'g Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wa. 2011) (citing *Canatella v. Van De Kamp*, 486 F.3d 1128, 1134–36 (9th Cir. 2007)). Therefore, without allegations in the complaint, taken as true for purposes of a motion to dismiss, about the specific blog post(s) containing the allegedly defamatory statements and their date(s) of publication, the Court cannot at this time determine whether the blog post(s) underlying Plaintiff's claims were published outside of the statute of limitations.[6]

---

[6] *See supra* note 3.

### 3.   Litigation Privilege

However, the Court agrees with Defendant that any statements made in connection with the Weamer Litigation are protected by the absolute litigation privilege. The Colorado Court of Appeals has held that "[t]o be privileged, the alleged defamatory matter must have been made in reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it." *Club Valencia Homeowners Ass'n, Inc. v. Valencia Assocs.*, 712 P.2d 1024, 1027 (Colo. App. 1985). "The pertinency required is not technical legal relevancy, but rather a general frame of reference and relation to the subject matter of the litigation. Thus, the privilege embraces anything that possibly may be relevant." *Id.* (citations omitted). "The absolute privilege to defame in the course of judicial proceedings is not limited to statements during trial, but may extend to steps taken prior to trial such as conferences and other communications preliminary to the proceeding." *Id.* "Thus, letters sent to persons having collateral interests in the litigation are privileged to the extent that the alleged defamatory statements have some relation to the subject matter of the proposed litigation and are made in furtherance of the objective of the litigation." *Id.* The absolute litigation privilege shields not only defamation claims "but it also bars other non-defamation claims that stem from the same conduct," such as intentional infliction of emotional distress and invasion of privacy. *Buckhannon v. US West Commc'ns, Inc.*, 928 P.2d 1331, 1335 (Colo. App. 1996) (citing *Barker v. Huang*, 610 A.2d 1341 (Del. 1992)).

The Court may take judicial notice of the Declaration filed by the attorney ▮▮▮▮▮ ▮▮▮▮▮ in the Weamer Litigation that states that she had "reached out to witnesses who

13

[she] believe[d] may have relevant information" and that she learned that the Plaintiff in
the Weamer Litigation posted complaints about Paul Wang on social media and claimed
that he cheated on her. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,
322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources
courts ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular,
documents incorporated into the complaint by reference, and matters of which a court
may take judicial notice."); *Allen v. Clements*, 930 F. Supp. 2d 1252, 1259 (D. Colo. 2013)
("[A] court may properly consider facts subject to judicial notice, state court pleadings,
and matters of public record without converting a motion to dismiss into a motion for
summary judgment."); ECF No. 90 at 40. To the extent any of the claims against
Defendant in Plaintiff's Third Amended Complaint pertain to statements made as a
witness in the Weamer Litigation, those claims are DISMISSED as protected by the
absolute litigation privilege.

## B. Defendant's Motion for Sanctions

Defendant moves for sanctions against Plaintiff and her counsel under Rule 11 of
the Federal Rules of Civil Procedure. ECF No. 132. Defendant's arguments in favor of
sanctions are largely premised on Defendant's arguments in his motion to dismiss,
especially his argument that Plaintiff's claims are time-barred by the statute of limitations.
However, as stated above, the Court has declined, for now, to dismiss Plaintiff's claims
as time-barred. *See supra* Section IV.A.2.

As for Defendant's other arguments for sanctions against Plaintiff and her counsel,
which are also largely premised on the grounds for Defendant's motion to dismiss, the

Court is not, at this stage, inclined to impose sanctions, particularly not against counsel
who appear as appointed pro bono counsel.  As Defendant acknowledges, "Rule 11
sanctions are an extraordinary remedy."  ECF No. 132 at 9 (quoting *Greeley Publ'g Co.
v. Hergert*, 233 F.R.D. 607, 611 (D. Colo. 2006) (Shaffer, Mag. J.)).  As noted above,
Defendant's arguments rest on his belief that Plaintiff's Third Amended Complaint refers
to the specific publications that he attaches to his motion to dismiss, *see* ECF No. 90 at
9, 17–18, but discovery has not progressed far enough to confirm Defendant's theory that
these are the publications in question.[7]  *See, e.g.*, *Infant Swimming Rsch., Inc. v. Faegre
& Benson, LLP*, No. 07-cv-00839-LTB-BNB, 2007 WL 3274431, at *2 (D. Colo. Nov. 5,
2007) (Babcock, J.) ("While it appears that the factual allegations alleged in the amended
complaint are, at best, extremely tenuous and speculative, I cannot conclude at this early
stage in the litigation that they are wholly lacking in evidentiary support to the extent that
sanctions are warranted.").

For these reasons, the Court DENIES Defendant's motion for sanctions, ECF No.
132.  Therefore, the Court further DENIES AS MOOT Plaintiff's motion to strike
Defendant's supplement in support of the motion for sanctions, ECF No. 161.

## C.   Plaintiff's Objection to Magistrate Judge Hegarty's Order

Plaintiff also objects to Magistrate Judge Hegarty's November 8, 2021 Order, ECF
No. 113, granting Defendant's Motion to Reconsider, ECF No. 101, the Pseudonym
Order, ECF No. 13.  Plaintiff argues that Magistrate Judge Hegarty clearly erred in
refusing to deny Defendant's motion to reconsider on untimeliness grounds; by applying

---

[7] *See supra* note 3.

15

the wrong standard in determining whether Defendant presented "new" evidence that

justified reconsideration of the Pseudonym Order; and in finding that reconsideration was

appropriate to prevent "manifest injustice" and that the "balance of all facts" weighed in

favor of disallowing Plaintiff to continue to proceed under a pseudonym. ECF No. 117 at

2–14.

