No. 22-1200

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

JANE DOE,

*Plaintiff and Appellant,*

v.

PAUL WANG,

*Defendant and Appellee.*

Appeal from the United States District Court for the
District of Colorado in Case No. 1:20-cv-02765-RMR-MEH
The Honorable Regina M. Rodriguez

---

## APPELLANT'S OPENING BRIEF

---

JANE DOE
11151 Valley Blvd #4886,
El Monte, CA 91734

*Plaintiff and Appellant in Pro Se*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................ 1

JURISDICTIONAL STATEMENT ............................................................. 3

ISSUES PRESENTED .................................................................................. 3

STATEMENT OF THE CASE ..................................................................... 4

STANDARD OF REVIEW .......................................................................... 6

ARGUMENT ................................................................................................. 7

    I.      THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING WANG'S BELATED MOTION ................................... 7

    II.     THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING WANG'S MOTION BY ASSIGNING WEIGHT TO IRRELEVANT FACTORS WHILE NO ACTUAL PREJUDICE TO DEFENDANT PRESENT ....................................................... 10

    A.     Pseudonym Practice in Courts ......................................................... 11

    B.     Appellant's Substantial Privacy Interests in Proceeding Anonymously Outweigh The Judicial Presumption of Openness ............................. 12

    C.     Media's Code of Ethics to Protect the Identity of Sexual Assault Victims .......................................................................................... 20

    D.     Wang's Defense and Discovery ....................................................... 23

    E.     Wang Failed to Meet His Burden of Showing Actual Prejudice or Fundamental Unfairness ................................................................ 25

    F.     The Effect of Abusive Legal Tactic of Claiming False Prejudice and Unfairness .................................................................................... 26

    G.     The District Court Lacks Jurisdiction and Legal Authority to Overrule Decisions Made By Other Courts In Other Jurisdictions ................... 27

CONCLUSION ........................................................................................... 28

ORAL ARGUMENT STATEMENT ........................................................... 28

STATEMENT OF RELATED CASES ......................................................... 28

CERTIFICATE OF COMPLIANCE ........................................................... 29

CERTIFICATE OF SERVICE ..................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*accord James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993)......................................3, 11

*Coletti v. Cudd Pressure Control*, 165 F.3d 767 (10th Cir. 1999) .......................... 7

*Crouch v. Trinity Christian Ctr. of Santa Ana, Inc*., 39 Cal.App.5th 995 (Cal. Ct. App. 2019)................................................................................................13

*Dodson Int'l Parts v. Williams Int'l Co*., 12 F.4th 1212 (10th Cir. 2021)............... 8

*Doe v. Blue Cross & Blue Shield United of Wisc*., 112 F.3d 869 (7th Cir. 1997)...12

*Doe v. Bolton*, 410 U.S. 179 (1973) .....................................................................11

*Doe v. Colautti*, 592 F.2d 704 (3d. Cir. 1979) .....................................................16

*Doe v. Commonwealth's Attorney for Richmond*, 403 F.Supp. 1199 (E.D. Va. 1975) ..................................................................................................16

*Doe v. Del Rio*, 241 F.R.D. 154 (S.D.N.Y. 2006)..................................................17

*Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001).....................................................12

*Doe v. F.B.I.*, 218 F.R.D. 256 (D. Colo. 2003).....................................................18

*Doe v. Frank*, 951 F.2d 320 (11th Cir 1992) .....................................................10, 11

*Doe v. McConn*, 489 F. Supp. 76 (S.D. Tex. 1980)...............................................16

*Doe v. Merck & Co., Inc*., No. 11-cv-02680, 2012 WL 555520 (D. Colo. Feb. 17, 2012) .................................................................................................26

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981).................................................3, 10, 15

*Gordon v. Boyles*, 99 P.3d 75 (Colo. App. 2004) ................................................23

*Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118 (10th Cir. 1979) ....................... 6

*Morales-Fernandez v. INS*, 418 F.3d 1116 (10th Cir. 2015)................................... 7

*Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011) ...............................6, 11, 17

*Quigley v. Rosenthal*, 427 F.3d 1232 (10th Cir. 2005) .......................................... 7

*Roe v. Aware Woman Ctr. for Choice, Inc*., 253 F.3d 678 (11th Cir. 2001)...........10

*Roe v. Ingraham*, 364 F. Supp. 536 (S.D.N.Y. 1973) ...........................................11

*Roe v. Wade*, 410 U.S. 113 (1973) ......................................................................11

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne Jaffe*, 599 F.2d 707 (5th Cir. 1979) ..............................................................................3, 11

*Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226 (10th Cir. 2001) ............................................................................................ 7

**STATUTES**

28 U.S.C. § 1291 .................................................................................... 3

28 U.S.C. § 1331 .................................................................................... 3

28 U.S.C. § 1332 .................................................................................... 3

28 U.S.C. § 636 .................................................................................... 27

**OTHER AUTHORITIES**

Allison & Wrightsman, 1993 .............................................................. 14

Burgess & Holmstrom, 1979 .............................................................. 14

Burt, 1980 ........................................................................................... 14

Burt, 1998 ........................................................................................... 14

Estrich, 1987 ...................................................................................... 14

generally Susan Estrich, Rape, 95 Yale L.J. 1087 (1986) ................. 21

Herbert & Dunkel-Schetter, 1992 ...................................................... 14

*Limiting Disclosure on Rape Victims' Identities*, 64 S. Cal. L. Rev. 1020 (1991) .. 21

Lonsway & Fitzgerald, 1994 ............................................................... 14

Major & O'Brien, 2005 ....................................................................... 14

Miller & Kaiser, 2001 ......................................................................... 14

Symonds, 1980 ................................................................................... 14

Ullman, 1996a .................................................................................... 14

**COURT RULES**

10th Cir. R. 28.2(c)(3) ........................................................................ 28

FRCP Rule 26(a)(1) ............................................................................ 23

## INTRODUCTION

By requiring JANE DOE (Appellant) to proceed in her own name the district court becomes a co-perpetrator of PAUL WANG (WANG) who is being used for defamation and unauthorized disclosure of private matter. The district court wants Appellant to pay a higher and extra price for justice: a lifetime of being subject to social stigma. This court must end this travesty and miscarriage of justice.

Appellant, a rape victim currently resides in the State of California, filed this action on Sep 11, 2020. She listed only pseudonym in her Complaint and moved to remain anonymous in the case. The district court granted her request in an order issued on Nov 10, 2020 (Pseudonym Order).

Wang was served with the Pseudonym Order for two times, one by certified mail on Dec 16, 2020 and the other by personal service on Feb 5, 2021. On March 8, 2021 Wang's counsel entered her appearance. During a conference on April 8, 2021 Wang indicated that he was well aware of Appellant's lawsuits in other states and he would challenge Appellant proceeding under a pseudonym. On July 9, 2021 Wang emailed a request to the insurance company for the documents related to this case, apparently for his own defense.

At the end of August 2021, over eight months after Wang was first served with the Pseudonym Order, over six months since Wang's counsel entered her appearance, and after Wang effectively started discovery for his defense, Wang sought reconsideration of the Pseudonym Order.

1

The magistrate judge granted Wang's motion and Appellant timely filed her objection. The district court overruled Appellant's objection in an order issued on June 13, 2022. In its order, the district court found no clearly err in refusing to deny Wang's motion for reconsideration on untimeliness grounds despite Wang waited months to file his motion. Without identifying a single *specific* harm which would befall Wang as a result of allowing Appellant to proceed anonymously, the district court bolstered its ruling that it would be manifestly unjust to permit Appellant to "hurl [her] accusations from behind a cloak of anonymity," while Wang is forced to defend himself publicly. The district court observed that the blog posts do not contain Appellant's name, but concluded that it would not prevent "manifest injustice" to allow Appellant to continue to litigate "from behind a cloak of anonymity" after having already attempted to drum up attention on the internet about the subject matter of this and other cases in which she has claimed the need for anonymity.

For the reasons discussed below, the district court failed to deem eight months delay as untimely, incorrectly assigned weight to multiple irrelevant factors in deciding to allow or to deny a plaintiff to proceed anonymously, improperly discounted the re-victimization that revealing Appellant's identity would cause her, inappropriately relied on multiple cases that did not involve sexual assault, failed to consider that not a single *specific* harm was presented by Wang as a result of allowing Appellant to proceed anonymously, and ran afoul of numerous other

court orders, the district court's order should be reversed and Appellant should be permitted to maintain her anonymity.

## JURISDICTIONAL STATEMENT

The district court has jurisdiction over this matter under 28 U.S.C. § 1332 diversity jurisdiction and § 1331 federal question jurisdiction. Dkt. 1, p. 1; Dkt. 85, p. 1. The plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000. *Id.*

The district court granted Wang's motion to reconsider its November 10, 2020 order allowing Doe to proceed under a pseudonym. Dkts. 13, 113, 165. The appeal of an order denying appellant's anonymity is a final appealable order under the collateral order doctrine. *Doe v. Stegall*, 653 F.2d 180, 183 (5th Cir. 1981)[1]; *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979); *accord James v. Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993). This appeal was timely filed on June 27, 2022. Dkt. 168. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

What are the relevant factors in balancing the substantial privacy rights of a plaintiff against a presumption of openness in civil proceedings? Is the plaintiff's criminal record relevant? Is the result of the plaintiff's prior lawsuits relevant? Is

---

[1] This case is adopted as precedent by Eleventh Circuit. See *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the plaintiff's credibility relevant? Is a defendant's unfounded counter claim relevant?

Did the district court abuse its discretion in granting Wang's untimely motion to reconsider while he failed to justify his substantial delay, he provided no evidence of actual prejudice or specific harm if Appellant maintained her anonymity, the district court assigned weight to irrelevant factors against Appellant's anonymity, and the district court lacks jurisdiction and legal authority to overrule decisions made by other courts in other jurisdictions?

## STATEMENT OF THE CASE

Appellant sues to prevent the disclosure of her private matter and for compensation for defamation and the disclosure that has already happened. Dkt.1, p. 4. She filed her *pro se* Complaint against Wang on September 11, 2020. Dkt. 1. The Complaint alleges, among other things, that Wang fabricated that Appellant had falsely reported to authorities sexual assault and loss of passport to commit insurance fraud. Dkt. 85.

Appellant had a substantial privacy right that outweighed the customary and constitutionally-embedded presumption of openness in federal judicial proceedings. She filed her Request on November 4, 2020 for Protective Order and to Proceed Under a Pseudonym to prevent further harm from the stigma that can attach to victims of sexual assault. Dkt. 11. The Court granted Appellant's request and entered the Order on November 10, 2020 (Pseudonym Order). Dkt. 13.

4

Along with the request to waive service of summons, Wang was first served with the Pseudonym Order by certified mail. Dkt. 31-1, p. 2-5. USPS record shows that Wang received the certified mail on Dec 16, 2020. Dkt. 31-1, p. 5. After Wang refused to waive service of summons, the Pseudonym Order was personally served upon Wang on Feb 5, 2021. Dkt. 23. Wang was served with the Pseudonym Order for two times, one by certified mail on Dec 16, 2020 and the other by personal service on Feb 5, 2021.

On March 8, 2021 Wang's counsel entered her appearance. Dkt. 54. Parties held a status conference on April 8, 2021. Wang's counsel stated on the record that Wang would challenge Appellant proceeding under a pseudonym "based on all the cases that are currently pending in multiple states." Dkt. 74; Dkt. 117-1, p. 2-3. On July 9, 2021 Wang emailed a request to the insurance company for the 2013 insurance documents, apparently for his own defense.

Over eight months after Wang was first served with the Pseudonym Order, over six months since Wang's counsel entered her appearance, and more importantly, after Wang effectively started discovery for his defense, Wang sought reconsideration of the Pseudonym Order. Dkt. 94, 101. Appellant opposed. Dkt. 105.

Despite the district court elaborated no real impact on the presumption of openness of Appellant maintaining her anonymity other than several conclusory statements with no support of evidence, the Magistrate Judge granted Wang's

5

Motion on November 8, 2021, one year after the Pseudonym Order was entered. Dkt. 113.

After granting Wang's motion for reconsideration, the district court could have ordered Appellant to file an amended complaint under her real name if she wished to continue the lawsuit or stayed the case for Appellant to seek appellate review. Instead, without any prior warning, without giving Appellant any opportunity to consider whether she wanted to continue the prosecution of this case under her true name or seek appellate review, the district court immediately directed the Clerk of the Court to alter the case caption to reflect Appellant's legal name. Dkt. 113, p. 10. Such action is no different than rape, brutal, disrespectful, and senseless, in essence, deprivation of a victim's personal autonomy. No witness, victim, or litigant should be treated that way in a court of law.

