EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RBJ-MEH

JANE DOE,

        Plaintiff,

v.

PAUL WANG,

        Defendant.

---

## SECOND AMENDED COMPLAINT AND JURY DEMAND

---

        Pursuant to Fed. R. Civ. P. 15 and this Court's April 8, 2021 Minute Order (ECF 64),

Plaintiff Jane Doe, for her Second Amended Complaint states as follows:

### PARTIES

1.      Plaintiff, Jane Doe, is a resident of the State of California.

2.      Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

because the parties are diverse, and the amount in controversy exceeds $75,000.

4.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because

Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5.     Plaintiff and Defendant attended school together in China from 1990 through 1993.

6.     The two parted ways when Defendant left China to attend college in the United States.

7.     In late 2012, Defendant returned to China to visit.

8.     During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9.     Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10.     On May 18, 2013, Plaintiff attended a karaoke party.

11.     Guochang Chen, a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12.     Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13.     At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14.     The Dalangtaosha Elite Club was a massage center in the area.

15.     Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

16.     Plaintiff awoke in a massage room and suspected that something happened to her as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution (which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr. Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

28.    On information and belief, the woman was an employee of the massage center.

29.    Given Plaintiff's inability to walk on her own or even stay awake, she did not possess the mental capacity to consent to have sex.

30.    Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored national laws and violated the wishes of women by forcibly having sex with her. His behavior violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.    The procuratorate found that "[t]he facts of the crime were clear and the evidence was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.    At that time, the prosecution was confidential.

33.    In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was not permitted to observe the trial.

34.    Mr. Chen was ordered to pay Plaintiff restitution.

35.    By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of the rape charge.

36.    However, Plaintiff does not know whether Mr. Chen suffered any other penalties, fines or imprisonment as a result of the rape.

**Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter**

37.    In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the United States to live with Defendant in Aurora, Colorado.

38.    Plaintiff and Defendant lived together until October 2013.

39.    At one point during that time, Defendant had purchased Plaintiff a plane ticket to return to China.

4

40.     Plaintiff, however, lost her passport so she did not take that flight.

41.     At that time, Plaintiff did not know whether her passport was lost or stolen.

42.     As a result, she reported her lost passport to the Aurora Police Department, which is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that situation.

43.     On information and belief, the police report states that Plaintiff reported the passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not know that for sure. Rather, she simply knew her passport was missing and that missing passports should be reported to the police.

44.     Plaintiff found her passport shortly thereafter, and therefore, did not pursue further remedies or investigation through the Aurora Police Department.

45.     In October 2013, Plaintiff ended her relationship with Defendant and moved to California alone.

46.     Defendant was angry after Plaintiff's termination of their relationship and repeatedly texted her after, but she never responded.

**<u>Seven Years Later, Plaintiff Learns that Defendant is Spreading False Information About Her</u>**

47.     In 2020, Plaintiff learned through a separate lawsuit (███████████████ ██████████████████)), that is wholly unrelated to her allegations against Defendant in this case, that Defendant had made several false and incredibly damaging statements against Plaintiff.

48.     First, Plaintiff learned through the *Weamer* litigation that Defendant made statements that Plaintiff falsely accused Mr. Chen of sexual assault.

49.     On information and belief, prior to Defendant revealing that information to the defense in *Weamer*, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff.

50.     In fact, China is well-known for closed door proceedings, especially with respect to sexual assault criminal prosecutions.

51.     Further, in China, sexual assault is considered taboo and victims of sexual assault are often rejected by society as the culture views women as solely responsible for the rape. Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but Defendant, her own mother and her attorney.

52.     Second, Plaintiff learned through the lawsuit that Defendant made written and oral statements that Plaintiff filed a false police report when she reported to the Aurora Police Department that she had lost her passport.

53.     Both of these statements are objectively false because (a) Mr. Chen did rape Plaintiff and (b) Plaintiff's passport was lost at the time she reported it a lost.

54.     Both of these statements are highly offensive because they accuse Plaintiff of committing crimes—making false police reports.

55.     Neither of these statements are of public concern not only because they are false, but because Plaintiff is a private citizen.

56.     If Defendant truly believed these were matters of public concern, he would have reported them to the appropriate authorities around the time they occurred. Instead, Defendant only made these statements after Plaintiff terminated their relationship and to help another party in another unrelated civil lawsuit.

57.     Further, Plaintiff suffering a sexual assault eight years ago in another country is not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

58.     Defendant's conduct is malicious, vindictive and outrageous.

59.     Further, Defendant's statements regarding the sexual assault have caused the re-victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries to her.

## FIRST CLAIM FOR RELIEF
### (Defamation Per Se)

60.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 59 as if fully set forth herein.

61.     Defendant knowingly made and/or published two false and defamatory oral and written statements about Plaintiff—(1) that Plaintiff falsely accused Mr. Chen of rape and (2) that Plaintiff filed a false police report in relation to her lost passport.

62.     These statements directly referred to Plaintiff and were directed towards and heard by multiple parties, including the defendant and counsel in the *Weamer* litigation.

63.     The substance of these statements were false at the time they were made.

64.     At the time of the publication or utterance, Defendant knew that the statements were false or made the statements with reckless disregard as to whether they were false.

65.     Because Defendant's statement accuses Plaintiff of committing crimes—filing false police reports—they are defamatory per se.

66.     Defendant's defamatory statements have caused irreparable damage to Plaintiff and have opened her up to criminal prosecution.

67.     As a result of Defendant's defamatory statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress/Outrageous Conduct)

68.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 67 as if fully set forth herein.

69.     Defendant engaged in the conduct of making false accusations against Plaintiff— namely, that she falsely accused Mr. Chen of sexual assault of her and filed a false police report.

70.     Defendant engaged in this conduct and made these statement recklessly or with the intent to cause Plaintiff severe emotional distress.

71.     Accusing Plaintiff of committing two separate crimes and re-traumatizing a rape survivor is extreme and outrageous.

72.     Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

73.     As a result of Defendant's conduct and statements, Plaintiff has been re-traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

74.     Plaintiff has suffered severe emotional distress for which Plaintiff receives ongoing therapy.

75.     As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

76.    Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 75 as if fully set forth herein.

77.    Plaintiff's sexual assault and her allegations against Mr. Chen were personal and private in nature because Mr. Chen's prosecution was behind closed doors in China and Plaintiff only told Defendant, her own mother and her attorney about the sexual assault.

78.    Defendant unreasonably disclosed these personal and private facts to several individuals, including the defendant in the *Weamer* lawsuit.

79.    Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

80.    The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

81.    Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

82.    Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

83.    The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

84.    As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against Defendant, awarding economic, non-economic and exemplary damages in an amount to be determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated:  April 22, 2021.                              Respectfully submitted,


*s/ Clarissa M. Collier*
David J. Schaller
Clarissa M. Collier
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:  schaller@wtotrial.com
              collier@wtotrial.com

Attorneys for Plaintiff,
Jane Doe

EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. ~~1:20-cv-02765-RBJ-MEH~~ 1:20-cv-02765-RMR-MEH

JANE DOE,

        Plaintiff,

v.

PAUL WANG,

        Defendant.

---

### ~~SECOND~~ THIRD AMENDED COMPLAINT AND JURY DEMAND

---

Pursuant to Fed. R. Civ. P. 15 and this Court's June 11, 2021 Minute Order (ECF 76),

Plaintiff Jane Doe, for her Third Amended Complaint states as follows:

### PARTIES

1.     Plaintiff, Jane Doe, is a resident of the State of California.

2.     Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)

because the parties are diverse, and the amount in controversy exceeds $75,000.

4.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because

Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5.      Plaintiff and Defendant attended school together in China from 1990 through 1993.

6.      The two parted ways when Defendant left China to attend college in the United States.

7.      In late 2012, Defendant returned to China to visit.

8.      During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9.      Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10.     On May 18, 2013, Plaintiff attended a karaoke party.

11.     Chen Guochang ("Mr. Chen"), a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12.     Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13.     At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14.     The Dalangtaosha Elite Club was a massage center in the area.

15.     Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

16.     Plaintiff awoke in a massage room and suspected that something happened to her as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution (which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr. Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

28.     On information and belief, the woman was an employee of the massage center.

29.     Given Plaintiff's inability to walk on her own or even stay awake, she did not possess the mental capacity to consent to have sex.

30.     Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored national laws and violated the wishes of women by forcibly having sex with her. His behavior violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.     The procuratorate found that "[t]he facts of the crime were clear and the evidence was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.     At that time, the prosecution was confidential.

33.     In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was not permitted to observe the trial.

34.     Mr. Chen was ordered to pay Plaintiff restitution.

35.     By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of the rape charge.

36.     However, Plaintiff does not know whether Mr. Chen suffered any other penalties, fines or imprisonment as a result of the rape.

### Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter

37.     In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the United States to live with Defendant in Aurora, Colorado.

38.     Plaintiff and Defendant lived together until October 2013.

39.     At one point during that time, Defendant had purchased Plaintiff a plane ticket to return to China.

40. Plaintiff, however, lost her passport so she did not take that flight.

41. At that time, Plaintiff did not know whether her passport was lost or stolen.

42. As a result, she reported her lost passport to the Aurora Police Department, which is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that situation.

43. On information and belief, the police report states that Plaintiff reported the passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not know that for sure. Rather, she simply knew her passport was missing and that missing passports should be reported to the police.

44. Plaintiff discovered that she misplaced her passport and found her passport shortly thereafter. Therefore, she did not pursue further remedies or investigation through the Aurora Police Department.

45. In October 2013, Plaintiff ended her relationship with Defendant and moved to California alone.

46. Defendant was angry after Plaintiff's termination of their relationship and repeatedly texted her after, but she never responded.

### Seven Years Later, Plaintiff Learns that Defendant is Making False and Defamatory Statements

47. In 2020, Plaintiff learned through a separate lawsuit, ███████████████████ ███████████████████ (the "Weamer Litigation"), that is wholly unrelated to her allegations against Defendant in this case, that Defendant made several false and incredibly damaging statements against Plaintiff.

48.     First, Defendant stated that Plaintiff filed a false police report in relation to her

lost passport. Specifically, in the Weamer Litigation, Plaintiff propounded written discovery that

requested "Copies of any and all ~~[sic] your~~ e-mails, chat history, or other electronically stored

information that contain your communication discussing or commenting upon Plaintiff. This

includes documents, communications or correspondence sent or received by you." ~~(*See* **Exhibit**~~

~~**1**, Edward Weamer's Resp. to Pl.'s RFP, Set One at RFP No. 2.)~~

49.     On August 23, 2020, Mr. Weamer responded to Plaintiff's written discovery

(through his attorney, ██████████████████████████) and produced

documents responsive to ~~RFP No~~Plaintiff's request. ~~2. (*Id.*)~~

50.     The responsive documents produced by Mr. Weamer included a written statement

from Defendant.~~(*See* **Exhibit 2**, "Paul Wang, Highlands Ranch, CO," WEAMER 0004.)~~

51.     On information and belief, Defendant posted this written statement ~~was posted~~

online before Plaintiff filed the Weamer Litigation. ~~(*Id.*)~~

52.     ~~-~~ In the written statement, Defendant states that Plaintiff "filed a false police

report claiming her passport got stolen, and was issued a refund from the travel insurance

company for half the ticket price." ~~(*Id.*)~~

53.     This statement is false because, as explained above, Plaintiff reported her passport

as lost/stolen based on her actually losing her passport.

54.     Further, Defendant himself purchased the airline ticket and presumably the travel

insurance—not Plaintiff.

55.     Before Defendant posted this statement online, he was the only person who knew

that Plaintiff reported her passport lost/stolen with the Aurora Police Department.

56.     On information and belief, ████████ later requested a copy of the police report from the Aurora Police Department based on Defendant's statement.

57.     Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault.

58.     Specifically, on June 17, 2020, Mr. Weamer propounded Special Interrogatories to Plaintiff. In the Special Interrogatories, Mr. Weamer requested that Plaintiff: (a) "Identify the individual in China whom YOU alleged raped you in 2012" and (b) "Identify all allegations [she had] made against Chen GuoChang RELATED TO alleged sexual assault." ~~(*See* Exhibit 3, Weamer's Special Interrogs. to Pl. at Interrogs. 15 and 16.)~~

59.     Plaintiff objected to these interrogatories on numerous grounds.

60.     In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ████████, stated that the requests related to a claim that "defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her." ~~(*See* Exhibit 4, Def. Stmt. of Questions and Resps. in Dispute in Support of His Motion to Compel, Reason Compelling Resp. to Interrogs. at pp. 32-33.)~~

61.     On information and belief, Mr. Weamer and ████████ based their ~~"~~belief~~"~~ on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Chen.

62.     On information and belief, Defendant also posted this same statement online. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that Plaintiff "has ~~already~~ [] made false allegation ~~[s]~~ of rape, ~~false claims about other people as well,~~ … and filed a frivolous police report in Colorado about losing

her passport then ironically used that same passport at a San Francisco airport on December 2nd, 2013." (See Exhibit 5, Decl. of Amanda G. Papac in Support of Def.'s Mot. for Prot. Order at ¶ 13(a); Exhibit 6, Blog Post.)."

63.     On information and belief, Defendant authored this blog post because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket.

64.     On information and belief, prior to Defendant revealing this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff.

65.     In fact, China is well-known for closed door proceedings, especially with respect to sexual assault criminal prosecutions.

66.     Further, in China, sexual assault is considered taboo and victims of sexual assault are often rejected by society as the culture views women as solely responsible for the rape. Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but Defendant, her own mother and her attorney.

67.

68.     Defendant's statements against Plaintiff are objectively false because (a) Mr. Chen did rape Plaintiff; (b) Plaintiff's passport was lost at the time she reported it as lost; and (c) Plaintiff did not ever purchase or have travel insurance in 2013.

69.     Both of these statements are highly offensive because they accuse Plaintiff of committing crimes—making false police reports and committing insurance fraud.

70. Neither of these statements are of public concern not only because they are false, but because Plaintiff is a private citizen.

71. If Defendant truly believed these were matters of public concern, he would have reported them to the appropriate authorities around the time they occurred. Instead, Defendant only made these statements after Plaintiff terminated their relationship and before Plaintiff filed her lawsuit against Weamer or any other person..

72. Defendant did not make these statements as a testifying witness in the Weamer Litigation or any other litigation. He has never been subpoenaed for documents or testimony in that case or any other case involving Plaintiff. Further, he is not involved in or closely connected with any other litigation involving Plaintiff.

73. Further, Plaintiff suffering a sexual assault eight years ago in another country is not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

74. Defendant's conduct is malicious, vindictive and outrageous.

75. Further, Defendant's statements regarding the sexual assault have caused the re-victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries to her.

**FIRST CLAIM FOR RELIEF**
**(Defamation Per Se—Statement Regarding Plaintiff Filing a False Police Report and Committing Insurance Fraud in Relation to Her Lost Passport)**

76. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 74 75 as if fully set forth herein.

77.     Defendant knowingly made and/or published the false and defamatory statement that Plaintiff filed a false police report in relation to her lost passport and obtained a refund from the travel insurance company based on that false report

78.     This statement directly referred to Plaintiff, is publicly accessible and was directed towards and heard by multiple parties, including , but not limited to Mr. Weamer and ███████ .

