Attachment A: Luo v. County of Los Angeles

FILED
Superior Court of California
County of Los Angeles

JAN 20 2022

Sherri R. Carter, Executive Officer/Clerk of Court
By: ___ Luna, Deputy

| | |
|---|---|
| XingFei Luo v. County of Los Angeles, et al., 20STCP03258 | ~~Tentative~~ decision on motion for sanctions: denied; ~~Tentative~~ decision on motion for reconsideration: denied |

Petitioner XingFei Luo ("Luo"), *in pro per*, moves for sanctions against Respondent County of Los Angeles ("County") and its counsel for a bad faith opposition to Petitioner's *ex parte* application for a 21-day extension of time to file her opening brief. Petitioner also moves separately for reconsideration of the court's November 23, 2021 decision granting her petition in part.

The court has read the moving papers, opposition, and reply, and renders the following tentative decisions.

### A. Statement of the Case
#### 1. Petition

Petitioner Luo commenced this action on October 8, 2020. The operative pleading is the First Amended Petition ("FAP") alleging causes of action for (1) writ of mandate pursuant to the CPRA and (2) declaratory judgment for a violation of California Constitution Article 1, section 3(b) and seeking injunctive relief. The verified FAP alleges in pertinent part as follows.

On September 4, 2020, Petitioner Luo submitted CPRA requests for disclosure of electronic information concerning crime statistics between 2010 and 2019 relating to three types of felonies and a brief description of the County's training programs. The CPRA requests ask for electronic information which demonstrates how many of the three felony crimes were reported to law enforcement, how many of those reported crimes were presented for prosecution, and their final disposition. The requests also ask for information regarding the case complexity (e.g. victim's gender, suspect's gender, whether suspect(s) known to the victim(s), whether any weapon involved, whether any alcohol involved, whether suspect(s) was arrested, and date of arrest if any, etc.) and training information which reflects the competence of law enforcement personnel.

The City and County District Attorney's Office ("District Attorney") have improperly withheld all information requested on the ground that either the records do not exist, or they should be withheld due to privilege.

Additionally, on September 28, 2020, in violation of Government Code section 6253(c), 24 days after the receipt of Petitioner's request, the County's Sheriff's Department ("LASD") sent Petitioner a written notice for extension but did not state the estimated date and time when the records will be made available.

As of April 12, 2021, Respondents have not disclosed a single record of the requested crime statistics.

#### 2. Course of Proceedings

Petitioner originally filed this Petition as a "Jane Doe." On January 22, 2021, the court directed Petitioner to file an amended petition removing the anonymous "Jane Doe" and inserting her legal name, Xingfei Luo.

On February 23, 2021, Respondent City and Petitioner filed separate meet and confer statements.

On February 25, 2021, the court vacated Petitioner's motion to compel since it did not comply with California Rules of Court 3.1345. Additionally, the court vacated Petitioner's motion

to seal records. The court informed Petitioner that she must file a FAP after which the court will permit Petitioner to withdraw the first paragraph of the original Petition, possibly by filing a redacted version. Petitioner filed the FAP and on April 15, 2021, Petitioner's motion to redact the first paragraph of the Petition filed on October 8, 2020 was granted.

On July 13, 2021, Petitioner filed an *ex parte* application for extension of time to file an opening brief. The court granted this request on July 15, 2021. On October 29, 2021, Petitioner filed a motion for sanctions set to be heard on this instant date.

On November 23, 2021, the court granted the FAP in part. The court determined that both the County and the City possess most or all of the requested information in their master record of criminal history. To the extent that this information is located elsewhere, Respondents have a duty to inform Petitioner which physical file or electronic database does have this information so that it can be accessed. Respondents must produce information from the master record consisting of the date of report, date of offense, name of sheriff/police, whether suspect(s) was arrested, date of arrest, prosecution, and disposition from the master record. Respondents need not produce the source documents for any of this summary information. The form of production may be in any reasonable manner Respondents choose and need not follow Petitioner's matrix.

