Attachment C: Doe v. Voloky [sic] Petition

**CH-100**  **Request for Civil Harassment Restraining Orders**

Read *Can a Civil Harassment Restraining Order Help Me? (form CH-100-INFO)* before completing this form. Also fill out *Confidential CLETS Information (form CLETS-001)* with as much information as you know.

Clerk stamps date here when form is filed.

**FILED**
Superior Court of California
County of Los Angeles

JUL 18 2022

Sherri R. Carter, Executive Officer/Clerk of Court
By _____ , Deputy
Karyna Chan

**①  Person Seeking Protection**

a.  Your Full Name:  Jane Doe                         Age: _____

   Your Lawyer *(if you have one for this case)*
   Name: _____  State Bar No.: _____
   Firm Name:  Self-represented

b.  Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.)*

   Address:  11151 Valley Blvd #4886
   City:  El Monte              State: CA   Zip: 91734
   Telephone: _____  Fax: _____
   E-Mail Address: _____

*Fill in court name and street address:*

Superior Court of California, County of
Los Angeles
111 North Hill Street
Los Angeles, CA 90012

*Court fills in case number when form is filed.*

Case Number:
22STRO04352

**②  Person From Whom Protection Is Sought**

Full Name:  Eugene Voloky                         Age: 54
Address *(if known)*:  11442 Dona Cecilia Dr,
City:  Studio City              State: CA   Zip: 91604

**③  Additional Protected Persons**

a.  Are you asking for protection for any other family or household members?  ☐ Yes  ☒ No   *If yes, list them:*

| Full Name | Sex | Age | Lives with you? | How are they related to you? |
|-----------|-----|-----|-----------------|------------------------------|
| _____ | ___ | ___ | ☐ Yes ☐ No | _____ |
| _____ | ___ | ___ | ☐ Yes ☐ No | _____ |
| _____ | ___ | ___ | ☐ Yes ☐ No | _____ |
| _____ | ___ | ___ | ☐ Yes ☐ No | _____ |

☐ *Check here if there are more persons. Attach a sheet of paper and write "Attachment 3a—Additional Protected Persons" for a title. You may use form MC-025, Attachment.*

b.  Why do these people need protection? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 3b—Why Others Need Protection" for a title.*

_____
_____
_____
_____

**This is not a Court Order.**

Judicial Council of California, www.courts.ca.gov
Revised January 1, 2018, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

CH-100, Page 1 of 6
→

Case Number:

**(4) Relationship of Parties**

How do you know the person in **(2)**? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 4—Relationship of Parties" for a title.*

Eugene Voloky has learned my personal information through litigation

**(5) Venue**

Why are you filing in this county? *(Check all that apply):*

a. ☒ The person in **(2)** lives in this county.

b. ☐ I was harassed by the person in **(2)** in this county.

c. ☐ Other *(specify):* _____

**(6) Other Court Cases**

a. Have you or any of the persons named in **(3)** been involved in another court case with the person in **(2)**?

☐ Yes ☒ No *(If yes, check each kind of case and indicate where and when each was filed.)*

| | Kind of Case | Filed in *(County/State)* | Year Filed | Case Number *(if known)* |
|---|---|---|---|---|
| (1) ☐ | Civil Harassment | | | |
| (2) ☐ | Domestic Violence | | | |
| (3) ☐ | Divorce, Nullity, Legal Separation | | | |
| (4) ☐ | Paternity, Parentage, Child Custody | | | |
| (5) ☐ | Elder or Dependent Adult Abuse | | | |
| (6) ☐ | Eviction | | | |
| (7) ☐ | Guardianship | | | |
| (8) ☐ | Workplace Violence | | | |
| (9) ☐ | Small Claims | | | |
| (10) ☐ | Criminal | | | |
| (11) ☐ | Other *(specify):* | | | |

b. Are there now any protective or restraining orders in effect relating to you or any of the persons in **(3)** and the person in **(2)**? ☒ No ☐ Yes *(If yes, attach a copy if you have one.)*

**(7) Description of Harassment**

Harassment means violence or threats of violence against you, or a course of conduct that seriously alarmed, annoyed, or harassed you and caused you substantial emotional distress. A course of conduct is more than one act.

a. Tell the court about the last time the person in **(2)** harassed you.

(1) When did it happen? *(provide date or estimated date):* Death threats on July 11, 2022

(2) Who else was there? _____

**This is not a Court Order.**

Case Number:

**(7)** a. **(3)** How did the person in ② harass you? *(Explain below):*

☒ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(3)—Describe Harassment" for a title.*

_____
_____
_____
_____
_____
_____
_____

**(4)** Did the person in ② use or threaten to use a gun or any other weapon?

☐ Yes ☒ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(4)—Use of Weapons" for a title.*

_____
_____
_____

**(5)** Were you harmed or injured because of the harassment?

☒ Yes ☐ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(5)—Harm or Injury" for a title.*

_____
_____
_____

**(6)** Did the police come? ☐ Yes ☒ No

If yes, did they give you or the person in ② an Emergency Protective Order? ☐ Yes ☐ No

If yes, the order protects *(check all that apply):*

☐ Me   ☐ The person in ②   ☐ The persons in ③.

*(Attach a copy of the order if you have one.)*

b. Has the person in ② harassed you at other times?

