**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Case No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

**DEFENDANT'S MOTION FOR IMPOSITION OF SANCTIONS,**
**PURSUANT TO  RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE,**
**AGAINST PLAINTIFF AND HER COUNSEL**

---

Defendant Paul Wang, pursuant to Federal Rules of Civil Procedure 11(b) and (c)(1);

Colorado Rule of Professional Conduct 3.3(a)(1); D.C.COLO.LAttyR 2(a); *Matter of Olsen*, 326

P.3d 1004, 1008 (Colo. 2014); and the Court's June 13, 2022 Order, Doc. 165, at 14-15; *id*., n. 3,

respectfully asks this Honorable Court to impose sanctions jointly and severally on Plaintiff and

her counsel for refusing, after proper notice,[1] to take remedial actions to correct the material

---

[1] Mr. Wang's Supplement to Reply in Support of Defendant's Motion for Imposition of
Sanctions, Pursuant to Rule 11 of The Federal Rules of Civil Procedure, Against Plaintiff and
Her Counsel (Doc. 160) and Response to Plaintiff's Motion to Strike and Reply to Plaintiff's
Response to Defendant's Supplement to His Motion for Imposition of Sanctions, Pursuant to
Rule 11 of the Federal Rules of Civil Procedure, Against Plaintiff and Her Counsel (Doc. 162)
provided Plaintiff and her counsel adequate notice pursuant to Pursuant to Fed. R. Civ. P.
11(c)(2). Nevertheless, on July 12, 2022, a copy of this Motion was served on Plaintiff's counsel.
*See* **Exhibit A**.

inaccurate representations made in this case and to make Mr. Wang whole. As grounds therefor,

Mr. Wang states:

**A.**     **The Court Should Impose Sanctions on Plaintiff and Her Counsel, Jointly and Severally, for Making False Statements of Material Fact and for Refusing, After Proper Notice, to Correct False Statements of Material Fact**

**1.    Applicable Legal Standard**

"*A lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer*." Colorado Rule of Professional Conduct 3.3(a)(1) (emphasis added); D.C.COLO.LAttyR 2(a) (adopting the Colorado Rules of Professional Conduct as standards of professional responsibility in the U.S. District Court for the District of Colorado); *see also, e.g., Matter of Olsen*, 326 P.3d 1004, 1008 (*pro bono* counsel are not absolved of these ethical duties).

Rule 11 of the Federal Rules of Civil Procedure "allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008); *see also Matter of Olsen*, 326 P.3d 1004. Pursuant to Rule 11(b), a party's or an attorney's signature on a pleading or motion constitutes a certification that, among other things, "to the best of the  person's knowledge, information, and belief, formed *after reasonable inquiry* under the circumstances . . . the claims, . . . and other legal contentions are warranted by existing law or *by a nonfrivolous argument for extending, modifying, or reversing existing law* . . . [and] *the factual contentions have evidentiary support*" (emphasis added). The certification requirement mandates that "all signers consider their behavior in terms of the duty

they owe to the court system to conserve its resources and avoid unnecessary proceedings." 5A

C. Wright & A. Miller, *Federal Practice & Procedure* § 1335, at 57-58 (2d ed. 1990).

A party or an attorney need not act willfully or in bad faith to be subject to sanctions

under Rule 11. *Nikols v. Chesnoff*, 435 F. App'x 766, 773 (10th Cir. 2011) (reversing and

remanding denial of motion for sanctions where the district court appeared to require a

showing of bad faith); *Storage Partners II v. Storage Tech, Corp.*, 117 F.R.D. 675, 680 (D.

Colo. 1987). Rather, to avoid sanctions a party and an attorney must meet a standard of

objective reasonableness. *White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir.

1990); *Marotta v. Cooper*, No. 10-CV-01687-WJM-CBS, 2011 WL 2784423, at *8 (D.

Colo. July 13, 2011) ("Rule 11 applies a standard of objective reasonableness, that is, whether

a reasonable attorney admitted to practice before the District Court would file such a

document."). A subjective good faith belief in the merits of asserted claims does not suffice to

meet this standard. *White*, 908 F.2d at 680. Instead, that belief must "be in accord with what a

reasonable, competent attorney would believe under the circumstances." *Id.*; *Cooter  & Gell v.

Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("Rule 11 imposes a duty on attorneys to certify

that they have conducted a reasonable inquiry and have determined that any papers filed with

the court are well grounded in fact, legally tenable, and 'not interposed for any improper

purpose.'").

Under Rule 11, a signing attorney has a "*nondelegable* responsibility" to "personally .

. . validate the truth and legal reasonableness of the papers filed." *Pavelic & LeFlore v.

Marvel Entm't Group*, 493 U.S. 120, 126 (1989) (emphasis added). The "heart of Rule 11" is

the message conveyed by the signer's certification that counsel "has conducted a reasonable

inquiry *into the facts* and the law and is satisfied that the document is well grounded *in both*." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 498 U.S. 533, 542 (1991) (emphasis added).

Sanctions are properly imposed against parties, counsel, and any associated law firm for filing papers that (1) "harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) contain legal contentions that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) contain factual contentions that have no "evidentiary support" and that are not "likely" to have evidentiary support even after a reasonable opportunity for discovery; or (4) contain denials that are not "warranted on the evidence or, if specifically so identified, [not] reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b).

### 2. Argument

#### a. Plaintiff and her counsel made material false representations, failed to disclose material information, and failed to take the remedial action required by Colorado's Rules of Professional Conduct to notify the Court of these material false representations

##### i. *The materials obtained in the* Weamer *and* El Monte *Litigations and online publications of Mr. Paraskevas and Ms. Luo*

Ms. Luo's only specified claims against Mr. Wang, (Doc. 85), are premised on **two web postings published outside the statute of limitations**, one of which is authored by someone else and on its face shows 2013 as its publication date. Having continuously represented to this Court that until 2020 Ms. Luo did not know about the two statements at issue in this case, both she and her counsel have refused to withdraw these time-barred claims.

4

The Third Amended Complaint (TAC) states: "Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department," ¶ 55, and "prior to Defendant revealing this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff." ¶ 64.

The TAC claimed that: "In 2020, Plaintiff [first] learned through a separate lawsuit . . . that Defendant made several false and incredibly damaging statements against Plaintiff." ¶ 47. "First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport." ¶ 48. "Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault." ¶ 57. It also claimed that "*on January 4, 2021, Plaintiff received a blog post* through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport." ¶ 62 (emphasis added).

Ms. Luo also asserted that she knew Mr. Wang was the author of the "blog" because "he was the only person who knew about Plaintiff's rape allegations against Mr. Chen and the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket." *Id.,* at ¶¶ 3-4; Third Am. Compl., ¶ 63.

Ms. Luo and her counsel concluded: "Plaintiff ***first 'discovered'*** Defendant's statements regarding her sexual assault in 2020 and gained further support for her claim in 2021." Response to motion seeking sanctions under Rule 11 (hereinafter "Sanctions Motion"), Doc. 137, at 10

(filed Dec. 9, 2021) (emphasis added). "Plaintiff filed her original Complaint in 2020 and TAC in 2021. Therefore, under the discovery rule, Plaintiff's Second Claim is not time barred." *Id.*[2]

Mr. Wang specifically asked Ms. Luo's counsel to provide the URLs for the statements from Mr. Wang that they claimed he had published to the public, Third. Am. Compl. ¶¶ 51, 55, 62, 103 ("*His statements* are also publicly accessible online." (emphasis added). Mot. Exh. 1.) Ms. Luo's counsel responded: "My office *produced the document you are referencing in the same form that it was provided to us* and *I did not retrieve the document from the internet*. So your request for a 'link' is puzzling, especially in light of your knowledge of the bases for my client's claim." Doc. 132, Exh. 1 (emphasis added). In other words, counsel acknowledged that *they had not themselves even attempted to access the document online*. And when asked to supply the URL—the only way to publicly access an online document—counsel expressed puzzlement. [3] This highlights two problems.

