FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
9:36 am, Nov 25, 2022
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02765-RMR-MEH

XINGFEI LUO,

    Plaintiff(s),

v.

PAUL WANG,

    Defendant(s).

---

**PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS**

---

COMES NOW PLAINTIFF, pursuant to Rule 11, Federal Rules of Civil Procedure, Colorado Rule of Professional Conduct 3.3(a)(1) and D.C.COLO.LAttyR 2(a) hereby moves this Court to impose sanctions against Defendant and his counsel, jointly and severally, on the grounds that Defendant's Second Motion for Rule 11 sanctions is frivolous, not warranted by existing law, presented for an improper purpose in bad faith, and Defendant's factual contentions have NO evidentiary support. Further, Defendant and his counsel should be enjoined from filing any new actions against Plaintiff without first obtaining leave of court.

A copy of this motion was served on Defendant and his counsel on August 7, 2022 and November 3, 2022. Thus, pursuant to Federal Rule of Civil Procedure 11(c)(1)(A), Defendant and his counsel had more than twenty-one days to voluntarily withdraw defendant's second rule 11 motion, under Fed. R. Civ. P. 11. As the record shows, both Defendant and his counsel have failed to do so.

On August 7, 2022, October 20, 2022, and November 3, 2022 Plaintiff conferred with Defendant regarding this motion, as required under local rule D.C.Colo.LCivR 7.1(a). Defendant

has indicated he would oppose Plaintiff's motion.

## INTRODUCTION

Paul Wang (Defendant) – a thief cries "Stop thief!" – filed his first Rule 11 motion on December 3, 2021. Dkt. 132. After Defendant's first Rule 11 motion was denied on June 13, 2022 (Dkt. 165) and after the case was dismissed, Defendant filed his second Rule 11 motion, primarily based on the same arguments but was added extra false representation. Defendant's second Rule 11 motion is part of a pattern of reargument and re-litigation that has marked his efforts in this lawsuit to harass and intimidate Plaintiff, and that is not a proper use of Rule 11. See Advisory Committee Notes, 1993 Amendments ("Rule 11 motions [should not] be prepared [in order to] emphasize the merit's of a party's position. . . ."); see also *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (imposition of sanctions was supported by evidence that litigant brought action based on allegations which had been adversely decided against him previously). A sanction imposed for a violation of Rule 11 must be "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). A monetary sanction is insufficient to deter Defendant from future baseless, bad-faith filings and therefore would be insufficient to protect the court's ability to carry out its judicial functions. Defendant should be enjoined from filing any new actions against Plaintiff without first obtaining leave of court and ordered to pay a penalty into court.

## LEGAL ARGUMENT

Under Federal Rule of Civil Procedure 11, the court may impose sanctions on attorneys or unrepresented parties if "a pleading, written motion, or other paper . . . [is] presented for any improper purpose[;] . . . the claims, defenses, and other legal contentions therein are [un]warranted by existing law[;] . . . the allegations and other factual contentions have [no]

evidentiary support[; or] the denials of factual contentions are [un]warranted on the evidence[.]" FED. R. CIV. P. 11(b).

Courts often impose sanctions when a litigant refuses to withdraw baseless claims after service of a motion for sanctions. See *Terra Partners v. AG Acceptance Corp.*, CV 16-1036 WPL/CG, at *9 (D.N.M. Mar. 7, 2017), quoting *Barrett-Bowie v. Select Portfolio Servicing, Inc.*, 631 F. App'x 219, 221 (5th Cir. 2015); *Cook-Benjamin v. MHM Corr. Servs., Inc.*, 571 F.App'x 944, 949 (11th Cir. 2014).

The court also has the authority to impose Rule 11 sanctions *sua sponte*. FED. R. CIV. P. 11(c)(1)(B). This inherent power "guard[s] against abuses of the judicial process." *Shepherd v. Am. Board. Co.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995). In this regard, Rule 11 serves the purpose of protecting the court from "frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (quoting *Cobell v. Norton*, 157 F. Supp. 2d 82, 86 n.8 (D.D.C. 2001)). If the court determines that the motive and intent of the offending party is to harass the other party, or that a party has otherwise violated Rule 11(b), it has the inherent power to consider a Rule 11 sanctions motion *sua sponte* by issuing an order directing the offending party to show case why it has not violated Rule 11(b). FED. R. CIV. P. 11(c)(1)(B); see *McLaughlin v. Brandlee*, 602 F. Supp. 1412 (D.D.C.1985), aff'd 803 F.2d 1197 (D.C. Cir.1986). When the court exercises its discretion and imposes sanctions *sua sponte*, it is not required to provide the party with the safe harbor period, as is required in Rule 11(c)(1)(A). Compare FED. R. CIV. P. 11(c)(1)(B) (containing no explicit safe harbor provision) with FED. R. CIV. P. 11(c)(1)(A) (containing an explicit safe harbor provision); see, e.g., *Elliot v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (distinguishing between the safe harbor required when sanctions are