Magistrate judges are authorized to hear and determine any non-dispositive matter

referred to them. *Portley-El v. Milyard*, No. 06-cv-00146-PSF-MJW, 2006 WL 3371642,

at *2 (D. Colo. Nov. 21, 2006) (Figa, J.); *see* Fed. R. Civ. P. 72(a); 28 U.S.C.

§ 636(b)(1)(A). A magistrate judge's order will be deemed "clearly erroneous or contrary

to law" only if the reviewing court, on the entire evidence, is left with the "definite and firm

conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847

F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*,

333 U.S. 364, 395 (1948)). The "contrary to law" standard permits "plenary review as to

matters of law," but the Court will set aside a magistrate judge's order only if it applied the

wrong legal standard or applied the appropriate legal standard incorrectly. *Residences

at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1072

(D. Colo. 2019) (Martínez, J.).

First, the Court finds that Magistrate Judge Hegarty did not clearly err in refusing

to deny Defendant's motion for reconsideration on untimeliness grounds. In arguing

otherwise, Plaintiff does not address the fact that, as Magistrate Judge Hegarty's

November 8, 2021 Order points out, the Pseudonym Order did not alert Defendant—who

had not yet be served with the Complaint and, like Plaintiff, was not represented by

counsel—that he may object to that order within 14 days. *See* ECF No. 13. Because the
Pseudonym Order lacks this warning, the firm waiver rule likely does not apply. *See*
*Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2015) (holding that the
firm waiver rule "does not apply . . . when . . . a *pro se* litigant has not been informed of
the time period for objecting and the consequences of failing to object"). Counsel did not
enter their appearances for either party until four months after the Pseudonym Order was
entered. *See* ECF Nos. 52–54. Magistrate Judge Hegarty's other reasons for finding
that any delay in Defendant's motion for reconsideration were justified are similarly not
clearly erroneous or contrary to law.

Second, Plaintiff argues that Defendant had the opportunity to respond to the
previous motion for a protective order because, even though he had not yet been served,
he was "avoiding service," and therefore the evidence of what had transpired in the other
lawsuits against Plaintiff was not "new evidence" for purposes of the motion for
reconsideration. However, the Court finds no error in Magistrate Judge Hegarty's
decision that this evidence was not available to Defendant at the time of the Motion for
Protective Order, ECF No. 11, and Pseudonym Order, ECF No. 13, because he had not
yet been served in this case.

Third, the Court finds no error in Magistrate Judge Hegarty's finding that
reconsideration was appropriate to prevent "manifest injustice" and that the "balance of
all facts" weighed in favor of disallowing Plaintiff to continue to proceed under a
pseudonym. In particular, the Court finds no error in Magistrate Judge Hegarty's finding
that the balance of all facts lend themselves to the conclusion that it would be manifestly

unjust to permit Plaintiff to "hurl [her] accusations from behind a cloak of anonymity," while Defendant is forced to defend himself publicly. ECF No. 113 at 9 (quoting *Doe v. Merck & Co., Inc.*, No. 11-cv-02680, 2012 WL 555520, at \*3 (D. Colo. Feb. 17, 2012) (Mix, Mag. J.)). Plaintiff does not deny the information in the declarations of attorneys from other cases in which Plaintiff is involved, of which Magistrate Judge Hegarty took judicial notice, one of which states that Plaintiff, herself, contacted the media regarding one of those other cases. ECF No. 113 at 7 (citing ECF No. 94 at 53 ¶ 9). Nor, the Court might add, does Plaintiff deny that she, herself, has put blog posts on the internet concerning the subject matter at issue in this litigation. *See* ECF Nos. 160, 160-1. Even if those blog posts do not contain her name, the Court finds that it would not prevent "manifest injustice" to allow Plaintiff to continue to litigate "from behind a cloak of anonymity" after having already attempted to drum up attention on the internet about the subject matter of this and other cases in which she has claimed the need for anonymity.

For these reasons, the Court OVERRULES Plaintiff's objections, ECF No. 117, and AFFIRMS Magistrate Judge Hegarty's November 8, 2021 Order, ECF No. 113. Plaintiff shall not continue to operate under a pseudonym in this case. However, pursuant to D.C.COLO.LCivR 7.2, the Court DIRECTS the Clerk of the Court to place this Order under Level 1 Restriction for the same reasons that Magistrate Judge Hegarty placed his November 8, 2021 Order under Restriction.[8]

---

[8] To the extent Plaintiff maintains that Magistrate Judge Hegarty's or this Court's solution of placing these orders under Level 1 Restriction to avoid running afoul of other court orders to maintain Plaintiff's anonymity is insufficient, ECF No. 117 at 3, 14–15, Plaintiff may file a motion to restrict the other documents in this case that she believes are inappropriately revealing her identity in connection with those other cases.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, ECF Nos. 90, 92, is GRANTED IN PART and DENIED IN PART; Defendant's Motion for Sanctions, ECF No. 132, is DENIED; Plaintiff's Motion to Strike Defendant's Supplement to its Reply in Support of its Motion for Sanctions, ECF No. 161, is DENIED AS MOOT; and Plaintiff's Objections to Magistrate Judge Hegarty's Order Granting Defendant's Motion to Reconsider, ECF Nos. 117, 123, are OVERRULED, and Magistrate Judge Hegarty's Order, ECF Nos. 113, 114, is AFFIRMED. The Clerk of the Court is DIRECTED pursuant to D.C.COLO.LCivR 7.2 to place this Order under Level 1 Restriction.

DATED: June 13, 2022

BY THE COURT:

REGINA M. RODRIGUEZ
United States District Judge

19