Appellant timely objected to the Magistrate Judge's order. Dkt. 117. The district judge overruled Appellant's objection on June 13, 2022. Dkt. 165. This appeal timely follows. Dkt. 168.

## STANDARD OF REVIEW

A district court order denying a party's motion to proceed anonymously is reviewed for abuse of discretion. See *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979); *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011). A district court abuses its discretion if its ruling is based on an error of law or "if it fails to actually consider the circumstances of the case and to weigh the

6

relevant factors and instead follows a blanket rule in making its final decision." *Id.*

A district court's decision to grant or deny a motion for reconsideration is also reviewed for abuse of discretion. See *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001). Abuse of discretion is "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) (quotation omitted).

## ARGUMENT

I.   **THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING WANG'S BELATED MOTION**

In concluding that the Pseudonym Order lacks warning because it did not alert Wang—who had not yet be served with the Complaint and was not represented by counsel—that he may object to that order within 14 days, the district court's reliance is misplaced on *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2015) (holding that the firm waiver rule "does not apply . . . when . . . a pro se litigant has not been informed of the time period for objecting and the consequences of failing to object.") Dkt. 165, p. 16-17. Here, Wang did not merely fail to object within 14 days. Unlike any reasonable person exercising due diligence, Wang waited months to file his belated motion. See *Quigley v. Rosenthal*, 427 F.3d 1232, 1235 (10th Cir. 2005) (Finding motion for attorneys' fees untimely filed forty-five days after the entry of the amended final judgment.)

Along with the request to waive service of summons, Wang was first served

with the Pseudonym Order, Dkt. 13, by certified mail. Dkt. 31-1, p. 2-5. USPS

record shows that Wang received the certified mail on Dec 16, 2020. Dkt. 31-1, p.

5. After Wang refused to waive service of summons, along with the summons, the

Pseudonym Order was personally served upon Wang on Feb 5, 2021. Dkt. 23.

Wang was served with the Pseudonym Order for two times, one by certified mail

on Dec 16, 2020 and the other by personal service on Feb 5, 2021, as such he had

more than sufficient notice and opportunity to exercise his diligence to timely file a

motion for reconsideration.

Even if Wang argues that he was not represented by counsel until March 8,

2021, Dkt. 54, the six months delay until the end of August 2021 to file his motion

for reconsideration exceeded the bounds of reason, all of the circumstances being

considered, *Dodson Int'l Parts v. Williams Int'l Co.*, 12 F.4th 1212, 1225 (10th Cir.

2021), especially where (1) the majority of his "evidence" was available to him

between December 2020 and March 2021. Dkt. 94; and (2) on April 8, 2021, Wang

explicitly told the Court he had "the issue of the Jane Doe status" without the

discussion of "what Ms Doe has been doing in various litigations." Dkt. 74; Dkt.

117-1, p. 2.

Wang tries to excuse his untimeliness by stating that he had not obtained

8

Appellant's criminal record[2] which shows she was convicted on July 26, 2021. Dkt. 109, p. 4. Convicted criminals have the equal statutory and constitutional rights as every citizen does. It is hard to see why and how Appellant's criminal conviction is relevant to the decision of the Pseudonym Order. No court in the United States ever listed a plaintiff's criminal record as one of the factors that trial courts were to consider in evaluating a plaintiff's anonymity. Let alone a wrongful conviction. Wang's motion for reconsideration could have been filed significantly sooner as nothing required him to have a plaintiff's criminal record to file his motion when the majority of his "evidence" was available to him between December 2020 and March 2021. Dkt. 94.

Wang further alleged that Appellant was sanctioned for her litigation conduct, by another court, on July 22, 2021. Dkt. 109, p. 4. Again, it is hard to see why and how the result of Appellant's other cases is relevant to the privacy interest

---

[2] Doe is currently seeking habeas corpus relief due to the wrongful conviction and ineffective assistance of counsel by public defender. In August 2021 Doe discovered exculpatory evidence that was withheld by prosecution, including but not limited to the fake victim's inconsistent statements made to the police, his criminal record and violation of probation etc. The fake victim was previously subject to deportation and arrested for impersonation. Doe never had a dating relationship with the fake victim. In June 2022 new evidence came in and shows that the fake victim was married to another woman when he claimed he had a dating relationship with Doe and requested a domestic violence restraining order against Doe. In fact the fake victim has been married since 2010. The fake victim is a nudist and he sent his nudes to Doe when he did not even know Doe's full name. It is unclear how long this fake victim has been cheating on his wife with how many women. The fake victim's wife is ten years older than him. There is no record of their divorce as of July 2022. By contrast, prior to Doe crossed path with this nudist, she was never arrested, convicted, or even ticketed. Nor was she ever sued by anyone. Prior to knowing who this fake victim really was, despite his story does not hold any water, despite no one else testified seeing his nudes online other than the fake victim himself, the family court commissioner found this fake victim credible, all of which occurred when Doe did not have legal representation. Dkt. 94, p. 4.

presented here. In fact, Appellant has successfully received multiple judgments in her favor against Erin Dunkerly's client which Erin Dunkerly did not disclose in her declaration. How many cases Appellant won or lost in the past in such a flawed legal system has no bearing on her privacy interest. Let alone the merit of this particular case. No court in the United States ever listed the result of a plaintiff's prior lawsuits as one of the factors that trial courts were to consider in evaluating a plaintiff's anonymity. It is also outlandish and unheard of that the merit of a particular case should be based on the result of any party's prior lawsuits.

Wang provided nothing suggesting that the privacy interest of a successful litigant is greater than the privacy interest of a not-so-successful litigant, which is clearly not supported by authority or common sense.

Further, the district court elaborated three contexts enumerated by the Tenth Circuit in deciding whether a plaintiff should be allowed to proceed anonymously. Dkt. 113, p. 5-6. None of them includes a plaintiff's criminal record or result of a plaintiff's prior lawsuits. Wang's unreasonably lengthy delay in filing his motion to reconsideration is wholly unjustified under any circumstances as his so-called new evidence is entirely irrelevant.

The district court's failure to find Wang's dilatory conduct untimely was an arbitrary and manifestly unreasonable judgment.

## II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING WANG'S MOTION BY ASSIGNING WEIGHT TO IRRELEVANT FACTORS WHILE NO ACTUAL PREJUDICE TO DEFENDANT PRESENT

### A. Pseudonym Practice in Courts

To determine if the plaintiff should proceed anonymously the Court balances the substantial privacy rights of the plaintiffs against a presumption of openness in civil proceedings. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001); *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir 1992); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981); *accord James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993).

In evaluating whether a plaintiff has shown that he has such a right, the court "should carefully review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Frank*, 951 F.2d at 323 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979).)

The Supreme Court has given the pseudonym practice implicit recognition in the abortion cases, *Roe v. Wade*, 410 U.S. 113 (1973), and *Doe v. Bolton*, 410 U.S. 179 (1973). Most of the cases permitting the practice have involved abortion, birth control, and welfare prosecutions involving abandoned or illegitimate children. Privacy interests of sexual assault victims are no less worthy of protection than those of the plaintiffs in abortion cases.

*Roe v. Ingraham*, 364 F. Supp. 536, 541 n. 7 (S.D.N.Y. 1973), recognized the pseudonym procedure as proper where "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will

11

already have sustained the injury which by this litigation they seek to avoid." See also *Plaintiff B v. Francis*, 631 F.3d 1310, 1319 (11th Cir. 2011) (Acknowledging the use of fictitious names and limited use of identifying information does not unduly influence the fairness of a proceeding); *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) (Acknowledging the use of pseudonyms is proper where there is an important privacy interest to be recognized); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting anonymity to sexual assault victims).

Even the Seventh Circuit, which disfavors the use of fictitious names, has recognized that sexual assault victims are the paradigmatic examples of those entitled to proceed anonymously. *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997) (Posner, J) ("fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses.")

There is no dispute that this case involves matters of highly sensitive and personal nature as the district court admits. Dkt. 113, p. 8. "[W]here the issues involved are matters of a sensitive and highly personal nature,"... the normal practice of disclosing the parties' identities yields "to a policy of protecting privacy in a very private matter." *Southern Methodist Univ Ass'n v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979).

### B. Appellant's Substantial Privacy Interests in Proceeding Anonymously Outweigh The Judicial Presumption of Openness

Out of every 1,000 sexual assaults, 230 are reported to the police, 9 are referred to prosecutors and 5 will lead to a felony conviction, according to Department of Justice data analyzed by the Rape, Abuse and Incest National Network.

Rape is not an isolated incident that ends with the assault. In addition to enduring cognitive and emotional effects, a rape could also have a significant impact on how a survivor is perceived and treated by her community, and how she subsequently views herself. Social stigmatization following rape is a frequent and devastating occurrence that may impact a women's recovery long after the actual assault. Dkt. 11.

After a sexual assault or rape, victims are often subjected to scrutiny and mistreatment, unlike victims of other crimes. Rape victims may also become the target of slut-shaming, abuse, sexual slurs and cyberbullying. The deep-rooted stigma may occur at a personal level or within the family or community, but also at an institutional level, in the judicial system. Such as, Judge John F. Russo asked a woman if she had closed her legs to try to prevent an alleged sexual assault. See also *Crouch v. Trinity Christian Ctr. of Santa Ana, Inc.*, 39 Cal.App.5th 995 (Cal. Ct. App. 2019) [After learning about the victim's rape, despite blood is thicker than water, the victim's grandmother flew into a tirade and yelled at the her that she was stupid, it was really her fault, and she was the one who allowed it to happen.]

13

Feelings of guilt and shame fueled by many widespread misconceptions often discourage victims from coming forward. Widespread endorsement of rape myths such as that a woman cannot be raped against her will, a woman cannot be raped by her boyfriend or husband[3], women secretly want to be raped, a prostitute cannot be raped, or most accusations of rape are fabricated, appear to lead societies, cultures, communities, and individuals to blame survivors for the assault and exacerbate stigmatization. (Allison & Wrightsman, 1993; Burt, 1980; Estrich, 1987; Ullman, 1996a) Research has found that in many societies, blaming the survivor for the cause of the assault is a legitimate and acceptable assertion or belief (Burt, 1998; Lonsway & Fitzgerald, 1994). Survivors of rape have to deal not only with the potential physical and emotional effects of the rape, but also the social repercussions when others find out about the incident, regardless of the details of the incident. (Major & O'Brien, 2005; Miller & Kaiser, 2001) Following an assault, survivors may report "second injury" or "secondary victimization" which is rejection, lack of support, minimal help, and blame from their communities, families, and friends. (Burgess & Holmstrom, 1979; Herbert &

_____

[3] Erin Dunkerly distorted Plaintiff's "efforts to have a man she had been dating arrested and charged for a sexual assault" while in fact Plaintiff was raped on the first night she met her assailant. Dkt. 113, p. 6. Dawn Ceizler effectively took advantage of the rape myth by alleging "[f]ive years after they broke up, Plaintiff claims she 'learned' that she was raped by [the defendant] during their consensual relationship." Dkt. 113, p. 8. See https://pandys.org/articles/2021/for-women-raped-by-husbands-or-boyfriends/; https://www.psychologytoday.com/us/blog/the-compassion-chronicles/202003/intimate-partner-sexual-assault.

Dunkel-Schetter, 1992; Symonds, 1980) Regardless of the level of trauma caused by the rape, the stigmatization (both self- and public) that happens after the assault is a powerful stressor that will be related to greater psychological distress which is not mere public embarrassment. No other crime victims would face the same amount of stigmas as victims of sexual assault when coping with the trauma of assault. It demonstrates a manifestation of the fears that many rape survivors have when deciding how they want to proceed in the aftermath of an assault.

Appellant maintaining her anonymity will have little *if any* effect on the judicial presumption of openness.

> The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical. The public right to scrutinize governmental functioning . . . is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials . . . are not inevitably compromised by allowing a party to proceed anonymously.

*Stegall*, 653 F.2d at 185.

All proceedings are public. Keeping Appellant's identity anonymous will not obstruct the public's assurance of fairness preserved by a public trial and will not infringe on the public's right to scrutinize governmental functioning.

The public will be fully informed as to everything that occurs during all proceedings. This will allow the public to properly scrutinize governmental

15

function.