79.     Plaintiff first became aware that Defendant made this statement on August 23, 2020.

80.     The substance of this statements was false at the time it was made.

81.     At the time of the publication or utterance, Defendant knew that this statement was false or made the statements with reckless disregard as to whether it was false.

82.     Because Defendant's statement accuses Plaintiff of committing  crimes—filing a false police report and committing insurance fraud—they are defamatory per se.

83.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution.

84.     As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(Statement Regarding Plaintiff Falsely Accusing Chen of Sexual Assault)**

85.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 82 84 as if fully set forth herein.

86.     Defendant knowingly made and/or published the false and defamatory statement that Plaintiff falsely accused Chen of sexual assault.

87.     This statement directly referred to Plaintiff and was directed towards and heard by multiple parties, including, but not limited to Mr. Weamer, ████████ and Ms. Amanda G. Papac.

88.     Plaintiff first became aware that Defendant made this statement on September 18, 2020 and then again on January 4, 2021.

89.     The substance of this statement was false at the time it was made.

90.     At the time of the publication or utterance, Defendant knew that this statement was false or made this statement with reckless disregard as to whether it was false.

91.     Because Defendant's statement accused Plaintiff of committing a crime—filing a false police report—it is defamatory per se.

92.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution and humiliation.

93.     As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**(Intentional Infliction of Emotional Distress/Outrageous Conduct)**

94.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 92 93 as if fully set forth herein.

95.     Defendant engaged in the conduct of making false accusations against Plaintiff—namely, that she falsely accused Chen of sexual assault, filed a false police report and committed insurance fraud.

96.     Defendant engaged in this conduct and made these statements recklessly or with the intent to cause Plaintiff severe emotional distress.

97.     Accusing Plaintiff of committing three separate crimes and re-traumatizing a rape survivor is extreme and outrageous.

98.     Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

99.     As a result of Defendant's conduct and statements, Plaintiff has been re-traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

100.     Plaintiff has suffered severe emotional distress for which Plaintiff receives ongoing therapy.

101.     As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

102.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through ~~100~~ 101 as if fully set forth herein.

103.     Plaintiff's sexual assault and her allegations against Chen were personal and private in nature because Chen's prosecution was behind closed doors in China and Plaintiff only told Defendant, her own mother and her attorney about the sexual assault.

104.    Defendant unreasonably disclosed these personal and private facts to several individuals, including but not limited to Mr. Weamer, ███████ and Ms. Papac. His statements are also publicly accessible online.

105.    Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

106.    The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

107.    Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

108.    Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

109.    The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

110.    As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against Defendant, awarding economic, non-economic and exemplary damages in an amount to be determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated:  ~~June 15~~July___, 2021.                    Respectfully submitted,


                                                  *s/ Clarissa M. Collier*
                                                  _____
                                                  David J. Schaller
                                                  Clarissa M. Collier
                                                  Wheeler Trigg O'Donnell LLP
                                                  370 Seventeenth Street, Suite 4500
                                                  Denver, CO 80202
                                                  Telephone:   303.244.1800
                                                  Facsimile:    303.244.1879
                                                  Email:   schaller@wtotrial.com
                                                            collier@wtotrial.com

                                                  Attorneys for Plaintiff,
                                                  Jane Doe

EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMRBJ-MEH

JANE DOE,

        Plaintiff,

v.

PAUL WANG,

        Defendant.

---

## SECOND THIRD AMENDED COMPLAINT AND JURY DEMAND

---

Pursuant to Fed. R. Civ. P. 15 and this Court's April 8June 11, 2021 Minute Order (ECF 6476), Plaintiff Jane Doe, for her Second Third Amended Complaint states as follows:

### PARTIES

1. Plaintiff, Jane Doe, is a resident of the State of California.

2. Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are diverse, and the amount in controversy exceeds $75,000.

4. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5.      Plaintiff and Defendant attended school together in China from 1990 through 1993.

6.      The two parted ways when Defendant left China to attend college in the United States.

7.      In late 2012, Defendant returned to China to visit.

8.      During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9.      Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10.     On May 18, 2013, Plaintiff attended a karaoke party.

11.     ~~Guochang Chen~~ Chen Guochang ("Mr. Chen"), a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12.     Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13.     At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14.     The Dalangtaosha Elite Club was a massage center in the area.

15.     Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

16.     Plaintiff awoke in a massage room and suspected that something happened to her as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution (which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr. Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

28.     On information and belief, the woman was an employee of the massage center.

29.     Given Plaintiff's inability to walk on her own or even stay awake, she did not possess the mental capacity to consent to have sex.

30.     Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored national laws and violated the wishes of women by forcibly having sex with her. His behavior violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.     The procuratorate found that "[t]he facts of the crime were clear and the evidence was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.     At that time, the prosecution was confidential.

33.     In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was not permitted to observe the trial.

34.     Mr. Chen was ordered to pay Plaintiff restitution.

35.     By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of the rape charge.

36.     However, Plaintiff does not know whether Mr. Chen suffered any other penalties, fines or imprisonment as a result of the rape.

### Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter

37.     In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the United States to live with Defendant in Aurora, Colorado.

38.     Plaintiff and Defendant lived together until October 2013.

39.     At one point during that time, Defendant had purchased Plaintiff a plane ticket to return to China.

40.     Plaintiff, however, lost her passport so she did not take that flight.

41.     At that time, Plaintiff did not know whether her passport was lost or stolen.

42.     As a result, she reported her lost passport to the Aurora Police Department, which
is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that
situation.

43.     On information and belief, the police report states that Plaintiff reported the
passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not
know that for sure. Rather, she simply knew her passport was missing and that missing passports
should be reported to the police.

44.     Plaintiff discovered that she misplaced her passport and found her passport
shortly thereafter, and. Ttherefore, she did not pursue further remedies or investigation through
the Aurora Police Department.

45.     In October 2013, Plaintiff ended her relationship with Defendant and moved to
California alone.

46.     Defendant was angry after Plaintiff's termination of their relationship and
repeatedly texted her after, but she never responded.

**Seven Years Later, Plaintiff Learns that Defendant is Spreading False Information About
Her Making False and Defamatory Statements**

47.     In 2020, Plaintiff learned through a separate lawsuit (, ███████████
███████████ )), ) (the "Weamer Litigation"), that is wholly unrelated to her
allegations against Defendant in this case, that Defendant had made several false and incredibly
damaging statements against Plaintiff.

48.     First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport. Specifically, in the Weamer Litigation, Plaintiff propounded written discovery that requested "Copies of any and all e-mails, chat history, or other electronically stored information that contain your communication discussing or commenting upon Plaintiff. This includes documents, communications or correspondence sent or received by you."

49.     On August 23, 2020, Mr. Weamer responded to Plaintiff's written discovery (through his attorney, ███████████████████████) and produced documents responsive to Plaintiff's request.

50.     The responsive documents produced by Mr. Weamer included a written statement from Defendant.

51.     On information and belief, Defendant posted this written statement online before Plaintiff filed the Weamer Litigation.

52.     In the written statement, Defendant states that Plaintiff "filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price."

53.     This statement is false because, as explained above, Plaintiff reported her passport as lost/stolen based on her actually losing her passport.

54.     Further, Defendant himself purchased the airline ticket and presumably the travel insurance—not Plaintiff.

55.     Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department.

56.     On information and belief, ██████████ later requested a copy of the police report from the Aurora Police Department based on Defendant's statement.

~~47.~~57.  Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault.

58.     ~~First, Plaintiff learned through the *Weamer* litigation that Defendant made statements that Plaintiff falsely accused Mr. Chen of sexual assault.~~Specifically, on June 17, 2020, Mr. Weamer propounded Special Interrogatories to Plaintiff. ~~-~~In the Special Interrogatories, Mr. Weamer requested that Plaintiff: (a) "Identify the individual in China whom YOU alleged raped you in 2012" and (b) "Identify all allegations [she had] made against Chen GuoChang RELATED TO alleged sexual assault."

59.     Plaintiff objected to these interrogatories on numerous grounds.

60.     In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ██████████, stated that the requests related to a claim that "defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her."

61.     On information and belief, Mr. Weamer and ██████████ based their "belief" on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Chen.

62.     On information and belief, Defendant also posted this same statement online. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport."

48.63.  On information and belief, Defendant authored this blog post because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket.

49.64.  On information and belief, prior to Defendant revealing ~~that information to the defense in *Weamer*~~this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff.

50.65.  In fact, China is well-known for closed door proceedings, especially with respect to sexual assault criminal prosecutions.

51.66.  Further, in China, sexual assault is considered taboo and victims of sexual assault are often rejected by society as the culture views women as solely responsible for the rape. Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but Defendant, her own mother and her attorney.

52.67.  ~~Second, Plaintiff learned through the lawsuit that Defendant made written and oral statements that Plaintiff filed a false police report when she reported to the Aurora Police Department that she had lost her passport.~~

53.68.  ~~Both of these statements~~Defendant's statements against Plaintiff are objectively false because (a) Mr. Chen did rape Plaintiff ~~and~~; (b) Plaintiff's passport was lost at the time she reported it as lost; and (c) Plaintiff did not ever purchase or have travel insurance in 2013.~~.~~

54.69.  Both of these statements are highly offensive because they accuse Plaintiff of committing crimes—making false police reports and committing insurance fraud.

8

55.70.  Neither of these statements are of public concern not only because they are false, but because Plaintiff is a private citizen.

71.     If Defendant truly believed these were matters of public concern, he would have reported them to the appropriate authorities around the time they occurred. Instead, Defendant only made these statements after Plaintiff terminated their relationship, and to help another party in another unrelated civil lawsuit.

56.72.  Defendant did not make these statements as a testifying witness in the Weamer Litigation or any other litigation. He has never been subpoenaed for documents or testimony in that case or any other case involving Plaintiff. Further, he is not involved in or closely connected with any other litigation involving Plaintiff.

57.73.  Further, Plaintiff suffering a sexual assault eight years ago in another country is not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

58.74.  Defendant's conduct is malicious, vindictive and outrageous.

59.75.  Further, Defendant's statements regarding the sexual assault have caused the re-victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries to her.

**FIRST CLAIM FOR RELIEF**
**(Defamation Per Se — Statement Regarding Plaintiff Filing a False Police Report and Committing Insurance Fraud in Relation to Her Lost Passport)**

60.76.  Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 7559 as if fully set forth herein.

61.77.  Defendant knowingly made and/or published two the false and defamatory oral and written statements about Plaintiff—(1) that Plaintiff falsely accused Mr. Chen of rape and

9

(2) that Plaintiff filed a false police report in relation to her lost passport and obtained a refund from the travel insurance company based on that false report.

78.     These This statements directly referred to Plaintiff, is publicly accessible and were was directed towards and heard by multiple parties, including, but not limited to the defendant and counsel in the *Weamer* litigationMr. Weamer and ███████.

62.79.  Plaintiff first became aware that Defendant made this statement on August 23, 2020.

63.80.  The substance of thisese statements were was false at the time they wereit was made.

64.81.  At the time of the publication or utterance, Defendant knew that thise statements were was false or made the statements with reckless disregard as to whether they wereit was false.

65.82.  Because Defendant's statement accuses Plaintiff of committing a crimes—filing a false police reports and committing insurance fraud—they are defamatory per se.

66.83.  Defendant's defamatory statements have has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution.

84.     As a result of Defendant's defamatory statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(Statement Regarding Plaintiff Falsely Accusing Chen of Sexual Assault)**

85.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 84 as if fully set forth herein.

86.     Defendant knowingly made and/or published the false and defamatory statement that Plaintiff falsely accused Chen of sexual assault.

87.     This statement directly referred to Plaintiff and was directed towards and heard by multiple parties, including, but not limited to Mr. Weamer, ▮▮▮▮▮ and Ms. Amanda G. Papac.

88.     Plaintiff first became aware that Defendant made this statement on September 18, 2020 and then again on January 4, 2021.

89.     The substance of this statement was false at the time it was made.

90.     At the time of the publication or utterance, Defendant knew that this statement was false or made this statement with reckless disregard as to whether it was false.

91.     Because Defendant's statement accused Plaintiff of committing a crime—filing a false police report—it is defamatory per se.

92.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution and humiliation.

67.93.  As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

**SECOND THIRD CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress/Outrageous Conduct)**

68.94.  Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 67 93 as if fully set forth herein.

69.95.  Defendant engaged in the conduct of making false accusations against Plaintiff—namely, that she falsely accused ~~Mr.~~ Chen of sexual ~~assault of her and filed~~assault, filed a false police report and committed insurance fraud.

70.96.  Defendant engaged in this conduct and made these statements recklessly or with the intent to cause Plaintiff severe emotional distress.

71.97.  Accusing Plaintiff of committing ~~two~~ three separate crimes and re-traumatizing a rape survivor is extreme and outrageous.

72.98.  Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

73.99.  As a result of Defendant's conduct and statements, Plaintiff has been re-traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

74.100. Plaintiff has suffered severe emotional distress for which Plaintiff receives ongoing therapy.

75.101. As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

### ~~THIRD~~ FOURTH CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

76.102. Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 101~~75~~ as if fully set forth herein.

77.103. Plaintiff's sexual assault and her allegations against ~~Mr.~~ Chen were personal and private in nature because ~~Mr.~~ Chen's prosecution was behind closed doors in China and Plaintiff only told Defendant, her own mother and her attorney about the sexual assault.

78. 104. Defendant unreasonably disclosed these personal and private facts to several individuals, including ~~the defendant in the *Weamer* lawsuit~~ but not limited to Mr. Weamer, ███ , and Ms. Papac. His statements are also publicly accessible online.

79. 105. Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

80. 106. The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

81. 107. Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

82. 108. Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

83. 109. The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

84. 110. As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against Defendant, awarding economic, non-economic and exemplary damages in an amount to be determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated:  ~~April 22~~ July___, 2021.                Respectfully submitted,


                                                 *s/ Clarissa M. Collier*
                                                 David J. Schaller
                                                 Clarissa M. Collier
                                                 Wheeler Trigg O'Donnell LLP
                                                 370 Seventeenth Street, Suite 4500
                                                 Denver, CO 80202
                                                 Telephone:   303.244.1800
                                                 Facsimile:    303.244.1879
                                                 Email:   schaller@wtotrial.com
                                                          collier@wtotrial.com

                                                 Attorneys for Plaintiff,
                                                 Jane Doe

EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

JANE DOE,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

---

## THIRD AMENDED COMPLAINT AND JURY DEMAND

Pursuant to Fed. R. Civ. P. 15 and this Court's June 11, 2021 Minute Order (ECF 76) and Order Denying Defendant's Renewed Motion to Dismiss Without Prejudice (ECF 84), Plaintiff Jane Doe, for her Third Amended Complaint states as follows:

### PARTIES

1.     Plaintiff, Jane Doe, is a resident of the State of California.

2.     Defendant, Paul Wang, is a resident of the State of Colorado.

### JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are diverse, and the amount in controversy exceeds $75,000.

4.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district.