### B. Motion for Sanctions
### 1. Applicable Law

A court may order a party, party's attorney, or both to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics made in bad faith that are frivolous or solely intended to cause unnecessary delay. CCP[1] §128.5. An "action" within the meaning of section 128.5 includes the filing and service of a complaint. §128.5(b)(1). Section 128.5 applies to actions or tactics that were part of a civil case filed on or after January 1, 2015. §128.5(i).

"Frivolous" means totally and completely without merit or for the sole purpose of harassing an opposing party. §128.5(b)(2). An objective standard applies in determining whether actions or tactics are frivolous or solely intended to cause unnecessary delay. San Diegans for Open Government v. City of San Diego, ("San Diegans") (2016) 247 Cal.App.4th 1306, 1318. The objective standard looks at the merits of the action from a reasonable person's perspective. Id. In determining what sanctions, if any should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence. §128.5(f).

The determination that a party does not have a meritorious cause of action is not a proper basis for imposing sanctions under section 128.5 and does not place the case in the category of frivolous. Atchison, Topeka & Santa Fe Ry. Co. v. Stockton Port Dist., (1983) 140 Cal.App.3d 111, 116. While a completely successful lawsuit can never be characterized as a bad faith action, a lawsuit where some, but not all, of the causes of action alleged in a complaint are frivolous can be characterized as such. Bach v. McNelis, (1989) 207 Cal.App.3d 852, 874-75. Sanctions should not be construed so as to conflict with the primary duty of an attorney to represent his client zealously. Guillemin v. Stein, (2002) 104 Cal.App.4th 156, 168 (referring to section 128.7). Forceful representation often requires an attorney to read a case or an agreement in an innovative though sensible way. Id.

---

[1] All further statutory references are to the CCP unless otherwise stated.

### 2. Statement of Facts
#### a. Petitioner's Evidence

On January 19, 2021, during the first trial setting conference, the County's counsel announced that she intended to file a demurrer to the Petition. Luo Decl., ¶2. The court advised the County that in order to demurrer the County must provide facts. Luo Decl., ¶2. The court ordered all parties to meet and confer. Luo Decl., ¶2.

Between February and June 2021 all parties engaged in unsuccessful meet and confer. Luo Decl., ¶3. Despite its obligations under Government Code section 6253.1(a), the County never assisted Petitioner Luo to identify records and information that were responsive to her CPRA request, never described the information technology and physical location in which the records existed, and never provided suggestions for overcoming any practical basis for denying access to the records or information sought. Luo Decl., ¶3.

In February 2021, the County's counsel raised the catch-all exemption. Luo Decl., ¶3. Petitioner asked Christian E. Foy Nagy, Esq. ("Nagy") for the estimated number of cases but was told to find out herself somewhere else. Luo Decl., ¶3. Instead of engaging in good faith meet and confer, Nagy threatened to charge thousands of dollars for production of records. Luo Decl., ¶3; Ex. 1 (Petitioner's February 2021 Meet and Confer Statement).

The court set an August 3, 2021 due date for Petitioner's opening brief. Luo Decl., ¶4. On July 13, 2021, Petitioner filed an *ex parte* application for a 21-day extension for filing her opening brief. Luo Decl., ¶4. The County filed an opposition demanding a corresponding extension for the trial date. Luo Decl., ¶5. The County stated that it would need the full 60 days the court had allotted because its counsel would have to gather evidence—possibly of a technical nature—from custodians of record from two County departments. Luo Decl., ¶5; Ex. 2. Petitioner filed a reply suggesting that if the evidence provided did not warrant a 60-day preparation the court should sanction the County for seeking unnecessary delay of trial. Luo Decl., ¶6; Ex. 3.

On October 14, 2021, the County provided no evidence in support of its opposition to Petitioner's opening brief. Luo Decl., ¶7; Ex. 4. On top of the County's failure to provide evidence, the County made numerous frivolous arguments. Luo Decl., ¶7; Ex. 4.