☐ Yes ☒ No *(If yes, describe prior incidents and provide dates of harassment below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7b—Previous Harassment" for a title.*

_____
_____
_____
_____

**This is not a Court Order.**

| Case Number: |
|---|
|  |

**Check the orders you want.** ☑

⑧ ☒ **Personal Conduct Orders**

I ask the court to order the person in ② **not** to do any of the following things to me or to any person to be protected listed in ③:

a. ☒ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

b. ☐ Contact the person, either directly or indirectly, in **any** way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by e-mail, by text message, by fax, or by other electronic means.

c. ☒ Other *(specify):*

☒ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 8c—Other Personal Conduct Orders," for a title.*

_____

_____

_____

*The person in ② will be ordered not to take any action to get the addresses or locations of any protected person unless the court finds good cause not to make the order.*

⑨ ☐ **Stay-Away Orders**

a. I ask the court to order the person in ② to stay at least _____ yards away from *(check all that apply):*

(1) ☐ Me.                                    (8) ☐ My vehicle.
(2) ☐ The other persons listed in ③.        (9) ☐ Other *(specify):*
(3) ☐ My home.                               _____
(4) ☐ My job or workplace.                   _____
(5) ☐ My school.                             _____
(6) ☐ My children's school.                  _____
(7) ☐ My children's place of child care.     _____

b. If the court orders the person in ② to stay away from all the places listed above, will he or she still be able to get to his or her home, school, or job? ☐ Yes ☐ No *(If no, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 9b—Stay-Away Orders," for a title.*

_____

_____

⑩ **Guns or Other Firearms and Ammunition**

Does the person in ② own or possess any guns or other firearms? ☐ Yes ☐ No ☒ I don't know

*If the judge grants a protective order, the person in ② will be prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a gun, other firearm, and ammunition while the protective order is in effect. The person in ② will also be ordered to turn in to law enforcement, or sell to or store with a licensed gun dealer, any guns or firearms within his or her immediate possession or control.*

**This is not a Court Order.**

Case Number: 

**(11)** ☒ **Temporary Restraining Order**

I request that a Temporary Restraining Order (TRO) be issued against the person in ② to last until the hearing. I am presenting form CH-110, *Temporary Restraining Order,* for the court's signature together with this *Request.*

Has the person in ② been told that you were going to go to court to seek a TRO against him/her?

☐ Yes   ☒ No   *(If you answered no, explain why below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 11—Temporary Restraining Order" for a title.*

I have informed Voloky that I will take legal action but he said he would not care.

_____

_____

**(12)** ☐ **Request to Give Less Than Five Days' Notice of Hearing**

*You must have your papers personally served on the person in ② at least five days before the hearing, unless the court orders a shorter time for service. (Form CH-200-INFO explains* What Is "Proof of Personal Service"? *Form CH-200,* Proof of Personal Service, *may be used to show the court that the papers have been served.)*

If you want there to be fewer than five days between service and the hearing, explain why below:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 12—Request to Give Less Than Five Days' Notice" for a title.*

_____

_____

_____

_____

**(13)** ☒ **No Fee for Filing or Service**

a. ☒ There should be no filing fee because the person in ② has used or threatened to use violence against me, has stalked me, or has acted or spoken in some other way that makes me reasonably fear violence.

b. ☒ The sheriff or marshal should serve (notify) the person in ② about the orders for free because my request for orders is based on unlawful violence, a credible threat of violence, or stalking.

c. ☒ There should be no filing fee and the sheriff or marshal should serve the person in ② for free because I am entitled to a fee waiver. *(You must complete and file form FW-001,* Application for Waiver of Court Fees and Costs *.)*

**(14)** ☐ **Lawyer's Fees and Costs**

I ask the court to order payment of my   ☐ lawyer's fees   ☒ Court costs.

The amounts requested are:

| Item | Amount | Item | Amount |
|---|---|---|---|
| TBD | $ | | $ |
| | $ | | $ |
| | $ | | $ |

☐ *Check here if there are more items. Put the items and amounts on the attached sheet of paper or form MC-025 and write "Attachment 14—Lawyer's Fees and Costs" for a title.*

**This is not a Court Order.**

| Case Number: |
|---|
| |

**(15)** ☐ **Possession and Protection of Animals**

I ask the court to order the following:

a. ☐ That I be given the sole possession, care, and control of the animals listed below, which I own, possess, lease, keep, or hold, or which reside in my household.
*(Identify animals by, e.g., type, breed, name, color, sex.)*

_____
_____

I request sole possession of the animals because *(specify good cause for granting order)*:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 15a—Possession of Animals" for a title.*

_____
_____
_____

b. ☐ That the person in **(2)** must stay at least_____yards away from, and not take, sell, transfer, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of, the animals listed above.

**(16)** ☐ **Additional Orders Requested**

I ask the court to make the following additional orders *(specify)*:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 16—Additional Orders Requested," for a title.*

_____
_____
_____

**(17)** Number of pages attached to this form, if any: ___5___

Date: _____

_____          ▶ _____
*Lawyer's name (if any)*                      *Lawyer's signature*

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: ___7/15/2022___

Jane Doe
_____          ▶ *Jane Doe*
*Type or print your name*                      *Sign your name*

**This is not a Court Order.**

Attachment 7a(3)—Describe Harassment

On July 11, 2022 I received two harassing phone calls from different people, calling me cunt, bitch, slut, lying on men etc and indicating they would rape and kill me. After the second call I immediately shut down my phone and keep it off. I was confused because I did not know those people. I was terrifying and fearful for my life. Until the next day, I figured that Eugene Volokh (Volokh) has published my personal information online and the death threats came from his readers/haters. His publication includes incomplete facts and portrays me in a false light. He states that I was convicted of several crimes but he leaves out the fact that I am currently seeking post-conviction relief due to wrongful conviction. I previously received several court orders to protect my real name as a rape victim. He publishes my real name associated with all these cases. His publication effectively makes all those protective orders void. Further, he alleges that I had made similar rape accusations against other people which again portrays me in a false light.

On July 12, 2022 I made contact with Volokh and asked him to respect the court orders and my privacy and take remedial action. He refused to do so even after I informed him of the death threats I received. He alleged it was his right to free speech and cited *Florida Star v. B.J.F.*, 491 U.S. 524 (1989). His reliance is inappropriate in the following aspects:

First, given "the sensitivity and significance of the interests presented in clashes between First Amendment and privacy rights" the Court refused to accept invitations to "hold broadly that truthful publication may never be punished consistent with the First Amendment." The Court "emphasized each time that we were resolving this conflict only as it arose in a discrete factual context." *The Florida Star v. B. J. F*, 491 U.S. 524, 530-536 (1989).