First, Judge Jackson allowed Plaintiff to file a third amended complaint based on Ms. Luo's counsel's representation that she was in possession of *actual documentary evidence* to support the claim that "His [Mr. Wang's] statements are also *publicly accessible online.*" However, Ms. Luo's counsel admitted that before filing the third amended complaint they did not investigate either whether the statements at issue were Mr. Wang's or whether they were publicly accessible online. Both Ms. Ceizler and Papac verified that Ms. Luo's counsel never

---

[2] "Surely, if Plaintiff were as vexatious of a litigant as Defendant makes her out to be and she had learned of this statement in 2013, she would have filed suit then." *Id.*

[3] *Martinez v. Winne*r, 548 F. Supp. 278 (D. Colo. 1982) ("It is almost axiomatic that in defamation cases a certain degree of specificity is an essential in pleadings, that the language complained of must be set forth in words or words to that effect and that the **defendant should not be required to resort to the ofttimes expensive discovery process to drag from a litigant what he really intends to do to his adversary by a vehicle shrouded in mystery**." (citation omitted) (emphasis added)); *see also* Doc. 106, 4-5.

contacted them to inquire about the statements in the *Weamer* and *El Monte* litigations, on which Ms. Luo's counsel allegedly relied to seek leave to amend the complaint for the third time. Doc. 144, Exhibit 4 (Ceizler Decl.), ¶ 5; *id.*, Exhibit 5 (Papac Decl.), ¶ 5. Counsel did not even perform a simple Google search with three or four words from the first page of the document (*e.g.*, Xingfei Luo, Chinese, and scam), which would have instantly produced the URL for the document. *See, e.g., Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 567 (5th Cir. 2006) (stating that an attorney has a duty "to conduct a reasonable inquiry into the facts or law before filing the lawsuit" (internal quotations omitted)). These obligations are "personal [and] nondelegable," *Pavelic & LeFlore*, 493 U.S. at 126.

This violation is particularly significant because Ms. Luo does not question the date this statement was published. As such, on its face, any defamation claim based on that 2013 publication is unquestionably time-barred.[4] *See, e.g., White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990) (finding assertion of a claim with a clear, insurmountable procedural or jurisdictional defect sanctionable conduct).

Second, contrary to Ms. Luo's counsel's representation, *see also* Doc. 137, n. 9, they most definitely did not produce the documents in the same form that they were provided to them. Ms. Luo did *not* produce the complete version of the document produced in *Weamer*, which included the page she created about Mr. Wang, to which the quote in ¶ 52 of the TAC responded, nor did she produce the document authored by Mr. Morgann Paraskevas, which contained the quote in ¶ 62. Similarly, she did *not* produce the original version of Ms. Papac's declaration,

---

[4] As this Court has ruled, when tort claims are premised on online publications, the date of publication triggers the "should have known" requirement for the purpose of the discovery rule. Docs. 165, 173.

which included the quoted statements in ¶ 62. Doc. 144, Exhibit 3 (Ms. Luo's related initial disclosures); *id.*, Exhibit 4 (Ceizler Decl., attaching *Weamer* production as Exhs. A [which included bot WEAMER 0003 *and* 0004 (which Ms. Luo did not produce)] and B); *id.*, Exhibit 5 (Papac Decl., attaching *El Monte* production as Exh. A). And, contrary to Ms. Luo's counsel's representation, the documents produced in both *Weamer* and *El Monte included the URLs for the quoted statements. See* Doc. 162, Exhibit A (Ms. Papac's Declaration, which includes that declaration and Exhibit L thereto. The complete version of Ms. Papac's Declaration is attached to Mr. Wang's Reply in Support of the Sanctions Motion [Doc. 144-5].); *id.*, ¶ 4 ("[With]e provided O.L. the <u>unredacted links to all websites</u> cited in my declaration and <u>unredacted copies of their contents</u> were attached as exhibits to the declaration." [emphasis added]); Doc. 162, Exhibit B (Declaration of Dawn Ceizler Esq., Exhibit B (similar disclosures to Ms. Luo in *Weamer*)); Doc. 144, Exh. 4 (WEAMER 0003-0009, Exh 5 at 1, ¶ 4).