requested by motion and the absence of the safe harbor requirement when the court is acting *sua sponte*).

Finally, this court has the "discretion to determine both whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been a violation." *Cobell*, 211 F.R.D. at 10 (citations omitted).

    A.  <u>Sanctions are Proper against Defendant and His Counsel for Making False Representation of Material Facts and Intentionally Failing to Disclose Material Facts</u>

"A lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Colorado Rule of Professional Conduct 3.3(a)(1) (emphasis added); D.C.COLO.LAttyR 2(a) (adopting the Colorado Rules of Professional Conduct as standards of professional responsibility in the U.S. District Court for the District of Colorado).

Rule 11 of the Federal Rules of Civil Procedure "allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008); see also *Matter of Olsen*, 326 P.3d 1004. Pursuant to Rule 11(b), a party's or an attorney's signature on a pleading or motion constitutes a certification that, among other things, "to the best of the person's knowledge, information, and belief, formed after reasonable inquiry under the circumstances . . . the claims, . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law . . . [and] the factual contentions have evidentiary support" (emphasis added). The certification requirement mandates that "all signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings." 5A C.

Wright & A. Miller, Federal Practice & Procedure § 1335, at 57-58 (2d ed. 1990).

A party or an attorney need not act willfully or in bad faith to be subject to sanctions under Rule 11. *Nikols v. Chesnoff, 435 F. App'x 766, 773* (10th Cir. 2011) (reversing and remanding denial of motion for sanctions where the district court appeared to require a showing of bad faith); *Storage Partners II v. Storage Tech, Corp.*, 117 F.R.D. 675, 680 (D. Colo. 1987). Rather, to avoid sanctions a party and an attorney must meet a standard of objective reasonableness. *White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990); *Marotta v. Cooper*, No. 10-CV-01687-WJM-CBS, 2011 WL 2784423, at *8 (D. Colo. July 13, 2011) ("Rule 11 applies a standard of objective reasonableness, that is, whether a reasonable attorney admitted to practice before the District Court would file such a document."). A subjective good faith belief in the merits of asserted claims does not suffice to meet this standard. White, 908 F.2d at 680. Instead, that belief must "be in accord with what a reasonable, competent attorney would believe under the circumstances." Id.; C*ooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'").

Under Rule 11, a signing attorney has a "nondelegable responsibility" to "personally . . . validate the truth and legal reasonableness of the papers filed." P*avelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 126 (1989) (emphasis added). The "heart of Rule 11" is the message conveyed by the signer's certification that counsel "has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc*., 498 U.S. 533, 542 (1991) (emphasis added).

Sanctions are properly imposed against parties, counsel, and any associated law firm for filing

papers that (1) "harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) contain legal contentions that are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" (3) contain factual contentions that have no "evidentiary support" and that are not "likely" to have evidentiary support even after a reasonable opportunity for discovery; or (4) contain denials that are not "warranted on the evidence or, if specifically so identified, [not] reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b).

Online Publications

Defendant's argument with respect to the online publications in his second Rule 11 motion is primarily same as what he argued in his first Rule 11 motion. Defendant has alleged that Plaintiff's only specified claims against defendant are premised on two web postings published outside the statute of limitations. Defendant's argument is flawed. First, republication occurs when (1) the original publication was modified; or (2) the republication was directed to a new, different audience. Defendant proffered nothing to show the online publications at issue here were never modified. Republication occurs when (1) the original publication was modified; or (2) the republication was directed to a new, different audience. In *Davis v. Mitan* (*In re Davis*), the United States District Court for the Western District of Kentucky held that "where substantive material is added to a website, and that material is related to defamatory material that is already posted, a republication has occurred." 347 B.R. 607, 612 (W.D. Ky. 2006). Similarly, in *Larue v. Brown*, the Court of Appeals of Arizona held that republication occurs on a website when an "update or modification [of an internet publication] affects the substance of the allegedly defamatory material." 235 Ariz. 440, 333 P.3d 767, 772 (Ariz. Ct. App. 2014), finding that the defendants' responses to readers' comments—posted directly below the original

articles—not only repeated the earlier defamatory allegations, but "also added to and altered the substance [*255] of the original material." Id. at 773. The court held that when the statement itself is substantively altered or added to, or the website is directed to a new audience, the statement will be considered to be "republished."