The district court's found that the need to divulge any details about the assault will be minimal because Wang was not accused of being the one to sexually assault Appellant. Dkt. 113, p. 10. This is misguided and contrary to the fact and law.

If Appellant's name is disclosed, she will face public scorn simply because of the word "rape." She never will be able to put the incidents behind her, no matter how long ago they occurred and no matter how old Appellant is. She will be forever linked to the rapes, despite how little details were disclosed. It is not the details about the assault attract stigma but the fact of being sexual assaulted itself. See *Doe v. Commonwealth's Attorney for Richmond*, 403 F.Supp. 1199 (E.D. Va. 1975) (allowing plaintiffs challenging state's anti-sodomy laws as un-constitutional to proceed anonymously, no details about any assault involved.)

The undisputed facts demonstrate that if Appellant's name is revealed, she will suffer from the social stigma of being marked as a "slut." Dkt. 11, p. 1; Dkt. 117, p. 1-2, 10. The existence of a social stigma which attaches to the plaintiff's disclosure can be enough to overcome the presumption of openness in Court proceedings. See e.g. *Frank*, 951 F.2d at 324; citing *Doe v. Colautti*, 592 F.2d 704 (3d. Cir. 1979) (where plaintiffs with mental illness proceeded anonymously); *Doe v. Commonwealth's Attorney for Richmond*, 403 F. Supp. 1199 (E.D. Va. 1975) (where plaintiffs who were homosexual proceeded anonymously); *Doe v. McConn*,

16

489 F. Supp. 76 (S.D. Tex. 1980) (where plaintiffs who were transsexual proceeded anonymously).

Being branded a "slut" is a social stigma that causes harm. See *Doe v. Del Rio*, 241 F.R.D. 154, 161 (S.D.N.Y. 2006) ("psychological harm is a class of injury that could justify pseudonymous litigation.") The district court makes no mention of the harm caused by stigma but minimizes, trivializes, and mis-characterizes the re-victimization of the disclosure of Appellant's identity. Dkt. 113, p. 9-10; Dkt. 165. The harm that Appellant will suffer if her name is revealed is separate and apart from harm that litigants generally suffer from having to recount traumatic events for a lawsuit. Appellant will be harmed anew if she will be branded as a slut, ostracized from her communities, and have opportunities which would have been available foreclosed to her. Appellant is seeking to protect herself from this new and serious harm, which is separate from any harm she experienced from testimony about the incidents as part of the litigation. For Appellant to heal, she has to re-establish a sense of control, move forward and develop identity that is not contaminated with the stigma of being linked to rape or slut.

By failing to give due consideration to the concerns Appellant raised about being forced to maintain the suit in her own name, the district court abused its discretion in finding that this was not a case in which the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. See *Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011) (Finding court abused its

17

discretion by discounting the psychological harm of plaintiffs'.)

Despite Appellant did sue to prevent the disclosure of her private matter, Dkt. 1, p. 4, the district court misrepresented that "Plaintiff is not suing in this Court in order to prevent the disclosure of [her] private [matter]; rather, [s]he is suing for compensation for disclosure that has already happened." citing *Doe v. F.B.I.*, 218 F.R.D. 256, 260 (D. Colo. 2003). Dkt. 113, p. 9. The district court's reliance on *Doe v. F.B.I.* is disturbing and inappropriate. First, *Doe v. F.B.I.* does not involve sexual assault. Second, no court in the United States ever listed a plaintiff must sue to prevent the disclosure of private matter as one of the factors that trial courts were to consider in evaluating a plaintiff's anonymity. See *Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011) (Anonymous plaintiffs sued only for damages stemming from pornographic videos the Defendants produced, instead of preventing the distribution of the videos.) The district court therefore abused its discretion by assigning weight to factors that were not relevant and that did not apply to the specific facts and circumstances of this case.

The district court found this was far from the typical case of sexual assault because Wang alleged that he was a victim of Appellant's dissemination of sensitive material[4]. Dkt. 113, p. 9-10. Wang's allegation is completely irrelevant to Appellant's privacy interest in this matter. The district court, however, erred by

---

[4] Doe sues Wang for his fabrication in this case which clearly demonstrate Wang's ability of fabrication.

stating that "The prejudice to Defendant and the nature of the parties' claims and defenses' weigh against whatever threat of re-victimization may occur in this particular case." Dkt. 113, p. 10.

No court in the United States ever listed a defendant's counter claim as one of the factors that trial courts were to consider in evaluating a plaintiff's anonymity. Wang could have sued Appellant for whatever allegations he made if they were true and Wang has evidence. Drawing distinctions between Appellant's sexual assault and the typical case implied that sexual assault victims could be treated differently. Such remarks reflected outdated, biased and insensitive views about sexual assault victims. Such remarks cannot help but diminish public confidence and trust in the impartiality of the judiciary. The district court therefore abused its discretion by assigning weight to factors that were not relevant and that did not apply to the specific facts and circumstances of this case.

The district court found Appellant had filed numerous lawsuits, several of which involved circumstances similar to this case.[5] Dkt. 113, p. 9. However, the district court failed to explain why and how publishing all these lawsuits but the name of Appellant, would not fully and adequately protect the public's legitimate interest in knowing all the facts involved. The district court further failed to explain why and how the public would be prevented from reaching its own

---

[5] It is unclear what specific similarity the district court was referring to.

19

conclusions in this case simply by not knowing Appellant's name after all lawsuits filed by Appellant were publicly available, including to Wang and the district court. The district court clearly failed to explain why and how the name of the plaintiff would change how the public would evaluate all facts of this case.

The district court's conclusion that everything goes directly to Appellant's credibility is misleading. Dkt. 113, p. 9. What determines a witness' credibility is whether her testimony is self-serving or inconsistent or whether there is corroborated evidence etc. It is never the name of the witness is a key factor of the witness' credibility unless this witness is a public figure. While Appellant is a total stranger to the jury, whether her name is Lisa or Eva is completely irrelevant to her credibility. Further, no court in the United States ever listed a plaintiff's credibility as one of the factors that trial courts were to consider in evaluating a plaintiff's anonymity. The district court therefore abused its discretion by assigning weight to factors that were not relevant and that did not apply to the specific facts and circumstances of this case.

**C. Media's Code of Ethics to Protect the Identity of Sexual Assault Victims**

In concluding that the "balance of all facts" weighed in favor of disallowing Appellant to continue to proceed under a pseudonym, the district court faulted Appellant for contacting the media regarding one of those other cases she filed. Dkt. 165, p. 17-18. First, there is a huge difference between contacting the media regarding a case and disclosing a victim's identity. Anyone can contact the media

anonymously. There is no evidence on the record that Appellant disclosed her identity to any media.

Even if Appellant did not report to media anonymously, the district court clearly failed to consider the fact that Appellant's identity has been well protected by journalists' code of ethics.

The great majority of news organizations in this country do not publish the names of alleged rape victims. This "conspiracy of silence" is based, in part, on the media's recognition that rape is more personal, traumatic, and stigmatizing than other crimes.' See Deirdre Carmody, *News Media's Use of Accuser's Name is Debated*, N.Y. Times, Apr. 18, 1991, at A22 "[T]he prevailing view has been that there is a particular stigma to being a rape victim that makes it incumbent upon news organizations to respect the victim's privacy." Some states even have statutes prohibiting the media from disclosing a rape victim's name.

Rape victims are treated differently than other crime victims by American society and the criminal justice system. See generally Susan Estrich, Rape, 95 Yale L.J. 1087 (1986) (discussing rape and focusing on sexism); Paul Marcus & Tara L. McMahon, *Limiting Disclosure on Rape Victims' Identities*, 64 S. Cal. L. Rev. 1020, 1030-36 (1991) (discussing the stigma attached to rape).

The general journalists' belief is that, given the stigma sexual assault carries in most societies, media should refrain from identifying victims of most sexual crimes, unless the victim is willing to speak publicly.

21

However, many journalists disagree with the argument that using a rape victim's name is permissible just because it is already out there. Journalistic policies not to name victims of sexual assault have ethical and humanitarian roots. They do so to protect victims from further scrutiny and stigma and not to instigate a trial of the case in the public square instead of in court.

Writing at Poynter.org about a kidnapping and rape case in California more than decades ago, Bob Steele, who teaches journalistic ethics at DePauw University, insisted that a victim's identifying himself or herself does not excuse journalists from learning the answers to important ethical questions before choosing to publish names.

"I would not identify them just because they said it was OK," he wrote. "I would want to know what crisis counseling they received before agreeing to go public. I would want to know how much professional help they'd received to deal with their trauma. I would want to know what guidance they'd received in making such a profound decision about agreeing to attach their name to the words, 'rape victim.' But, since I don't know the answers to my concerns, you won't find their names in this column."

Steele's concerns are salient ones. Refraining from naming them without knowing the details of their circumstances should be not only a journalistic prerequisite but a moral one.

It is without dispute that, by far, no journalist or media has ever published

Appellant's identity as a rape victim. They clearly will not do so. As such, Appellant's contact with media should not have weighed against anonymity. Contrary to Wang's false assertion, as of the district court's granting of Wang's motion for reconsideration, Appellant's identity had been kept confidential in all cases related to sexual assault.

Despite the fact that the district court found those blog posts do not contain Appellant's name, Dkt. 165, p. 18, despite no evidence whatsoever shows Appellant ever attempted to drum up attention to her identity, the district court abused its discretion by mischaracterizing the blog posts as "having already attempted to drum up attention" and determining that it would not prevent "manifest injustice" to allow Appellant to continue to litigate "from behind a cloak of anonymity" after having already attempted to drum up attention on the internet about the subject matter of this and other cases in which she has claimed the need for anonymity.

### D. Wang's Defense and Discovery

Substantial truth is a complete defense to defamation. *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). The prosecution record of Guochang Chen was disclosed to Wang pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure. It is crystal clear that Appellant did not falsely reported sexual assault as Wang claimed. Insurance company's record shows the following: On September 2, 2013, it is Wang, not Appellant, who submitted the proof of claim, including the

police report he alleged it was false. On September 3, 2013 it is Wang, not Appellant, called to initiate the insurance claim. On September 4, 2013 it is Wang, not Appellant, who emailed the insurance company to claim the insurance. On September 18, 2013 it is Wang, not Appellant, who called the insurance company for the claim amount. Check issued by the insurance was mailed to Wang's residence. It is Wang, not Appellant, who cashed the check issued by the insurance. Appellant never received a dime from the insurance. On July 9, 2021 Wang emailed a request to the insurance company for the 2013 insurance documents, apparently for his own defense. On July 12, 2021 Wang's counsel emailed a litigation hold to the insurance company. It is crystal clear Wang is a fabricator with malice.

When "[d]efendants are aware of the [p]laintiffs' identities and thus not barred from conducting a full range of discovery in building a defense for trial […] none of the normal harms threatened to defendants when plaintiffs proceed anonymously are present." *Francis*, 631 F.3d 1310, 1319 (11th Cir. 2011).

Appellant's identity is well known to Wang. He did not explain why he cannot conduct discovery if Appellant proceeds under a pseudonym. He presented no evidence showing how he cannot conduct discovery if Appellant proceeds under a pseudonym. In fact, Wang has no trouble contacting the insurance

24

company or whatever he wanted to, such as Erin Dunkerly and Dawn Ceizler[6].

Dkt. 94, pp. 51, 194. The district court therefore abused its discretion by not

requiring Wang to show actual prejudice. The district court also abused its

discretion by failing to consider Wang's actual need for discovery and defense

relevant to the specific facts and circumstances of this case.

### E. Wang Failed to Meet His Burden of Showing Actual Prejudice or Fundamental Unfairness

If prejudice has in fact occurred, Wang must so establish by clear and

convincing evidence. Wang presents no evidence that he will be prejudiced if

Appellant maintains her anonymity, for instance, he cannot mount a defense or

conduct discovery. In fact, Wang's 378 pages of smear campaign show the

opposite. Dkt. 94.

No evidence whatsoever in the record established a unique threat of

fundamental unfairness to Wang.  No evidence whatsoever in the record

established any fundamental unfairness to Wang. The only justification Wang

offers for stripping Appellant of her privacy is his crying, with crocodile tears, for

being forced to defend himself publicly. Dkt. 109, p. 6-8. Neither this circuit nor

eleventh circuit ever recognized simply being forced to defend publicly, without

actual prejudice, is fundamental unfairness. Labeling Wang's being forced to

defend publicly with a blanket description of "fundamental unfairness" or

---

[6] Wang had constant contact with Dawn Ceizler and his client throughout 2020 and 2021.