## GENERAL ALLEGATIONS

### The Parties' Relationship

5.     Plaintiff and Defendant attended school together in China from 1990 through 1993.

6.     The two parted ways when Defendant left China to attend college in the United States.

7.     In late 2012, Defendant returned to China to visit.

8.     During Defendant's visit, he and Plaintiff reconnected and began a romantic and intimate relationship.

9.     Defendant returned to the United States and the couple decided to continue their relationship.

### A Mutual Acquaintance Sexually Assaults Plaintiff and is Charged With Rape

10.     On May 18, 2013, Plaintiff attended a karaoke party.

11.     Chen Guochang ("Mr. Chen"), a mutual acquaintance of Plaintiff and Defendant, also attended the party.

12.     Plaintiff drank some alcohol at the party and eventually became unconscious, either due to alcohol intoxication or potentially from another partygoer slipping something into her drink.

13.     At about 2:00 a.m. on May 19, 2013, Mr. Chen took Plaintiff—who was still unconscious—to the Dalangtaosha Elite Club.

14.     The Dalangtaosha Elite Club was a massage center in the area.

15.     Mr. Chen preceded to sexually assault Plaintiff while she was unconscious.

16.     Plaintiff awoke in a massage room and suspected that something happened to her as evidenced by the visible and physical injuries to her genitals.

17.     Plaintiff told Defendant what had happened to her, based on her limited recollection of the events that evening.

18.     Plaintiff told Defendant that she woke up naked in a massage room with Mr. Chen right beside her and that she felt pain in her genitals.

19.     Defendant encouraged Plaintiff to get a rape kit and Plaintiff preceded to report the assault to local authorities. Detectives interviewed Plaintiff.

20.     The only other people Plaintiff told about the incident was her own mother and her attorney at the time.

21.     On May 20, 2013, Mr. Chen was arrested by the Tiane District Suboffice of Guangzhou Public Security Bureau on suspicion of rape.

22.     On May 27, 2013, Mr. Chen was released from jail on bail pending trial.

23.     The case was referred to the procuratorate for investigation and prosecution (which is essentially the equivalent of an American prosecuting attorney) on July 19, 2013.

24.     The procuratorate interrogated the Mr. Chen and three separate witnesses.

25.     The procuratorate also reviewed the photos of the crime scene, photos of Plaintiff's injuries and audiovisual materials, such as surveillance videos.

26.     Stills from the surveillance videos clearly show that Plaintiff was unable to walk on her own accord.

27.     Stills from the surveillance videos show Plaintiff being walked around with Mr. Chen on one side of her and a woman that was unknown to Plaintiff on the other side.

28.     On information and belief, the woman was an employee of the massage center.

29.     Given Plaintiff's inability to walk on her own or even stay awake, she did not possess the mental capacity to consent to have sex.

30.     Based on the procuratorate's investigation, it ruled that Mr. Chen "ignored national laws and violated the wishes of women by forcibly having sex with her. His behavior violated *Article 236 of the Criminal Law of the People's Republic of China.*"

31.     The procuratorate found that "[t]he facts of the crime were clear and the evidence was reliable and sufficient." Therefore, it decided to prosecute Mr. Chen for the crime of rape.

32.     At that time, the prosecution was confidential.

33.     In fact, Plaintiff's mother went to the courthouse on Mr. Chen's trial date, but was not permitted to observe the trial.

34.     Mr. Chen was ordered to pay Plaintiff restitution.

35.     By receiving restitution, Plaintiff was led to believe Mr. Chen was convicted of the rape charge.

36.     However, Plaintiff does not know whether Mr. Chen suffered any other penalties, fines or imprisonment as a result of the rape.

### **Plaintiff Moves to the United States to Live With Defendant, But the Relationships Ends Shortly Thereafter**

37.     In July 2013, with Mr. Chen's rape charge still pending, Plaintiff moved to the United States to live with Defendant in Aurora, Colorado.

38.     Plaintiff and Defendant lived together until October 2013.

39.     At one point during that time, Defendant had purchased Plaintiff a plane ticket to return to China.

40.     Plaintiff, however, lost her passport so she did not take that flight.

41.     At that time, Plaintiff did not know whether her passport was lost or stolen.

42.     As a result, she reported her lost passport to the Aurora Police Department, which is exactly what the U.S. Department of State—Bureau of Consular Affairs recommends in that situation.

43.     On information and belief, the police report states that Plaintiff reported the passport as "lost/stolen"—she did not ever claim that it was stolen from her because she did not know that for sure. Rather, she simply knew her passport was missing and that missing passports should be reported to the police.

44.     Plaintiff discovered that she misplaced her passport and found her passport shortly thereafter. Therefore, she did not pursue further remedies or investigation through the Aurora Police Department.

45.     In October 2013, Plaintiff ended her relationship with Defendant and moved to California alone.

46.     Defendant was angry after Plaintiff's termination of their relationship and repeatedly texted her after, but she never responded.

**Seven Years Later, Plaintiff Learns that Defendant is Making False and Defamatory Statements**

47.     In 2020, Plaintiff learned through a separate lawsuit, ███████████████ ██████████████████ (the "Weamer Litigation"), that is wholly unrelated to her allegations against Defendant in this case, that Defendant made several false and incredibly damaging statements against Plaintiff.

48.     First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport. Specifically, in the Weamer Litigation, Plaintiff propounded written discovery that requested "Copies of any and all e-mails, chat history, or other electronically stored information that contain your communication discussing or commenting upon Plaintiff. This includes documents, communications or correspondence sent or received by you."

49.     On August 23, 2020, Mr. Weamer responded to Plaintiff's written discovery (through his attorney, ███████████████████████████) and produced documents responsive to Plaintiff's request.

50.     The responsive documents produced by Mr. Weamer included a written statement from Defendant.

51.     On information and belief, Defendant posted this written statement online before Plaintiff filed the Weamer Litigation.

52.      In the written statement, Defendant states that Plaintiff "filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price."

53.     This statement is false because, as explained above, Plaintiff reported her passport as lost/stolen based on her actually losing her passport.

54.     Further, Defendant himself purchased the airline ticket and presumably the travel insurance—not Plaintiff.

55.     Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department.

56.    On information and belief, ████████ later requested a copy of the police report from the Aurora Police Department based on Defendant's statement.

57.    Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault.

58.    Specifically, on June 17, 2020, Mr. Weamer propounded Special Interrogatories to Plaintiff. In the Special Interrogatories, Mr. Weamer requested that Plaintiff: (a) "Identify the individual in China whom YOU alleged raped you in 2012" and (b) "Identify all allegations [she had] made against Chen GuoChang RELATED TO alleged sexual assault."

59.    Plaintiff objected to these interrogatories on numerous grounds.

60.    In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ████████, stated that the requests related to a claim that "defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her."

61.    On information and belief, Mr. Weamer and ████████ based their "belief" on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Mr. Chen.

62.    On information and belief, Defendant also posted this same statement online. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport."

63.    On information and belief, Defendant authored this blog post because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Mr. Chen. Further, he is the only person who

knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket.

64.     On information and belief, prior to Defendant revealing this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff.

65.     In fact, China is well-known for closed door proceedings, especially with respect to sexual assault criminal prosecutions.

66.     Further, in China, sexual assault is considered taboo and victims of sexual assault are often rejected by society as the culture views women as solely responsible for the rape. Because of these cultural dynamics, Plaintiff did not reveal Mr. Chen's rape of her to anyone but Defendant, her own mother and her attorney.

67.     Defendant's statements against Plaintiff are objectively false because (a) Mr. Chen did rape Plaintiff; (b) Plaintiff's passport was lost at the time she reported it as lost; and (c) Plaintiff did not ever purchase or have travel insurance in 2013.

68.     All of these statements are highly offensive because they accuse Plaintiff of committing crimes—making false police reports and committing insurance fraud.

69.     Neither of these statements are of public concern not only because they are false, but because Plaintiff is a private citizen.

70.     If Defendant truly believed these were matters of public concern, he would have reported them to the appropriate authorities around the time they occurred. Instead, Defendant only made these statements after Plaintiff terminated their relationship.

71.     Defendant did not make these statements as a testifying witness in the Weamer Litigation or any other litigation. He has never been subpoenaed for documents or testimony in

that case or any other case involving Plaintiff. Further, he is not involved in or closely connected

with any other litigation involving Plaintiff.

72.     Further, Plaintiff suffering a sexual assault eight years ago in another country is

not of legitimate public concern. Neither is Plaintiff reporting a lost passport.

73.     Defendant's conduct is malicious, vindictive and outrageous.

74.     Further, Defendant's statements regarding the sexual assault have caused the re-

victimization and re-traumatization of Plaintiff, which has manifested into psychological injuries

to her.

## FIRST CLAIM FOR RELIEF
**(Defamation Per Se—Statement Regarding Plaintiff Filing a False Police Report and
Committing Insurance Fraud in Relation to Her Lost Passport)**

75.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 74 as if

fully set forth herein.

76.     Defendant knowingly made and/or published the false and defamatory statement

that Plaintiff filed a false police report in relation to her lost passport and obtained a refund from

the travel insurance company based on that false report

77.     This statement directly referred to Plaintiff, is publicly accessible and was

directed towards and heard by multiple parties, including, but not limited to Mr. Weamer and

██████████ .

78.     Plaintiff first became aware that Defendant made this statement on August 23,

2020.

79.     The substance of this statements was false at the time it was made.

80.     At the time of the publication or utterance, Defendant knew that this statement was false or made the statements with reckless disregard as to whether it was false.

81.     Because Defendant's statement accuses Plaintiff of committing crimes—filing a false police report and committing insurance fraud—they are defamatory per se.

82.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution.

83.     As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Defamation Per Se—Statement Regarding Plaintiff Falsely Accusing Mr. Chen of Sexual Assault)

84.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 83 as if fully set forth herein.

85.     Defendant knowingly made and/or published the false and defamatory statement that Plaintiff falsely accused Mr. Chen of sexual assault.

86.     This statement directly referred to Plaintiff and was directed towards and heard by multiple parties, including, but not limited to Mr. Weamer, ████ and Ms. Amanda G. Papac.

87.     Plaintiff first became aware that Defendant made this statement on September 18, 2020 and then again on January 4, 2021.

88.     The substance of this statement was false at the time it was made.

89.     At the time of the publication or utterance, Defendant knew that this statement was false or made this statement with reckless disregard as to whether it was false.

90.     Because Defendant's statement accused Plaintiff of committing a crime—filing a false police report—it is defamatory per se.

91.     Defendant's defamatory statement has caused irreparable damage to Plaintiff and have opened her up to criminal prosecution and humiliation.

92.     As a result of Defendant's defamatory statement, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress/Outrageous Conduct)

93.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 92 as if fully set forth herein.

94.     Defendant engaged in the conduct of making false accusations against Plaintiff—namely, that she falsely accused Mr. Chen of sexual assault, filed a false police report and committed insurance fraud.

95.     Defendant engaged in this conduct and made these statements recklessly or with the intent to cause Plaintiff severe emotional distress.

96.     Accusing Plaintiff of committing three separate crimes and re-traumatizing a rape survivor is extreme and outrageous.

97.     Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

98.     As a result of Defendant's conduct and statements, Plaintiff has been re-traumatized by the sexual assault and put in fear of arrest and criminal prosecution.

99.     Plaintiff has suffered severe emotional distress for which Plaintiff receives ongoing therapy.

100.     As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Unreasonable Disclosure of Private Facts)

101.     Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 100 as if fully set forth herein.

102.     Plaintiff's sexual assault and her allegations against Mr. Chen were personal and private in nature because Chen's prosecution was behind closed doors in China and Plaintiff only told Defendant, her mother and her attorney about the sexual assault.

103.     Defendant unreasonably disclosed these personal and private facts to several individuals, including but not limited to Mr. Weamer, ████████ and Ms. Papac. His statements are also publicly accessible online.

104.     Disclosure of a sexual assault, which was subject to closed-door proceedings in a foreign country, would be highly offensive to a reasonable person.

105.     The disclosure of these facts is not of legitimate public concern because Plaintiff is a private citizen.

106.     Defendant acted with reckless disregard of the private and sensitive nature of the facts disclosed.

107.    Defendant's actions were attended by circumstances of malice and willful and wanton conduct.

108.    The disclosure of these facts has caused emotional distress, humiliation and embarrassment to Plaintiff due to cultural norms of which Defendant is fully aware.

109.    As a result of Defendant's conduct and statements, Plaintiff has suffered and continues to suffer damages and losses, including special damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment, in her favor and against Defendant, awarding economic, non-economic and exemplary damages in an amount to be determined at trial, pre-judgment and post-judgment interest as provided by law, expert witness fees, attorneys' fees, costs and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable to a jury.

Dated:  July 28, 2021.                    Respectfully submitted,


                                          *s/ Clarissa M. Collier*
                                          David J. Schaller
                                          Clarissa M. Collier
                                          Wheeler Trigg O'Donnell LLP
                                          370 Seventeenth Street, Suite 4500
                                          Denver, CO 80202
                                          Telephone:   303.244.1800
                                          Facsimile:    303.244.1879
                                          Email:   schaller@wtotrial.com
                                                     collier@wtotrial.com

                                          Attorneys for Plaintiff,
                                          Jane Doe

EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

JANE DOE,

     Plaintiff,

v.

PAUL WANG,

     Defendant.

---

## MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

---

     Mr. Paul Wang, pursuant to Fed. R. Civ. P. 12(b)(6), respectfully requests that the Court dismiss, with prejudice, Plaintiff's Third Amended Complaint for failure to state a claim upon which relief can be granted. As grounds therefor he states:

### I. *Relevant procedural history*

    1.     On September 11, 2020, Plaintiff filed a *pro se* complaint.

    2.     On February 28, 2021, Plaintiff filed a *pro se* amended complaint.

    3.     On March 3, 2021, the Court appointed *pro bono* counsel to represent Plaintiff.

    4.     On April 8, 2021, after Mr. Wang pointed out the amended complaint's deficiencies, the Court granted Plaintiff's motion to file a second amended complaint with assistance of counsel.

    5.     On April 22, 2021, Plaintiff filed her second amended complaint.

1

6.      On May 25, 2021, Mr. Wang filed a motion to dismiss the Second Amended Complaint.

7.      On May 26, 2021, the then-presiding judge, the Honorable Brooke Jackson, issued an order pursuant to his unique practice standards denying the motion to dismiss without prejudice and directing the parties to exchange letters regarding the motion to dismiss.

8.      On June 11, 2021, after reviewing the letters, Judge Jackson issued a minute order:

> The Court agrees with Judge Hegarty's advice. The two parties are now represented by experienced and able counsel. A motion to dismiss is likely to be denied and a waste of time. You good lawyers should confer and either resolve this case or agree that plaintiff will file one more amended complaint *that **takes into account defendant's issues** and **pleads only** what she believes **she has evidence to prove***. This does appear to be Marbury v. Madison.

The June 11, 2021 Minute Order (emphasis added).