On October 25, 2021 Petitioner emailed the County's counsel to meet and confer for this instant motion. Luo Decl., ¶8. Instead of engaging in good faith meet and confer, Nagy threatened to seek sanctions against Petitioner. Luo Decl., ¶8; Ex. 5. Nagy, a seasoned attorney who has practiced law since 2004, now alleges that on July 14, 2021 she did not know what was needed to oppose Petitioner's opening brief and simply declared that she would need full 60 days to gather evidence. Luo Decl., ¶8; Ex. 5.

#### b. The County's Evidence

Petitioner sought a unilateral extension for her opening brief and would not agree to make that extension mutual. Nagy Decl., ¶2. Petitioner wanted more time and to shorten Respondents' time to oppose to 22 days. Nagy Decl., ¶2. The County's counsel did not know what Petitioner's brief would include or what her own workload would be like, and she was not willing to box herself into a timeframe. Nagy Decl., ¶2.

Respondent opposed Petitioner's bid for a unilateral extension which would shorten the County's time to respond and requested a mutual extension instead. Nagy Decl., ¶2. Nagy gave

3

the court several reasons why a unilateral extension might harm the County or impinge upon her representation. Nagy Decl., ¶2. Nagy made no promises that she would provide information of a technical nature. Nagy Decl., ¶2. Nagy told the court that 60 days would allow her to order her workflow more manageably. Nagy Decl., ¶2.

Additionally, because Petitioner is a serial litigant, and likely soon to be an adjudicated vexatious litigant, the County's counsel determined that it was in the County's best interest to decline to provide her with free discovery, expose any custodian of record, or in any way add to Petitioner's arsenal. Nagy Decl., ¶3. In the County's experience, Petitioner Luo can and will misuse that information. Nagy Decl., ¶3.

During the course of litigating against Petitioner Luo, Nagy learned that Luo has filed other lawsuits[2] against private individuals and public entities, using a pseudonym. Nagy Decl., ¶4. Petitioner Luo has a history of harassing behavior. Nagy Decl., ¶6. She was recently prosecuted in the criminal case of People v. Xingfei Luo, Orange County Superior Court, Case No. 19CM06724. Nagy Decl., ¶6. On July 26, 2021, she was convicted of all three counts (Penal Code §594(a)/(b)(2)(A) (vandalism); Penal Code §273.6 (a)(disobeying domestic relations court order), Penal Code §647(j)(4)(A)(disorderly conduct). Nagy Decl., ¶6.

In 16 years of practice, Nagy has never dealt with a more determined and vexatious *pro per* litigant. Nagy Decl., ¶7.

### c. Reply Evidence

On July 13, 2021, Petitioner did not agree to mutual extension because Nagy frivolously demanded trial continuance after she told her that Petitioner did not intend to postpone the trial. Suppl. Luo Decl., ¶2.

Vexatious litigants are those persistent and obsessive litigants who file groundless actions. Suppl. Luo Decl., ¶3. Petitioner has never filed any groundless actions and she contends that she is unlikely to be an adjudicated vexatious litigant. Suppl. Luo Decl., ¶3.

---

[2] Petitioner's other lawsuits include: (1) Jane Doe v. Paul Wang, USDC for the District of Colorado Case No. 1:20-cv-(withheld)-RBJ-MEH; (2) Doe v. Weamer, Contra Costa County Case No. C20-(withheld); (3) Jane Doe v. City of Concord, et al., USDC Northern District of California, Case No. CV20-(withheld); (4) Jane Doe v. Newsom, et al., USDC Central District of California, Case No. 2:20-cv-(withheld)-JAK(PVCx); (5) Jane Doe v. County of Orange, et al., USDC Central District of California, Case No. SACV20-(withheld)-ODX(DJW); (6) Los Angeles Superior Court Case No. 21STCF(withheld) filed December 12, 2021; (7) Los Angeles Superior Court Case No. 21STCV(withheld) filed December 12, 2021. Nagy Decl., ¶4. There are two additional petitions for writs of mandate pending in Los Angeles County, one of which Nagy is handling and one which is being handled by other attorneys. Nagy Decl., ¶4.