The Court has also stated that due to the highly significant interests it does "not rule out the possibility that, in a proper case, imposing civil sanctions for publication of the name of a rape victim might be so overwhelmingly necessary to advance these interests." *Id.* at 537. The Court concluded that it did "not hold that truthful publication is automatically constitutionally protected." *Id.* at 541. The facts in *Florida Star* provide a vivid example of

1
ATTACHMENT TO CH-100

1  the dangerous consequences that disclosing a victim's name may possibly have.

2      "The right of free speech is not without limitations. It is always to be exercised with

3  due regard for the rights of others." *Seven Up Bottling Co. v. Grocery Drivers Union*, 233

4  P.2d 617, 619 (Cal. Ct. App. 1951). "In California, speech that constitutes 'harassment' within

5  the meaning of section 527.6 is not constitutionally protected, and the victim of the

6  harassment may obtain injunctive relief." *Huntingdon Life Sciences, Inc. v. Stop Huntingdon*

7  *Animal Cruelty USA, Inc*. (2005) 129 Cal.App.4th 1228, 1250. See also *Brekke v. Wills*

8  (2005) 125 Cal.App.4th 1400, 1410-1413 [Holding that song lyrics, if used to harass and

9  ridicule, are not protected speech; affirming injunction where the defendant wrote three

10  vitriolic letters to a third party with the intention that they would be discovered and read by

11  plaintiff.]

12      Second, Florida Star was a local weekly newspaper who published the name of the

13  victim of a sexual assault. The publication of a weekly newspaper was a one-time publication

14  to only local residents. Florida Star's publication was limited as to time and scope of readers.

15  Florida Star did not continue to publish the victim's name every week. However, Volokh's

16  publication is online, freely available to the entire world, and forever. Anyone in Europe,

17  Asia, or America can have access to his publication. Volokh's publication makes me a

18  vulnerable target of worldwide haters. His publication invites worldwide haters to threaten,

19  stalk, and commit violence against me. "Conduct or speech that is physically threatening,

20  harassing, intimidating, or assaultive … is not constitutionally protected." *People ex Rel.*

21  *Gallo v. Acuna*, 14 Cal.4th 1090, 1144 (Cal. 1997).

22      Further, I revealed to very limited people about the incidents but now anyone, my

23  relatives, friends, co-workers, or even acquaintance can easily find out the incidents that

24  subject me to social stigma. Even hundred years later his publication will be still available to

25  the entire world on the internet. The harm caused by Volokh's publication is much greater

26  than the harm caused by Florida Star's publication.

27      Third, Florida Star's publication of the name of the victim of a sexual assault was not

28  intended to cause harm. Unlike Florida Star, Volokh is well aware of the harm that has caused

1   me and all the protective orders for the purposes to protect my identity but he refused to take
2   action to cease the harm. Therefore, Volokh's continuing publication of my identity is
3   intended to cause harm of a life time.

4       Fourth, B.J.F. did not have specific court orders to protect her identity but I have
5   several valid court orders to protect my identity as a rape victim. Volokh has no legal
6   authority or any right to void those court orders by publishing my identify and the case
7   information all together.

8       Fifth, "[I]n many contexts, the scope and application of the state constitutional right of
9   privacy is broader and more protective of privacy than the federal constitutional right of
10  privacy as interpreted by the federal courts. [Citations.]" *American Academy of Pediatrics v.*
11  *Lungren* (1997) 16 Cal.4th 307, 326-327. Even in the context of prevention of secrecy in
12  government, "the public interest in protecting the privacy of noise complainants and in
13  preventing a chilling effect on complaints, clearly outweighs the public interest in disclosure
14  of complainants' names…" *City of San Jose v. Superior Court, Santa Clara*, 74 Cal.App.4th
15  1008, 1012 (Cal. Ct. App. 1999). Volokh's publication of my identity is a rape of my right to
16  privacy.

17      In *Melvin v. Reid*, 112 Cal.App. 285 (Cal. Ct. App. 1931), the defendants made a
18  motion picture of the early life of the plaintiff, who had been acquitted in a notorious murder
19  case. It truthfully depicted her as a prostitute at that time, and used her true maiden name; all
20  facts were drawn from the public record. The court held that while the facts of her prior life
21  were not private, the use of her name was actionable. The court reasoned that the publication
22  by respondents of the unsavory incidents in the past life of appellant after she had reformed,
23  coupled with her true name, was not justified by any standard of morals or ethics known to us
24  and was a direct invasion of her inalienable right guaranteed to her by our Constitution, to
25  pursue and obtain happiness. *Id.* at 292.

27  Attachment 7a(5)—Harm or Injury
28      The Legislature enacted CCP section 527.6 in 1978 in order "to protect the individual's

1  right to pursue safety, happiness and privacy as guaranteed by the California Constitution."

2  Stats. 1978, ch. 1307, § 1, p. 4294; see Cal. Const., art. I, § 1. Section 527.6 provides a

3  specialized procedure for a petitioner who has suffered harassment within the meaning of the

4  statute to expeditiously seek a limited judicial remedy — injunctive relief to prevent

5  threatened future harm. Section 527.6 was passed to supplement the existing common law

6  torts of invasion of privacy and intentional infliction of emotional distress by providing quick

7  relief to harassment victims threatened with great or irreparable injury. *Grant v. Clampitt*

8  (1997) 56 Cal.App.4th 586, 591, 65 Cal.Rptr.2d 727, italics added.