Moreover, in her response to Mr. Wang's discovery requests, which were provided *after* the filing of the earlier-filed Sanctions Motion, Ms. Luo finally admitted that she is indeed the author of https://cserinusa.wordpress.com, *see* Doc. 160, Exhibit A (Relevant part of Ms. Luo's discovery responses), Ms. Luo discovery response to Request for Admission No. 3. It was at that website *where Ms. Luo posted*, **on December 17, 2013**, the letter from Mr. Morgann Paraskevas, which included information about both statements at issue—statements that her complaint claims no one but Mr. Wang knew about. *See* Exhibit 8 to Reply in Support of Sanctions Motion. In fact, in this post she tells Mr. Paraskevas that she "exactly" knows how he got this information:





https://cserinusa.wordpress.com (last visited July 8, 2022).

To this date, however, Ms. Luo's counsel have not corrected their material false representations regarding this issue. *See, e.g.*, **Exhibit B,** at 14-15 ("Plaintiff has no responsive communications with Mr. Morgann Parakevas regarding the allegations in her Complaint or her claims against Defendant.").

In addition, as demonstrated in Mr. Wang's Reply in Support of the Sanctions Motion and Exhibit 8 attached thereto, at page 9, a part of what Ms. Luo had redacted was a statement about the "rape case in China".



Despite both their failure to disclose, in their entirety, the documents produced to them in the *Weamer* and *El Monte* litigations and Ms. Luo's published admission that she knew the source for Mr. Paraskevas' statements (***which include both statements at issue in this case***) ***in December 2013***, her counsel have not alerted the Court to the material inaccuracy of the averments in the TAC and in their responses to the Motion to Dismiss and the Sanctions Motion. Neither did they move to voluntarily dismiss Ms. Luo's obviously time-barred claims. Nor did they acknowledge that they were **never in possession of any *actual documentary evidence*** to support their claim that Mr. Wang made *publicly accessible online* statements (or even private

statements) regarding *false* allegations of rape or sexual assault. Instead, they continued to rely on these false averments of fact in defending against Mr. Wang's motion seeking dismissal of Ms. Luo's claims and against the Sanctions Motion.

Specifically, in their Response to the Motion to Dismiss, Plaintiff's counsel continued to assert that Ms. Luo's claims are not time barred and, in response to the Sanctions Motion, they not only insisted on the accuracy of these representations but even submitted a declaration from Ms. Luo that stated that she *"did not know* that Defendant Paul Wang had made any false statements regarding the sexual assault or the police report I filed in relation to my lost passport *until 2020"* Resp. Exh. 9, ¶¶ 7-8 (emphasis added). Further, as of this date, although she published the letter on her blog, Ms. Luo has not produced it in discovery.

It was through these material false representations that Ms. Luo successfully opposed Mr. Wang's motion to stay discovery and motion to dismiss. And by refusing to take corrective measures, they continue to burden Mr. Wang with the cost of this vexatious litigation.

**ii.** *The Insurance Claim*

Below is Ms. Luo's May 4, 2022 response to Mr. Wang's first set of discovery requests, Request for Admission No. 7:

> REQUEST FOR ADMISSION NO. 7:
> Admit that you received a check from an insurance company to reimburse you for the United States to China leg of the roundtrip ticket you did not use.
>
> RESPONSE TO REQUEST FOR ADMISSION NO. 7:
> Plaintiff objects to this request as vague and ambiguous in that it does not state the dates of the roundtrip ticket that Defendant seeks information on. Plaintiff will interpret this request to be asking for responsive information regarding the roundtrip ticket that Mr. Wang purchased for Plaintiff from the United States to China in June 2013. Subject to that objection and interpretation, Plaintiff denies.

**Exhibit B.**

In addition, in her Third Amended Complaint, Ms. Luo asserted: "Defendant's statements against Plaintiff are objectively false because . . . (c) Plaintiff did not ever purchase **or have travel insurance in 2013**." Doc. 85, ¶ 67.

On May 25, 2022, Ms. Luo's counsel issued a subpoena requesting production of documents from Transamerica Casualty Insurance Company by 06/09/2022 10:00 am. At Mr. Wang's request (made on July 6, 2022), Ms. Luo's counsel produced (at 10:00 am on July 7, 2022, minutes before filing their motion to withdraw as counsel) the documents they had received a month earlier—which confirmed that Ms. Luo's material representation to this Court regarding the travel insurance was false. Ms. Luo was, in fact, insured, had made an insurance claim by reporting her passport stolen, and was issued an insurance check in her name for the flight she canceled.