Information is placed on the Internet with the intention that it will be available to reach new audiences over time. The Internet is more like a television, radio, or motion picture exhibition, which gives material a renewed impact each time it is broadcast, or each time the defamatory material is accessed. This repeat impact justifies a new cause of action. As Restatement (Second) Of Torts § 577A cmt. D. explains: If the same defamatory statement is published in the morning and evening editions of a newspaper, each edition is a separate single publication and there are two causes of action. The same is true of a rebroadcast of the defamation over radio or television or second run of a motion picture on the same evening. In these cases the publication reaches a new group, and the repetition justifies a new cause of action. The justification for this conclusion usually offered is that in these cases the second publication is intended to and does reach a new group. Echoing the words of the Second Restatement, the Internet "is intended to and does reach a new group."

The Second Restatement of Torts enforces the idea that different communications are different publications. According to the Restatement, "Each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." Thus, one printing of an edition of a book, magazine, or newspaper is one communication, one call for attention. One broadcast of a television program, radio show or motion picture exhibition is one communication. However, a repeat broadcast, exhibition, printing or edition is an additional

communication, is an additional call for attention, and thus permits an additional cause of action. By analogy, each time a defamatory message or report is accessed on a computer, it is a new communication, making a new opportunity for injury, and should warrant a new cause of action.

Without evidence, Defendant has alleged that one of the online publications is authored by someone else. In supporting his speculation, Defendant proffered (1) Plaintiff's December 17, 2013 letter; (2) a sentence stating that "I have filed a police report about her stealing money from me as well." Defendant's speculation has significant flaws: (1) Plaintiff's letter is not proof of the author of any online publications; (2) Defendant failed to provide the police report filed by someone else about Plaintiff stealing money; (3) Had Defendant been sure that Mr. Paraskevas was the author of the statements in paragraph 62 of the TAC he could have provided a declaration of Mr. Paraskevas acknowledging he was the author.

Further, Defendant did not deny he was the originator of the defamatory statements. The originator of defamatory matter may be liable for each "repetition" of the defamatory matter by a second party "if he could reasonably have foreseen the repetition." *McKinney v. County of Santa Clara*, 110 Cal. App. 3d 787, 795, 797 (1980); See also *Mitchell v. Superior Court*, 37 Cal. 3d 268, 281 (1984). "The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication." *Churchey v. Adolph Coors*, 759 P.2d 1336, 1344 (Colo. 1988).

Here, while Defendant made defamatory statements to anyone about Plaintiff, he could reasonably have foreseen the repetition of his defamatory statements by a second party and therefore he should be held liable for each republication.

Defendant alleged that Plaintiff and her counsel failed to disclose Plaintiff's responsive

communications with Mr. Morgann Parakevas regarding the allegations in her Complaint or her claims against Defendant. Dkt. 226, p. 9-10. However, none of his evidence shows that Plaintiff had any no responsive communications with Mr. Morgann Parakevas regarding false allegation of rape.

Insurance Claim

Despite Defendant admits that all travel insurance documents were produced to him at 10:00 am on July 7, 2022[1], Defendant falsely alleges that Plaintiff had made an insurance claim by reporting her passport stolen but in fact the insurance claimant was Defendant. Defendant further concealed material facts by alleging that Plaintiff was issued an insurance check in her name for the flight she canceled" but in fact the check issued by the insurance company was mailed to Defendant's residence and he cashed the check issued to Plaintiff.

On Sep 2, 2013 proof of claim was signed and submitted by Paul Wang as a claimant. Decl. Luo, ¶2.

On Sep 3, 2013 at 3:40 pm Claim was initiated by Paul Wang, not Plaintiff. Email was sent to student007@hotmail.com, the exact same email address he provided to this court. See Dkt. 28. On Sep 4, 2013 Paul Wang emailed Travelex to claim trip interruption with attachment of police report. On Sep 5, 2013 Paul Wang emailed Travelex the cancellation of reservation. Decl. Luo, ¶3-4.