"manifestly unjust" shows that the district court did not exercise the requisite

diligence and consideration of all the relevant factors in this case and thus abused

its discretion.

**F. The Effect of Abusive Legal Tactic of Claiming False Prejudice and Unfairness**

Completely ignoring all controlling cases[7], the district court relied on *Doe v.*

*Merck & Co., Inc*., No. 11-cv-02680, 2012 WL 555520, at *3 (D. Colo. Feb. 17,

2012) (Mix, Mag. J.) in concluding that it would be manifestly unjust to force

Wang to defend himself publicly, without any supporting evidence of prejudice.

Dkt. 165, p. 18. This reliance is disturbing and inappropriate. First, *Doe v. Merck*

*& Co., Inc*. does not involve sexual assault. Second, whether it is unjust is not

based on whether Wang has to defend himself publicly. Whether it is unjust is

based on whether Wang can conduct discovery and mount his defense if Appellant

maintains her anonymity in the case. Moreover, the district court failed to

recognize the chilling effect of abusive legal tactic of claiming false prejudice and

unfairness. The chilling effect is well evident because the plaintiff in *Doe v. Merck*

*& Co., Inc*. eventually chose to dismiss the case and not proceed under his true

name to protect his privacy, without having the opportunity to present the merit of

---

[7] "Social stigma attached to the plaintiff's disclosure [in certain cases]" is "enough to overcome the presumption of openness in court proceedings." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992); *Plaintiff B v. Francis*, 631 F.3d 1310 (11th Cir. 2011); *Doe v. Neverson*, 820 F. App'x 984, 988 (11th Cir. 2020) (district court erred by failing "to consider that, in other cases, we have held that 'social stigma' is sufficient to warrant proceeding anonymously.")

his case.

Nothing would be easier to make Appellant walk away from this action by threatening her privacy. The real motive behind Wang's crying for unfairness is not his actual need for discovery or defense but to cause extra humiliation and harm to Appellant, more accurately, to force Appellant out of the case. Defendants' false claim of prejudice and unfairness becomes a sword allowing them to trample the statutory and constitutional rights of others and effectively deters any plaintiffs who value their privacy over a lawsuit. See *Plaintiff B v. Francis*, 631 F.3d 1310, 1319 (11th Cir. 2011) (Recognizing justice should not carry such a high price and the district court's failure to give due consideration to the concerns the Plaintiffs raised about being forced to maintain the suits in their own names.)

The district court abused its discretion by failing to consider the undesirability of an outcome adverse to the pseudonymous party and attributable to the party's refusal to pursue the case at the price of being publicly identified.

### G. The District Court Lacks Jurisdiction and Legal Authority to Overrule Decisions Made By Other Courts in Other Jurisdictions

In her Complaint, Appellant specifically identifies how she learned of Wang's defamatory statements—through another lawsuit that is identified by name and case number. Dkt. 85 ¶ 47. Appellant is proceeding under a pseudonym in that case (and defense counsel in that case has submitted a court filing of all of Appellant's cases on June 30, 2020, Dkt. 94, p. 201-207). Therefore, by granting Wang's motion for reconsideration and immediately changing the caption in this

case, Dkt. 113, p. 10, the district court already ran afoul of the Superior Court of California's protective order and numerous other court orders. The district court lacks jurisdiction and legal authority to overrule decisions made by other courts in other jurisdictions. See generally 28 U.S.C. § 636. Dkt. 117, p. 14-15.[8]

## CONCLUSION

For the foregoing reasons, the district court's decision has threatened the court's reputation for thoughtful and reasoned opinion. Plaintiff-Appellant respectfully requests that this Court reverse the district court's order granting Wang's motion to reconsider the November 10, 2020 order.

## ORAL ARGUMENT STATEMENT

Oral argument is requested to ensure that any shortcomings in Appellant's written presentation are revealed and corrected in colloquy with the Court.

## STATEMENT OF RELATED CASES

There are no prior or related appeals within the meaning of 10th Cir. R. 28.2(c)(3).

Respectfully submitted on July 12, 2022.

*/s/ JANE DOE*

*Plaintiff and Appellant in Pro Se*

---

[8] Appellant's objection on this ground was completely ignored by the district court. Dkt. 165.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,183 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2002 in 14-point Times New Roman.

Date: July 12, 2022

*/s/ JANE DOE*

*Plaintiff and Appellant in Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2022 I filed by mail the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit.

I certify that service will be accomplished by the appellate CM/ECF system on the parties set forth below:

**Katayoun A. Donnelly**
katy@kdonnellylaw.com, katayouna@hotmail.com

**Eugene Volokh**
volokh@law.ucla.edu, eugenevolokh@recap.email

Date:  July 12, 2022

*/s/ JANE DOE*

*Plaintiff and Appellant in Pro Se*



Scanned by
US Marshal

U.S. Court of Appeals, Tenth Circuit

Clerk's Office

1823 Stout Street

Denver, CO 80257

i Valley Blvd #4886,
Monte, CA 91734

RECEIVED
U.S. COURT OF APPEALS
10TH CIRCUIT

'2022 AUG 24 A

No. 22-1200

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JANE DOE,

*Plaintiff and Appellant,*

v.

PAUL WANG,

*Defendant and Appellee.*

Appeal from the United States District Court for the
District of Colorado in Case No. 1:20-cv-02765-RMR-MEH
The Honorable Regina M. Rodriguez

## APPELLANT'S REPLY BRIEF

JANE DOE
11151 Valley Blvd #4886,
El Monte, CA 91734

*Plaintiff and Appellant in Pro Se*

i

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................4

SUMMARY OF ARGUMENT ...............................................................5

ARGUMENT ..........................................................................................9

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN
           GRANTING WANG'S BELATED MOTION.....................................9

    A.    Wang's Motion for Reconsideration Was Untimely Filed ..................9

    B.    Every Motion Requires Grounds for Reconsideration........................13

    II.    THE DISTRICT COURT ABUSED ITS DISCRETION IN
           FORCING APPELLANT TO PROCEED UNDER HER REAL
           NAME .............................................................................................13

    A.    Public Right of Access is Not Absolute ..............................................13

    B.    Allowing Pseudonymity in This Case Would Never Be Unfair To
           Wang...................................................................................................14

    C.    Allowing Pseudonymity in This Case Will Not Undermine
           Factfinding, and Risk Jury Confusion................................................16

    D.    Volokh Cites Zero Authority Supporting That A Frequent or
           Vexatious Litigant Has Less Privacy Right As A Rape Victim ........17

    E.    "The Injury Litigated Against" Doctrine Is Applicable Here.............19

    F.    This Appeal Is Not Mere About Retroactive Pseudonymity ..............22

    G.    The District Court Lacks Jurisdiction and Legal Authority to Overrule
           Decisions Made By Other Courts in Other Jurisdictions...................24

CONCLUSION ......................................................................................24

CERTIFICATE OF COMPLIANCE......................................................25

DECLARATION OF JANE DOE ..........................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Been v. O.K. Indus.*, 495 F.3d 1217 (10th Cir. 2007) ................................................8

*Briscoe v. LaHue*, 460 U.S. 325 (1983) .................................................................21

*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997)................18

*Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015), aff'd, 672 F. App'x 48 (2d Cir. 2016)........................................................................................16

*Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005)...........................................................23

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) .........................................................6

*Doe v. Weinstein*, 484 F. Supp. 3d 90 (S.D.N.Y. 2020) ........................................23

*Elephant Butte Irrigation District v. United States Department of the Interior*, 538 F.3d 1299 (10th Cir. 2008) ...............................................................13

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ...............................................................21

*Lisker v. City of Los Angeles*, 780 F.3d 1237 (9th Cir. 2015) ................................22

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)...............21

*Morales-Fernandez v. I.N.S.*, 418 F.3d 1116 (10th Cir. 2005)...............................11

*Paine v. City of Lompoc*, 265 F.3d 975 (9th Cir. 2001) ..........................................21

*Plaintiff B. v. Francis*, 631 F.3d 1310 (11th Cir. 2011) .........................................20

*Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810 (10th Cir. 2006) ..........................................................................................20

*Rehberg v. Paulk*, 566 U.S. 356 (2012) .................................................................21

*Richison v. Ernest Group, Inc.*, 634 F.3d 1123 (10th Cir. 2011) ...........................13

*Servants of Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000).............................13

## COURT RULES

FRCP Rule 1 .......................................................................................................5, 9

3

## INTRODUCTION

JANE DOE (Appellant) sues PAUL WANG (WANG) for defamation involving rape. The district court granted Appellant's request to proceed pseudonymously in an order issued on Nov 10, 2020 (Pseudonym Order). Despite Wang was served with the Pseudonym Order and request to waiver service by certified mail on Dec 16, 2020 and required to waive service under Federal Rule of Civil 4 he refused to do so.

During a conference on April 8, 2021 Wang's counsel indicated that she was well aware of Appellant's lawsuits in other states and she would challenge Appellant proceeding pseudonymously. Wang's counsel also admitted that the issue was ripe at the April conference.

However, at the end of August 2021, over eight months after Wang was first served with the Pseudonym Order, over six months since Wang's counsel entered her appearance, and after Wang admitted the pseudonym issue was ripe on April 8, 2021, Wang sought reconsideration of the Pseudonym Order.

The magistrate judge granted Wang's motion for reconsideration, ordered the clerk to update the case caption to reflect Appellant's real name, and rejected Appellant's proposal to file a motion to stay. The district court overruled Appellant's timely filed objection in an order issued on June 13, 2022. This appeal follows because the district court has no right to force a litigant to use her real

name to proceed a case.

## SUMMARY OF ARGUMENT

Despite Eugene Volokh (Volokh) has no right to argue whether the district court abused its discretion in requiring Appellant to proceed under her real name, whether Wang's motion for reconsideration was timely filed and whether allowing pseudonymity in this case would be unfair to Wang, in the brief of Intervenor-Appellee Eugene Volokh (Volokh's Brief)[1] Volokh argues as if he were the defendant and his argument completely digresses from the specific facts and circumstances of this case. In Wang's brief, he simply repeats the district court's ruling and Volokh's Brief. Wang fails to address any of Appellant's argument.

Both Wang and Volokh have been trying to create undue complications for the court by adding irrelevant factors in evaluating whether a party may proceed pseudonymously. Volokh took a step further, arguing factors not even raised in the district court, e.g. whether a defendant's constitutional rights are implicated; how industrious reporters would cover a court case; media coverage; unknown witnesses may come forward for valuable information; being hard to depose witnesses; accuracy of fact-finding ; jury confusion; future adverse parties' ability to uncover information; settlement negotiating positions; no grounds are required

---

[1] Appellant addresses Volokh's Brief because her motion to strike Volokh brief is still pending.

for reconsideration etc. Volokh has no right to expand arguments and issues not raised in the district court.

Wang and Volokh have identified not a single witness or evidence that has been discovered in Wang's defense after the district court has directed the Clerk to alter the case caption to reflect Appellant's legal name for nine months. In the past nine months, Wang did not subpoena any third parties. Wang did not discover any new witnesses or evidence that were previously unknown to him due to Appellant's pseudonymity in the case.

1.     This is a defamation case involving rape, a matter with highly sensitive and personal nature. Wang seeks to bully Appellant into dropping out of the litigation to conceal his despicable behavior. Wang did not argue in front of the district court how his fabrication was constitutionally protected speech.

"Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). Appellant's privacy interests in this case outweigh the public right of access to judicial records and documents because the public has full access to all records and documents except only Appellant's real name. To properly evaluate the litigants' credibility is the job of jurors, not the general public.

2.     Volokh and Wang cite no authority recognizing frequent or vexatious litigants as one of the factors in deciding on the issue of anonymity. Other than a blanket assertion that Appellant's litigation history is directly relevant to her

6

credibility Volokh and Wang identify not a single particular fact that affects

Appellant's credibility in this case. What is fatal is Appellant's litigation history

was known to Wang prior to his filing of motion for reconsideration which means

Appellant's anonymity in this case did not prevent Wang from discovering

Appellant's litigation history. The purpose of Wang's filing of motion for

reconsideration was not to discover Appellant's litigation history or unknown

witnesses but to cause more harm to Appellant and bully her into dropping out of

the litigation.

3.     Volokh did nothing more than repeating the district court's

misrepresentation. Appellant did sue to prevent Wang's unreasonable disclosure of

her personal information. Dkt. 1, p.4. Requiring a plaintiff to sue to prevent

disclosure of personal information to be eligible to proceed the case

pseudonymously is contradicted to the purpose to protect the substantial privacy

rights of the plaintiffs. Appellant has demonstrated sufficient exceptional

circumstances justifying her use of a pseudonym in this proceeding.