9.      On June 11, 2021, Mr. Wang reached out to plaintiff.

> The Court order states that you might be able to file **"**one more amended complaint *that takes into account defendant' issues* <u>and</u> pleads <u>only</u> what she believes *she has evidence to prove*.**"** (emphasis added). Could you please, as soon as possible, send me the evidence you plan to rely on to prove any claims made in a third amended complaint (considering the deficiencies pointed out in our previous conversations, letter, and the motion to dismiss)?
>
> Specifically, could you **please provide copies of all written statements you contend Mr. Wang offered or published concerning your client, which could serve as the basis for your claims** and also identify by name and provide contact information for any witnesses who you know, at this time, will testify under oath that Mr. Wang made oral statements to them concerning your client? Please include the specific date and circumstances under which your client discovered each statement. May I anticipate receiving them by early next week, since you already have this is information in hand?

2

Relevant portion of the June 11, 2021 email correspondence between counsel
(italics in original; bolded text for emphasis).

10.     Plaintiff did not provide any of the requested information. Instead, she

provided Mr. Wang only with a copy of her proposed Third Amended Complaint—but

not a single document evidencing any of the  statements or publications she has pleaded to

be false and defamatory that might serve as the basis for her claim against Mr. Wang.

11.     On July 9, 2021, Mr. Wang notified Plaintiff's counsel that the proposed

Third Amended Complaint did not comply with the Court's June 11, 2021 order.

> As to a motion for leave to file a third amended complaint, I am afraid
> *your draft does not cure the deficiencies we have pointed out in our*
> *previous conversations and the motion to dismiss; your new allegations*
> *involve statements that were made by third-parties – not Mr. Wang*; and
> you have not provided the evidence that could support your request to file
> a third amended complaint. (See attached [asking you to "please provide
> copies of all written statements you contend Mr. Wang offered or
> published concerning your client, which could serve as the basis for your
> claims and also identify by name and provide contact information for any
> witnesses who you know, at this time, will testify under oath that Mr.
> Wang made oral statements to them concerning your client? Please
> include the specific date and circumstances under which your client
> discovered each statement."]) *We are available to discuss this further, in a*
> *meaningful way, after you provide the evidence that could actually*
> *support your request*.
>
> Also, you are correct, Judge Rodriguez does not have the same practice
> standards. So, as a courtesy, we are notifying you that in light of this
> change we are renewing our motion to dismiss the pending complaint.

Relevant portion of the July 9, 2021 email correspondence between counsel
(emphasis added).

12.     Plaintiff's counsel stated that Plaintiff did not have an obligation to provide

the requested information in support of the allegations in the proposed Third Amended

Complaint.

13.     This motion addresses the deficiencies already identified by Mr. Wang in

Plaintiff's Third Amended Complaint, filed on July 28, 2021.

## II.    Applicable legal standards

### A.    Motions to dismiss for failure to state a claim—generally

14.    In considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's complaint is reviewed for a determination of whether it "'contains enough facts to state . . . claim[s] that [are] plausible on [their] face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Facts," under the *Twombly* standard, need not be "detailed," but they must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

### B.    Plaintiff's Libel Claims Are Time-barred

15.    In Colorado, a libel or defamation claim must be filed within a year of the "date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." *Burke v. Greene*, 963 P.2d 1119, 1121 (Colo. App. 1998); Colo. Rev. Stat. § 13-80-103. The cause of action for libel accrues when the defamatory statements are published. *Deatley v. Allard*, No. 14-CV-00100-RM-KMT, 2015 WL 134271, at *5 (D. Colo. Jan. 9, 2015) (citing *Russell v. McMillen*, 685 P.2d 255, 258

4

(Colo. App. 1984); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *4 (D. Colo. Jan. 18, 2013).

16.     Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim. *See, e.g., Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir.1997) (applying *de novo* review to district court's dismissal on the grounds that claim was time-barred for failure to state a claim).

17.     Even though, generally, the sufficiency of a complaint rests exclusively on its contents, *see Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010), in deciding a motion to dismiss courts may also consider:

> (1) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Oxendine*, 241 F.3d at 1275[1] (documents attached as exhibits to the complaint); (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002); and (3) "matters of which a court may take judicial notice," *Tellabs, Inc*., 551 U.S. at 322, 127 S.Ct. 2499.

*Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Therefore, the statute of limitations may be presented as a defense in a motion to dismiss when the complaint itself (*and documents referred to therein*) establish that the claim is time-barred as a matter of law. *See, e.g., id.; Tellabs, Inc.,* 551 U.S. at 322-23.

### C.     The heightened pleading requirements in defamation/libel cases

18.     "Each *publication* of a defamatory statement must be pled as a separate claim." *Corporon v. Safeway Stores, Inc.,* 708 P.2d 1385, 1390 (Colo. App. 1985)

---

[1] *Oxendin v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

(emphasis added) (citing *Lininger v. Knight*, 123 Colo. 213, 226 P.2d 809 (1951)).[2] And because of the First Amendment implications of any defamation action, *see Diversified Mgmt., Inc. v. Denver Post, Inc.*, 653 P.2d 1103 (Colo. 1982), particularity is required in the pleading of a defamation suit. *See, e.g., id.* (citing *Walters v. Linhof*, 559 F. Supp. 1231 (D. Colo. 1983); *Martinez v. Winner*, 548 F. Supp. 278 (D. Colo. 1982)).

19.     A plaintiff asserting a defamation claim must plead the exact statements claimed to be false and defamatory. *See, e.g., Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983) (applying Colorado law and granting motion to dismiss defamation claim for failure to state a claim where "[p]laintiffs have not substantially set forth the words alleged to be defamatory and untrue"); *see also Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698-99 (8th Cir. 1979) ("[T]he use of *in haec verba* pleadings on defamation charges is favored in the federal courts because generally knowledge of the exact language used is necessary to form responsive pleadings").

20.     In her Third Amended Complaint, Plaintiff identifies two statements (apparently in an unspecified number of *separate publications*) that she alleges Mr. Wang published online—although, tellingly, not with specificity (she did not identify, among other things, the dates and places of publication).

### III.    Facts: Statements at issue

21.     Plaintiff claims that Mr. Wang published the below two statements (1) in communications with counsel for Mr. Weamer in the litigation she filed against him in

---

[2] Notwithstanding that Plaintiff and her counsel were notified of this pleading requirement through Defendant's prior motion to dismiss and the Court's specific instructions, the Third Amended Complaint continues to plead multiple *publications* within a single count.

████████████████████████████), Third Am.

Compl. ¶¶ 47-62, and (2) in certain unidentified publication(s) he allegedly posted online

prior to making the statements in the *Weamer* case. *Id.* ¶¶ 51, 55, 62.

First statement ("false report of missing passport in Colorado")

- "Defendant stated that Plaintiff filed a false police report in relation to her lost passport." ¶ 48,
- "On information and belief, **Defendant posted this written statement online** *before* Plaintiff filed the Weamer Litigation." ¶ 51 (emphasis added),
- "In the written statement, Defendant states that Plaintiff 'filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price.'" ¶ 52
- "*Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department*." ¶ 55 (emphasis added).

Second statement ("report of false rape accusation in China")

- "Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault." ¶ 57,
- "In seeking to compel responses to these interrogatories, on September 18, 2020, Mr. Weamer and ███████, stated that the requests related to a claim that 'defense counsel believes relates to a former classmate of Plaintiff who she falsely accused of raping her.'" ¶ 60,
- "On information and belief, Mr. Weamer and ███████ based their "belief" on statements made by Defendant because he was the only person (other than local law enforcement, Plaintiff's own mother and attorney) who knew about Plaintiff's allegations against Mr. Chen." ¶ 61,
- "On information and belief, Defendant also posted **this same statement online**. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that *Plaintiff 'has [] made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport*.'" ¶ 62 (emphasis added).

7

## IV.    *Applying law to facts*

**A.    The Court should dismiss Plaintiff's claims with prejudice for failure to state a claim because the statements at issue, as Plaintiff admits, have been online since 2013 and are therefore time-barred**

22.     Here, in her *fourth* attempt to state a claim, Plaintiff has asserted, "on information and belief," that *"the author"* of a blog posting she allegedly received on January 4 of this year falsely charged her with having made a false rape accusation. *Id.*, at ¶ 62.

23.     Plaintiff also claims that:

"On information and belief, Defendant authored this blog post [that she claims to have discovered only within the past eight months] because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Mr. Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket.

*Id.*, ¶ 63, *see also id.* ¶¶ 55, 64.

24.     Finally, Plaintiff states:

"This statement directly referred to Plaintiff, is **publicly accessible** and was directed towards and heard by multiple parties, including, but not limited to Mr. Weamer and ▮▮▮▮▮▮."

*Id.,* ¶ 77 (emphasis added).

25.     The critical problem with Plaintiff's intentional failure to plead her claims with specifity is best illustrated by the fact that a year after filing her initial complaint she still refuses to provide even a link to this "publicly accessible" online publication, on which she is basing her Third Amended Complaint. Having now provided her three opportunities to remedy this deficiency, the Court should dismiss her claims with

prejudice.

26.     Based  on Plaintiff's allegations and the quote in ¶ 62 of the Third

Amended Complaint, and pursuant to *Tellabs*, 551 U.S. 322, *Gee*, 627 F.3d at 1186, and

Fed. R. Evid. 201(b)(2), Mr. Wang attaches the publication he believes is referenced (i.e.,

quoted verbatim) in the Complaint and requests that the Court take judicial notice of it, [3]



https://████████wordpress.co██████████/████████better-known-██████

██████████/ (last visited on Aug. 25, 2021); *see also*

https://████████wordpress.com████████/ (last visited on Aug. 25, 2021). (Attachment

A.) [4]

27.     Comparing the quote from ¶ 62 and the content of

https://████████wordpress.com/████████/████████better-known-██████

██████████/ and https://████████wordpress.co████████/ ("Monthly

Archives: December 2013") ("If you see or meet this person, be aware, she has already

made false allegation of rape, false claims about other people as well, filed a frivolous

police report in Colorado about losing her passport . . . .") (last visited on Aug. 25, 2021),

there can be only one conclusion: the quote in ¶ 62 is from this online blog and was

published in December 2013, almost eight years ago.

---

[3]  The Court may take judicial notice of information appearing on the internet at a particular
point in time. *See People v. Harper*, 294 P.3d 161, 162 n.2 (Colo. 2012) (taking judicial notice of
attorney's address as it appears on a public website); *Shook v. Pitkin Cnty. Bd. of Cnty. Comm'rs*,
411 P.3d 158, 161 n.4 (Colo. App. 2015) (taking judicial notice of a publicly available website,
noting that "[t]he contents of a webpage on a specific date and time are not subject to reasonable
dispute").

[4] Due to her request to proceed under the pseudonym Jane Doe, Mr. Wang is redacting the
information that could reveal her real identity in this public document but pursuant to
D.C.COLO.LCivR 7.2(b), subject to Level 1 restrictions, is attaching an unredacted version of
this motion and its attachments for the record.

28.     Therefore, taking Plaintiff's allegations as true, her claims must be dismissed with prejudice as time-barred because they are premised on statements published in December 2013.[5] *See, e.g., Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("In the internet context, the statute of limitations begins to run when the allegedly infringing material is first posted on the internet.") (*citing Canatella v. Van De Kamp*, 486 F.3d 1128, 1134–36 (9th Cir. 2007))*; Bloom v. Goodyear Tire & Rubber Co.*, 2006 WL 2331135at *7 (D. Colo. Aug. 10, 2006); *Hoai Thanh v. Ngo*, No. PJM 14-448, 2016 WL 3958584, at *10–12 (D. Md. July 22, 2016), *aff'd sub nom. Hoai Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017); *Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010); *Deatley v. Allard*, 2015 WL 134271, at *5; *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at *4.[6]

---

[5] Plaintiff filed her complaint on September 11, 2020. (Doc. # 1.)  Therefore, her claims are barred. *See* Colo. Rev. Stat. § 13–80–102, § 13–80–103, or § 13-80-108.

[6] In addition, as Plaintiff and her counsel are aware, the blog post was *not* authored by Mr. Wang. A side-by-side review of the publication where the quoted statement in ¶ 62 appears ( https://█████wordpress.com/ ████████████ (last visited on Aug. 25, 2021) with Plaintiff's blogs (Mr. Wang requests that the Court take judicial notice of these online publications as well. *See, supra,* fn 3.): https://█████wordpress.com/ (last visited on Aug. 25, 2021) (Attachment B) and http://█████blogspot.com/ ) (last visited on Aug. 25, 2021) (Attachment C) establishes that:

- Mr. Wang is not the author of the publication;
- Morgann Paraskevas, whom Plaintiff knows very well, is the author;
- Since at least December of 2013 Plaintiff has known (or should have known) about the publications; and
- Taking her own allegations as true that Mr. Wang was the only one (beside her, in the United States) who knew of the underlying facts, Third. Am. Compl ¶¶ 55, 63, then she knew (or should have known) about the causes of action in her Complaint in December 2013.

10

**B.     Mr. Wang's publication made in his capacity as a potential witness in Plaintiff's other litigations are absolutely privileged**

29.     In addition, pursuant to Restatement (Second) of Torts, "[a] witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." Restatement (Second) of Torts § 588; *see also id.*, cmt. e ("As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding.").

30.     Colorado has adopted the absolute litigation privilege as recognized by the Restatement (Second) of Torts. *See, e.g., Club Valencia Homeowners Ass'n. v. Valencia Associates*, 712 P.2d 1024, 1027-1028 (Colo. App. 1985); *Merrick v. Burns*, 43 P.3d 712, 714 (Colo. App. 2001); *McDonald v. Lakewood Country Club*, 461 P.2d 437, 444 (Colo. 1969); *Renner v. Chilton*, 142 Colo. 454, 351 P.2d 277 (1960). "The absolute privilege to defame in the course of judicial proceedings is not limited to statements during trial, but

---

Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.

*Tellabs,* 551 U.S. 322–23 (internal citations omitted).

may extend to steps taken prior to trial such as conferences and other communications preliminary to the proceeding." *Club Valencia*, at 1027. "All doubt should be resolved in favor of its relevancy or pertinency. No strained or close construction will be indulged to exempt a case from the protection of privilege. Thus, letters sent to persons having collateral interests in the litigation are privileged to the extent that the alleged defamatory statements have some relation to the subject matter of the proposed litigation and are made in furtherance of the objective of the litigation." *Id*. (citations omitted). "The privilege applies, even though the publication was made outside the courtroom and no official function of the court or its officers was invoked." *Id.* at 1028.

31.　　"The determination of privilege is a question of law for the trial court." *Id.* at 1027.

32.　　The privilege provides a shield not only "from defamation claims arising from statements made during the course of litigation, but it also bars other non-defamation claims that stem from the same conduct" such as "claims of invasion of privacy[7] and intentional infliction of emotional distress." *Buckhannon v. U.S. West Communs*., 928

---

[7] Even if Mr. Wang's alleged statement concerning the prosecution against the Chinese man Plaintiff accused of raping her were not absolutely privileged, those statements are also non-actionable for "invasion of privacy" as a matter of law. *See, e.g., Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997) (requiring that any statement alleged to invade one's privacy "cannot be of legitimate concern to the public"). It cannot be disputed that a prosecution for criminal rape is not a purely private matter under the law of the United States.
In addition, "the requirement of public disclosure . . . requires communication to the public in general or to a large number of persons, as distinguished from one individual or a few." *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997). Because the quoted statement was published by Mr. Paraskevas and because the Third Amended Complaint does not include any allegation that Mr. Wang's alleged statements in the *Weamer* litigation were made to the public in general or to a large number of persons, it fails to state a claim upon which relief can be granted.