Nagy felt compelled to redact these case numbers because Petitioner Luo has threatened that if Nagy exposes her identity by referencing her anonymous cases in this case where the court required her to prosecute in her legal name. Nagy Decl., ¶5. Petitioner Luo has carefully sought to preserve her anonymity by filing these cases using a pseudonym, which has enabled her to abuse the court process. Nagy Decl., ¶5. Thus, to avoid further harassment to herself, expense to the County, and further motions for sanctions—she has filed several against Nagy's colleagues in the other matters—Nagy has redacted the numbers. Nagy Decl., ¶5.

4

In July 2021, Petitioner was wrongfully convicted of crimes she did not commit because the Orange County District Attorney withheld exculpatory evidence, including but not limited to the accuser's prior convictions and probation violation. Suppl. Luo Decl., ¶4; Ex. 1. Not only was the accuser untruthful with the general public by advertising himself as a general contractor while he was not, he was also involved with federal crimes and arrested by FBI. Suppl. Luo Decl., ¶4.

Petitioner Luo was originally represented by public defender who resigned after they realized they rendered ineffective assistance of counsel. Suppl. Luo Decl., ¶4. Petitioner's conviction is pending on appeal and her new counsel is seeking the accuser's criminal records. Suppl. Luo Decl., ¶4.

### 3. Analysis

Petitioner Luo requests sanctions under section 128.5 against Respondent County and its counsel, both monetary sanctions in an unspecified amount and non-monetary sanctions. Petitioner contends that the County's opposition to her *ex parte* application for a unilateral extension was made in bad faith.

Petitioner Luo notes that the court originally set trial for November 23, 2021 with Petitioner's opening brief due on August 3 and Respondents' oppositions due on September 30, 2021. On July 13, 2021, Petitioner filed an *ex parte* application to continue her opening brief due date for 21-ddays. The County opposed, supported by its attorney's declaration that she would need 60 days to gather evidence, possibly technical in nature, to file her opposition brief. Luo Decl., ¶5. Mot. at 1. The court granted Petitioner's *ex parte* application, setting her opening brief due date for August 24, 2021, the oppositions due date for October 14, 2021, and maintaining the November 23, 2021 trial date. Luo Decl., ¶6.

Petitioner asserts that the County opposed her *ex parte* application in bad faith because the County's counsel misrepresented that she would need time to gather evidence for the County's opposition brief for trial. Mot. at 5. Ultimately, the County did not provide any evidence with its opposition. Mot. at 5. Petitioner concludes that the County's opposition to her *ex parte* application were frivolous, intended to manipulate the court and Petitioner, and to harass Petitioner. Mot. at 5; Reply at 2.

The court disagrees. A frivolous action is one totally and completely without merit or for the sole purpose of harassing an opposing party. §128.5(b)(2). Petitioner made a unilateral request for a time extension through her *ex parte* application. Respondent County did not oppose this extension so long as it received a mutual extension. It is customary for attorneys facing a briefing extension request by the opposing party to seek the same benefit and the court granted the County's request.

Petitioner's complaint is that the County's attorney misrepresented that she needed the time to develop evidence. Nagy explains that she could not have known how to respond to Petitioner's opening brief without seeing it and having sufficient time to respond. Nagy Decl., ¶2. Petitioner misconstrues Nagy's request for an additional 60 days as necessary to develop evidence. Rather, Nagy sought a mutual extension of time so that the County's time was not shortened. *See* Nagy Decl., ¶2.

The County's opposition and supporting declaration refer to a need to gather evidence from "two large, busy departments", but also clearly object to a unilateral extension for Petitioner without a similar extension for the County in part based on counsel's work schedule. Luo Decl.,

5

¶5, Exs. 2, 3 (¶3). Whether or not the statement about gathering evidence was an intentional misrepresentation – and Luo has not shown that it was simply by showing that the County presented no evidence at trial – the County clearly sought to make any extension mutual. As such, it was not frivolous or made in bad faith.

### 4. Conclusion

Petitioner has neither shown that Respondent's opposition was frivolous or made in bad faith. The motion for sanctions is denied.