9    The real threat and danger from haters is unpredictable. It is much worse than the

10  violence directly from Volokh. If the violence is solely and directly from Volokh at least I

11  know how to prepare myself. But it is impossible for me to prepare for the threat and violence

12  from continuingly growing haters. For instance, A, B, and C read Volokh's publication this

13  month, but next month D, E, and F will read Volokh's publication. Each day and each month

14  there will be new readers/haters to read Volokh's publication. Even I change my phone

15  number and residence this month to avoid the threats and violence from A, B, and C, I cannot

16  keep changing phone number and residence next month to avoid the threats and violence

17  from D, E, and F. And this will continue for the rest of my life. It is impossible to prepare for

18  the threats and violence when I do not know when, where, and from which haters.

19

20  Attachment 8c—Other Personal Conduct Orders

21    The effect of the following ban on Eugene Voloky's speech is minimal. *People ex Rel.*

22  *Gallo v. Acuna*, 14 Cal.4th 1090, 1121 (Cal. 1997). The ban on his speech costs him nothing

23  but his speech costs me lifetime health and safety.

24    I ask the court to order Eugene Volokh to do any of the following things:

25  -  Remove any remarks, comments, or references from any publicly available documents

26    or articles authored by Eugene Voloky that connect Protected Party's real name with

27    rape or sexual assault;

28  -  Remove any remarks, comments, or references from any publicly available documents

1    or articles authored by Eugene Voloky that connect the Protected Party's real name

2    with the cases in which she has received a protective order to proceed under her

3    initials or a pseudonym;

4  -  Cease publishing any remarks, comments, or references that connect the Protected

5    Party with rape or sexual assault;

6  -  Cease drawing public attention to the Protected Party's real name associated with rape

7    or sexually assault.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Confidential under seal*

FILED
CLERK, U.S. DISTRICT COURT

June 8, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ev _____ DEPUTY

LODGED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

No. **SACV20-00322-ODW(PJW**

JANE DOE,

      Plaintiff,

vs.

COUNTY OF ORANGE; DON BARNES;
WILLIAM BAKER; JOE BALICKI;
MARK STICHTER; and DOES 1 - 10,
inclusive,

      Defendants.

**[PROPOSED] PROTECTIVE ORDER**

    The Court orders that Defendants and their agents, servants, employees, and attorneys, and any persons in active concert or participation with Defendants, may not publicly reveal the identity of Plaintiff in connection with the above captioned action, including to any member of the media.

    The Court orders the following documents and information to be filed under seal in accordance with Civil L.R. 79-5:

    1) All documents and information containing Plaintiff's true name.

    2) All documents and information that reveal Plaintiff's date of birth, social security number, financial, and medical information.

    Additionally, the Court orders that all information revealing Plaintiff's home/email address, phone number and other contact information may be redacted from any documents filed or produced

1    in this action, prior to their filing or production, irrespective of whether such documents will

2    otherwise be filed under seal.

3       IT IS SO ORDERED.

4

5

6    Dated: _____June 8_____, 2020

7

8                           By *Patrick J. Walsh*

9                                 Signature
                                Hon. Patrick J. Walsh

10                                U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2<br>[PROPOSED] PROTECTIVE ORDER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-00797-RGK-JDE | Date | February 28, 2020 |
| Title | *O.L. v. City of El Monte et al* | | |

Confidential
Under seal

Present: The Honorable   R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       **(IN CHAMBERS) Order Re: Plaintiff's Request to Proceed Using Initials
[DE 13]**

On January 27, 2020, Plaintiff O.L. filed a complaint against the City of El Monte, the County of Los Angeles, David Reynoso, Martha Tats, Michael Buckhannon, Alex Villanueva, Liliana Jara, Richard Ruiz, Jackie Lacey, Peter Cagney, Karen Thorp and June Chung (collectively, "Defendants"). Plaintiff seeks both damages and a wide range of injunctive relief arising from Defendants' handling of Plaintiff's report of a sexual assault.

On the same day, Plaintiff filed a temporary restraining order accompanied by a request to proceed pseudonymously due to fear of retaliation. The Court denied that request because it found Plaintiff's concerns regarding misogyny too vague to meet the standard for requests to proceed anonymously based on potential retaliation as set forth in *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036 (9th Cir. 2010). Presently before the Court is Plaintiff's request to proceed using her initials in the interest of protecting her privacy.

"The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). However, "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

Courts in this circuit and others have recognized the interest of plaintiffs bringing claims related to sexual assault in proceeding anonymously to avoid embarrassment and potential stigma. *See Does I thru XXIII*, 214 F.3d at 1067–68 ("In this circuit, we allow parties to use pseudonyms in the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment.") (internal quotations omitted); *Doe v. Blue Cross & Blue Shield*,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:20-cv-00797-RGK-JDE | Date | February 28, 2020 |
|---|---|---|---|
| Title | *O.L. v. City of El Monte et al* | | |

112 F.3d at 872 ("[F]ictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses.").

Here, Plaintiff's claim arises from the city's handling of her report of a sexual assault, and therefore implicates the details of that report, which are necessarily private and potentially embarrassing. The Court therefore finds that Plaintiff has articulated an interest in maintaining her anonymity. At the same time, Defendants have not opposed the request or articulated any prejudice that they would suffer as a result, and furthermore are themselves already aware of Plaintiff's identity. Lastly, while the public unquestionably has a "legitimate interest in knowing all the facts and events surrounding court proceedings," it also has an interest in encouraging victims of sexual assault to come forward. *Doe v. Penzato*, No. 10-CV-5154-MEJ, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011). On balance, therefore, the Court finds that the factors weigh in favor of allowing Plaintiff to proceed under her initials.

For the foregoing reasons, the Court **GRANTS** Plaintiff's request to proceed using her initials.

**IT IS SO ORDERED.**

:

Initials of Preparer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Confidential

**CIVIL MINUTES – GENERAL**

Case No.   LA CV20-04525 JAK (PVCx)                        Date   June 3, 2020

Title      Jane Doe v. Gavin Newsom, et al.