Stonebridge Casualty Insurance  Company
Claims Administration Office
4600 Witmer Industrial Estates, Suite 6
Niagara Falls, NY 14305

**Exhibit C.**[5]

Before filing their motion to withdraw on July 7, 2022, however, Ms. Luo's counsel failed to take the remedial action required by Colorado's Rules of Professional Conduct to notify the Court of these material false representations—which they discovered, at the latest, on June 9, 2022, **Exhibit D**. *See* Colo. R. Prof. Conduct Rule 3.3(a)(3).

**iii.**   *The Motion to Strike*

Having published the letter from Morgann Paraskevas in her blog in 2013, Ms. Luo knew with certainty that Mr. Paraskevas—not Mr. Wang—was the author of the statements in paragraph 62 of the TAC, which accused her of having "made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport." *See* Reply in Support of Motion for Sanctions, at 9.

Nevertheless, in her Motion to Strike, filed May 23, 2022, Plaintiff again represented to this Court that she believes statements in a blog post, which she claims to have first discovered in January 2021 (in the *Weamer* litigation), were authored by Mr. Wang. Motion to Strike, at 5 (citing ECF No. 137-10). Both Plaintiff and her counsel are well aware that, upon receiving that document, produced in the *Weamer* case, Ms. Luo knew that it was authored by Morgann Paraskevas, the same person whose letter she copied and posted on her own blog in 2013.

---

[5] Mr. Wang objects to Ms. Luo's designation of these documents as confidential and believes that minor redactions can protect the confidential information. He files Exhibit C under Level 1 restriction pending the Court's decision on whether it should remain restricted.

In addition, Mr. Wang brought to Ms. Luo's counsel's attention that Doc. 137-10 is a reproduction of a portion of a blog posting from December 16, 2013, on a website bearing the headline (in ALLCAPS text):

**16**
*Monday*
*Dec 2013*

*XINGFEI LUO BETTER KNOWN AS OPHELIA LUO or OLIVIA LUO , AND HER CHINESE SCAM. BEWARE, DEFAMATION SPECIALIST.*

Posted by anonymous123177 in Uncategorized                    ≈ 3 Comments

*See* https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam (last visited July 8, 2022).

A side-by-side comparison of Mr. Paraskevas' blog post (https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/#comments) and Ms. Luo's blog post (https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/) reveals that the author of the former blog post, "morgann070" or "anonymous123177," is the same Morgann Paraskevas, whose "morgann 070" identifier appeared in Ms. Luo's **2013** post about him, https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/; *see* Reply in Support of Motion for Sanctions, Exhibit 6 (comparing Ms. Luo's and Mr. Paraskevas's 2013 online publications).

If the following graphic comparison is not sufficiently clear on its face, Mr. Wang respectfully requests that the Court grant him the opportunity to present this evidence to the Court at a hearing, in person.



And if that were not enough, in his **December 16**, **2013** blog post, Mr. Paraskevas, on the

same page that the quote from TAC ¶ 62 appears, specifically refers to a police report that *he*

filed against Ms. Luo claiming that she stole money from him, making it unmistakably clear that

he is the author of the blog. (There are no allegations in this case that Mr. Wang has at any time claimed to have filed a police report against Ms. Luo for theft).



"

"If you see or meet this person, be aware, she has already made false allegation of rape, false claims about other people as well, filed a frivolous police report in Colorado about losing her passport then ironically used that same passport at a San Francisco airport on December 2nd 2013."

"I have filed a police report about her stealing money from me as well."

https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/ (last visited July 8, 2022). (This is also in both "Exhibit L" to declaration of Amanda Papac Esq., which was produced in the *El Monte* case and in disclosures in *Weamer*. *See* Doc. 162, Exhibit A (Ms. Papac's Declaration, which includes that declaration and Exhibit L thereto. The complete version of Ms. Papac's Declaration is attached to Mr. Wang's Reply in

Support of the Sanctions Motion [Doc. No. 144-5].); *id*., ¶ 4 ("[W]e provided O.L. the

<u>unredacted links to all websites</u> cited in my declaration and <u>unredacted copies of their contents</u>

were attached as exhibits to the declaration." [emphasis added]); Doc. 162, Exhibit B

(Declaration of Dawn Ceizler Esq., Exhibit B (similar disclosures to Ms. Luo in *Weamer*).