September 5, 2013 was a Thursday which means it was Paul Wang's work day. On September 5, 2013 at 5:24 pm Defendant sent email, using stealthzeus@gmail.com, to the insurance company TravelexClaims before he left work. He used his cell phone Samsung Galaxy

---

[1] On June 2, 2022 the court issued a stay of all discovery and briefing for thirty (30) days. Dkt. 164. Neither Plaintiff nor her prior counsel had any obligation to disclose the subpoenaed production of insurance company while the discovery was stayed. Defendant could have subpoenaed the insurance documents himself but he strategically chose not to and waited for the work product from Plaintiff's counsel. Then Defendant turned around and complained about not receiving the subpoenaed document sooner.

Note II to email Travelex. Decl. Luo, ¶5-6. On September 6, 2013 Travelex acknowledged the receipt of Paul Wang's email and stated "email from insured." The email address stealthzeus@gmail.com is Paul Wang's personal email address. A true and correct copy of Paul Wang's text message telling WEAMER stealthzeus@gmail.com was his email address is attached hereto as Exhibit 6.

On Sep 11, 2013 at 2:34pm Paul called to check status. Email was sent to student007@hotmail.com, the exact same email address he provided to this court. See Dkt. 28. On Sep 11, 2013 at 2:59 pm Paul Wang emailed his bank statement to Travelex, indicating that he paid $1337 for the air tickets and $62 for the insurance. On Sep 18, 2013 at 6:02 pm Paul called for status and insisted on the inquiry of the claim amount. Decl. Luo, ¶7-8.

Despite Paul Wang was the insurance claimant and actual insured, after he cashed the check issued by insurance company without giving any money to Plaintiff, he wrote "She later filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price. She used that refund to purchase a ticket to California." Decl. Luo, ¶11.

In sum, Defendant was well aware of the following facts but intentionally concealed from the court: Defendant, not Plaintiff, paid the travel insurance; although Plaintiff was the traveller on the air ticket, insurance company's records clearly show Defendant was the claimant and actual insured; Plaintiff never made any contact with the insurance company for any claim; The check issued by the insurance company was mailed to Defendant's residence and the money was pocket by Defendant; In 2013 Plaintiff was a foreigner without a social security number therefore she had no bank account in the U.S. Plaintiff was unable to cash any checks without a

bank account in 2013. Defendant cashed the check issued by the insurance company; Defendant did not give Plaintiff any money cashed from the check issued by insurance; Plaintiff never received a dime from the insurance company. It is impossible that Plaintiff used the refund to purchase a ticket to California while she never cashed the check or received any insurance refund. Decl. Luo, ¶10, 12.

Defendant and his counsel knowingly made false representation of material fact to the Court. Colorado Rule of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.")

Litigation Privilege

Defendant's argument with respect to witness privilege in his second Rule 11 motion is primarily same as what he argued in his first Rule 11 motion.

The actions of a potential witness are not absolutely immune merely because he labels himself a potential witness. Immunity analysis rests on functional categories, not on the defendant's status. *Briscoe v. LaHue*, 460 U.S. 325 (1983). The supreme court was careful to emphasize that witness immunity does not extend to "all activity that a witness conducts" before testifying, and noted in particular that it had "accorded only qualified immunity to law enforcement officials who falsify affidavits." *Rehberg v. Paulk*, 566 U.S. 356, 369 n. 1 (2012) (treating law enforcement officers the same as private witnesses; citing *Kalina v. Fletcher*, 522 U.S. 118, 129–131 (1997), and *Malley v. Briggs*, 475 U.S. 335, 340–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Plaintiff has alleged that Defendant fabricated that Plaintiff committed several crimes which are unfounded. ECF No. 85 ¶¶ 51–52, 75–83, 57–62, 84–92. Defendant's fabrication was

not made to achieve any legitimate purpose of litigation but simply to cause harm to Plaintiff. The circumstances presented here fall squarely outside the carefully limited holding of *Rehberg*.

A pretrial, out-of-court effort to ... fabricate evidence ... is not "inextricably tied"—or tied at all—to any witness' own testimony, even [i]f a potential witness does happen to be involved. *Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001).

When defendants have "dual roles as witness and fabricator," extending protection from the testimony to the fabricated evidence "would transform the immunity from a shield to ensure" candor into "a sword allowing them to trample the statutory and constitutional rights of others." *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1243 (9th Cir. 2015).