4.     Volokh alleges that Law360 contains the docket of this case. Volokh's

Brief, pp. 8-9. Law360 is a subscription-based, legal news service operated by the

Portfolio Media company, a subsidiary of LexisNexis. Once retroactive

pseudonymity is granted there is no doubt Law360 will update the docket

accordingly. Volokh claims that it has been nine months since the district court

changed the case caption to reflect Appellant's real name but he failed to address

the different degree of harm caused between nine months and the years to come in the rest of Appellant's life. Next, Volokh tries to shift the blame to Appellant's counsel at the time for her failure to promptly move to stay the Magistrate Judge's order while it was being appealed. In fact, Appellant's counsel at the time did ask the Magistrate Judge whether Appellant could seek a stay but her proposal was outright rejected by the Magistrate Judge.

5.    Wang has been represented by counsel since March 2021. Prior to April 2021 the history of Appellant's many prior cases was available to Wang. When the Magistrate Judge asked Wang's counsel whether the issue was ripe Wang's counsel said so. The time taken for Wang to file his motion was unreasonable in violation of FRCP Rule 1. Volokh, as an intervenor, has no right to argue Wang's motion for reconsideration was timely filed or whether allowing pseudonymity in this case would be unfair to Wang. See *infra* pp. 6-8.

6.    Volokh's reliance is improper on *Been v. O.K. Indus.*, 495 F.3d 1217 (10th Cir. 2007). In *Been*, the first district court judge made an initial ruling that § 202(a) does not require proof of an injury to competition. In reviewing OK's motion for summary judgment eighteen months later, however, the second judge found persuasive authority from other circuits holding that such proof is required. The circumstances and the nature of the order are completely different from the current case. Volokh and Wang presented no evidence or authority supporting that a plaintiff's criminal conviction was a factor to be considered in deciding whether

8

she should be permitted to proceed pseudonymously. The only manifest injustice needs to prevent here is to prevent Wang from bullying Appellant into dropping out of the litigation by crying fake prejudice and unfairness.

## ARGUMENT

## I.   THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING WANG'S BELATED MOTION

First and foremost, Volokh is not entitled to argue whether the district court abused its discretion in requiring Appellant to proceed under her real name, whether Wang's motion for reconsideration was timely filed or whether allowing pseudonymity in this case would be unfair to Wang. See Appellant's motion to strike Volokh's brief.

## A. Wang's Motion for Reconsideration Was Untimely Filed

Justice does not require arbitrary determination of whether a motion is timely. Volokh does not cite any authority supporting that six months were a reasonable time to bring a motion to reconsider. Volokh mislead the court by falsely alleging that it was difficult to track Appellant's prior cases. But in fact, on April 8, 2021 Wang's counsel stated on the record as follows:

21    MS. DONNELLY: So we have multiple issues and

22    actually, I apologize, I should have probably brought that up

23    before we got into the scheduling order piece.

24    As the Court is aware, we have -- if this case does

9

25    not settle, we will be moving for a challenge of the Jane Doe

1    status, based on all the cases that are currently pending in

2    multiple states. And also asking that the Court would allow

3    us to communicate with other counsel in all of those cases

4    and get information so the Court can take judicial notice of

5    every proceeding that is held to this case.

See Dkt. 74, pp. 15-16.

As such, Wang and his counsel were not proceeding with due diligence because they were well aware Appellant's pending cases in multiple states prior to April 2021.

In arguing Wang's motion was timely Volokh intentionally misrepresented multiple facts. First, Volokh alleged that Appellant did not serve Wang until two months after the Magistrate Judge issued the order granting her motion. Volokh's Brief, p. 30. But in fact, Wang was served by certified mail with the Pseudonym Order on December 16, 2020. AOB, p. 5. Wang testified on April 8, 2021 as follows:

23    THE COURT: Okay. So did you receive in the mail,

24    a notice of the lawsuit and request to waive service?

25    MR. WANG: Yes, I did.

1    THE COURT: Okay. And then you also were later

2    served with a process in person, correct?

10

3      MR. WANG: Yes.

See Dkt. 74, pp. 3-4.

The Pseudonym Order was mailed to Wang along with the request to waive service and Wang refused to waive service. The delay of the effective service of the Pseudonym Order was caused by Wang's bad faith.

Second, Volokh alleged that Wang was never informed that he had fourteen days to object, nor was he informed of the consequences of not objecting. Volokh Brief, p. 30. But on March 8, 2021 Wang's counsel entered her appearance. Dkt. 54. As such, Volokh's reliance is misplaced on *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005) because Wang was no longer a pro se litigant since March 2021.

Third, Volokh intentionally left out the Magistrate Judge's reason for not putting limits on Wang's counsel. The Magistrate Judge did not set limits because he stated, on the record, that the issue was ripe right now. In fact, given the assumption of ripeness, it appears Wang's motion should have been filed in days, not months.

The entire relevant transcript reads as follows:

5      MS. DONNELLY: -- we still have the issue of the

6      Jane Doe status that has been granted here without the

7      discussion of the realities of what Ms. Doe has been doing in

8      various litigations and the fact that actually, if there's

11

9     anyone who needs to protected, it is Mr. Wang here, not Ms.

10    Doe.

11    So we would be asking that we address that issue.

12    And if the Court is willing to provide us with some

13    scheduling deadlines on that --

14    THE COURT: That's fine.

15    MS. DONNELLY: -- we would appreciate it.

16    THE COURT: Yeah. I mean, and -- you know, I will

17    just say this: I think there's a strong presumption that

18    proceedings in federal court are open. That's just the way

19    it is.

20    So -- but I think there's -- I'm not putting any

21    limits on you. So you can file that at any time, **because**

22    **it's ripe right now, right?**

23    MS. DONNELLY: Okay, Your Honor. Thank you so

24    much.

See Dkt. 74, p. 18.

Further, not setting any time limit is a clear violation of FRCP Rule 1 which

requires the court and the parties to secure the just, speedy, and inexpensive

determination of every action and proceeding. See *Elephant Butte Irrigation*

*District v. United States Department of the Interior*, 538 F.3d 1299, 1301 (10th

Cir. 2008) (denying a motion for reconsideration and concluding the Districts had failed to timely raise the issue); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (rejecting reliance on previously available facts in a motion to reconsider.)

## B. Every Motion Requires Grounds for Reconsideration

First, the argument was waived that an interlocutory motion did not require grounds for reconsideration. Arguments not raised before the district court are forfeited on appeal. See *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127–28 (10th Cir. 2011). Further, Volokh has no right to argue on behalf of Wang.

Even if Volokh has a right to argue, he fails to address the district court's mischaracterization of Appellant's blog posts as "having already attempted to drum up attention" despite the district court itself found those blog posts do not contain Appellant's name and no evidence whatsoever shows Appellant ever attempted to drum up attention to her identity. AOB, p. 23.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN FORCING APPELLANT TO PROCEED UNDER HER REAL NAME

As explained in Appellant's motion to strike Volokh's brief, Volokh is not entitled to argue whether the district court abused its discretion in requiring Appellant to proceed under her real name.

## A. Public Right of Access is Not Absolute

While the public right to access court proceedings is a longstanding principle

13

that is well-established across jurisdictions, so too is the personal right to privacy. If anyone has doubt about whether being raped is a matter of highly sensitive and personal nature, they can ask themselves a couple of simple questions: If I had a daughter and she was raped, would I gladly let the entire world know the fact that my daughter was raped? Would that announcement be just embarrassment?

Volokh argues that courts do not generally allow pseudonymity when a plaintiff sues alleging defamation but his missed the important point in this case. This is not a general defamation case but a case involving rape.

At the very least, courts must provide a safe space for plaintiffs' stories to be heard; if that safe space requires the use of a pseudonym, it should be considered. While anonymity may not be appropriate in every case, neither should it be discounted so quickly based on outdated considerations of the availability of information or misplaced notions that a plaintiff has voluntarily put herself in the public eye. Given the speed and permanency of information available today, courts need to give appropriate weight to a plaintiffs privacy interests and the severe, long-term consequences of exposing sensitive and private matters.

## B. Allowing Pseudonymity in This Case Would Never Be Unfair To Wang

As explained in Part I, Volokh is not entitled to argue whether allowing pseudonymity in this case would be unfair to Wang.

As the district court noted, Wang has cited no Tenth Circuit case adopting the factors used by Second Circuit. Dkt. 113, p. 5. Volokh failed to address

Appellant's argument that neither Tenth Circuit nor Eleventh Circuit ever recognized simply being forced to defend publicly, without actual prejudice, is fundamental unfairness. AOB, p. 25. Allowing a defendant to claim unfairness without showing actual prejudice is to enable, aid, and abet the defendant to bully the plaintiff into dropping out of her lawsuit.

Volokh's assertion that Appellant's use of pseudonyms in her past cases made it much harder for Wang to uncover her behavior in those cases is completely contradicted to Wang's 400 pages smear campaign. Dkt. 94.

First, Volokh's arguments of future adverse parties' ability to uncover information and settlement negotiating positions were never raised before the district court. What is more fatal is that Volokh failed to cite any legal authority elaborating that future adverse parties' ability to uncover information or settlement negotiating positions was one of the factors in considering on the issue of anonymity. Volokh further failed to explain why future adverse parties, backed by the trial court's power to compel and sanction, could not make proper discovery requests to uncover information, e.g. request a plaintiff to disclose past relevant lawsuits through interrogatories.

Volokh did not deny the district court's failure to consider Wang's actual need for discovery and defense relevant to the specific facts and circumstances of this case. AOB, p. 23-24. The evidence in this case is as solid as rock. Decl, Doe. 8-16.

As of today, neither Wang nor Volokh has established how the merit of Appellant's other lawsuits can prove or disprove the merit of this case. Wang's strategy is simply to derail the attention from his bad acts to Appellant's other lawsuits as an assault on her.

Contrary to Volokh's assertion without considering the particular facts and circumstances in this case, imbalanced settlement negotiating position[2] is not an issue here because settlement is never an option, especially after Appellant was forced to file this appeal. Further, such argument was not raised in district court.

## C. Allowing Pseudonymity in This Case Will Not Undermine Factfinding, and Risk Jury Confusion

In arguing pseudonymity can make the fact-finding process less reliable Volokh's reliance is misplaced on *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015), aff'd, 672 F. App'x 48 (2d Cir. 2016) (*Delta*). In *Delta*, the court granted summary judgment on all of Doe's claims except her battery claim while none of Doe's claims involved sexual assault. The Delta court observed that no witness besides Doe has claimed to have witnessed the act of battery and the Delta employee who allegedly perpetrated the battery has never been identified. Further, Doe cannot credibly claim a significant privacy interest because the events in question occurred in public. *Delta* has zero comparable facts to this case. Here, the

―――――――――――――

[2] Such argument was not raised in the district court.

16

records of criminal prosecution and insurance company are from independent third parties. This is not a "He said. She said." case. Since the events in question did not occur in public like a car accident or robbery, there is no unknown witness would step forward with valuable information. The district court abused its discretion by failing to conduct a careful and contextual examination of the circumstances of this particular case.

In our entire nation, no other circuit ever adopted Second Circuit's laundry list of ten, non-exhaustive factors. After the district court refused to adopt Second Circuit's laundry list of ten, non-exhaustive factors, Dkt. 113, p. 5-6, Volokh still persistently cites cases in the Second Circuit decided based upon those factors. Volokh has cited no Tenth or Eleventh Circuit case supporting that whether it is hard for defendant to depose witnesses is one of the factors to be considered on the issue of anonymity. Further, the argument of being hard to depose witnesses was never raised in the district court. Volokh's assertion of being harder to depose witnesses is "mere speculation." Volokh has failed to articulate in what manner, with respect to what topic, Appellant's pseudonomity makes Wang harder to depose which particular witness.

**D. Volokh Cites Zero Authority Supporting That A Frequent or Vexatious Litigant Has Less Privacy Right As A Rape Victim**

Volokh argues, in general terms, how industrious reporters would cover a court case and what they would want to read and check. Volokh's Brief, pp. 20-21.

17

First, this argument was not raised in the district court. Second, Volokh cites no authority recognizing how reporters would cover a court case is one of the factors in considering on the issue of anonymity. Third, allowing reporters to call people they know in the community regarding a rape victim amounts to harassment because the rape and insurance fraud here did not occur in public and were unknown to the community. Such calling is no different than disclosing the entire world Appellant's private and sensitive matter. Volokh's hypothetical assertion that reporters might look at the plaintiff's social media accounts is disturbing because Appellant does not use any social media accounts. Volokh's argument completely digresses from the specific facts and circumstances of this case.