P.2d 1331, 1335 (Colo. App. 1996) (citing *Barker v. Huang*, 610 A.2d 1341 (Del. 1992));

*see also Peterson v. Grisham*, 594 F.3d 723, 730 (10th Cir. 2010); *Kesner v. Dow Jones &*

*Co., Inc.*, No. 20-CV-3454 (PAE), 2021 U.S. Dist. LEXIS 14358, at 81-82, 2021 WL

256949, at *10-11 (S.D.N.Y. Jan. 26, 2021) (because each of Plaintiff's non-defamation

claims duplicate her failed defamation claims, the non-defamation claims must be

dismissed as a matter of law).

      33.    Here, Plaintiff alleges that she first learned about the two sets of statements

at issue in this litigation during the *Weamer* case. *See, e.g.,* Third. Am. Compl. ¶ 47; *but*

*see supra* ¶ 26 . Plaintiff quotes Ms. ▓▓▓▓▓▓ Esq. (Mr. Weamer's attorney). Third

Am. Compl. ¶ 60.

      34.    Pursuant to *Tellabs*, 551 U.S. 322 *and Gee*, 627 F.3d at 1186, and Fed. R.

Evid. 201(b)(2), Mr. Wang attaches ▓▓▓▓▓▓ referenced September 18, 2020

Declaration from the *Weamer* case file, (Attachment D), which specifically refers to Mr.

Wang as a witness in that case.

> 5. As part of preparing a defense in this matter, I have researched Ms. Doe on the
> Internet and **reached out to *witnesses*** who I believe may have relevant
> information about Ms. Doe's past false claims of sexual assault. My research has
> revealed that she has made claims of being taken advantage of sexually by Charlie
> Suarez (who she claims in publicly filed court records raped her after they went to
> dinner and got drunk together), ***Paul Wang*** (who she claims cheated on her and
> against whom she posted complaints on social media), and Morgann Paraskevas
> who she claims sexually harassed her while she couch[-]surfed at his home. …."

Attachment D, Affidavit of ▓▓▓▓▓ Esq., ▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓ ), the referenced September 18, 2020 Declaration of ▓▓▓▓▓ in

Support of Defendant Weamer's Motion to Compel Further Responses to Discovery and

for Monetary Sanctions Against Jane Doe, at ¶ 5 (emphasis added).[8]

35.     Because any allegedly false and defamatory statements about the Plaintiff made by Mr. Wang in his communications with attorney ███████ were in his capacity as a potential witness, conveying information that ███████ quite reasonably considered to be "pertinent" to that litigation, those statements are protected by the absolute litigation privilege as a matter of law. The court should therefore dismiss Plaintiff's claims with prejudice on this ground as well.

### V.     Conclusion

In her Third Amended Complaint, Plaintiff has provided what she claims are the false and defamatory "statements" Mr. Wang made, yet she continues to refuse to point Defendant or the Court to what she avers is a "publicly accessible" web posting.  Taking Plaintiff's allegations as true—that Mr. Wang (not the actual blog post author)—published statements about her online in December 2013, establishes that that mass publication occurred in December 2013, which is when her claims "accrued" for purposes of the statute of limitations. Thus, any claims Plaintiff may have had premised on that eight-year old publication are time barred, as a matter of law. In addition, because Mr. Wang was/is a witness, identified as such in the *Weamer* litigation, any statements he made in the course of that litigation (including during pre-trial discovery) are protected by the absolute litigation privilege, under settled Colorado law.

---

[8] Also, in her Second Amended Complaint, Plaintiff  affirmatively pleaded that Mr. Wang made his statements "to help another party [Mr. Weamer] in another unrelated civil lawsuit." *See* Sec. Am. Compl. ¶ 56.

14

WHEREFORE, the Court should dismiss Plaintiff's claims with prejudice.


Respectfully submitted this 25th day of August 2021.


<div style="margin-left:40%">

*/s/ Katayoun A. Donnelly*

Katayoun A. Donnelly (#38439)

Azizpour Donnelly, LLC

2373 Central Park Blvd., Suite 100

Denver, CO  80238

Tel. (720) 675-8584

katy@kdonnellylaw.com


*Attorney for Paul Wang*

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2021, I served an electronic copy of the foregoing via

CM/ECF to counsel of record.


Clarissa M. Collier
David J. Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
303.244.1800
collier@wtotrial.com
schaller@wtotrial.com


                                    */s/ Katayoun A. Donnelly*
                                    Katayoun A. Donnelly

16

EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:20-cv-02765-RMR-MEH

JANE DOE,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

### REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT (DOC. 90)

---

      Mr. Wang's motion to dismiss explained how the substantive and procedural laws governing Plaintiff's claims reveal the fatality of the flaws in her Third Amended Complaint. Plaintiff's response does not address the key arguments in Mr. Wang's motion and contains a series of requests to disregard the applicable law and information referenced in her own complaint.[1]

    *I.*     **Plaintiff asks the Court to disregard the applicable legal standards and information referenced in her complaint**

    **A.**     **Plausibility and heightened pleading standards apply**

    Plaintiff claims: "'[T]he complaint should not be dismissed for failure to state a

---

[1] Although Plaintiff appears displeased with the Motion's description of Mr. Wang's failed efforts to persuade her to comply with Judge Jackson's June 11, 2021 order, she nonetheless does not contest the accuracy of any of the statements in the Motion's recitation of the procedural history.

1

claim unless it appears **beyond doubt** that the plaintiff can prove **no set of facts** in support of [her] claim that would entitle [her] to relief.'" (Pl.'s Resp. at 2) (quoting *Stearns v. McGuire*, No. CIV.02-RB-1912(OES), 2004 WL 3174423, at *1 (D. Colo. July 26, 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (emphasis added))).

Plaintiff's contention disregards the facts that (1) the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) transformed federal civil litigation by abolishing "notice" pleading—for which she is advocating—in favor of the heightened "plausibility" pleading regime, and (2) the plausibility standard applies to pleading elements of all civil claims, including defamation and other torts. *See, e.g., Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

Plaintiff also mistakenly contends that the requirement of pleading allegedly defamatory statements with particularity (and the circumstances surrounding each challenged publication) is solely a creature of Colorado procedural law, hence not applicable in federal court. *But see Walters v. Linhof,* 559 F. Supp. 1231 (D. Colo. 1983) ("Plaintiffs have not substantially set forth the words alleged to be defamatory and untrue nor any facts that would establish publication. The fourth claim for relief is dismissed for failure to state a claim."); *Martinez v. Winne*r, 548 F. Supp. 278 (D. Colo. 1982) ("It is almost axiomatic that in defamation cases a certain degree of specificity is an essential in pleadings, that the language complained of must be set forth in words or words to that effect and that the **defendant should not be required to resort to the ofttimes expensive discovery process to drag from a litigant what he really intends to do to his adversary by a vehicle shrouded in mystery**." (citation omitted) (emphasis added)).

2

**B.      In deciding the motion to dismiss, the Court may take judicial notice of pleadings in another case, blog posts, and documents referenced in the complaint without converting the motion into one for summary judgment**

Contrary to Plaintiff's assertion, Pl. Resp., 3-5, the Court may take judicial notice of Attachments[2] A (blog post [the verbatim quote of the statements at issue, referenced in ¶¶ 62, 63 of the Third Amended Complaint]), B (blog post [Plaintiff's knowledge of the statements at issue, *see* ¶¶ 55, 63]), C (blog post [Plaintiff's knowledge of the statements at issue, *see* ¶¶ 55, 63]), and D (pleading from another case [Declaration of ███████ in Support of Defendant Weamer's Motion to Compel Further Responses to Discovery and for Monetary Sanctions ████████, referenced in ¶ 60 of the Third Amended Complaint]; *see also* ¶¶ 61, 63) without converting the motion to dismiss it into one for summary judgment. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998); *see also Mirlis v. Greer*, 952 F.3d 51, 63 n.11 (2d Cir. 2020) ("The court was entitled to take judicial notice of Dressler's blog posts, as are we. See Fed. R. Evid. 201. Further, their public availability on the internet site that Dressler concededly controlled cannot reasonably be contested; they continue to be available as of this writing."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of pleadings filed in another action as a public record pursuant to Federal Rule of Evidence 201(b) in deciding a motion to dismiss without converting that motion into a motion for summary judgment); *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F .3d 396, 401 n. 15 (3d Cir. 2006) (courts may "'take

---

[2] These are attachments to Mr. Wang's Unredacted Motion to Dismiss the Third Amended Complaint. (Doc. 90)

judicial notice of newspaper articles for the fact of their publication'" (citation omitted));
*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (district courts may consider
"documents incorporated by reference in the complaint . . . without converting the motion
to dismiss into a motion for summary judgment.").

### C.   Plaintiff's claims are both improperly pled and time-barred

The Third Amended Complaint continues to plead multiple *publications* within a
single count. It identifies two statements (apparently in an unspecified number of separate
publications) that Plaintiff alleges Mr. Wang published online—although, tellingly, not
with specificity (she did not identify, among other things, the dates and places of
publication). And in her response, Plaintiff seems to allege that the state law requirements
do not apply to her but fails to explain how the body of federal case law cited above, which
include these same requirements, does not apply to her.

Relying on the only quote in ¶ 62 of the Third Amendment Complaint, which
includes both statements at issue, and taking judicial notice of the publication (Attachment
A to Doc. 90) and its date (it was published in 2013) and ¶ 63 and taking them as true, the
Court should dismiss the Third Amended Complaint with prejudice.[3] *See, e.g., Phillips v.
World Pub. Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("In the internet context,
the statute of limitations begins to run when the allegedly infringing material is first posted
on the internet.") (*citing Canatella v. Van De Kamp*, 486 F.3d 1128, 1134–36 (9th Cir.
2007))*; Bloom v. Goodyear Tire & Rubber Co.*, 2006 WL 2331135at *7 (D. Colo. Aug. 10,

---

[3] Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim. *See,
e.g., Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997) (applying de novo review to
district court's dismissal on the grounds that claim was time-barred for failure to state a claim).

2006); *Hoai Thanh v. Ngo*, No. PJM 14-448, 2016 WL 3958584, at *10–12 (D. Md. July

22, 2016), *aff'd sub nom. Hoai Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017);

*Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010); *Deatley v. Allard*, 2015 WL

134271, at *5; *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at *4.[4]

> **D.** **Any of Mr. Wang's Statements Made to Counsel in the *Weamer* Litigation are Absolutely Privileged**

Plaintiff argues that Mr. Wang's statements made to an attorney actively engaged in

civil litigation, in response to her inquiry seeking information from him *for use in that*

*litigation*, is not subject to the "litigation communications" privilege.  Pl. Resp., 6-8. That

it is incorrect. Any allegedly false and defamatory statements about the Plaintiff that Mr.

Wang may have communicated to attorney ██████████ were unquestionably in his

capacity as a potential witness, and that information was quite reasonably considered to be

"pertinent" to that litigation. And, indeed, Plaintiff has expressly so pleaded. *See* Sec. Am.

Compl. ¶ 56 (averring that Mr. Wang made his statements "to help another party [Mr.

Weamer] in another unrelated civil lawsuit."); *see also* Attachment D to Doc. 90

(Declaration of ██████████ in Support of Defendant Weamer's Motion to Compel

Further Responses to Discovery and for Monetary Sanctions ██████████, referenced

in ¶ 60 of the Third Amended Complaint). Accordingly, those statements are protected by

the absolute litigation privilege as a matter of law. *See* Def. Mot. Dismiss Third Am.

Compl., 11-14; *see also Carter v. Spirit Aerosystems, Inc*., No. 16-1350-EFM-GEB, 2017

WL 5270428, at *4 (D. Kan. Nov. 13, 2017), aff'd, 827 F. App'x 864 (10th Cir. 2020)

("Carter's defamation claim relies entirely on statements Shulda made to the DOL

---

[4] Plaintiff does not address these legal authorities either.

investigator during Carter's administrative proceedings. Shulda's communications to the DOL investigator are entitled to an absolute privilege, which is an affirmative defense to Carter's defamation claim. Therefore, Carter's defamation claim is dismissed and it is unnecessary for the Court to consider whether Carter's claim was brought within the statute of limitations."). The court should therefore dismiss Plaintiff's claims with prejudice on this ground as well.

## II.      Conclusion

Despite repeated requests that she do so, Plaintiff refuses to point Defendant or the Court to what she avers is a "publicly accessible" web posting, upon which she premises her claims. Such conduct is consistent with how Plaintiff has litigated multiple other cases— ███████████████████ —and for which she has been sanctioned by other courts. The Court should not countenance tactics such as claiming that the court should not consider the online publications that recite verbatim the statements she alleges are defamatory because she intentionally did not attach them to her complaint, while refusing to identify the online, publicly available statements referenced in her complaint; and at once relying on the publicly available online blog post as a sufficiently reliable source on which she can base her claims, Third Am. Compl., ¶¶ 62, 62, but denying the blog post's trustworthiness when it comes to application of the statute of limitations. Pl. Resp. at 2, 4.

Taking Plaintiff's allegations as true establishes that her claims "accrued" in 2013. Thus, any claims Plaintiff may have had premised on that eight-year-old publication are time barred, as a matter of law. In addition, because the Complaint affirmatively pleads

that Mr. Wang was/is a witness, identified as such in the *Weamer* litigation, any

statements he made in the course of that litigation (including during pre-trial discovery)

are protected by the absolute litigation privilege, under settled Colorado law.

WHEREFORE, the Court should dismiss Plaintiff's claims with prejudice.

Respectfully submitted this 28[8h] day of September 2021.

*/s/ Katayoun A. Donnelly*
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO 80238
Tel. (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Paul Wang*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2021, I served an electronic copy of the foregoing

via CM/ECF to counsel of record.

Clarissa M. Collier
David J. Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
303.244.1800
collier@wtotrial.com
schaller@wtotrial.com

                                        */s/ Katayoun A. Donnelly*
                                        Katayoun A. Donnelly

EXHIBIT 7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

---

## [PROPOSED] SCHEDULING ORDER

---

### I.    DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

    A.    Date of Conference: **December 1, 2021**

    B.    **Counsel for Plaintiff:**

        Clarissa M. Collier
        Wheeler Trigg O'Donnell LLP
        370 17 Street, Suite 4500
        Denver, CO 80202
        (303) 244-1800
        collier@wtotrial.com

    C.    **Counsel for Defendant:**

        Katayoun Azizpour Donnelly
        Azizpour Donnelly LLC
        2373 Central Park Blvd., Suite 100
        (720) 675-8584
        Katy@kdonnellylaw.com

II.    **STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

III.   **STATEMENT OF CLAIMS AND DEFENSES**

A.     **Plaintiff's Claims**

This case concerns certain false and damaging statements made by Defendant about Plaintiff that have caused her significant emotional distress and opened her up to potential criminal prosecution. Plaintiff and Defendant have a long history starting as two peers in junior high school in China and evolving into a romantic relationship. While the couple was dating, in May 2013, a mutual acquaintance of the parties sexually assaulted Plaintiff while she was still living in China. Plaintiff told Defendant about the assault and reported her attacker to the Chinese authorities. Plaintiff's attacker was arrested by Chinese authorities and referred for prosecution.