### C. Motion for Reconsideration
### 1. Applicable Law

A motion for reconsideration under section 1008(a) constitutes the exclusive means for a party seeking modification, amendment or revocation of an order. Morite of Calif. v. Superior Court, (1993) 19 Cal.App.4th 485, 490. To be entitled to reconsideration, a party must show (1) new or different facts, and (2) a satisfactory explanation for failing to produce such evidence earlier. Kalivas v. Barry Controls Corp., ("Kalivas") (1996) 49 Cal.App.4th 1152, 1160-61. The requirement of satisfactory explanation for failing to provide the evidence earlier can only be described as a strict requirement of diligence. Garcia v. Hejmadi (1997) 58 Cal.App.4th 674, 690. A motion for reconsideration cannot be granted on the ground that the court misapplied the law in its initial ruling. Gilberd v. AC Transit (1995) 32 Cal.App.4th 1494, 1500.

### 2. Statement of Facts

Between February and June 2021 all parties engaged in unsuccessful meet and confer. Luo Decl., ¶2. Despite the obligations required by Government Code section 6253.1(a), the County never assisted Petitioner Luo to identify records and information that were responsive to her CPRA request or to the purpose of the CPRA request, never described the information technology and physical location in which the records existed, and never provided suggestions for overcoming any practical basis for denying access to the records or information sought. Luo Decl., ¶2.

In February 2021, Respondent's counsel raised the catch-all exemption. Luo Decl., ¶2. Petitioner asked Christian E. Foy Nagy, Esq. ("Nagy") for the estimated number of cases but was told to find out herself somewhere else. Luo Decl., ¶2. Instead of engaging in good faith meet and confer, Nagy threatened to charge thousands of dollars for production of records. Luo Decl., ¶2; Ex. 1 (Petitioner's February 2021 Meet and Confer Statement).

On April 12, 2021, Petitioner filed the FAP seeking to compel Respondents to comply with CPRA and produce responsive information. Luo Decl., ¶3.

On August 24, 2021, Petitioner Luo filed her opening brief for the hearing. Luo Decl., ¶4. On October 14, 2021, Respondents County of Los Angeles and City of El Monte filed oppositions. Luo Decl., ¶4. On November 8, 2021, Petitioner Luo filed her reply brief. Luo Decl., ¶4.

On November 23, 2021, the court held the hearing. Luo Decl., ¶5. All parties appeared and argued. Luo Decl., ¶5. The tentative ruling was entered as the court's ruling. Luo Decl., ¶5; Ex. 2.

Petitioner's motion for reconsideration is based on her contention that the court misconstrued her CPRA request as made for source documents (police reports) and that the court should have applied Government Code section 6254(f)(2) to its determination. Luo Decl., ¶6.

On November 29, 2021, Petitioner Luo emailed Respondents' counsel to meet and confer for the motion for reconsideration. Luo Decl., ¶7; Ex. 3. The parties held a teleconference on December 2, 2021 for approximately 14 minutes but could not resolve the issues. Luo Decl., ¶7.

### 3. Analysis

Petitioner Luo seeks reconsideration of the court's November 23, 2021 mandamus decision. Petitioner Luo contends that the court (1) misconstrued Petitioner's request for factual circumstances surrounding the crimes as request for police reports and (2) erroneously concluded that Government Code section 6245(f)(2) only applies to crime victims. Luo argues that she has always taken the position that she did not care how the responsive information was produced and offered to accept redacted police reports so long as she received the factual information surrounding the crimes of felony sexual assaults against adults. While the court concluded that this information was not in the master summary record, it did not find whether the requested information falls within the factual circumstances surrounding the crimes. Mot. at 4.

The court also erroneously concluded that section 6254(f)(2) concerns only crime victims. Yet, the petitioner in Fredericks v. Superior Court (City of San Diego), ("Fredricks") (2015) 233 Cal.App.4th 209, sought information about all "complaints and/or requests for assistance pertaining to burglary and identity theft for a six-month period in San Diego. Fredericks was seeking the time, date, and location of reported occurrences, the time and date of the reports, the name and age of victims, and the factual circumstances surrounding the incidents. The appellate court found that the Calls for Service reports failed to give any details about some of the information listed in section 6254(f)(2) concerning the time and nature of response and factual circumstances surrounding the crime or incident and a general description of any injuries, property, or weapons involved." Petitioner argues that the County may be compelled to produce the information concerning the "factual circumstances surrounding the crime or incident." Mot. at 5.