---

Present: The Honorable      JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

|  Cheryl Wynn  |  Not Reported  |
|---|---|
|  Deputy Clerk  |  Court Reporter / Recorder  |
|  Attorneys Present for Plaintiffs:  |  Attorneys Present for Defendants:  |
|  Not Present  |  Not Present  |

**Proceedings:**      **(IN CHAMBERS) ORDER RE PLAINTIFF'S REQUEST FOR PROTECTIVE
ORDER AND TO PROCEED UNDER A PSEUDONYM (DKT. 3)**

Based on a review of the Request for Protective Order and to Proceed Under a Pseudonym ("Request"
(Dkt. 3)), sufficient good cause has been shown for some of the requested relief. Based on an initial
assessment of the factors adopted in the Ninth Circuit to determine whether a plaintiff may proceed
anonymously, providing leave to do so here would appear to protect her privacy interests as a victim of
sexual assault, and would not unduly undermine the public's interest in understanding the issues
presented by this action. *See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d
1036, 1042 (9th Cir. 2010) (citing *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068-69
(9th Cir. 2000)). This determination has been made prior to the service or appearance of the
Defendants in this action. Accordingly, it may be reconsidered later in the proceedings based on
objections and supporting information provided by Defendants.

For these reasons, and subject to the stated limitation, the Request is **GRANTED IN PART** as follows:

1. Plaintiff may proceed in this action under a pseudonym; and
2. All filings that contain Plaintiff's true name, contact information or personally identifiable
   information shall be filed under seal, pursuant to applications for leave to file under seal that
   comply with L.R. 79-5.2.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer      CW
_____

Confidential
under seal



MAY 11 2020

K RIFKEN CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____

D. WAGNER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF CONTRA COSTA

JANE DOE,

        Plaintiff,

v.

EDWARD WEAMER,

        Defendant.

No.   C 2 0 - 0 0 8 2 7

[PROPOSED] ORDER ON REQUEST TO PROCEED ANONYMOUSLY

    The plaintiff seeks permission to proceed this lawsuit anonymously, as "Jane Doe". Judicial proceedings presumptively are open to the public, and that includes the names of parties who are litigating disputes. A court can permit a litigant to use a pseudonym in those few "exceptional cases where the party has a privacy right so substantial as to outweigh the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" The court has an independent duty to determine whether the requisite exceptional circumstances exist.

    The court finds that exceptional circumstances exist here. Two factors convince the court to permit the plaintiff to use a pseudonym. First, the Court has recognized the interest of Plaintiff's bringing claims related to sexual assault in proceeding anonymously to avoid embarrassment and potential stigma.

1

1    Second, there is public interest to protect privacy of sexual assault victims and encourage

2    them to step forward. Plaintiff's privacy could have been affected by the suit, that is, using her

3    real name would impact her social standing, present physical risks, or exacerbate the problem for

4    which she is seeking compensation.

5

6                                    **Conclusion**

7        For the foregoing reasons, the court GRANTS the plaintiff's request to proceed

8    anonymously. The plaintiff shall be referred to in court filings as "Jane Doe". The defendants

9    shall not publicly disclose the plaintiff's actual name. All documents identifying the plaintiff or

10   containing the plaintiff's actual name shall be filed under seal. Redacted copies of such

11   documents must be filed; the redactions must be made in such a way that the plaintiff's identity or

12   her actual name cannot be discerned from the redacted filings.

13       So ORDERED.

14       Dated: 5/11/20

15

16                                                                      Hon.

17

18

19

20

21

22

23

24

25

26

27

28

                                           2
                        ORDER ON REQUEST TO PROCEED ANONYMOUSLY

Confidential under seal



 *Confidential under seal*

# RE: The Law of Pseudonymous Litigation

**From:**  "Volokh, Eugene" <VOLOKH@law.ucla.edu>
**To:**  "toucla@mail.com" <toucla@mail.com>
**Date:**  Jul 13, 2022 9:43:16 AM

---

The footnotes in which I discuss your cases note the sources on which I relied.  As you might gather, I'm not troubled by threats of legal action; the First Amendment protects my right to publish this information.  See *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), which recognized the right to publish such information, even in a context where the privacy claims were much stronger (since B.J.F. there was not a frequent litigant who had voluntarily initiated various lawsuits).

Eugene Volokh

**From:** toucla@mail.com <toucla@mail.com>
**Sent:** Wednesday, July 13, 2022 9:36 AM
**To:** Volokh, Eugene <VOLOKH@law.ucla.edu>
**Subject:** RE: The Law of Pseudonymous Litigation

Professor Volokh,

Would you please provide each public record source that directly connects my true identity with the cases that I received protective order to proceed under a pseudonym or initials? The reason I ask is because I have already received death threaths. I am curious why I received the death threats right after your publication. Once again, I ask that your respect those court orders and my privacy. If you don't take remedial action I will have no choice but to take legal action.

Thanks.

**Sent:** Tuesday, July 12, 2022 at 10:18 PM
**From:** "Volokh, Eugene" <VOLOKH@law.ucla.edu>
**To:** "toucla@mail.com" <toucla@mail.com>
**Subject:** RE: The Law of Pseudonymous Litigation

Ms. xx:  As you know, pseudonymity orders simply provide that court records in the case are pseudonymized; they do not, and cannot, restrict third parties from writing about those cases.  The connections I drew in the article came from public record information, including some of your own filings.

Given the pattern of litigation in which you have been involved, I think it's important to draw those connections.

Eugene Volokh

**From:** toucla@mail.com <toucla@mail.com>
**Sent:** Tuesday, July 12, 2022 7:32 PM
**To:** Volokh, Eugene <volokh@law.ucla.edu>
**Subject:** The Law of Pseudonymous Litigation

Professor Eugene Volokh,

Hope this email finds you well. In July 2022 you published "The Law of Pseudonymous Litigation" and I appreciate your work.