 This is the same police report about stolen money that on **December 17, 2013**, (i.e., the

very next day), Ms. Luo addressed when she posted Mr. Paraskevas' letter on (what she now

admits is) her own blog: "Morgann Paraskevas, if you could take legal actions why didn't you do

it in Sep? Why did you find out your money was stolen ten days after I left your place? Why

could I come back home if you did file a police report? I didn't steal anything so bluffing didn't

work for me." https://cserinusa.wordpress.com/2013/12/17/lets-see-what-a-funny-jerk-did/  (last

visited July 8, 2022).

# Let's see what a funny jerk did



Morgann Paraskevas, if you could take legal actions why didn't you do it in Sep? Why did you find out your money was stolen ten days after I left your place? Why could I come back home if you did file a police report? I didn't steal anything so bluffing didn't work for me. I already called police department 1st District Station (Rockville): 240-773-6070 and told them what happened. Why do you think you can bluff me just because you got my private information? I exactly know where you got it from. I look weak but not as weak as you thought. I have bunch friends in legal enforcement too.

Yet, to this date—not only without a scintilla of evidence to support her allegation but in the face of the undeniable evidence to the contrary—Ms. Luo and her counsel continue to falsely represent to this Court that she believes Mr. Wang (not Mr. Paraskevas) was the author of the blog post referenced in TAC ¶ 62, *see* Motion to Strike, at 5.

Further, when Plaintiff filed Mr. Paraskevas' blog post in this Court, as an exhibit to her Declaration (ECF 137-9), she attached *only the first page* of what was, in fact, a 4-page exhibit produced to her in the *El Monte* case. *Compare* Doc. 162, Exhibit A (containing the complete 4-page "Exhibit L" to Declaration of Amanda G. Papac) and *id*., Exhibit B (which also includes this crucial information) with *id*., Exhibit C (The one-page version of the document that Ms. Luo submitted to the Court, Doc. No. 137-10, which **leaves out the sentence** "I have filed a police report about her stealing money from me as well.").

Once again, Plaintiff's counsel did not, prior to withdrawing, take the steps necessary to correct their client's false representations of material facts to this tribunal.

Further, in the motion to strike, Doc. 161, Ms. Luo and her counsel represented to this Court that Mr. Wang made actionable statements to Mr. Weamer. In support they imbedded in their motion a few text messages Mr. Wang and Mr. Weamer had exchanged in 2020. Based on these messages, Ms. Luo's counsel represented to this Court that her client's claim is not time barred because Mr. Wang made an actionable (non-privileged) statement to Mr. Weamer in 2020. Motion to Strike, at 9 ("Thus, it is now <u>undisputed</u> that Defendant made both defamatory statements to Mr. Weamer in May 2020 just as Plaintiff has alleged all along." [emphasis added])[6] In fact, though, the evidence in question clearly shows the opposite.

---

[6] Ms. Luo and her counsel also continued to disregard the declaration of Mr. Weamer's counsel specifically stating that Mr. Wang is a witness in the Weamer case (and remains one until she

18

At no point during these *private* conversations between a potential witness and defendant (in a case that has since been dismissed and during which Ms. Luo has been sanctioned for litigation abuse) did Mr. Wang make any statement about a "false" (and therefore defamatory) claim of rape. Motion to Strike, pp. 6-8. Mr. Wang's statement to Mr. Weamer is nothing but an objective description of Ms. Luo's admitted action: that she **accused** someone of raping her, which she has admitted in her complaints and other pleadings. *See, e.g.*, TAC, at 3.



*Id*. at 6.

The "evidence" Ms. Luo herself advances shows, undisputedly, that there is nothing false or defamatory in his statement: she *did* accuse someone of rape (which she has admitted in her complaints and other pleadings and has done multiple times here in the United States). Mr. Wang did *not* say she had done so "falsely."

Further, Ms. Luo and her counsel intentionally left out a critical part of the document they presented to this Court, namely, the very first exchange between Mr. Weamer and Mr.