B. <u>Defendant's Repeated Baseless Rule 11 Motions are Litigation Abuse</u>

Defendant's repeated Rule 11 Motions, continue a pattern of abuse, are deceitful, have been brought for the sole purpose of harassment and intimidation, and are an abuse of process and waste of judicial resources. Defendant's conduct is precisely the type of conduct that Rule 11 seeks to deter.

1. Failure to Comply with 21-day Safe Harbor Rule and to Properly Serve Rule 11 Motion

Even after the case was dismissed Defendant filed his untimely and procedurally deficient Rule 11 motion to harass and intimidate Plaintiff and her prior counsel. On July 12, 2022 Defendant served Plaintiff and her former counsel with his notice of Rule 11 sanction (with motion attached). However, 21 days later, Defendant did not file any Rule 11 sanction as noticed. His July 12, 2022 notice has then been expired.

On October 20, 2022 Defendant again served Plaintiff and her former counsel with his notice of Rule 11 sanction (without motion attached). Decl. Luo, ¶14. Less than 21 days of his

October 20, 2022 notice without attaching the motion, Defendant filed his second Rule 11 motion. See *Roth v. Green*, 466 F.3d 1179, 1191-93 (10th Cir. 2006) (vacating sanctions award, holding that warning or "safe harbor" letters do not satisfy Rule 11's requirement that party intending to seek sanctions serve its motion on offending party 21 days prior to filing motion); *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029 (8th Cir. 2003) (vacating sanctions award because moving party sent warning e-mail and letter to opposing party, rather than serving motion as contemplated by Rule 11(c).)

2. Failure to File Timely Rule 11 Motion

A motion for sanctions must be filed as soon as practicable after discovery of a Rule 11 violation. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1027 (7th Cir. 1999). Courts have uniformly denied Rule 11 motions where a motion was not filed until after the case was dismissed. See *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) (motions for Rule 11 sanctions filed after district court dismissed complaint should have been denied; citing cases from four other circuits); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 259 (S.D.N.Y. 1995) (denying sanctions after granting motion to dismiss because evaluating the complaint's factual basis would "waste scarce judicial resources".)

The courts have reasoned that to grant Rule 11 sanctions based on a motion filed postdismissal would defeat the purpose of the safe harbor provision. The advisory committee notes to Rule 11 provide strong support for this conclusion:

> Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely . . . . Given the "safe harbor" provisions . . . [in Rule 11(c)(2)], a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments). A leading federal practice treatise explains the rationale for this rule: "if the court disposes of the offending

Plaintiff's Motion for Rule 11 Sanction
13

contention within the 21-day safe-harbor period after service, it becomes impossible under the provision of Rule 11(c)(2) to file the motion or otherwise present it to the court." 2 James Wm. Moore et al., Moore's Federal Practice § 11.22[1][c] (3d ed. 2014); see also 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1337.2, at 727 (3d ed. 2004) ("[S]ervice of a sanctions motion after the district court has dismissed the claim or entered judgment prevents giving effect to the safe harbor provision or the policies and procedural protections it provides, and it will be rejected.")

Here, as early as July 12, 2022 Defendant knew the purported Rule 11 violation. Defendant offered no equitable considerations to explain his 113-day delay in filing his second Rule 11 motion. After receiving Plaintiff's Rule 11 motion on August 7, 2022, Decl. Luo, ¶13, and being informed that courts uniformly denied Rule 11 motion filed after dismissal, Defendant still filed his second meritless Rule 11 motion which warrants sanctions. See *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (affirming sanctions for filing a frivolous motion for sanctions); *Love v. Kwitny*, 772 F. Supp. 1367, 1378 (S.D.N.Y. 1991) (prevailing plaintiff nevertheless sanctioned for filing frivolous motion for sanctions.)

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court impose sanctions, pursuant to Fed. R. Civ. P. 11, against Defendant and his counsel, jointly and severally, in the form of a penalty into court in the amount that the Court deems sufficient to deter Defendant and his counsel from future misconduct. Meanwhile, Defendant and his counsel should be enjoined from filing any new actions against Plaintiff without first obtaining leave of court.

Dated: November 3, 2022

*/s/XINGFEI LUO*

**DECLARATION OF PLAINTIFF XINGFEI LUO**

I, XINGFEI LUO, declare and state:

1. I am the plaintiff in this case. I have personal knowledge of all facts stated herein. If called as a witness, I could and would competently testify thereto.