Had the public's right to know been absolute as Volokh claims, no plaintiff in the entire nation should be permitted to proceed pseudonymously. Volokh did not deny Media's Code of Ethics with respect to the protection of the identity of sexual assault victims. Nor did he allege that such code of ethics did not exist.

There are exceptions to the important dimension of publicness. Records or parts of records are sometimes sealed for good reasons, including the protection of state secrets, trade secrets, and informers; and fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 871 (7th Cir. 1997). Volokh cites no controlling authority to override that exception.

18

Volokh and Wang cite no authority recognizing frequent or vexatious litigants as one of the factors in deciding on the issue of anonymity. Other than a blanket assertion that Appellant's litigation history is directly relevant to her credibility Volokh and Wang identify not a single particular fact that affects Appellant's credibility in this case. What is fatal is Appellant's litigation history was known to Wang and the public prior to his filing of motion for reconsideration which means Appellant's anonymity in this case did not prevent Wang from discovering Appellant's litigation history. The purpose of Wang's filing of motion for reconsideration was not to discover Appellant's litigation history but to cause more harm to Appellant and bully her into dropping out of the litigation.

Volokh claims that in a different case a family court had concluded that Appellant was evasive. Appellant has no trouble to present all evidence to show whether the family court made such conclusion to justify its questionable ruling and take advantage of the fact that Appellant was not represented by counsel. Such matter would devolve into a mini trial involving a prior case, create undue complications for the court and confusion for the jury.

## E. "The Injury Litigated Against" Doctrine Is Applicable Here

Despite Appellant did sue to prevent the disclosure of her private matter, Dkt. 1, p. 4, the district court misrepresented that "Plaintiff is not suing in this Court in order to prevent the disclosure of [her] private [matter]; rather, [s]he is suing for compensation for disclosure that has already happened."

19

Volokh's reliance is misplaced on *Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 812 n.2 (10th Cir. 2006). First, there is no controlling authority recognizing a plaintiff must sue to prevent disclosure of his or her identity in order to proceed pseudonymously. Second, such requirement makes absolutely no sense. Every plaintiff has to sue to prevent disclosure of his or her private matter in order to proceed pseudonymously? Such requirement is completely contradicted to the purpose to allow plaintiffs to proceed pseudonymously in order to protect the substantial privacy rights of the plaintiffs. If a plaintiff is suing for compensation for disclosure of her private matter that has already happened why does the court think further disclosure of her private matter by forcing her to proceed the case under her real name would not cause the plaintiff further harm?

Appellant's reliance is proper on *Plaintiff B. v. Francis*, 631 F.3d 1310 (11th Cir. 2011). First, the mere fact of being raped has "sensitive and highly personal nature." The plaintiffs in abortion cases under pseudonym were not minors. Volokh cites no authority to require being a minor to warrant a substantial privacy right. Same as STD or HIV. The mere fact to being diagnosed with STD or HIV has "sensitive and highly personal nature" whether to adults or minors. Second, the plaintiffs in *Plaintiff B.* sued only for damages stemming from pornographic videos the Defendants produced. They did not sue to prevent the distribution of the videos. Volokh cites no authority whatsoever that requires a plaintiff sue to prevent the

disclosure of her private matter in order to proceed pseudonymously.

Defamation is no way constitutionally protected statement. The actions of a potential witness are not absolutely immune merely because he labels himself a potential witness. Immunity analysis rests on functional categories, not on the defendant's status. *Briscoe v. LaHue*, 460 U.S. 325 (1983). The supreme court was careful to emphasize that witness immunity does not extend to "all activity that a witness conducts" before testifying, and noted in particular that it had "accorded only qualified immunity to law enforcement officials who falsify affidavits." *Rehberg v. Paulk*, 566 U.S. 356, 369 n. 1 (2012) (treating law enforcement officers the same as private witnesses; citing *Kalina v. Fletcher*, 522 U.S. 118, 129–131 (1997), and *Malley v. Briggs*, 475 U.S. 335, 340–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Appellant has alleged that Wang fabricated that Appellant committed several crimes which are unfounded. Dkt. 85 ¶¶ 51–52, 75–83, 57–62, 84–92. Wang's fabrication was not made to achieve any legitimate purpose of litigation but simply to cause harm to Appellant. The circumstances presented here fall squarely outside the carefully limited holding of *Rehberg*.

A pretrial, out-of-court effort to ... fabricate evidence ... is not "inextricably tied"—or tied at all—to any witness' own testimony, even [i]f a potential witness does happen to be involved. *Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001).

21

When defendants have "dual roles as witness and fabricator," extending protection from the testimony to the fabricated evidence "would transform the immunity from a shield to ensure" candor into "a sword allowing them to trample the statutory and constitutional rights of others." *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1243 (9th Cir. 2015).

In this unique case, the public has a strong interest in knowing the identity of the fabricator, not the victim of defamation. Wang was the person who submitted proof of claim as a claimant to the insurance company. Wang made all the contact with the insurance company. Wang was the person who cashed the check and took the money. On the contrary, Appellant never made contact with the insurance company for any claim. Nor did she receive a dime from the insurance company. Wang then fabricated that Appellant filed a false police report to commit insurance fraud. The public has a strong interest in knowing Wang's despicable character. It is so absurd that Wang never subpoenaed the insurance documents while he cried for unfairness and prejudice.

**F. This Appeal Is Not Mere About Retroactive Pseudonymity**

The manifest injustice here is Appellant was raped by the district court through altering the case caption to reflect Appellant's legal name without giving her any opportunity to appeal or even abandon the prosecution of the case. AOB, p. 6. Appellant did not forfeit any possible option but simply being raped again. Whether Appellant wanted to continue the prosecution of the case was her personal

22

choice and the district court had no right to make that decision for Appellant or force Appellant to proceed under her real name. See *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) (holding that the plaintiff should be allowed to dismiss the suit in lieu of revealing her name.)

Wang claims Appellant waived any arguments for continued pseudonymity by using her real name in her court filings from November 18, 2021. This is false. Appellant's counsel at the time asked the Magistrate Judge whether Appellant could seek a stay but her proposal was outright rejected by the Magistrate Judge. Appellant did not waive any arguments simply by not violating any court order.

It is not futile for this Court to retroactively grant Doe pseudonymity. Volokh cited no cases involving ongoing harassment. Due to the growing publication of Appellant's identity, she has continued receiving dead threats. She was forced to move out of her prior residence for her safety. It is unclear how long it would take to force her to move again. If this publication does not stop, Appellant will be living in horror for the rest of her life.

If this court does not end this travesty and miscarriage of justice, this case would be set as another living example as a booby trap by millions of defendants down the road to bully all plaintiffs into dismissing their lawsuits simply by crying false unfairness and stripping plaintiffs' privacy. In *Doe v. Weinstein*, 484 F. Supp. 3d 90 (S.D.N.Y. 2020), Doe voluntarily dismissed the case after the district court denied her motion to proceed pseudonymously. The manifest injustice courts

23

should prevent is to not be manipulated by defendants' false claim of prejudice and unfairness. Further, if retroactive pseudonymization were not allowed, in essence, every plaintiff would be denied any right to appeal while their requests to proceed pseudonymously were denied.

### G. The District Court Lacks Jurisdiction and Legal Authority to Overrule Decisions Made By Other Courts in Other Jurisdictions

Neither Volokh nor Wang addressed Appellant's argument that the district has already run afoul of other court's protective order by forcing Appellant to proceed under her real name.

### CONCLUSION

For the foregoing reasons, Volokh's brief should be stricken in its entirety because his argument falls outside his permitted scope of intervention. Plaintiff-Appellant respectfully requests that this Court reverse the district court's order granting Wang's motion to reconsider the November 10, 2020 order.

Respectfully submitted on August 24, 2022.

*/s/ JANE DOE*

*Plaintiff and Appellant in Pro Se*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,998 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2002 in 14-point Times New Roman.

Date: August 24, 2022

*/s/ JANE DOE*

*Plaintiff and Appellant in Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit.

I certify that service will be accomplished by the appellate CM/ECF system on the parties registered with CM/ECF system.

Date: August 24, 2022

*/s/ JANE DOE*

*Plaintiff and Appellant in Pro Se*

25

# DECLARATION OF JANE DOE

I, JANE DOE, declare and state as follows:

1.     I am the appellant in this appeal. I have personal knowledge of the facts stated herein. If called upon as a witness I could and would competently testify thereto.

2.     I do not use any social media accounts. I did not tell my neighbors, relatives, coworkers or friends that I was raped, except my mom, law enforcement, Paul Wang, my attorney at the time, and my therapists.

3.     I did not tell my neighbors, relatives, coworkers, or friends that my passport was lost, except law enforcement and Paul Wang.

4.     Prior to the publicity of this case I did not receive any dead threats.

5.     Due to the growing publicity of this case I have continued to receive dead threats. In July 2022 I was forced to move out of my prior residence for safety concern.

6.     My counsel asked the Magistrate Judge if she could seek a stay of the order granting Wang's motion for reconsideration but her proposal was rejected by the Magistrate Judge.

7.     Despite Paul Wang cried for unfairness of defending himself publicly, his attorney never subpoenaed any third parties for documents, not even the insurance company. As of today, I have not received any disclosure from Wang regarding any new witnesses or evidence he discovered due to the district court's forcing me

to proceed the case under my real name.

8.    On Feb 10, 2021 Paul Wang filed a document containing his signature, email address, and phone number with the district court marked as Dkt. 28. A true and correct copy of Dkt. 28 is attached hereto as Exhibit 1.

9.    On Sep 2, 2013 proof of claim was signed and submitted by Paul Wang as a claimant. The signature on the proof of claim is exactly the same as the signature on Dkt. 28. Paul Wang's bank statement was attached to that proof of claim. A true and correct copy of the signed proof of claim and attachment is attached hereto as Exhibit 2.

10.    On Sep 3, 2013 at 3:40 pm Claim was initiated by Paul Wang. Email was sent to student007@hotmail.com, the exact same email address Wang provided to district court. A true and correct copy of the correspondence is attached hereto as Exhibit 3.

11.    On Sep 4, 2013 Paul Wang emailed Travelex to claim trip interruption with attachment of police report. On Sep 5, 2013 Wang emailed Travelex the cancellation of reservation. A true and correct copy of the email correspondence is attached hereto as Exhibit 4.

12.    On Sep 11, 2013 at 2:34pm Paul Wang called the insurance to check status. Email was sent to student007@hotmail.com, the exact same email address he provided to district court. A true and correct copy of the call log is attached hereto as Exhibit 3.

27

13.   On Sep 11, 2013 at 2:59 pm Paul Wang emailed his credit card statement to Travelex, indicating that he paid $1337 for the air tickets and $62 for the insurance. A true and correct copy of the email correspondence is attached hereto as Exhibit 5.

14.   On Sep 18, 2013 at 6:02 pm Paul called for status and insisted on the inquiry of the claim amount. A true and correct copy of the call log is attached hereto as Exhibit 3.

15.   In 2013 I was a foreign visitor in the U.S. which was well aware by defendant Paul Wang. I did not have a social security number in 2013. I did not have a bank account in 2013 in the U.S. I did not cash the check issued by the insurance company. In fact, Paul Wang cashed the check and took the money. I received not a single dime from the insurance company. I never made any contact with the insurance company for any claim.