After the assault, Plaintiff came to the United States to live with Defendant. During their time living together, Plaintiff lost her passport. She reported the lost passport to the Aurora Police Department, which is what the U.S. Department of State—Bureau of Consular recommends passport holders do in that situation. Plaintiff later found her passport and did not pursue further remedies or investigation through the Aurora Police Department.

Eventually, Plaintiff and Defendant ended their relationship. After ending the relationship, and in 2020, Plaintiff learned through another lawsuit that Defendant had made several false and damaging statements about her. First, she learned that Defendant had stated that Plaintiff filed a false police report for her lost passport. In this statement, Defendant also claimed that Plaintiff was issued a refund from the travel insurance company for half the ticket price

2

based on Plaintiff filing the false police report. In other words, Defendant accused Plaintiff of making a false police report and committing insurance fraud. Second, she learned that Defendant stated that Plaintiff falsely accused her attacker in China of sexual assault. Thus, again, Defendant is claiming that Plaintiff made a false police report. These statements have caused Plaintiff emotional injuries and opened her up to criminal prosecution. Based on these statements, Plaintiff asserts four claims for relief:

1. **First Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Filing a False Police and Committing Insurance Fraud in Relation to Plaintiff's Lost Passport.

2. **Second Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Falsely Accusing Her Chinese Attacker of Sexual Assault

3. **Third Claim**: Intentional Infliction of Emotional Distress/Outrageous Conduct

4. **Fourth Claim**: Unreasonable Disclosure of Private Facts

B. **Defendant's Defenses**

Mr. Wang categorically denies that he has committed any tortious act. To the contrary, it is he who has been victimized by Ms. Luo's conduct both prior to, and throughout, this frivolous and vexatious lawsuit. Plaintiff's abuse of the judicial system has been the subject of numerous sanctions, yet she persists in continuing that pattern.

Mr. Wang will pursue all defenses available to him. *See* briefings in Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym. In addition, he will seek the entry of an order requiring both the Plaintiff and her counsel to reimburse him for having to defend this action.

3

## IV.    UNDISPUTED FACTS

The following facts are undisputed:

A.    Plaintiff and Defendant attended middle school together in China.

B.    In 2013, the Plaintiff reported to the Aurora Police Department that her passport had been lost or stolen.

## V.    COMPUTATION OF DAMAGES

**Plaintiff:** Plaintiff seeks nominal, compensatory, and special damages to the fullest extent permitted by the law, as well as reasonable attorneys' fees and costs. Plaintiff seeks compensatory damages for her emotional injuries. At this time, she does not seek lost past or future wages. She reserves the right to seek punitive damages.

**Defendant:** Defendant seeks attorney fees and costs, jointly and severally, against Plaintiff and her counsel.

## VI.    REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

A.    Rule 26(f) meeting was held on: November 17, 2021

B.    Names of each participant and party he/she represents:

Counsel for Plaintiff, Clarissa Collier and counsel for Defendant, Katayoun Donnelly participated.

C.    Statement as to when Rule 26(a)(1) disclosure will be made:

December 1, 2021 per Fed. R. Civ. P. 26(a)(1)(C).

D.    Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1)

Not applicable.

E.    Statement concerning any agreements to conduct informal discovery.

None

F.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit number system.

The parties agree to take all reasonable steps to reduce discovery and reduce costs to the extent feasible. Accordingly, considering Plaintiff's litigation history, *see* Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym and his replies in support of those motions, Defendant, at the appropriate time, will be filing a motion to stay all discovery pending the Court's ruling on his motion to dismiss.

G.      Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

Plaintiff anticipates that her claims or defenses will involve discovery of electronically stored information, including, but not limited to, social media information (including posts, messages, chats), email, and text messages. To the extent that Plaintiff has any electronically stored information subject to discovery in this case in her possession or control, Plaintiff will take steps necessary to preserve that information.

Defendant anticipates the same.

H.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

There is little possibility of settlement.

## VII.    CONSENT

All parties do not consent to the exercise of jurisdiction of a magistrate judge.

## VIII.   DISCOVERY LIMITATIONS

A.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

No modifications. The presumptions of 10 depositions per side and 25 interrogatories per party shall apply.

B.      Limitations which any party proposes on the length of depositions.

None. The presumption of 1 day for 7 hours shall apply.

C.      Limitations which any party proposes on the number of requests for production and/or requests for admissions.

The parties agree to limit the number of requests for production and requests for admission to no more than 25 each per party.

D.      Other Planning or Discovery Orders

Plaintiff anticipates the need for a protective order allowing for designation of certain records as Confidential; such records may include documents such as Plaintiff's medical records and potentially financial records. Plaintiff will endeavor to provide the Court with a Joint Motion and proposed Protective Order regarding the same.

Considering Plaintiff's litigation history, *see* Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym and his replies in support of those motions, at the appropriate time, Defendant will be filing a motion to stay discovery pending the Court's ruling on his motion to dismiss.

IX.     **CASE PLAN AND SCHEDULE**

A.      Deadline for Joinder of Parties and Amendment of Pleadings: **Deadline expired.**

**May only join or amend with leave of Court.**

B.      Discovery Cut-Off: **August 1, 2022**

C.      Dispositive Motion Deadline**: September 16, 2022**

D.      Expert Witness Disclosure:

      1.      The parties shall identify anticipated fields of expert testimony, if any:

          a.      Plaintiff anticipates calling one expert to opine on Plaintiff's damages and the effects of disseminating false information.

          b.      Defendant anticipates calling an expert to opine on the impact of vexatious litigation.

      2.      Limitations which the parties propose on the use or number of expert witnesses: The parties will each be limited to 2 experts.

      3.      The parties shall designate all experts and provide opposing counsel and any pro se parties with all information required under Fed. R. Civ. P. 26(a)(2) on or before **April 16, 2022.**

      4.      The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **May 31, 2022.**

E.      Identification of Persons to be Deposed:

| Name of Deponent | | Expected Length of Deposition |
|---|---|---|
| Xingfei Luo | | TBD |
| Paul Wang | | TBD |
| ███████████ | | TBD |
| ██████████ | | TBD |
| Chen Guochang | | TBD |
| Amanda G. Papac | | TBD |

## X.      DATES FOR FURTHER CONFERENCES

None.

## XI.      OTHER SCHEDULING MATTERS

A.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: Plaintiff does not agree that all discovery in this case should be stayed, as Defendant maintains is the appropriate course, pending the resolution of the Defendant's motion to dismiss with prejudice.

B.      Anticipated length of trial and whether trial is to the court or jury: The parties are agreeable to a 4-day jury trial.

C.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Avenue, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2505; or the U.S.

Courthouse/Federal Building, La Plata County Courthouse, 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.

Not applicable.

## XII.   NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## XIII.   AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at this ____ day of ___, 2021

                                                    BY THE COURT


                                                    _____
                                                    United States Magistrate Judge

APPROVED ON NOVEMBER 18, 2021

*s/ Clarissa M. Collier*

Clarissa M. Collier
David Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:   collier@wtotrial.com
          schaller@wtotrial.com

*Attorneys for Plaintiff*

*s/Katayoun Donnelly*

Katayoun Donnelly
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO 80238
Telephone: (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Defendant*

EXHIBIT 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

        Plaintiff,

v.

PAUL WANG,

        Defendant.

---

## SCHEDULING ORDER

---

**I.   DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

    A.    Date of Conference: **December 1, 2021**

    B.    **Counsel for Plaintiff:**

        Clarissa M. Collier
        Wheeler Trigg O'Donnell LLP
        370 17 Street, Suite 4500
        Denver, CO 80202
        (303) 244-1800
        collier@wtotrial.com

    C.    **Counsel for Defendant:**

        Katayoun Azizpour Donnelly
        Azizpour Donnelly LLC
        2373 Central Park Blvd., Suite 100
        (720) 675-8584
        Katy@kdonnellylaw.com

II.     **STATEMENT OF JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

III.    **STATEMENT OF CLAIMS AND DEFENSES**

A.      **Plaintiff's Claims**

This case concerns certain false and damaging statements made by Defendant about Plaintiff that have caused her significant emotional distress and opened her up to potential criminal prosecution. Plaintiff and Defendant have a long history starting as two peers in junior high school in China and evolving into a romantic relationship. While the couple was dating, in May 2013, a mutual acquaintance of the parties sexually assaulted Plaintiff while she was still living in China. Plaintiff told Defendant about the assault and reported her attacker to the Chinese authorities. Plaintiff's attacker was arrested by Chinese authorities and referred for prosecution.

After the assault, Plaintiff came to the United States to live with Defendant. During their time living together, Plaintiff lost her passport. She reported the lost passport to the Aurora Police Department, which is what the U.S. Department of State—Bureau of Consular recommends passport holders do in that situation. Plaintiff later found her passport and did not pursue further remedies or investigation through the Aurora Police Department.

Eventually, Plaintiff and Defendant ended their relationship. After ending the relationship, and in 2020, Plaintiff learned through another lawsuit that Defendant had made several false and damaging statements about her. First, she learned that Defendant had stated that Plaintiff filed a false police report for her lost passport. In this statement, Defendant also claimed that Plaintiff was issued a refund from the travel insurance company for half the ticket price

based on Plaintiff filing the false police report. In other words, Defendant accused Plaintiff of making a false police report and committing insurance fraud. Second, she learned that Defendant stated that Plaintiff falsely accused her attacker in China of sexual assault. Thus, again, Defendant is claiming that Plaintiff made a false police report. These statements have caused Plaintiff emotional injuries and opened her up to criminal prosecution. Based on these statements, Plaintiff asserts four claims for relief:

1. **First Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Filing a False Police and Committing Insurance Fraud in Relation to Plaintiff's Lost Passport.

2. **Second Claim**: Defamation Per Se for Defendant's Statement Regarding Plaintiff Falsely Accusing Her Chinese Attacker of Sexual Assault

3. **Third Claim**: Intentional Infliction of Emotional Distress/Outrageous Conduct

4. **Fourth Claim**: Unreasonable Disclosure of Private Facts

B.   **Defendant's Defenses**

Mr. Wang categorically denies that he has committed any tortious act. To the contrary, it is he who has been victimized by Ms. Luo's conduct both prior to, and throughout, this frivolous and vexatious lawsuit. Plaintiff's abuse of the judicial system has been the subject of numerous sanctions, yet she persists in continuing that pattern.

Mr. Wang will pursue all defenses available to him. *See* briefings in Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym. In addition, he will seek the entry of an order requiring both the Plaintiff and her counsel to reimburse him for having to defend this action.

## IV.     UNDISPUTED FACTS

The following facts are undisputed:

A.     Plaintiff and Defendant attended middle school together in China.

B.     In 2013, the Plaintiff reported to the Aurora Police Department that her passport had been lost or stolen.

## V.     COMPUTATION OF DAMAGES

**Plaintiff:** Plaintiff seeks nominal, compensatory, and special damages to the fullest extent permitted by the law, as well as reasonable attorneys' fees and costs. Plaintiff seeks compensatory damages for her emotional injuries. At this time, she does not seek lost past or future wages. She reserves the right to seek punitive damages.

**Defendant:** Defendant seeks attorney fees and costs, jointly and severally, against Plaintiff and her counsel.

## VI.     REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

A.     Rule 26(f) meeting was held on: November 17, 2021

B.     Names of each participant and party he/she represents:

Counsel for Plaintiff, Clarissa Collier and counsel for Defendant, Katayoun Donnelly participated.

C.     Statement as to when Rule 26(a)(1) disclosure will be made:

December 1, 2021 per Fed. R. Civ. P. 26(a)(1)(C).

D.     Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1)

Not applicable.

E.     Statement concerning any agreements to conduct informal discovery.

None

F.      Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit number system.

The parties agree to take all reasonable steps to reduce discovery and reduce costs to the extent feasible. Accordingly, considering Plaintiff's litigation history, *see* Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym and his replies in support of those motions, Defendant, at the appropriate time, will be filing a motion to stay all discovery pending the Court's ruling on his motion to dismiss.

G.      Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

Plaintiff anticipates that her claims or defenses will involve discovery of electronically stored information, including, but not limited to, social media information (including posts, messages, chats), email, and text messages. To the extent that Plaintiff has any electronically stored information subject to discovery in this case in her possession or control, Plaintiff will take steps necessary to preserve that information.

Defendant anticipates the same.

H.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

There is little possibility of settlement.

## VII.   CONSENT

All parties do not consent to the exercise of jurisdiction of a magistrate judge.

## VIII.   DISCOVERY LIMITATIONS

A.    Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

No modifications. The presumptions of 10 depositions per side and 25 interrogatories per party shall apply.

B.    Limitations which any party proposes on the length of depositions.

None. The presumption of 1 day for 7 hours shall apply.

C.    Limitations which any party proposes on the number of requests for production and/or requests for admissions.

The parties agree to limit the number of requests for production and requests for admission to no more than 25 each per party.

D.    Other Planning or Discovery Orders

Plaintiff anticipates the need for a protective order allowing for designation of certain records as Confidential; such records may include documents such as Plaintiff's medical records and potentially financial records. Plaintiff will endeavor to provide the Court with a Joint Motion and proposed Protective Order regarding the same.

Considering Plaintiff's litigation history, *see* Mr. Wang's Motions to Dismiss and Motion to Reconsider the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym and his replies in support of those motions, at the appropriate time, Defendant will be filing a motion to stay discovery pending the Court's ruling on his motion to dismiss.

Before filing a motion for an order relating to a discovery dispute, the movant must request a conference with the Court by submitting an email, copied to all parties, to hegarty_chambers@cod.uscourts.gov. *See* Fed. R. Civ. P. 16, cmt. 2015 Amend. The Court will determine at the conference whether to grant the movant leave to file the motion.

IX.   **CASE PLAN AND SCHEDULE**

    A.   Deadline for Joinder of Parties and Amendment of Pleadings: January 15, 2022.

    B.   Discovery Cut-Off: **August 1, 2022**

    C.   Dispositive Motion Deadline**: September 16, 2022**

    D.   Expert Witness Disclosure:

        1.   The parties shall identify anticipated fields of expert testimony, if any:

            a.   Plaintiff anticipates calling one expert to opine on Plaintiff's damages and the effects of disseminating false information.

            b.   Defendant anticipates calling an expert to opine on the impact of vexatious litigation.

        2.   Limitations which the parties propose on the use or number of expert witnesses: The parties will each be limited to 2 experts.

        3.   The parties shall designate all experts and provide opposing counsel and any pro se parties with all information required under Fed. R. Civ. P. 26(a)(2) on or before **April 16, 2022.**

        4.   The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **May 31, 2022.**

E.      Identification of Persons to be Deposed:

| Name of Deponent | | Expected Length of Deposition |
|---|---|---|
| Xingfei Luo | | TBD |
| Paul Wang | | TBD |
| ███████████ | | TBD |
| █████████ | | TBD |
| Chen Guochang | | TBD |
| Amanda G. Papac | | TBD |

## X.      DATES FOR FURTHER CONFERENCES

None.