Petitioner's motion contains no basis for reconsideration. Section 1008(a) provides for reconsideration of a court order, but it limits the grounds for reconsideration. To be entitled to reconsideration, a party must show (1) new or different facts, circumstances, or law, and (2) a satisfactory explanation for failing to produce such evidence earlier. Kalivas, *supra*, 49 Cal.App.4th at 1160-61. The requirement of a satisfactory explanation for failing to provide evidence earlier is a strict requirement of diligence. Garcia v. Hejmadi, *supra*, 58 Cal.App.4th at 690.

As the County notes (Opp. at 1-2), Petitioner Luo presents no new facts or law in support of her motion. A motion for reconsideration cannot be granted on the ground that the court misapplied the law in its initial ruling. Gilberd v. AC Transit, *supra*, 32 Cal.App.4th at 1500. That is exactly what Petitioner Luo's motion argues. Fredericks was decided in 2015 and there is no reason she could not have presented it in support of her trial briefs. As such, this case is not a proper basis for reconsideration. Nor is the court's alleged failure to make a finding on whether the information sought by Petitioner includes the factual circumstances of the crimes. The motion to reconsider is denied.

Even if *arguendo* the court were required to reconsider, the motion would be denied. The court ruled that Respondents were required to produce the requested information from their local master record of summary criminal history information. The court found three categories of information to be exempt including … (3) information not contained in the master record such as

7

the number of witness(es), number of victim(s), number of suspect(s), victim's gender, suspect's gender, whether suspect(s) was known to the victim(s), whether any weapon was involved, and whether any alcohol was involved that was exempt from disclosure. The court determined that this information was not included in the master summary record and therefore Respondents had no obligation to provide it.

Petitioner's argument that the court failed to make a finding whether the requested information falls within the factual circumstances surrounding the crimes is uncertain. Mot. at Apparently, Petitioner wants the court to state whether Respondents have this information. The reason the court made no such finding is that Petitioner's argument that the information was contained in police reports was made for the first time in reply and the court disregarded it. Dec. at 20.

In Fredericks, the petitioner sought information about all complaints and/or requests for assistance pertaining to burglary and identity theft for a six-month period in San Diego, including detailed information about the crimes. 233 Cal.App.4th at 234. The court held that section 6254(f)(2) did not just include contemporaneous records, and the requester may impose any reasonable temporal requirement. Id. at 234. The court noted that the Calls for Service Reports produced by the agency did not provide all the information required by section 6254(f)(2). Id. at 226-27. However, the evidence showed that the agency would have to undertake a complicated, time-consuming review to compile and redact exempt information and the court held that the agency the section 6255 balancing test to limit the period for which the records would be produced. Id. at 238. The court remanded to the trial court to address the balancing issues. Id. at 239.[3]

Fredericks has no bearing on this case for the simple reason that Petitioner, unlike Fredericks, did not seek complaints or requests for assistance under section 2654(f)(2). Rather, she sought crime statistics of reported and prosecuted criminal cases and their final disposition over a ten-year period. She did not seek complaints or requests for assistance under section 6254(f)(2). Petitioner's motion must be denied on its merits.

### 4. Conclusion

Petitioner's motion for reconsideration of the court's November 23, 2021 decision is denied.[4]

---

[3] The County notes that Fredericks was disapproved in National Lawyers Guild, San Francisco Bay Area Chapter v. City of Hayward, (2020) 9 Cal.5th 488. Opp. at 5. However, the Supreme Court's disapproval was based only on Frederick's discussion of an agency's right to impose costs of redacting electronic records. 9 Cal.5th at 508, n.9.

[4] The County suggests that the court could impose sanctions pursuant to section 128.7 for violations of section 1008(a). Opp. at 2. This suggestion is not made through noticed motion and the court declines to do so.