However, in your publication, you connect my true identity to several cases in which I have received a protective order and proceed under a pseudonym. Such unauthorized disclosure of my identity has caused me extreme emotional distress, depression, stigma, humiliation and embarrassment.

Your publication effectively renders those court orders void. I ask that you respect those court orders and amend your publication as remedial action to correct that.

Thanks.

xx

*Confidential under seal*

## Hastings Law Journal

Volume 73 | Issue 5                                                                                          Article 8

7-2022

# The Law of Pseudonymous Litigation

Eugene Volokh

Follow this and additional works at: https://repository.uchastings.edu/hastings_law_journal

 Part of the Law Commons

**Recommended Citation**
Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 HASTINGS L.J. 1353 (2022).
Available at: https://repository.uchastings.edu/hastings_law_journal/vol73/iss5/8

This Article is brought to you for free and open access by the Law Journals at UC Hastings Scholarship Repository.
It has been accepted for inclusion in Hastings Law Journal by an authorized editor of UC Hastings Scholarship
Repository. For more information, please contact wangangela@uchastings.edu.

is using their courts."[69] "[A]nonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes."[70] "The Court is a public institution and the public has a right to look over our shoulders and see who is seeking relief in public court."[71]

Those, at least, are the generalities. Let's now turn to how pseudonymity may be concretely harmful, and how open disclosure of party names may be valuable.

### 2. Pseudonymity Interfering with Reporting on Cases

To begin with, the names of the parties are often key to investigating the case further—for instance, by helping reporters and researchers answer questions such as:

- Is the case part of a broad pattern of litigation by, say, an ideological advocate, a local businessperson or professional with an economic interest in the cases,[72] or a vexatious litigant?[73]

- Is there evidence that the litigant is untrustworthy, perhaps in past cases or in past news reports?[74]

- Do past cases brought by the same litigant reveal similar allegations made by the litigant, which past authorities have concluded were not corroborated?[75]

---

69. Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 872 (7th Cir. 1997); United States v. Pilcher, 950 F.3d 39 (2d Cir. 2020) (quoting *Blue Cross* favorably); Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011) (same); United States v. Stoterau, 524 F.3d 988, 1013 (9th Cir. 2008) (same); *In re* Sealed Case, 971 F.3d 324 (D.C. Cir. 2020) (same).

70. Doe v. Village of Deerfield, 819 F.3d 372, 377 (7th Cir. 2016).

71. Gibson v. Pfizer, Inc., No. 3:20-cv-03870, at 2 (N.D. Cal. Oct. 28, 2020).

72. Even once the defendant learns the plaintiff's name in this case, the defendant might be unable to easily find plaintiff's past pseudonymous filings; and journalists might never learn the pseudonymous plaintiff's name. In principle, a court could use "a unique pseudonym" for a serial litigant, to make clear to the public that several cases are being filed by the same person. *See In re* Sealed Case, 931 F.3d 92, 98 (D.C. Cir. 2019). But that still wouldn't inform researchers of the litigants' possible outside motivations that might not appear on the face of the court filings, and it wouldn't help researchers connect this litigation to other cases filed by the plaintiff in other courts.

73. *See infra* Part I.F.8.

74. Thus, for instance, a plaintiff in a recent federal case had apparently been found, in an earlier state case, to have "perpetrated acts of domestic violence" and to have been "evasive" in her statements. *See* Motion for Reconsideration, Doe v. Wang, No. 1:20-cv-02765 (D. Colo. Aug. 27, 2021) (noting, in redacted form but with enough details to allow the case to be identified, Czodor v. Luo, No. G056955, 2019 WL 4071771, at *1 (Cal. Ct. App. Aug. 29, 2019)); *see also* People v. Luo, No. 30-2021-01216615 (Cal. Super. Ct. App. Div. Orange Cty. Apr. 27, 2022) (discussing what appear to be the same plaintiff's convictions for vandalism, restraining order violation, and revenge porn, stemming from a sexual relationship hone bad).

75. For instance, in *Luo v. Wang*, No. 1:20-cv-02765 (D. Colo. Nov. 7, 2021) (originally filed as *Doe v. Wang*), Luo is suing Wang for libel, based on defendant's allegations that Luo had falsely accused a mutual acquaintance of rape. It appears that Luo had made similar accusations against other people, which the police had not acted on—something that would be relevant to a reporter writing about the case, though of course it wouldn't be dispositive of the soundness of Luo's current claims. *See* Doe v. Newsom, No. 2:20-cv-04525, at *2 (C.D. Cal. Mar. 26, 2021) (noting two such similar accusations); Reply to Opposition to Plaintiff's Request

- Does the litigant have a possible ulterior motive—whether personal or political—that isn't visible from the court papers?
- Was the incident that led to the lawsuit covered or investigated in some other context? For instance, if the plaintiff is suing for libel or wrongful firing or wrongful expulsion based on accusations that plaintiff had committed a crime, had the plaintiff been arrested for the crime? How did the police investigation or criminal prosecution turn out?
- Is there online chatter from possibly knowledgeable people about the underlying incident?
- Is there some reason to think the judge might be biased in favor of or against the litigant?[76]

Knowing the parties' names can help a reporter or an interested local activist quickly answer those questions, whether by an online search or by asking around. The parties themselves might be willing to talk; but even if they aren't, others who know them might answer questions, or might voluntarily come forward if the party is identified.[77]

And litigation of course deploys the coercive power of the state, even as it also accomplishes private goals. For instance, a libel lawsuit, even between two private parties, is aimed at penalizing (and sometimes enjoining) supposedly constitutionally unprotected speech. An employment lawsuit is aimed at implementing a set of legal rules that constrain employers, protect employees, and affect the interests of the public in various ways, direct or indirect. In the words of Justice Holmes, writing about the fair report privilege:

> It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every

---

to Proceed Under a Pseudonym at 3, Doe v. City of Concord, No. 3:20-cv-02432 (N.D. Cal. Sept. 10, 2020) (Doe plaintiff stating that *O.L. v. City of El Monte*, *Doe v. Newsom*, *Doe v. Cty. of Orange*, and *Doe v. Weamer* were all brought by plaintiff); Declaration in Support of Response to Motion for Sanctions, Luo v. Wang, No 1:20-cv-02765-RMR-MEH (D. Colo. Dec. 9, 2021) (Luo stating that *Doe v. Weamer* was brought by Luo). With some effort, I was able to see that Luo had brought the past Doe cases; but this stemmed partly from defendant Wang's extensive investigation, coupled with incomplete covering of tracks by Luo, who had been pro se in many of the cases. In other cases, a reporter trying to figure out the plaintiff's history in *Doe v. Wang* might have been stymied by the pseudonymity both of that case and of past cases.