---

exhausts her appellate remedies). *See* Reply in Support of Sanctions Motion, at 7; *id*., Exh. 4 (Decl. of D. Ceizler, Esq.), ¶¶ 3-4; Doc. 162, Exhibit B, ¶¶ 3-4.

Wang. There Mr. Weamer asks him to provide information *for use in litigation* and to potentially

serve as a witness in Mr. Weamer's case.



One would be hard-pressed to demonstrate a clearer case of a person responding to an

express request for information by a self-proclaimed litigant for information to be used in that

litigation (i.e., a clear cut application of the "litigation communications privilege")—or a more

deliberate effort to hide from this Court the actual context in which Mr. Wang's statements were

communicated to Mr. Weamer.

Prior to their withdrawal, Plaintiff's counsel enabled, aided, and abetted the same kind of litigation abuse by Ms. Luo that has resulted in her being sanctioned by several other courts. *See* Mr. Wang's Motion for Reconsideration of the November 10, 2020 Order Allowing Plaintiff to Proceed Under Pseudonym (hereinafter "Motion for Reconsideration") and Reply in its support, ECF 101, 109; *see also, e.g., O. L. v. Jara*, No. 21-55740, 2022 WL 1499656, at *3, n. 1 (9th Cir. May 12, 2022); *id.*, n. 2.

Furthermore, when Mr. Wang notified Ms. Luo's counsel that he objected to their withdrawal because they had not complied with their duty to bring these issues to the Court's attention, Doc. 177, instead of complying with the requirements of Colorado Rule of Professional Conduct 3.3(a)(1), they sent an email to the Magistrate Judge, requesting that the Court immediately grant their motion to withdraw.

Even though "Rule 11 sanctions are an extraordinary remedy . . .. intended to discourage frivolous litigation, not to punish litigants." *Greeley Pub. Co. v. Hergert*, 233 F.R.D. 607, 611 (D. Colo. 2006), this case presents strong justifications for imposing such sanctions against both the Plaintiff and her counsel. *See, e.g., Matter of Olsen*, 326 P.3d 1004, 1008 (Colo. 2014).

   b. **The Court should enter an order requiring Plaintiff and her counsel, jointly and severally, to pay Mr. Wang all costs and reasonable attorney's fees he has incurred, including those devoted to litigating this motion**

Defendant is not filing this motion to punish or attack the now-withdrawn Plaintiff's counsel. He is merely seeking to recover the substantial sums of money he has been compelled to expend in defending against knowingly false assertions of fact that served as the basis for Plaintiff's utterly meritless claims and arguments. Plaintiff's counsel failed to

comply with their ethical duties, and those imposed by Rule 11, that required them to conduct a reasonable investigation into the veracity of their client's claims—especially in light of her well-documented pattern of presenting false testimony and other litigation abuse. *See, e.g., O. L. v. Jara,* No. 21-55740, 2022 WL 1499656, at *3, n. 1 (9th Cir. May 12, 2022). They knowingly made false statements of material fact to the Court and failed to correct the false statement of material fact previously made in this case. Colorado Rule of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."). They thereby imposed unnecessary costs on Defendant.

Ms. Luo undoubtedly shares responsibility (and liability). Her former counsel, however, as officers of the Court, bear their own responsibility for imposing these unnecessary and unjustifiable costs on the Defendant.

Throughout their representation, up to the point of their withdrawal, Plaintiff's counsel refused to take any remedial action to correct the material false representations made by their former client in this case. Particularly, in light of Plaintiff's assertions that she is indigent (which prompted the Court to appoint *pro bono* counsel to represent her), Mr. Wang has no choice but to request that the Court hold Plaintiff's counsel accountable for their failure to comply with their Rule 11 obligations, by making any sanctions entered apply jointly and severally between Plaintiff and her former counsel.