2. On Sep 2, 2013 proof of claim was signed and submitted by Paul Wang as claimant. A true and correct copy of the signed proof of claim is attached hereto as Exhibit 1.

3. On Sep 3, 2013 at 3:40 pm Claim was initiated by Paul Wang. Email was sent to student007@hotmail.com, the exact same email address he provided to this court. See Dkt. 28. A true and correct copy of the correspondence is attached hereto as Exhibit 2.

4. On Sep 4, 2013 Paul at 4:25 pm Wang emailed Travelex to claim trip interruption with attachment of police report. On Sep 5, 2013 Paul Wang emailed Travelex the cancellation of reservation. A true and correct copy of the email correspondence is attached hereto as Exhibit 3.

5. September 5, 2013 was a Thursday which means it was Paul Wang's work day. On September 5, 2013 at 5:24 pm Defendant sent email, using stealthzeus@gmail.com, to the insurance company TravelexClaims before he left work. He used his cell phone Samsung Galaxy Note II to email Travelex. I never used Samsung Galaxy Note II in my entire life. I never used stealthzeus@gmail.com in my entire life. On September 6, 2013 Travelex acknowledged the receipt of Paul Wang's email and stated "email from insured." A true and correct copy of the correspondence is attached hereto as Exhibit 4.

6. The email address stealthzeus@gmail.com is Paul Wang's personal email address. A true and correct copy of Paul Wang's text message telling WEAMER stealthzeus@gmail.com was his email address is attached hereto as Exhibit 5.

7. On Sep 11, 2013 at 2:34pm Paul called to check status. Email was sent to [student007@hotmail.com](mailto:student007@hotmail.com), the exact same email address he provided to this court. See Dkt. 28. A true and correct copy of the call log is attached hereto as Exhibit 2.

8. On Sep 11, 2013 at 2:59 pm Paul Wang emailed his credit card statement to Travelex, indicating that he paid $1337 for the air tickets and $62 for the insurance. A true and correct copy of the email correspondence is attached hereto as Exhibit 6.

9. On Sep 18, 2013 at 6:02 pm Paul called for status and insisted on the inquiry of the claim amount. A true and correct copy of the call log is attached hereto as Exhibit 2.

10. All of the above insurance related documents were disclosed to Defendant and his counsel on July 7, 2022.

11. A true and correct copy of defendant's online statement is attached hereto as Exhibit 7.

12. In 2013 I was a foreign visitor in the U.S. which was well aware by defendant Paul Wang. I did not have a social security number in 2013. I did not have a bank account in 2013 in the U.S. I did not cash the check issued by the insurance company. In fact, Paul Wang cashed the check and took the money. I received not a single dime from the insurance company. I never made any contact with the insurance company for any claim. Everything was done and controlled by Paul Wang. Had I called or contacted the insurance company in any manner I would have left my personal email address to follow up the claim. All email addresses on the insurance company's record are Paul Wang's email addresses. Had I called or contacted the insurance company in any manner I would have signed and submitted the proof of claim by myself. My name appears on the record simply because I was the traveller on the ticket. The actual insured was Paul Wang.

13. On August 7, 2022 I served Defendant my motion for Rule 11 Sanction. A true and correct

copy of the motion is attached hereto as Exhibit 8.

14. On October 20, 2022 I received Defendant's notice of Rule 11 sanction with no motion attached. After receiving Defendant's notice I informed him that I would file my Rule 11 motion. A true and correct copy of the correspondence is attached hereto as Exhibit 9.

15. On November 3, 2022 I served my rule 11 sanction on Defendant. A true and correct copy of the notice is attached hereto as Exhibit 10.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: November 3, 2022

*/s/ Xingfei Luo*
Plaintiff, In Pro Per

Plaintiff's Motion for Rule 11 Sanction

17

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2022, I served an electronic copy of the foregoing on:

Katayoun A. Donnelly katy@kdonnellylaw.com

Craig Stewart P.C. cstewart@hollandhart.com

Date: November 3, 2022

*/s/ Xingfei Luo*
Plaintiff, In Pro Per

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that I filed the foregoing with the Clerk of Court. The CM/ECF system will send notification of such filing to all ECF registered users.

Dated: November 25, 2022

*/s/ Xingfei Luo*