16.   After Paul Wang himself filed the insurance claim as a claimant and pocketed the money from insurance, he fabricated that I filed a false police report to commit insurance fraud.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: August 24, 2022                              */s/ JANE DOE*

EXHIBIT 1

Case 1:20-cv-02765-RBJ-MEH          Certificate of Service          Page 1 of 1

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO** 2021 FEB 10 AM 2: 15

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

**JANE DOE,**

                              **Plaintiff,**

**v.**

                                        Civil Action No.
                                        **1:20-cv-02765-RBJ-MEH**

**PAUL WANG,**

                              **Defendant.**

### CERTIFICATE OF SERVICE

I hereby certify that on February 9th, 2021, a copy of the <u>ANSWER OFDEFENDANT,</u>

<u>MOTION TO DISMISS, MOTION FOR SUMMARY JUDGEMENT, AND COUNTERCLAIM</u> which was

filed with the Colorado US District Court Clerk on February 8th, 2021, was mailed via first class

mail, postage prepaid, to the plaintiff JANE DOE at this address: <u>11151 Valley Blvd #4886, El</u>

<u>Monte, CA 91734.</u>



Paul Wang
Defendant
8935 Southhurst St
Highlands Ranch, CO 80129
720-323-1113
Student007@hotmail.com

20

EXHIBIT 2

31

**Claims Administration Office for Stonebridge Casualty Insurance**
**Travelex Claims**
4600 Witmer Industrial Estates, Suite 6
Niagara Falls, NY 14305
Telephone: 1-855-876-3447   Fax: 877-367-2496

| TRIP INTERRUPTION
NON MEDICAL CLAIM FORM |

**Please Note:** *Benefits under any coverage will not be paid for expenses reimbursed or services provided by any other source. Benefits cannot be duplicated under this Protection Plan.*

**PROOF OF CLAIM MUST BE SUBMITTED WITHIN 90 DAYS OF THE OCCURRENCE**

| Part I | GENERAL INFORMATION | | |
|---|---|---|---|
| Claimant's Name *(Last, First)*  WANG, PAUL   Claimant is Paul Wang | Cont. No./Booking No. 16641208 | | Date of Birth ▓▓▓▓▓▓ |

Full Address  11505 E. Virginia Place, Aurora, CO 80012  Paul Wang's residence in 2013.

| Home Phone No.  720 323 1113  Same phone # as Dkt. 28 | Business Phone No. |
|---|---|

| Full name of all persons claiming | Ages | Relationship to Claimant | Policy No. |
|---|---|---|---|
| 1) N/A | | | |
| 2) | | | |
| 3) | | | |
| 4) | | | |

Tour Operator's Name (e.g. Cruise Line, Airline, etc)  Cheap Oair

| Travel Supplier's Name  Cheap O air | Telephone No. |
|---|---|

Travel Supplier's Address  135 W 50th Street, Suite 500, New York, NY 10020

| Date Initial Deposit Paid for Trip 06/17/2013 *(MM / DD / YY)* | Date of Final Payment for Trip 06/17/2013 *(MM / DD / YY)* | Departure Date 07/03/2013 *(MM / DD / YY)* | Scheduled Return Date 09/11/2013 *(MM / DD / YY)* | Actual Return Date  *( MM / DD / YY )* |
|---|---|---|---|---|

| Departure City  Hong Kong, China | Destination *(City, Country)*  Denver, USA |
|---|---|

| Part II | EXPLANATION OF LOSS |
|---|---|

Type of claim  ☐ Cancellation   ☒ Interruption

Reason for cancellation/interruption/delay

Passport lost/stolen

| Total Amount of Claim (in US $) 1364.00 | Tour Cost Per Person (in US $) 1364.00 | Cruise Cost Per Person (in US $) N/A | Air Fare Per Person (in US $) 1364.00 |
|---|---|---|---|
| Date trip was cancelled, interrupted or delayed 08/31/2013 *(MM / DD / YY)* | Length of delay (hours, days) N/A | Did you receive a refund from the Travel Agent/Tour Operator after cancellation?  ☐ Yes  ☒ No | If Yes, please indicate amount N/A |

**For Trip Interruption, please indicate any additional transportation cost incurred**

| Type of Expense | Date incurred *(MM / DD / YY)* | Amount |
|---|---|---|
| 1) N/A | | |
| 2) | | |
| 3) | | |

**Please enclose the original receipts for the above claimed expenses**

**IMPORTANT – CLAIM CANNOT BE PROCESSED IF THIS FORM IS INCOMPLETE. PLEASE COMPLETE ALL APPLICABLE AREAS.**

32

## EXPLANATION OF LOSS CONTINUED

| Scheduled number of nights of Trip | Number of nights missed due to Interruption | Was the Interruption caused by the Common Carrier? (i.e. Airline, Cruise Line, etc) ☐ Yes ☒ No | If Yes, was any compensation received? ☐ Yes ☐ No |
|---|---|---|---|
| N/A | N/A | | |

| If Yes, please explain or indicate amount *(in US $)* | Name of Airline on which you returned home or rejoined Trip |
|---|---|
| N/A | |

| Point of departure | Destination |
|---|---|
| Denver, CO, USA | Hong Kong, China |

| Date returned home or rejoined Trip | Was this the lowest fare available? | Was a substitute flight provided by the Tour Operator/Airline? | Did you receive a credit for future travel? |
|---|---|---|---|
| N/A *(MM / DD / YY)* | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |

| Is the original unused return ticked enclosed? ☒ Yes ☐ No | If Not, Please Explain |
|---|---|
| | N/A |

IF THE INTERRUPTION WAS CAUSED BY THE COMMON CARRIER, PLEASE ATTACH WRITTEN NOTIFICATION FROM THE COMMON CARRIER REGARDING CANCELLATION OR PROVIDE DETAILS REGARDING DELAY AND TIMES.

| Part III | OTHER COVERAGE | |
|---|---|---|
| Did you purchase any portion of your trip on a Credit Card? ☒ Yes ☐ No | If Yes, name and type of Credit Card (e.g. Visa Gold card)  Chase Sapphire | |
| Do you have any other Insurance Coverage/Plans? (e.g. Travel, Credit Cards, etc) ☐ Yes ☒ No | Has your loss been reported to any other Insurance Company? ☐ Yes ☒ No | If Yes, which Company? N/A |
| 1) Name of Insurance Company | Policy No. | Telephone No. |
| Address of Insurance Company | | |
| 2) Name of Insurance Company | Policy No. | Telephone No. |
| Address of Insurance Company | | |

**I DECLARE THAT THE ABOVE INFORMATION IS TRUE, COMPLETE AND CORRECT.**
*I/We authorize any other insurance plan, under which I/We have coverage, to disclose information as may be necessary or to make payment in respect of my/our claim to Stonebridge Casualty Insurance Company directly. I/We also authorize Stonebridge Casualty Insurance Company to disclose to any other Plan, under which I/We have coverage, any and all information as may be necessary with respect to my/our claim.*

| Signature of Insured/Claimant   Same signature as Dkt. 28 | 9/2/2013 |
|---|---|
| | Date   *(MM / DD / YY)* |
| Signature of Insured/Claimant | Date   *(MM / DD / YY)* |

33

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment | Blueprint Payment |
|---|---|---|---|---|
| 08/01/13 | $1,905.64 | $25.00 | $84.00 | $123.86 |

Account number: ████████ 6643

$ _____

Make your check payable to:
Chase Card Services.
Please write amount enclosed.
New address or e-mail? Print on back.

████████████ 643000084000019056400012386000000000

33847 BEX Z 18513 D
PAUL M WANG
11505 E VIRGINIA PL
AURORA CO 80012-2257

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

*Paul Wang's residence in 2013*

5000 1602 8  ████████ 66436

## CHASE ◆
## SAPPHIRE℠

Manage your account online:
www.chase.com

Customer Service
1-800-493-3319

Additional contact information on back ⇨

### ACCOUNT SUMMARY

Account Number: 4147 2021 1930 6643

| | |
|---|---|
| Previous Balance | $313.90 |
| Payment, Credits | $0.00 |
| Purchases | +$1,551.63 |
| Cash Advances | $0.00 |
| Balance Transfers | $0.00 |
| Fees Charged | +$25.00 |
| Interest Charged | +$15.11 |
| New Balance | $1,905.64 |
| Opening/Closing Date | 08/05/13 - 07/04/13 |
| Credit Access Line | $18,700 |
| Available Credit | $0 |
| Cash Access Line | $3,740 |
| Available for Cash | $0 |

### PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $1,905.64 |
| Payment Due Date | 08/01/13 |
| Minimum Payment Due | $59.00 |
| Past Due Amount | $25.00 |
| Total Minimum Payment Due | $84.00 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $35.00 and your APR's will be subject to increase to a maximum Penalty APR of 29.99%.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 10 years | $3,462 |
| $66 | 3 years | $2,390 (Savings=$1,072) |

If you would like information about credit counseling services, call 1-866-797-2885.

Please pay the Minimum Payment shown at the top of this statement. It includes any past due and amounts over the credit access line. The minimum payments used to calculate the estimates shown in the above table do not include past due or amounts over the credit access line.

### ULTIMATE REWARDS® SUMMARY

| | | |
|---|---|---|
| Previous points balance | 321 | Start redeeming today. Visit Ultimate Rewards® at www.ultimaterewards.com |
| + 1 Point per $1 on all other purchases | 1,552 | |
| + 1 Point per $1 earned on dining | 67 | |
| + Bonus points on Ultimate Rewards Travel | 0 | |
| + Points transferred to another account | -321 | |
| = Total points available for redemption | 1,619 | |

As a Chase Sapphire customer you earn 1 point per dollar on all purchases, and an additional point for each dollar you spend when dining at restaurants. Plus, you earn an additional point per dollar spent when you book airfare and hotel accommodations online through Ultimate Rewards®. Learn more about your card benefits at www.chase.com/ultimaterewards

### BLUEPRINT℠ SUMMARY

Here is a summary of your plan totals for this month:

| Full Pay | Split | Finish It | BLUEPRINT Payment | $123.86 |
|---|---|---|---|---|
| $66.94 | For details go to www.chase.com/blueprint | For details go to www.chase.com/blueprint | | |

NOTE: Pay this amount to stay on track with your Blueprint plan(s). This amount includes your minimum payment due, so only one payment is needed.

See the BLUEPRINT Feature Activity section of this statement for more details on this month's activity.



0000001 FI833338 O 13          600  N  Z  04   13/07/04   Page 1 of 3          06530   MA MA 33847   1651000013000538470

**This Statement is a Facsimile - Not an original**

X 0419

34

Statement Date:   06/05/13 - 07/04/13
Account Number:   4147 2021 1930 6643
Page 2 of 3
OVER

**Paul Wang's credit card statement. In June 2013 Plaintiff was not in the U.S.**

## ACCOUNT ACTIVITY

| Date of Transaction | | Merchant Name or Transaction Description | $ Amount |
|---|---|---|---|
| | | PURCHASES | |
| 06/03 | | IKEA CENTENNIAL CENTENNIAL CO | 8.83 |
| 06/02 | | THE HOME DEPOT 1501 AURORA CO | 53.31 |
| 06/05 | | BROCK & COMPANY - 352 MALVERN PA | 3.42 |
| 08/03 | | HARBOR FREIGHT TOOLS 59 AURORA CO | 32.38 |
| 06/15 | | SUSHI KATSU GREENWOOD VLG CO | 29.69 |
| 06/19 | | CHEAPOAIR.COM AIR 888-793-4229 NY | 62.00 |
| 06/18 | | AMERICAN-AI 0017287055136 NEW YORK NY | 1,337.00 |
| | 070313 1 N | HKG    NRT | |
| | 2 N | NRT    LAX | |
| | 3 NX | LAX    DEN | |
| | 4 NO | DEN    ORD | |
| 06/22 | | SUSHI KATSU GREENWOOD VLG CO | 25.00 |
| | | FEES CHARGED | |
| 07/01 | | LATE FEE | 25.00 |
| | | TOTAL FEES FOR THIS PERIOD | $25.00 |
| | | INTEREST CHARGED | |
| 07/04 | | PURCHASE INTEREST CHARGE | 15.11 |
| | | TOTAL INTEREST FOR THIS PERIOD | $15.11 |

**$62 paid for insurance. $1337 paid for air tickets. All was paid by Paul Wang.**

### 2013 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2013 | $25.00 |
| Total interest charged in 2013 | $15.11 |

Year-to-date totals reflect all charges minus any refunds applied to your account.

## INTEREST CHARGES

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Balance Type | Annual Percentage Rate (APR) | Balance Subject To Interest Rate | Interest Charges |
|---|---|---|---|
| PURCHASES | | | |
| Purchases | 15.24% (v) | $1,206.28 | $15.11 |
| CASH ADVANCES | | | |
| Cash Advances | 19.24% (v) | -0- | -0- |
| BALANCE TRANSFERS | | | |
| Balance Transfer | 15.24% (v) | -0- | -0- |

(v) = Variable Rate                                             30 Days in Billing Period

Please see Information About Your Account section for the Calculation of Balance Subject to Interest Rate, Annual Renewal Notice, How to Avoid Interest on Purchases, and other important information, as applicable.