## XI.      OTHER SCHEDULING MATTERS

A.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: Plaintiff does not agree that all discovery in this case should be stayed, as Defendant maintains is the appropriate course, pending the resolution of the Defendant's motion to dismiss with prejudice.

B.      Anticipated length of trial and whether trial is to the court or jury: The parties are agreeable to a 4-day jury trial.

C.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Avenue, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2505; or the U.S.

Courthouse/Federal Building, La Plata County Courthouse, 1060 E. 2nd Avenue, Suite 150,

Durango, Colorado 81301.

      Not applicable.

**XII.**   **NOTICE TO COUNSEL AND PRO SE PARTIES**

      The parties filing motions for extension of time or continuances must comply with

D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's

client.

      Counsel will be expected to be familiar and to comply with the Pretrial and Trial

Procedures or Practice Standards established by the judicial officer presiding over the trial of this

case.

      With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

      Counsel and unrepresented parties are reminded that any change of contact information

must be reported and filed with the Court pursuant to the applicable local rule.

**XIII.**  **AMENDMENTS TO SCHEDULING ORDER**

      This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at this 1st day of December, 2021

                               BY THE COURT


                               S/Michael E. Hegarty
                               United States Magistrate Judge

APPROVED ON NOVEMBER 18, 2021

                                       *s/ Clarissa M. Collier*

                                       Clarissa M. Collier
                                       David Schaller
                                       Wheeler Trigg O'Donnell LLP
                                       370 Seventeenth Street, Suite 4500
                                       Denver, CO 80202
                                       Telephone:   303.244.1800
                                       Facsimile:    303.244.1879
                                       Email:   collier@wtotrial.com
                                                         schaller@wtotrial.com

                                       *Attorneys for Plaintiff*

                                       *s/Katayoun Donnelly*

                                       Katayoun Donnelly
                                       Azizpour Donnelly, LLC
                                       2373 Central Park Blvd., Suite 100
                                       Denver, CO 80238
                                       Telephone: (720) 675-8584
                                       katy@kdonnellylaw.com

                                       *Attorney for Defendant*

EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
IMPOSITION OF SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES
OF CIVIL PROCEDURE, AGAINST PLAINTIFF AND HER COUNSEL**

---

Burying one's head in the sand does not provide a cognizable exemption to the non-delegable duty to investigate under Federal Rule of Civil Procedure 11.

### Ms. Luo's Counsel Violated Rule 11 and More

Ms. Luo and Mr. Wang were *pro se* litigants. The Court appointed *pro bono* counsel for Ms. Luo. Mr. Wang retained counsel. Counsel for the parties entered their appearances within days of each other. Acknowledging that both counsel needed time to prepare and to avoid imposing on Mr. Wang (the only party paying for legal services) the additional cost of briefing motions to dismiss the First Amended Complaint and opposition to filing a second amended complaint, Mr. Wang did not object to allowing Ms. Luo to amend her complaint for the second time. The Court granted this request and set the deadline for Plaintiff to file her second amended complaint. *See* Exhibit 1 [Tr. Apr. 8, 2021], at 11-12.

1

Ms. Luo's counsel, however, before filing the second amended complaint or providing a draft of it to Mr. Wang's counsel, requested that Mr. Wang's counsel provide grounds for dismissal of Ms. Luo's complaint. Resp. Rule 11 Mot. (hereinafter "Resp."), Exh 2. Considering that, by then, the Court had already ruled that Ms. Luo could file a second amended complaint, Mr. Wang's counsel explained that she would be happy to confer and discuss the infirmities of the second amended complaint after she was provided a copy—it would not be possible to state grounds for dismissal before seeing the complaint—and before filing a motion to dismiss. *Id*. This was consistent with the practice standards of the judges of this court. Federal Rule of Civil Procedure 12 does not require conferral before filing a motion to dismiss. Judge Jackson's relatively new practice standards (applicable to cases filed after December 1, 2019) state:

"**Before filing a motion to dismiss**, the parties *should* meet and confer in a good faith, substantive, and meaningful way." Hon. R. Brooke Jackson, Practice Standards, at 1 (emphasis added). As such, contrary to Ms. Luo's counsel's assertions, Resp. at 3, neither the federal rules of civil procedure nor the practice standards in this district put a burden on defense counsel to, in violation of their duties to their clients, assist plaintiffs' counsel in drafting their complaint and curing deficiencies before even a draft of the amended complaint is provided. Ms. Luo's counsel's court-appointed status does not create an exception.

Ms. Luo's counsel also contends that Judge Jackson considered Mr. Wang's argument "a waste of time." Resp. at 4, 7. They, however, fail to provide the context for this remark. The Second Amended Complaint did not include the actual alleged statements made by Mr. Wang. (It only generally described statements Ms. Luo allegedly received in the course of the *Weamer* litigation. Sec. Am. Compl., ¶¶ 47-48, 52-56, 62.) It did, however, specifically state that "**Defendant only made these statements . . . to help another party in another unrelated civil**

*lawsuit.*" *Id.*, ¶ 56 (emphasis added). Based on this admission, Mr. Wang asserted the doctrine of absolute litigation privilege. ECF 71. In her response letter regarding the motion to dismiss, ECF 75, Ms. Luo stated for the first time that her allegations were not limited to the statements made in the course of the *Weamer* litigation but will include statements Mr. Wang allegedly made to the public within the statute of limitations and not in connection with any litigation. *Id.*, at 3. Based on these specific representations, Judge Jackson concluded that *if* Ms. Luo in fact has such evidence then addressing the motion to dismiss *would* be a waste of time. He therefore specifically directed Ms. Luo's counsel to "file one more amended complaint that takes into account **defendant's issues** and pleads only what she believes she **has evidence to prove**." ECF 76 (emphasis added). In other words, before filing the Third Amended Complaint, Ms. Luo's counsel received specific direction from the Court to plead only those claims she "has evidence to prove"; i.e., to plead with requisite specificity the precise statements allegedly made by Mr. Wang to the public unrelated to his role as a potential witness.

Ms. Luo sent Mr. Wang a draft of the Third Amended Complaint. Mr. Wang brought to her counsel's attention that the draft did not address the above-mentioned concerns, Rule 11 Mot. (hereinafter "Mot."), Exh. 3, and asked counsel to provide the evidence that could support the claims. *Id.* Ms. Luo's counsel refused and asserted that they had no obligation to produce the evidence until initial disclosures. *Id.* They then filed the Third Amended Complaint, without, as the Court required, taking into account the legal issues that had been raised in Mr. Wang's letter setting forth the bases for a motion to dismiss and the email correspondence between counsel. *Id.*

Mr. Wang's briefings of the motions to Dismiss the Third Amended Complaint (hereinafter "Motion to Dismiss"), ECF 92, 106, and Reconsideration of the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym (hereinafter "Motion for

3

Reconsideration"), ECF 101, 109, further highlighted the lack of factual and legal support for the claims and explained why Ms. Luo's counsel could not reasonably rely on her statements to state a claim. Mr. Wang then provided the requisite notice of his intent to file a Rule 11 sanctions motion, which allowed Ms. Luo's counsel adequate time to withdraw the Third Amended Complaint.[1]

When Ms. Luo's counsel finally produced the documents that form the basis for the Third Amended Complaint, on December 2, 2021, those documents confirmed that (1) the online quoted statement in ¶ 62 is in fact from https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments—a link that Ms. Luo's counsel had asked the Court to strike, and on its face shows that it **was published in 2013 by Morgann Paraskevas** and (2) there is no representation from anyone in the *Weamer* or ███ litigations that the quoted statements in ¶ 52 and ¶ 62 were Mr. Wang's statements.

The following day, Mr. Wang specifically asked Ms. Luo's counsel to provide the URLs for the statements from Mr. Wang that they claimed he had published to the public, Third. Am. Compl. ¶¶ 51, 55, 62, 103 ("***His statements*** are also publicly accessible online." (emphasis added). Mot. Exh. 1. Ms. Luo's counsel responded: "My office ***produced the document you are referencing in the same form that it was provided to us*** and ***I did not retrieve the document from the internet***. So your request for a 'link' is puzzling, especially in light of your knowledge of the bases for my client's claim." Mot. Exh. 1 (emphasis added). In other words, counsel

---

[1] Ms. Luo's counsel claim that Mr. Wang represented to this court that he served a "copy" of the Rule 11 motion on November 5, 2021. This is incorrect. Mr. Wang's motion specifically uses the term "draft" not "copy" because Mr. Wang explained his December 3 efforts in the motion. A redline comparison of the draft and the filed motion is attached, which illustrates that the only substantive changes are on pages 4 and 8 explaining the events of December 3. *See* Exhibit 2 (moving a part of footnote 3 to the text on page 7-8). Mr. Wang would withdraw and refile the Rule 11 motion but Ms. Luo's counsel have specifically waived any argument regarding adequacy of notice and opportunity to correct and have requested that the Court reach the merits of the motion. Resp. fn 4.

acknowledge that they had not themselves even attempted to access the document online. And when asked to supply the URL—the only way to publicly access an online document—counsel expressed puzzlement! This conduct, and admission of it, demonstrates conclusively that Plaintiff's counsel have failed to comply with their Rule 11 duties of independent factual investigation and justifies imposing appropriate sanctions for the severe consequences of that violation for Mr. Wang.

First, Judge Jackson allowed filing a third amended complaint based on Ms. Luo's counsel's representation that she was in possession of actual documentary evidence to support the claim that "His [Mr. Wang's] statements are also publicly accessible online." However, Ms. Lou's counsel admit that before filing the third amended complaint they did not investigate whether the statements at issue were Mr. Wang's and actually publicly accessible online—not even a simple Google search with three or four words from the first page of the document, *e.g.*, Xingfei Luo, Chinese, and scam, which could have given them the URL for the document, so they could confirm that the quoted statement was in fact published online *and by whom* (i.e., not Mr. Wang) before pleading that it was Mr. Wang's statement. *See, e.g., Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir.2006) (stating that an attorney has a duty "to conduct a reasonable inquiry into the facts or law before filing the lawsuit" (internal quotations omitted)). These obligations are "personal [and] nondelegable," *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1989). This violation is particularly significant because Ms. Luo does not question the trustworthiness of the date this statement was published. As such, on its face, any defamation claim based on that 2013 publication is unquestionably time-barred.[2] *See, e.g,*

---

[2] When the tort claims are based on online publications, the date of the publication triggers the "should have known" requirement for the purpose of the discovery rule. *See* Mot. Dismiss at 10, Reply 4-5 (citing *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("In the internet context, the statute of limitations begins to run when the allegedly infringing material is first posted on the internet.") (citing *Canatella v. Van De Kamp*, 486 F.3d

*White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990) (finding assertion of a claim with a clear, insurmountable procedural or jurisdictional defect sanctionable conduct).

Second, contrary to Ms. Luo's counsel's representation, Resp. fn 9, they did not produce the documents in the same form that they were provided to them. Ms. Luo did *not* produce the complete version of the document produced in *Weamer*, which included the page she created about Mr. Wang, to which the quote in ¶ 52 responded, nor did she produce the document authored by Mr. Morgann Paraskevas, which contained the quote in ¶ 62. Similarly, she did *not* produce the initial version of Ms. Papac's declaration, which included the quoted statements in ¶ 62 as Exhibit L. Compare Exhibit 3 (Ms. Luo's related initial disclosures) [3] with Exhibit 4 (████████., attaching *Weamer* production as Exhs. A and B) and Exhibit 5 (Papac Decl., attaching ██████ production as Exh. A). And, contrary to Ms. Luo's counsel's representation, the documents produced in both *Weamer* and ██████, which Ms. Luo did *not* include in her initial disclosures, *included the URLs for the quoted statements. See* Exh. 4 (WEAMER 0003-0009, Exh 5 at 1, ¶ 4.

Third, these omissions demonstrate that Ms. Luo, who has possession and control of the documents necessary to establish whether her claim based on the quoted statement in ¶ 52 is time-barred, failed to disclose this information to the Court and in her initial disclosures. She could tell the Court when she created the page and when the comment to her defamatory post about Mr. Wang, quoted statement in ¶ 52, was published. *See* Exh. 4, at 4-5 (WEAMER 0003-

---

1128, 1134–36 (9th Cir. 2007)); *Bloom v. Goodyear Tire & Rubber Co.*, 2006 WL 2331135at *7 (D. Colo. Aug. 10, 2006); *Hoai Thanh v. Ngo*, No. PJM 14-448, 2016 WL 3958584, at *10–12 (D. Md. July 22, 2016), *aff'd sub nom. Hoai Thanh v. Hien T. Ngo*, 694 F. App'x 200 (4th Cir. 2017); *Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010); *Deatley v. Allard*, 2015 WL 134271, at *5; *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at *4). Neither in her response to the motion to dismiss nor here does Ms. Luo provide any authority contrary to these holdings, including this Court's holding in *Bloom*.

[3] Mr. Wang objects to Ms. Luo's designation of these documents as confidential. He files Exhibits 3 and 5 under Level 1 restriction pending the Court's decision on whether they should remain restricted.

0004). But she has not. And she has failed to carry her burden. Where, as here, the defendant timely raises a statute-of-limitations defense, the plaintiff bears the burden of establishing compliance with the statute of limitations by presenting evidence that the tort was committed within the limitations period or by establishing an exception to the limitations period. *United States v. DeLia*, 906 F.3d 1212, 1217 (10th Cir. 2018); *see also Hansen v. Lederman*, 759 P.2d 810 (Colo. App. 1988). Ms. Luo has failed to establish that the response to her post was published within the one-year statute of limitations.

Fourth, in light of Ms. Luo's counsel's representation that their client's claims are based on documents obtained from the *Weamer* and ▮▮▮▮ litigations, the bare minimum for any reasonable investigation to satisfy their Rule 11 obligation would have been to contact the counsel who produced those documents. They did not contact ▮▮▮▮ or Ms. Papac, *See* Exh. 4 at 1; Exh. 5 at 1, both of whom came across these statements in the course of their own independent investigation about Ms. Luo, *see* Exh. 4 at 1; Exh. 5 at 6-7 (pdf)—which Ms. Luo's counsel admit they did not do. Furthermore, Mr. Wang's name was not mentioned in Ms. Papac's declaration, on which Ms. Luo relied. *See* Exh. 5, Exh. A. And in neither litigation was there any allegation that the quoted statements in ¶ 52 and ¶ 62 were authored by Mr. Wang. *See* Exh. 4, ¶ 3; Exh. 5, ¶ 3. Mr. Wang's name is mentioned in the *Weamer* litigation only in discovery, in relation to the fact that he was listed as a witness in that case. *See* Exh. 4, ¶¶ 3-4[4] Therefore, even if Rule 11 would have allowed Ms. Luo's counsel to delegate their duty to

---

[4] Ms. Luo and her counsel still seem to insist that "they"—not the counsel for the opposing party—are in charge of deciding who is a witness. *See* Resp. at 12-3; *id.* Exh. 9, ¶ 9. It is not surprising that they cannot provide any legal authority for this argument. *But see Marley v. Wright*, 137 F.R.D. 359, 363 (W.D. Okla. 1991) (civil rights suit against judges was sanctionable because of well-settled precedent of absolute judicial immunity), *aff'd without o*p., 968 F.2d 20 (10th Cir. 1992).

investigate to other counsel—which it does not[5]—there was nothing here on which they could rely.