76. Joan Steinman, *Public Trial, Pseudonymous Parties: When Should Litigants Be Permitted to Keep Their Identities Confidential?*, 37 HASTINGS L.J. 1, 19 (1985).

77. To quote a media brief opposing pseudonymity in a challenge to a vaccination mandate,

Anonymity greatly hinders, for example, a journalist's ability to research the litigant's background, including business or political interests. Anonymity also prohibits journalists from identifying family members, friends, employers, coworkers, classmates and other acquaintances who may help the journalist put a given dispute in context. Knowing a litigant's identity may help illuminate details like a plaintiff's motivation for suing; his or her relationship with the defendants, other trial participants, or the court; or the litigant's credibility, among other things.

Motion to Unseal Plaintiffs' Identities, Does 1–6 v. Mills, No. 1:21-cv-00242-JDL, at *3 (D. Me. Jan. 27, 2022).

citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.[78]

Courts have recognized that this rationale applies also to the openness of court records,[79] including to the presumption against pseudonymity.[80] And evaluating the credibility of the parties, whether as to their in-court statements or as to their court filings, will often require knowing their identities.

### 3. Pseudonymity Leading to Sealing or Heavy Redaction

Filed documents will often contain information that make it possible to identify a pseudonymous party. Sometimes it will be as simple as the name of another party—for instance, if a named parent is suing on behalf of a pseudonymous child. This can lead to motions to pseudonymize the parent as well, which are usually granted.[81] But sometimes it also leads to pseudonymizing the name of the defendant (say, a sexual assault defendant), if the lawsuit reveals the parties' relationship so that knowing the defendant's name can identify the plaintiff.[82]

And sometimes maintaining pseudonymity may require redacting or sealing documents filed in court. This is most clear in libel cases based on material published online, even in obscure publications. In many states, libel complaints must set forth the specific libelous words;[83] but even if the complaint can paraphrase or just quote the key words, the full material would need to be precisely quoted at some point, for instance, in a motion to dismiss or a motion for summary judgment.

If the material remains available online, then a simple Google search will often uncover the full statement, which would include the plaintiff's name. Any attempt to prevent this would require much broader redaction or sealing of the alleged libel, which may, in turn, make it much harder to understand the legal issues in the case.[84] And the same can apply in other situations.[85]

---

78. Cowley v. Pulsifer, 137 Mass. 392, 394 (1884); *see also* Steinman, *supra* note 76, at 19 ("Intuitively, one feels less able to judge the fairness of judicial proceedings pursued by unknown parties. Even if the record reveals enough about the plaintiff or defendant to allow an apparently adequate appraisal of the proceedings, the record may not quell all suspicions that the secret identity of a party or parties influenced the decision.").

79. Goesel v. Boley Int'l (H.K.) Ltd., 738 F.3d 831, 833 (7th Cir. 2013); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1069 (3d Cir. 1984); NBC Subsidiary (KNBC-TV) v. Superior Court, 980 P.2d 337, 351 n.14 (1999); Hammock by Hammock v. Hoffmann-LaRoche, Inc., 662 A.2d 546, 553 (N.J. 1995).

80. *Goesel*, 738 F.3d at 833; Qualls v. Rumsfeld, 228 F.R.D. 8, 13 (D.D.C. 2005).

81. *See infra* Part III.D.1.

82. *See infra* Part III.E.5.

83. *See, e.g.*, Adamo Demolition Co. v. Int'l Union of Operating Engineers Loc. 150, AFL-CIO, 3 F.4th 866, 875 (6th Cir. 2021) ("A plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory."); Stead-Bowers v. Langley, 636 N.W.2d 334, 342 (Minn. App. 2001).

84. *See, e.g.*, Doe v. Doe 1, No. 1:16-cv-07359 (N.D. Ill. Aug. 24, 2016).

85. *Cf.* Ressler, *supra* note 15, at 831 (generally supporting pseudonymity in cases that are likely to draw public criticism, but acknowledging that "while it might be simple to redact the plaintiff's name from relevant documents, redacting identifying information contained therein could be anything but straightforward").

Pseudonymization in one case can also lead to sealing in other cases in which the earlier case is relevant. To give one example, Xingfei Luo sued Paul Wang for libel and disclosure of public facts arising from Wang's having accused Luo of falsely accusing a third party of rape.[86] Luo, a frequent litigant who had been found in a past case to have acted evasively,[87] was originally allowed to proceed pseudonymously; but the judge eventually reversed that decision.[88]

But that order reversing the pseudonymity decision, and several related party filings, were initially sealed because they discussed other pseudonymous cases that Luo had filed in other courts. The theory for the sealing was that, "[b]ecause the Court relied, in part, on those other cases, the Court risked undermining the orders granting pseudonymous status by not restricting its order or the briefing."[89] The judge ultimately agreed that redacting other case names was the better alternative to outright sealing—but only after a third party moved to intervene and unseal, something that wouldn't happen in most cases.[90] The sealing of court orders is generally viewed as improper,[91] and even redaction is viewed as costly to public understanding of the court's operations, even if sometimes necessary;[92] yet pseudonymization here led to at least temporary sealing of an order, which could have easily remained permanent.