This motion is not intended to malign or attack any lawyer's character or reputation. Rather, the undersigned counsel has been forced to fulfill her ethical duties by seeking assistance

from the Court to obtain compensation for the completely unnecessary expenses her client has incurred as a result of former-counsel's failure, in this particular instance, to fulfill their ethical duties.[7] Ms. Luo's former counsel can take remedial actions and avoid further litigation of this issue a) by acknowledging that they did not conduct the requisite due diligence and failed to correct the false representations made in this case, and b) by paying the attorney's fees and costs that such failure has caused (and continues to cause) Mr. Wang. *See, e.g., Matter of Olsen*, 326 P.3d 1004, 1008 (Colo. 2014), *see also* the Court's June 13, 2022 Order (Doc. 165), n. 3; *id.*, at 14-15.

When assessing whether to award attorneys' fees as a sanction under Rule 11, "a district court must expressly consider," among other things, the reasonableness of any fee request pursuant to the lodestar method. *See White*, 908 F.2d at 684 (applying previous version of Rule 11 which also contained reference to reasonable attorney's fees); *see also Wasko v. Moore*, 122 F. App'x 403, 407 (10th Cir. 2005) ("'The plain language of the rule requires that the court independently analyze the reasonableness of the requested fees and expenses.'") (quoting *White*, 908 F.2d at 684 in relation to case involving amended version of Rule 11); *Guidry v. Clare*, 442 F. Supp. 2d 282, 293 (E.D. Va. 2006) (concluding that a Rule 11 "fee applicant . . . bears the burden of establishing by clear and convincing evidence the amount of a reasonable fee in the circumstances").[8] Here, Mr. Wang has incurred, to this date,

---

[7] *See* also Doc. 161 (Plaintiff's motion to strike), at 1-3 (Plaintiff and her counsel asserting that Mr. Wang should provide them a new notice, pursuant to Fed. R. Civ. P. 11(c)(2)).

[8] *See also* Fed. R. Civ. P. 11, adv. cmt. notes on the 1993 Amendments ("Any . . . award [of attorney's fees] to another party . . . should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement.").

approximately $ ___ in attorney's fees and costs in defending the present action. That figure includes approximately __ hours of time by attorney Katayoun Donnelly, at an hourly rate of $__.[9] Mr. Wang has also incurred $___ costs to date. Mr. Wang intends to further substantiate these amounts with sworn Declarations when he supplements the amount of fees and costs he is seeking following full briefing and (if applicable) any hearing conducted on the present motion and his pending motions, and the fees and costs incurred as a result of any further proceedings in this case.

**B.      CERTIFICATION**

Counsel for Mr. Wang hereby certifies that a copy of this motion was served on Plaintiff and her former counsel on July 12, 2022. Thus, pursuant to Federal Rule of Civil Procedure 11(c)(1)(A), Plaintiff and her counsel had more than twenty-one days to voluntarily dismiss Plaintiff's claims against Mr. Wang. Plaintiff's former counsel had 21 days in which to agree to pay Mr. Wang all the fees and costs they imposed upon him by failing to fulfill their duties, as officers of the Court, under Fed. R. Civ. P. 11. As the record shows, both Plaintiff and her former counsel have failed to do so.

Counsel for Mr. Wang further certifies, pursuant to Federal Rule of Civil Procedure 7.1(A), that on __, 2022 the parties fully conferred on the matters addressed in this motion, and Plaintiff indicated she would oppose the Court's granting of the relief sought herein.

---

[9] Ms. Donnelly is a sole practitioner with 15 years of litigation experience.

**C.     CONCLUSION**

For the reasons set forth above, Mr. Wang respectfully requests that this Court impose sanctions, pursuant to Fed. R. Civ. P. 11, against Plaintiff and her former counsel, jointly and severally, in the form of reimbursing Mr. Wang for all costs and reasonable attorney's fees he has been forced, most unjustifiably, to incur.


Respectfully submitted this _____ day of August 2022.

*/s/ Katayoun A. Donnelly*
Katayoun A. Donnelly (#38439)
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO  80238
Tel. (720) 675-8584
katy@kdonnellylaw.com


*Attorney for Paul Wang*

## CERTIFICATE OF SERVICE

I hereby certify that on August ___ , 2022, I served an electronic copy of the foregoing on:

Xingfei Luo
co20_2765@mail.com

Clarissa M. Collier
David J. Schaller
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
303.244.1800
collier@wtotrial.com
schaller@wtotrial.com

_/s/ Katayoun A. Donnelly_____
Katayoun A. Donnelly