## BLUEPRINT FEATURE ACTIVITY

☑ **Full Pay**                              Full Pay Payment Due:  **$66.94**

Below is your spending in your Full Pay categories. You can avoid interest when you pay these purchases in full each month, even when you carry a balance. Remember, you can change your categories any time.

| Full Pay Category | Category Spending | Number of Transactions |
|---|---|---|
| Restaurants | $66.94 | 4 |
| Departmt/Clothing Store | $0.00 | 0 |
| Drugstores | $0.00 | 0 |
| Entertainment | $0.00 | 0 |
| Gas Stations | $0.00 | 0 |
| Grocery Stores | $0.00 | 0 |
| Health Club/Memberships | $0.00 | 0 |
| Dry Cleaner/Laundromats | $0.00 | 0 |
| Office Supply Stores | $0.00 | 0 |
| Salon/Beauty Supply | $0.00 | 0 |
| Transit | $0.00 | 0 |
| Utilities | $0.00 | 0 |
| Wholesale/Discount Club | $0.00 | 0 |
| All Blink Purchases | $0.00 | 0 |
| Total | $66.94 | |

35

**This Statement is a Facsimile - Not an original**

X  0000001   FIS33336 D 13          000   N  Z4   13/07/04       Page 2 of 3       06539   MA MA  33847   185100001300033384702

## BLUEPRINT FEATURE ACTIVITY  CONTINUED



**Full Pay Historical Spending**

Your Full Pay has been activated, as requested.  To avoid interest on your Full Pay purchases, make purchases in these categories and pay them in full each month.  Paying your Blueprint payment will satisfy your account minimum due and your Full Pay purchases.



EXHIBIT 3

3/10/22, 9:21 AM

ORIS - PROD

ORIS - PROD - Version 4.11.96439

Log Out

| Home | Organization | Policy | Claims | Reports | Accounting | Activities | Utilities |

**View**
- Claim Info
- Policy Connections (0)
- Activities (17) »
- Documents (11)
- Tasks (0/3)
- Notes (0)
- Workflows (0)
- Policy Summary
- Events (9)
- Payees (0)

**Actions**
- Change Status

Insured: [redacted]
Plan: 2014 - cheapOair Base (TXS-OABase)
Benefit: Trip Interruption (TI)

Opened: jbotelho (09/06/2013)
Closed: dmcnally (09/17/2013)
Loss Date: 08/31/2013

Travel Dates: 07/03/2013 - 09/12/2013
Application Date: 06/18/2013
Effective Date: 06/19/2013

Branch: FAREPORTAL INC (32-0493)
Reserve Available: 0.00
EOC Num: 2014-0112

Admin Overview: Not Available

[Return]

Claim: 2014713842-1   Policy: 2014713842   ... / CLOSED / Trip Interruption ∨

**Activities**

Ref Nam: (all)   Activity Type: (all)

[Add Activity]

| Date | Type | Ref Num | Activity Type | Body | Email To / Subject | Documents | Recorder |
|------|------|---------|---------------|------|--------------------|-----------|----------|
| 12/15/2021 01:10 PM | Claim | 2014713842-1 | Miscellaneous | Miscellaneous Documents from file have been uploaded. | | Police Report (594888).pdf | |
| 12/15/2021 09:59 AM | Claim | 2014713842-1 | Review | Note to File | File retrieved from to storage. File contents to be scanned to ORIS and original file to be held in the office. | CC Statement (594887).pdf / TNM Form (594884).pdf / Email from Mukesh Thakkar (594883).pdf / Emails from Paul Wang (594886).pdf / Copy of RA Sheets & Notes from Examiner (594885).pdf | Sarah Williams |
| 12/07/2021 01:18 PM | Claim | 2014713842-1 | Review | Note to File | No action needed regarding subpoena at until received. | Emails from Paul Wang (594885).pdf | Marnie English |
| 12/07/2021 01:11 PM | Claim | 2014713842-1 | Incoming Email | CL-Legal | Emailed management regarding possible subpoena.

Dec 7, 2021
Email from Paul Wang

Hello Travelex,

Please preserve all documents for Policy #: 2014713842

We will be sending subpoena for all documents and cashed check copies/information soon for a federal lawsuit.

Thanks, | FW: Auto Reply RE EXTERNAL Re Policy # 2014713842 Correspondence Letter (Thread 807492) (893180).pdf | Debbie McNally / Cindy Dungavel |

https://pas.orican.com/ORIS/Claim/ClaimViewActivities.aspx?navrep=true

1/3

3/10/22, 9:21 AM

https://pas.orican.com/ORIS/Claim/ClaimViewActivities.aspx?havrep=true

*29*

ORIS - PROD

| Date | Record | Number | Type | Category | Description | User |
|---|---|---|---|---|---|---|
| 07/14/2021 11:23 AM | Claim | 2014713842-1 | Review | Note to File | Paul<br>show less<br>Management has already been advised of the email received from Paul Wang. Transamerica is being contacted as per CT's activity below. Emailed CT to advise an email is now submitted from lawyer.<br><br>**FW EXTERNAL Legal Hold - Re Policy # 2014713842 (368116).pdf** | Debbie McNally |
| 07/14/2021 11:17 AM | Claim | 2014713842-1 | Incoming Email | CL-Legal | Email from Azizpour Donnelly, LLC<br>July 14, 2021<br>From: Cassandra Timms<br>Sent: Wednesday, July 14, 2021 11:15 AM<br>To: Angela Madathil<br>Cc: TIS Reviews ; CC Supervisor<br>Subject: RE: [EXTERNAL] Policy #: 2014713842 Correspondence Letter - claims documentation request<br>Good morning Angela –<br>We are aware of an inquiry from an individual by the name of Paul Wang and his attorney. This is not the insured on this policy, so are unable to provide policy/claim details. We will be consulting Transamerica.<br>Thanks for providing the heads-up.<br>Cass<br>Cassandra Timms<br>Vice President | A&S Operations<br>T: 905.523.5936 x1353 | F: 866.551.1704 | TF: 800.465.0061 x1353<br>ctimms@orican.com<br>Old Republic Canada | Old Republic Insurance Group<br>100 King St W., Hamilton, ON L8N 3K9<br>www.orican.com<br>show less<br><br>**RE EXTERNAL Policy # 2014713842 Correspondence Letter - claims documentation request (368154).msg** | Cindy Dungavel |
| 07/14/2021 11:16 AM | Policy | 2014713842 | Incoming Email | CL-Legal | | Brenda Lupton |
| 03/12/2021 04:36 PM | Claim | 2014713842-1 | Incoming Call | CL-Insured | Insured's friend called to ask about status of claim. He asked if payment was issued. Explained that yes, however I cannot release details as I can only provide to insured directly. He advised that this person has filed lawsuit against him. Apologized but advised legally without written auth I cannot provide at this time. He wanted me to note that they may have to subpoena records for lawsuits. Advised would note file.<br>show less | Melissa Charko |
| 09/18/2013 06:02 PM | Claim | 2014713842-1 | Incoming Call | CL-Insured | Insured boyfriend called for status I adv check issued Sept 17th. He insisted on the amount I adv to have the insured contact us. | Emmanuel Kimenyi |

3/10/22, 9:21 AM

https://pas.orican.com/ORIS/Claim/ClaimViewActivities.aspx?navrep=true

ORIS - PROD

| Date/Time | Type | Number | Activity | Status | Description | | Name |
|---|---|---|---|---|---|---|---|
| 09/17/2013 11:02 AM | Claim | 2014713842-1 | Incoming Mail | CL-Insured | Sept 17, 2013<br>Note from Mukesh Thakur | | Cindy Dungavel |
| 09/17/2013 08:32 AM | Claim | 2014713842-1 | Review | File to Checking | UNUSED RETURN TICKET IS $673.00.<br><br>TICKET COST IS $1346.00. INSURANCE IS NON-REF.<br><br>ALSO - POLICY IS FOR XINGFEI LUO. ALL DOCS ON FILE RELATE TO THIS PERSON. PAYMENT IS TO THE INSURED. THERE IS NO AUTH ON FILE TO PAY A THIRD PARTY.<br>show less | | Debbie McNally |
| 09/12/2013 08:40 AM | Claim | 2014713842-1 | Incoming Email | CL-Insured | Sept 11, 2013<br>Note from Paul Wang<br>CC Stat ement | | Cindy Dungavel |
| 09/11/2013 02:34 PM | Claim | 2014713842-1 | Incoming Call | CL-Insured | Paul called to check status. Advised requesting POP. He advised insured hasnt returned home and has cancelled return ticket. | | Maja Dodik |
| 09/10/2013 01:39 PM | Claim | 2014713842-1 | Outgoing Letter | CL-Insured | Emailed correspondence to: student007@hotmail.com requesting proof of payment for TINM -- if insured incurred a change fee as passport was stolen. No pop on file. Just police report. | Correspondence<br>Merge(LTR001 -<br>Blank with<br>Token#)-<br>ENGLISH.docx | Brittany Bienker |
| 09/06/2013 03:48 PM | Claim | 2014713842-1 | Incoming Email | CL-Insured | emailed fareportal<br><br>file to pending. | | Jennifer Botelho |
| 09/04/2013 04:52 PM | Policy | 2014713842 | Incoming Call | CL-Insured | Sept 5, 2013<br>Email from Insured<br>TINM Form<br>Police Report<br>Email from Insured<br>Email from CheapOair<br><br>Insured called with general process questions - advised. Advised claim forms sent by e-mail not yet registered. | | Robert Steele |
| 09/03/2013 03:40 PM | Policy | 2014713842 | Outgoing Email | CL-Claim Form Sent | Claim initiated. Paul requested TINM emailed to: student007@hotmail.com. He advised passport was stolen. Advised of report. | Correspondence<br>Merge(FORM-<br>PKG010a-Trip<br>Interruption<br>Non-Medical)-<br>ENGLISH.docx | Maja Dodik |

3/3

EXHIBIT 4

SOIA713842

**Shelly Fozard**

| | |
|---|---|
| **From:** | TravelexClaims |
| **Sent:** | Thursday, September 05, 2013 5:28 PM |
| **To:** | Shelly Fozard; Cindy Dungavel |
| **Subject:** | FW: CheapOair.com Booking # 16641208 |

**From:** Paul Wang [mailto:stealthzeus@gmail.com]
**Sent:** Thursday, September 05, 2013 5:24 PM
**To:** TravelexClaims
**Subject:** Fwd: CheapOair.com Booking # 16641208

This is regarding the claim for booking number 16681208. The attached email is from cheapoair confirming the cancellation of reservation.

Paul

Sent from my Samsung Galaxy Note® II

-------- Original message --------
**From:** cheapoair@cheapoair.com
**Date:** 09/05/2013 3:20 PM (GMT-07:00)
**To:** stealthzeus@gmail.com
**Subject:** CheapOair.com Booking # 16641208

Dear ██████

Thank you for choosing CheapOair.com.

This is in reference to booking #16641208
As per our telephone conversation, we would like to reconfirm the following details:
The ticket you have purchased is non-refundable but can be changed with a penalty of $103.00 plus difference in fare if any. The Changes have to be made prior to the departure date.  We have cancelled the return reservation as per your request.
Please reply to this email to confirm this conversation.

Thank You,
CheapOair.com

1

42

**Shelly Fozard**

| | |
|---|---|
| **From:** | TravelexClaims |
| **Sent:** | Wednesday, September 04, 2013 4:29 PM |
| **To:** | Shelly Fozard |
| **Cc:** | Cindy Dungavel |
| **Subject:** | FW: Booking Number 16641208 Trip Interruption Claim |
| **Attachments:** | OpheliaClaim023.pdf |

**From:** Paul Wang [mailto:student007@hotmail.com]
**Sent:** Wednesday, September 04, 2013 4:25 PM
**To:** TravelexClaims; Me Haha
**Subject:** Booking Number 16641208 Trip Interruption Claim

Hi,

I am claiming trip interruption for booking number 16641208 due to theft of passport.
Please find the form and police report attached. Please let me know what else we need to provide.

Thank you.

Paul

43

1

EXHIBIT 5

44

201A713842

**Cindy Dungavel**

| | |
|---|---|
| **From:** | TravelexClaims |
| **Sent:** | Wednesday, September 11, 2013 3:46 PM |
| **To:** | Shelly Fozard; Cindy Dungavel |
| **Subject:** | FW: Credit card statement |
| **Attachments:** | creditcard.pdf |

**From:** Paul Wang [mailto:stealthzeus@gmail.com]
**Sent:** Wednesday, September 11, 2013 2:59 PM
**To:** TravelexClaims
**Subject:** Fwd: Credit card statement

Hi, this is regarding booking number 16641208. In the attached statement there are two transactions. One for the tickets, $1337, the other for the insurance $62.

Paul

Sent from my Samsung Galaxy Note® II

45

1