Fifth, long after being put on notice of Ms. Luo's online publication of the statements at issue, Ms. Luo's counsel submitted a declaration from Ms. Luo that re-represents to this Court that "I did not know that Defendant Paul Wang had made any false statements regarding the sexual assault or the police report I filed in relation to my lost passport until 2020." Resp. Exh. 9, ¶¶ 7-8. She also re-asserted that she knew Mr. Wang was the author of the "blog" because "he was the only person who knew about Plaintiff's rape allegations against Mr. Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket." *Id.,* at ¶¶ 3-4; Third Am. Compl., ¶ 63.

Ms. Luo's counsel submitted this affidavit, even though, when confronted with the facts that Ms. Luo herself in 2013 published a letter in her page, https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/ from Mr. Morgann Paraskevas, the author of the "blog", i.e., statements at issue in ¶ 62, which were published at https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments, Ms. Luo *did not deny* that

- she is the author of https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/; https://cserinusa.wordpress.com/, or

---

[5]
      Rule 11 imposes the obligation, ***at the time of certification***, of personal knowledge that the paper is well-grounded in fact—not the opportunity to gamble on the certification of some other lawyer that ***at the time he or she signed the pleading, it was well-grounded in facts known to that lawyer***.

*In re Marathon Home Loans Fed. Sec. Litig.,* 995 F.2d 232 (9th Cir. 1993) (emphasis added); *see also White*, 908 F.2d at 682.

- a side-by-side comparison of https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments and https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/ reveals that the author of https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments, morgann070 or anonymous123177, is Morgann Paraskevas, whose ID, morgann070, is also included in Ms. Luo's 2013 post about him, https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/; https://cserinusa.wordpress.com/. *See* Exhibit 6 (comparing Ms. Luo's and Mr. Paraskevas's 2013 online publications). It is important to note that Ms. Luo knows Mr. Paraskevas very well and that in the case in which she was criminally convicted, she moved to suppress the evidence of her relationship with Mr. Paraskevas. *See* Exhibit 7 at 18 ("7/27/21: "Motion by Defense made to exclude any and all past interactions or relationship between Ms. Luo and one Morgan [sic] Paraskevas."

Ms. Luo's counsel's only response is to incorrectly state that Mr. Paraskevas' letter which Ms. Luo posted in 2013, https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/, does not mention her alleged rape in China. Resp. at 11. As Ms. Luo and her counsel are aware, that letter, like his post, https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments, included facts about both statements. In addition, minimal investigation (such as opening Ms. Luo's page on a LG 4K IPS monitor and using the FPS gaming setting, which Mr. Wang is prepared to demonstrate in court) allows anyone to read the text beneath the poorly redacted letter, which specifically mentions the alleged rape. Exhibit 8 (Mr. Paraskevas' 2013 letter to Ms. Luo [which included both statements] in the 2013 post on Ms. Luo's page).

9

The repeated knowing misrepresentations to this Court by Ms. Luo and her counsel

regarding the timing of her discovery of the statements at issue violate Rule 11, especially

considering Ms. Luo's counsel's actual knowledge about Ms. Luo's conduct, as summarized in

the briefing of the Motion for Reconsideration. Applying the objectively reasonable standard,

under these circumstances no reasonable counsel would rely on statements from a client with

Ms. Luo's history, without independent investigation. *See Battles v. City of Ft. Myers*, 127 F.3d

1298, 1300 (11th Cir. 1997) (affirming sanctions on attorney where district court found that the

attorney did not make reasonable inquiry prior to trial to ensure that he could procure evidence to

support his client's positions); *Lloyd v. Schlag*, 884 F.2d 409, 412-13 (9th Cir. 1989) (sanctions

imposed on counsel who relied on client's mistaken assurance that all necessary steps had been

taken to record and protect copyright); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc*., No. 99 Civ.

10175 (JSM), 2002 U.S. Dist. LEXIS 491 at *2 (S.D.N.Y. Jan. 16, 2002) (sanctioning attorneys

who "simply closed their eyes to the overwhelming evidence that statements in [their] client's

affidavit were not true"); *Schiebel Elektronische Geraete Gmbh v. Polestar Tech., Inc*., No. 97-

10231, 1998 U.S. Dist. LEXIS 17998, at *5 (D. Mass. Aug. 3, 1998) (despite earlier dealings

with client, "the very nature of the assurances [the lawyer] was receiving . . . created a

compelling need for him to press for more supporting information from his own client"); *Bayan

El Dada v. Oil Mart Corp*., No. 94 C 3829, 1995 U.S. Dist. LEXIS 13740, at *2-3 (N.D. Ill.

Sept. 19, 1995) (sanctioning attorney under Rule 11 and 28 U.S.C. § 1927 where attorney

"continued to press ahead with [the] lawsuit well after a reasonable attorney should have become

suspicious of his client's assertions").

Other courts have awarded fees and costs to the litigants, as an appropriate sanction under

Rule 11, for much less severe violations. *See, e.g., Worrell v. Houston Can! Acad*., 287 F. App'x

320, 326 (5th Cir. 2008) (affirming district court's grant of $6,000 for twelve hours of work at a rate of $500.00 per hour against plaintiff's law firm to have improperly named defendant dismissed); *Ideal Instruments, Inc. v. Rivard Instruments, Inc*., 243 F.R.D. 322, 348–49 (N.D. Iowa 2007); *Marceaux v. Lafayette Consol. Gov't*, 2014 U.S. Dist. LEXIS 50649, 32–33 (W.D. La. Jan. 9, 2014) (imposing $2,500 award for attorney's fees for hours spent writing briefs and opinions as well as ten hours spent in hearings dealing with erroneous allegations raised in the pleadings); *TXCAT v. Phoenix Group Metals*, LLC, 2010 U.S. Dist. LEXIS 132614, 2010 WL 5186824 (S.D. Tex. Dec. 14, 2010) (awarding fees and expenses incurred in Defendant's preparation and filing of their reply and the motions for sanctions). Mr. Wang's respectfully requests that the Court do the same.

## Conclusion

Sanctions should be sufficient to deter repetition of similar conduct. See Fed. .R. Civ. .P. 11(c)(4). Mr. Wang respectfully requests that this Court hold Ms. Luo and her counsel jointly and severally liable for all costs and reasonable attorney's fees he has been, and will be, forced to incur.

Respectfully submitted this 23rd day of December 2021.

/s/ Katayoun A. Donnelly
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO  80238
Tel. (720) 675-8584
katy@kdonnellylaw.com

*Attorney for Paul Wang*

EXHIBIT 10

**Affidavit of** ███████

1. My name is ███████████ I am an attorney in the State of California and I represented Mr. ███████████████████████ e No. ███████ (████████ S██████████████████████ the case referenced in the Second Amended Complaint in *Doe v. Wang*, Case No. 20-cv-02765-RMR-MEH (D. Colo).

2. I came across Paul Wang's name as a potential witness when I was doing research on other lawsuits and claims published by Ms. Doe in which she claimed emotional distress due to alleged ███████████ in furtherance of my investigations of her claims against my client. During that research, I found information that she apparently posted about Mr. Wang.

3. The only times and places in which I recollect Mr. Wang's name has been mentioned in ███████████ Case No. ███████████ (S█████ S█████████ have been in discovery requests, responses, and related discovery motions. Attached hereto as <u>Exhibit A</u> (WEAMER 0002-0004) is a copy of the post about Mr. Wang that I found and produced in Mr. Weamer's lawsuit as part of Mr. Weamer's discovery responses. Also attached, as <u>Exhibit B</u> are copies of the posts involving Morgann Paraskevas that I found and produced as part of Mr. Weamer's document production in response to discovery, in ███████████ (WEAMER 0005-0009).

4. On ███████████ , the case was dismissed with prejudice as the result of terminating sanctions imposed for Ms. Doe's refusal to comply with her discovery obligations. Mr. Wang remained on my witness list as a potential witness for trial.

5. To this date, December 10, 2021, I have not been contacted by Ms. Doe's counsel in Doe v. Wang, Case No. 20-cv-02765-RMR-MEH (D. Colo).


FURTHER AFFIANT SAYETH NAUGHT


     I declare under penalty of perjury under the law of the State of California that the foregoing affidavit is true and correct.



# EXHIBIT A

# pppwang ~ A fine WordPress.com site

Image

# Paul Ming Wang

**06** _Tuesday, May 2014_

Posted by pppwang in Uncategorized

≈ Leave a comment



Paul Wang cheats a lot. He has a profile on okcupid named zerogas in order to fufill his gross purpose. He's a complete pig in a suit.

Create a free website or blog at WordPress.com.   Do Not Sell My Personal Information



transvestism →

## 1 thought on "Paul Wang, Highlands Ranch, CO"



**Paul Wang**
at 4:28 am

Xingfei "Ophelia" Luo is my classmate from middle school. We met for the first time in almost 20 years in a class reunion in China in October 2012, and started a long distance relationship. In the summer of 2013, I invited her to come visit me in the states. After living with her for a while, I started to find out more and more about her. She had hidden much from me, and her true personality was shown to both vindictive and vile. At the time we were supposed to be dating, she would constantly flirt with other men online. In August she left my place to go to New York to "visit her friends", who turned out to be another man she been dating online. I decided to break off the relationship with her. After about a month or two, she kept calling me to beg me to take her back. Being the nice person, I said okay, and took her back in. However, things were never back to normal. And our relationship was extremely strained to say the least. I originally purchased the round trip non refundable plane tickets for her to go back to China in early October, but she decided to stay in the US by any means. I don't have a problem with that, but she demanded that buy her a new ticket for departure after Xmas. I told her to buy her own ticket back. She later filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price. She used that refund to purchase a ticket to California. On the way to the airport, I once again broke up with her. This time I told her there's no chance we are getting back together.

After she went to California, she kept emailing and texting me, showing pictures of convertible she was riding in, or guns that her new boyfriend owns etc. I blocked her number and repeatedly told her in email response that I don't want to hear from her again. I don't want to have anything to do with such a crazy person.

A week later, I was at work when I was called into the HR department to explain some mysterious emails. Apparently someone created an email with my full name @163.net which is a free email service in China, and had been sending emails in my name to everyone I know, including my parents, friends, coworkers and my supervisor who is a female. In some of the emails was an attachement of a photo that I immediately recognized as one of my most private pictures. This was a scanned Polaroid picture of a celebration of my 21st birthday in a gentleman's club in Dallas, Texas. It depicts me holding a naked porn star in a very compromised position, and the picture was signed by the porn star. I have never shown this picture to anyone. It had been kept in my private collection for sentimental reasons. I was in shocked but soon realized what happened and who sent those emails. It was Ophelia, who is the only person with unlimited access to all my personal properties when living at my house. She had stolen my private property and try to use it to make me look like a pervert. Fortunately everyone who knows me understood that these emails came from someone else. She was trying to get me into trouble but my company HR department stands by me and blocked this email address.

I confronted her via instance messages on a Wechat group for our classmates, and she uploaded the same picture to show that she was the one sending those emails. That's when I blocked her on Wechat as well and that was the last time I had any contact with this vile woman.

I got married in 2015, and have a young daughter now. Just a couple of days ago, a co worker called me and told me that when he searched for my name in google this page came up. I don't want my daughter or any one who doesn't know me came to this page to see this fabricated accusation without having the full context of what really happened. The cheater was her, not me.

If you have any questions regarding anything in this letter, you can contact me at my cell above. I will try to get this page removed from everywhere if it is possible. If not possible at least I can tell my side of the story.

Thanks

Paul

WEAMER 0004

# EXHIBIT B

# Xingfei Luo ~ Beware of this scammer.

IMAGE

# Xingfei Luo, or Olivia Luo.

*16 Monday Dec 2013*



POSTED BY ANONYMOUS123177 | FILED UNDER UNCATEGORIZED

≈ **LEAVE A COMMENT**

# XINGFEI LUO BETTER KNOWN AS OPHELIA LUO or OLIVIA LUO , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIST.

*16 Monday Dec 2013*

POSTED BY ANONYMOUS123177 IN UNCATEGORIZED

WEAMER 0005 COMMENTS

" *XingFei Luo born in December of 1977 is a chinese woman who is a scammer. After hiring a private investigator, I found out that I am not the only target of this person.*"

"*She posted a blog defaming my good name and coincidence, got 2 calls in the following months from a so-called company to have the blog removed first for $10,000 and the second call for $4,000. She changes her name frequently from Ophelia Luo to Olivia Luo and she has made numerous victims. She post pictures or defamatory post and later someone contacts you to take them out for a fee. I have received several calls from other victims.* "



"
"*If you see or meet this person, be aware, she has already made false allegation of rape, false claims about other people as well, filed a frivolous police report in Colorado about losing her passport then ironically used that same passport at a San Francisco airport on December 2nd 2013.*"

"*I have filed a police report about her stealing money from me as well.*"

There are a lot of lawsuits in which she is involved. As of now, we cannot reveal yet all the information since the cases are pending.

Advertisements

5/19/2020                                                                                Xingfei Luo

More                                                                    Create Blog   Sign In

# Xingfei Luo

MONDAY, NOVEMBER 12, 2018

ABOUT ME

**Xingfei Luo**

View my complete profile

## Xingfei Luo - victim of sexual harassment

Xingfei Luo, born in China, has tremendous and tracked financial experience in multiple
industries. She is a huge fan of traveling and photography. She holds traditional values
with great sense of ethics.

BLOG ARCHIVE

▼ 2018 (1)

▼ November (1)

Xingfei Luo - victim of sexual
harassment

While Xingfei Luo was traveling alone in 2013 she met a man named Morgann
Paraskevas in Rockville , MD. Morgann Paraskevas sent her invitation via couchsurfing
as he wanted to host her when she's visiting DC. During her stay with Morgann
Paraskevas he sexually harassed her and forced her to leave after she refused to show
him her breast as his request. She left Morgann Paraskevas a negative review on
couchsurfing and that's the beginning of her getting various threats from Morgann
Paraskevas and his friends. In order to seek retaliation Morgann Paraskevas also
spread false statement about her character.

For more about Morgann Paraskevas, search Morgann Paraskevas in Google.



**Morgann Paraskevas**
have you ever been married?

no. why?

**Morgann Paraskevas**
or had a bf?

had a bf. why?

**Morgann Paraskevas**
ok so you saw a naked guy before then ahhahaha

**Morgann Paraskevas**
you don't mind then if i am naked at my place?

**Morgann Paraskevas**
hello?

**Morgann Paraskevas**
hey no answer?

I appreciate u are not. but if u insist to be, I will close
my eyes

WEAMER 0007



WEAMER 0008

Posted by Xingfei Luo at 8:45 AM

# Home

Subscribe to: Posts (Atom)

Picture Window theme. Powered by Blogger.

WEAMER 0009