Likewise, certain other facts mentioned in a lawsuit can make it easy to identify a party. Say, for instance, that a lawsuit is a follow-up to an earlier, nonpseudonymous lawsuit, and mentions the circumstances of that lawsuit; a bit of court records research or LexisNexis searching through newspaper archives can uncover the plaintiff's name. To give one example, consider *Doe v. Doe*, a 2018 lawsuit in which the plaintiff claimed that an enemy of his was trying to deliberately promote past newspaper articles that mentioned the plaintiff's

---

86. Third Amended Complaint, Doe v. Wang, No. 1:20-cv-02765 (D. Colo. July 28, 2021).

87. *See supra* note 74.

88. Doe v. Wang, No. 1:20-cv-02765, 2022 WL 89172 (D. Colo. Nov. 8, 2021).

89. Luo v. Wang, No. 1:20-cv-02765, 2021 WL 8445256, at 3–4 (D. Colo. Dec. 22, 2021) (order granting Plaintiff's Motion to Restrict Document, understanding that a redacted version of Plaintiff's objections will be filed).

90. That third party was me. Motion to Intervene and Unrestrict Document, *Wang*, No. 1:20-cv-02765 (D. Colo. Nov. 19, 2021); Motion to Unrestrict Document, *id.* (Nov. 29, 2021).

91. *See, e.g.*, United States v. Mentzos, 462 F.3d 830, 843 n.4 (8th Cir. 2006) (concluding that defendant's "motion to file this opinion under seal" should be denied "because the decisions of the court" are presumptively "a matter of public record"); Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that [a] judge's opinions and orders belong in the public domain."); Pepsico, Inc. v. Redmond, 46 F.3d 29, 31 (7th Cir. 1995) (Easterbrook, J., one-judge order) ("Opinions are not the litigants' property. . . . They belong to the public, which underwrites the judicial system that produces them."); Doe v. Pub. Citizen, 749 F.3d 246, 267 (4th Cir. 2014) ("Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible."); *In re* Application of Jason Leopold, 964 F.3d 1121, 1128 (D.C. Cir. 2020) ("There is no doubt that the court orders themselves are judicial records. . . . The issuance of public opinions is core to the transparency of the court's decision-making process.").

92. *See, e.g.*, *In re* Nat'l Prescription Opiate Litig., 927 F.3d 919, 939 (6th Cir. 2019) (stating that both outright sealing or partial redaction are forbidden unless they are necessary to serve a compelling interest).

*Confidential under seal*

1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7   JANE DOE,                              Case No.  20-cv-02432-JD

8              Plaintiff,

9        v.                               **ORDER GRANTING PLAINTIFF'S
                                          REQUEST FOR PSEUDONYMITY**
10  CITY OF CONCORD et al.,               Re: Dkt. No. 27

11             Defendants.

12          Plaintiff has requested permission to proceed pseudonymously.  Dkt. No. 27.  The Court

13  previously granted her the right to proceed under pseudonym on a temporary basis.  Dkt. No. 9 at

14  2.  Defendants oppose plaintiff's request.  Dkt. Nos. 30, 32.

15          Doe has satisfied the controlling test in *Does I thru XXIII v. Advanced Textile Corp.*, 214

16  F.3d 1058 (9th Cir. 2000).  She credibly alleges that she could be subjected to retaliation if her

17  true name is made public, Dkt. No. 27 at 3, and has shown that her "need for anonymity outweighs

18  prejudice to the opposing party and the public's interest in knowing the party's identity."  *Does*,

19  214 F.3d at 1068.  Doe states that she needs anonymity because of the stigma that can attach to

20  victims of sexual assault.  Dkt. No. 27 at 2.  Further, she says that public disclosure of her identity

21  would "aggravate[] the original injury" she suffered.  *Id.* (quoting *United States ex rel. Latimore v.

22  Sielaff*, 561 F.2d 691, 694-95 (7th Cir. 1977)).  She also says that defendants are not prejudiced by

23  plaintiff's anonymity, as they already know plaintiff's true identity.  *Id.* at 3.

24          Defendants do not seriously contest the absence of prejudice, and argue only that Doe has

25  filed other lawsuits pseudonymously.  Dkt. No. 30.  This is true, and Doe listed in her reply brief

26  all of the other actions she has filed pseudonymously.  *See* Dkt. No. 31 at 3.  This alone is far from

27  enough to rebut Doe's contentions in favor of pseudonymous status, particularly in light of the fact

28  that defendants have shown no prejudice.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants' suggestion that Doe's true name should be revealed to the public as a serial

2  filer of complaints alleging failures to adequately respond to sexual assault reports, Dkt. No. 30 at

3  3, is wholly unpersuasive. Contrary to defendants' contention, there is no obvious public interest

4  in knowing her so-called "pattern and practice" of making such allegations and bringing such

5  lawsuits. Defendants certainly do not cite any case law for that proposition. To the extent they

6  wish to explore the allegations in those other cases, Doe has confirmed the case information --

7  information that defendants had already discovered by the time they filed their opposition.

8    Consequently, plaintiff's request is granted. Plaintiff is directed to continue to style her

9  filings in the current "Jane Doe" format. Plaintiff's identity will not be disclosed to the general

10  public. Plaintiff will be referred to as Jane Doe in all pleadings and other documents related to

11  this litigation, as well as in any proceedings that may be held before the Court. Defendants and

12  their attorneys will not disclose plaintiff's identity to any other person or entity except as may be

13  necessary to defend against this action.

14    These measures are ordered without prejudice to a future request to disclose plaintiff's true

15  name, or to the Court deciding that the case's circumstances no longer warrant them.

16    **IT IS SO ORDERED.**

17  Dated: September 15, 2020

18

19                                              _____

20                                              JAMES DONATO
                                                United States District Judge

21

22

23

24

25

26

27

28

                                        2