FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
11/23/2022
JEFFREY P. COLWELL, CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

---

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S SUBMISSION OF ATTORNEYS' FEES AND EXPENSES ACCORDING TO OCTOBER 19, 2022 ORDER (ECF 227)**

---

Plaintiff hereby submits the following Objections to Defendant's submission of attorneys' fees and expenses according to October 19, 2022 order. ECF 227.

## OBJECTIONS

## I.    THE LIMIT OF FEDERAL COURTS' INHERENT AUTHORITY TO SANCTION

The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Defendant failed to meet his burden of establishing entitlement to an award of fees and costs within the limit of federal courts' inherent authority to sanction.

    A.   <u>Order to Pay The Other Side's Legal Fees Is Limited to The Fees The Innocent Party Incurred Solely Because of The Misconduct</u>

Rule 37 provides that the Court may award only those fees that were "caused by" a discovery violation. F.R.C.P. 37(c)(1)(A), (b)(2)(C). It does not give the Court blanket authority to award all fees incurred in the discovery. The Court must "determine which of the attorney's fees and expenses . . . were the result of specific violations of the [discovery] rules," and award

only those fees. *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990). The fee award may go no further than to redress the wronged party "for losses sustained"; it may not impose an additional amount as punishment for the sanctioned party's misbehavior. *Mine Workers v. Bagwell*, 512 U.S. 821, 820 (1994) (quoting *United States v. Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ). To level that kind of separate penalty, a court would need to provide **procedural guarantees applicable in criminal cases**, such as a "beyond a reasonable doubt" standard of proof. See id., at 826, 832–834, 838–839, 114 S.Ct. 2552. When (as in this case) those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim. See *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1189 (2017) (holding that a federal court's inherent authority to sanction litigants by shifting fees is limited to fees that "were incurred because of, and solely because of, the misconduct at issue.")

Out of 250 pages of deposition transcript there are only approximately 20 pages related to the questioning of Plaintiff's immigration matter. Decl., Luo ¶10. There is no casual connection between the deposition of non-immigration matters and Plaintiff's refusal to answer questions of immigration matter. The deposition would have been incurred regardless of Plaintiff's refusal to disclose immigration matter. See *Paroline v. United States*, 572 U.S. 434, 448-50 (2014) (holding that the traditional way to prove that one event was a factual cause of another is to show that the latter would not have occurred "but for" the former.) A sanctioning court must determine which fees were incurred because of, and solely because of, the misconduct at issue (however serious, or concurrent with a lawyer's work, it might have been). *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1189 (2017). No such finding lies behind the award made here of all fees and expenses associated with arranging, preparing for, and attending the entire deposition of

September 22, 2022.

    B.  <u>Bad Faith is Required to Reimburse Legal Fees and Costs Incurred By The Other Side</u>

       In 2020—the data from the American Community Survey (ACS)—an estimated 44.1 million foreign-born people resided in the United States, representing 13.5% of the total U.S. population. At some point of their life these folks traveled to the United States from their home country. That travel does not automatically makes their immigration or each of their travels in and out of the U.S. relevant to each lawsuit they are involved.

       Plaintiff has brought a defamation claim against Defendant related to his statements that Plaintiff filed a false police report **in 2013** and committed insurance fraud related to her lost passport **in 2013** while she was in the United States **in 2013**. Her travel to the United States in 2013 does not automatically makes her each travel in her entire life to and in the United States relevant to this lawsuit, let alone her immigration occurred **after 2013**.

       This court blamed Plaintiff for citing only one case within the Tenth Circuit pertaining to the same issue. ECF 222, p. 5. However, this court cited not even a single case within the Tenth Circuit showing the contrary to Plaintiff's position, other than a conclusory judgment that each and all Plaintiff's travels in her entire life to and in the United States was relevant, without any explanation how each of Plaintiff's travels to and in the United States and her immigration **after 2013** was relevant in any way to whether she defrauded the insurance for money **in 2013** despite concrete evidence presented to this court showing that she did not. ECF 194, 207.

       The ruling of *Reyes v. Snowcap Creamery, Inc.*, 898 F. Supp. 2d 1233 (D. Colo. 2012) (vacating order granting Defendant's Motion to Compel disclosure of various documents related to Plaintiff's immigration status) is not limited in FLSA actions. The *Reyes* Court emphasized

that the primary issue in this case was whether the plaintiff, who the defendants employed as a "kitchen manager", was properly classified as an exempt employee for purposes of the overtime provisions in the FLSA. The *Reyes* Court cited multiple cases and reasoned that [I]t is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant. Substitute "Fair Labor Standards Act" for "defamation law" in that sentence, and the same thing goes in this case. Similar to *Reyes*, the primary issue here, wholly irrelevant to Plaintiff's travels and immigration **after 2013**, is whether Plaintiff filed a false police report **in 2013** to defraud the insurance company for money **in 2013**. This court gave no explanation how Plaintiff's immigration would change the fact that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant, how Plaintiff's immigration would change the fact that all email correspondence was made to the insurance company by Defendant, not Plaintiff, how Plaintiff's immigration would change the fact that Defendant, not Plaintiff, pocketed the insurance refund, and how Plaintiff's immigration would change the fact that Defendant, after pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance refund to buy a ticket flying to California from Colorado while Plaintiff never bought a ticket flying to California from Colorado in 2013. Decl., Luo ¶2.

Plaintiff's refusal to answer questions of immigration had reasonable basis both in law and fact. There is no evidence Plaintiff acted with any bad faith or willful disregard of any court order. No finding of bad faith lies behind the award made here of all fees and costs associated with arranging, preparing for, and attending the entire deposition of September 22, 2022. See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-766 (1980) (finding of bad faith is generally

required for a court to impose sanctions pursuant to its inherent authority); *Sloan v. State Farm Mut. Auto. Ins. Co*., 360 F.3d 1220, 1224 (10th Cir. 2004) (bad faith requires "culpable mental state.")

The award of fees and expenses for noncompliance with the rules is discretionary, and the amount and impact of a monetary sanction should depend on the seriousness of the violation and where the fault lies, i.e., with counsel or client. However, in the absence of a finding of bad faith, there must be a sufficient nexus between noncompliance with the rules and the amount of fees and expenses awarded as a sanction. The rules, by their terms, limit assessments thereunder for the fees and expenses of the adverse party resulting from noncompliance. *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990) (citations omitted). In other words, violations of Rules 16(f) and 37(b)(2), even if repeated, will not necessarily support the award of the entire litigation costs of the adverse party. *Id*. By the same token, there is no nexus between Plaintiff's refusal to disclose immigration matter and Defendant's claimed fees and expenses for the entire deposition.

C.  Award of Fees and Costs Against Plaintiff Will Not Serve The Interests of Justice

   1.  Fees and Costs of the Entire Deposition Are Not Proportional to Plaintiff's Failure to Disclose Immigration Matter

Rule 37(b)(2) grants district courts substantial discretion to craft their orders to serve the interests of justice. Sanctions under Rule 37(b)(2) must be in the interests of justice and proportional to the specific violation of the rules. *Olcott v. Delaware Flood Co*., 76 F.3d 1538, 1555-57 (10th Cir. 1996). See also *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) ("Rule 37(b)(2) contains two standards — one general and one specific — that limit a district court's discretion. First, any sanction must be 'just'; second,

the sanction must be specifically related to the particular 'claim' which was at issue in the order

to provide discovery"); *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990) (vacating fee

award and remanding due to lack of clarity as to the causal connection between the Rule 37

violation and the fees, and noting that the district court must determine which of the attorney's

fees and expenses billed were the result of specific violations of the rules.)

In analyzing a Rule 37(b)(2) sanction the Tenth Circuit cautioned, "[t]he district court's

discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and

'related' to the particular 'claim' which was at issue in the order to provide discovery."

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (quoting International Corp. of

Ireland, 456 U.S. at 707)).

As stated herein, Defendant's claimed fees and expenses for the entire deposition is not

the result of Plaintiff's refusal to disclose her immigration matter and is not directly attributable

to Plaintiff's "sanctionable conduct".

2.   Defendant's Gamesmanship and Fraud During Discovery and Litigation

As early as December 2020 Defendant was well aware of this litigation. ECF 74, p. 3.

However, Defendant repeatedly stalled the discovery and waited until September 2022 to allege

that the website hosting company has been down. ECFs 148, 203. As a result of his delay tactic,

alleging the website hosting company had been down, he subpoenaed all of Plaintiff's cell phone

data to accomplish his speculation that Plaintiff used her cell phone to post a blog Defendant

commented on. By implementing his tactic, Defendant provided no information or evidence how

searching all of Plaintiff's cell phone data would determine whether she posted a blog.

See *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, Civil Action No. 17-cv-00803-

CMA-NYW, at *13 (D. Colo. Sep. 27, 2017) (Quashing a subpoena for the forensic image of a personal cell phone where the party requesting the image failed to identify protocols that would limit the scope of the search and the subpoena presented issues of overbreadth, privacy, and privilege.)

Throughout the litigation, Defendant did not try to prove his statement of facts was true. Defendant did not bother to subpoena the insurance company or the issuing bank of the refund check, rather, he tried to build his defense by claiming his defamatory statement was a comment on Plaintiff's blog. However, online commentary can be actionable if it states or implies false and defamatory facts. *Balla v. Hall* (2021) 59 Cal.App.5th 652, 682; *Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 865.

Plaintiff's interrogatory number 11 requires Defendant to (a) state each and every fact, premise, or conclusion upon which he bases his failure to unqualifiedly admit the RFA; (b) identify each and every document and/or piece of evidence that supports his denial or failure to unqualifiedly admit the RFA, in addition to any document and/or piece of evidence that supports and/or contradicts your answers provided in response to this interrogatory; (c) identify each and every person who has knowledge of or information regarding the facts and/or documents identified in subparts (a) and (b) above, indicating which person has knowledge or information concerning each fact and/or document. Despite going through lengthy meet and confer and two status conferences in May and August, 2022 Defendant never provided any meaningful response to Plaintiff's interrogatory number 11. Decl., Luo ¶12.

On February 8, 2022 Defendant posed as "Anon Ymous" and harassed Plaintiff by sending an email to her court appointed counsel. Decl., Luo ¶13-14. The email contains the exact

same information Defendant sent to Weamer. Decl., Luo ¶13-14. Defendant was bold enough that he did not even bother to change his presentation style. And the email contains substantial incorrect and incomplete information in order to put Plaintiff in a false light. Decl., Luo ¶14. The incorrect legal information in the harassing email shows that the author is not an attorney as any attorney should have known that: By expressly limiting the definition of "litigation," for purposes of the vexatious litigant statutes, to "any civil action or proceeding," the Legislature excluded criminal cases from the ambit of Code of Civil Procedure section 391 et seq. Thus, the vexatious litigant statutes may properly be employed **only in civil cases**. (See *McColm v. Westwood Park Assn*. (1998) 62 Cal.App.4th 1211, 1216-1219; *In re Bittaker* (1997) 55 Cal.App.4th 1004, 1009; *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 992; *Camerado Ins. Agency, Inc. v. Superior Court* (1993) 12 Cal.App.4th 838, 843-844.) They may not be used in criminal cases. (See *In re Bittaker*, supra, 55 Cal.App.4th at pp. 1009-1012 [Code Civ. Proc., § 391 et seq. inapplicable to petitions for writ of habeas corpus].) It is another living example that Defendant is a thief crying "Stop thief!"

Defendant also presented fraud to this court by alleging his daughter was born in September 2019. ECF 186. Defendant continued his fraud by presenting ECF 226-3 which contains at least four indicators of fraud—(1) omitted the proof of claim showing Defendant was the actual insured and the claimant; (2) omitted all correspondence between Defendant and the insurance company; (3) falsely alleged that Plaintiff made an insurance claim while she never did; and (4) omitted the facts that the insurance refund check was mailed to Defendant's residence, Defendant received and cashed the check. Defendant has received all the insurance records since July 7, 2022. And the insurance records were submitted to the court multiple times. ECFs 193,

194, 207. Not a single time Defendant objected to the authenticity of the insurance records. Defendant never alleged that the signature on the proof of claim was not his. Neither did he allege the emails sent to the insurance company were not authored by him. Most notably, Defendant never denied he cashed the check issued by the insurance. ECF 194, p. 5-6. This is not a case of failure to make a reasonable inquiry. This is an outright fraud in light of the overwhelming evidence. This is especially so when Defendant again and again clung to his falsified claim as true that Plaintiff made an insurance claim despite his knowledge that the evidence central to the litigation was manipulated by himself. Defendant even presented his fraud after being confronted with the fact that he was the claimant of the insurance and continued to promote the manipulated evidence with knowledge of the manipulation. Defendant's presentation of fraudulent evidence to a federal district court significantly interfered with the judicial process. There is no doubt Defendant would continue to abuse the judicial process by using manipulated evidence and thus continue to drain judicial resources.

## II.  DEFENDANT'S FAILURE TO COMPLY WITH LOCAL RULES

If fees are to be awarded, the Court's Local Civil Rules require that a motion for attorney's fees contain both "a detailed description of the services rendered [and] the amount of time spent" and "a summary of relevant qualifications and experience" for each person for whom fees are claimed. D.C. Colo. L. Civ. R. 54.3(b). See also FRCP Rule 54(d)(2) (A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.)

A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505,

1510 (10th Cir. 1995).

A. Reasonable Hourly Rate

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (citation omitted). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Elias v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998).

In order to satisfy its burden, a movant seeking attorney's fees must produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "When counsel is inexperienced, a losing party should not be obligated to pay for that counsel's legal education." *Mares v. Credit Bureau of Raton*, 801 F. 2d 1197, 1202-05 (10th Cir 1986).

The Supreme Court has found non-compensable "purely clerical or secretarial tasks [which] should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (citation omitted).

Here, Defendant provided neither a detailed description of the services rendered nor a summary of relevant qualifications and experience of each attorney for whose work Defendant seeks to recover, such as how many jury trials or bench trials each attorney has tried and how many clients each attorney has represented on defamation matter. Defendant's failure precludes the Court from determining the substance of each task and whether the requested rate is reasonable. Defendant has presented no evidence of reasonableness and claims hourly rates that

are incongruous with the prevailing rate in the Denver market. Where, as here, a "court does not have before it adequate evidence of prevailing market rates, the court may use other relevant factors, including its own knowledge, to establish the rate." *Bat v. A.G. Edwards & Sons, Inc.*, 2006 U.S. Dist. LEXIS 9542, 8-9, 2006 WL 446078 (D. Colo. Feb. 21, 2006) (quoting *Guides, Ltd.*, 295 F.3d at 1079); see also *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005) (approving the district court's determination of the applicable hourly rate by "relying on its knowledge of rates for lawyers with comparable skill and experience practicing" in the relevant market); *Hull v. United States Department of Labor*, 2006 U.S. Dist. LEXIS 35054 at *14-15 (D. Colo. May 30, 2006) (awarding $300 per hour for sole practitioner attorney with "more than 20 years" experience handling claims of the type at issue); *Bat*, 2006 U.S. Dist. LEXIS 9542 at *9 (awarding hourly rate of $350.00 for attorney with 24 years' experience and $190.00 for lawyer with two years' experience.)

Ms Donnelly's failure to comply with the Court's Practice Standards and basic court rules does not substantiate her hourly rate of $380. ECFs 70, 160, 161, 227, 228. The quality of an attorney's work in general is a component of the reasonabl[e] hourly rate; this aspect of "quality" is reflected in the "lodestar" and should not be utilized to augment or diminish the basic award under the rubric of "the quality of an attorney's work." For instance, if a high-priced attorney performs in a competent but undistinguished manner, a decrease in the "lodestar" may be necessary under the "quality of representation" rubric because the hourly rate used to calculate the "lodestar" proved to be overly generous. See *Copeland v. Marshall*, 641 F.2d 880, 894 (D.C. Cir. 1980). As such, the "lodestar" may be adjusted down to reflect Ms Donnelly's quality of representation.

B.  <u>Hours Reasonably Expended</u>

The amount of time actually expended is not necessarily the amount of time reasonably expended. The reasonableness inquiry is controlled by the overriding consideration of whether the attorney's hours were "necessary" under the circumstances. The party seeking fees must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1996) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).) And "[t]he district court has a corresponding obligation to exclude hours not reasonably expended from the calculation." *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (internal quotation marks omitted).

A district court should approach reasonableness inquiry "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients. . . ." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). However, [t]he record ought to assure that the district court did not 'eyeball' the fee request . . . *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

The *Ramos* court suggested that among the factors to be considered were (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers. *Ramos*, 713 F.2d at 554. As part of this reasonableness determination, a district court may discount requested attorney hours if the attorney fails to keep "meticulous, contemporaneous time records" that reveal "all hours for which compensation is requested and how those hours were allotted to specific tasks." Id. at 553. A district court does

not abuse its discretion in reducing fee request when the request is based on time records that are "rather sloppy and imprecise." *Jane L.*, 61 F.3d at 1510.

Ultimately, the court's goal is to fix a fee that would be equivalent to what a reasonable attorney would bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Ramos*, 713 F.2d at 553.

The party requesting fees must demonstrate that his counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended. *Praseuth*, 406 F.3d at 1257. If not, a court should take extra care to ensure that an attorney has not included unjustified charges in his billing statement. Id. "Billing judgment" is an important component in fee setting. A court will not assume that an attorney has used "billing judgment" in submitting his fee request. See *Jenkins*, 491 U.S. at 288 n.10; *Praseuth*, 406 F.3d at 1257.

First and foremost, Defendant failed to provide a detailed description of the services rendered by his attorneys, for instance, what particular topic or task of a deposition required 14.4 attorney hours on September 21, 2022. See *White v. GMC, Inc.*, 908 F.2d 675 (10th Cir. 1990) (Stating that "an adequate opportunity to respond to an attorney's fee request requires that the persons to be sanctioned be provided enough detail concerning the basis of the requested fees to permit an intelligent analysis"); *Case v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1249-50 (10th Cir. 1998) (Requiring "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allocated to specific tasks.") If a lawyer bills 8.0 hours on a given day to "prepare for trial," that block of time would most likely include, among other things, time for coffee and restroom breaks, personal calls and non-compensable administrative/managerial

tasks. Defendant provided no information or evidence showing the time billed by his attorneys were actually compensable and appropriate. Generalized time entries such as "research issues", "review file", "attention to file", "discovery", "prepare for trial", "prepare for deposition", "trial prep", and other similar general statements are not specific enough to assess what was actually done to assess whether the generalized time entries are actually compensable and appropriate. See *Robinson v. City of Edmond*, 160 F.3d 1275, 1284-85 (10th Cir. 1998) (holding that the practice of "block billing"- combining multiple tasks within a single period of time, instead of itemizing the time spent on each task- can "camouflage the work a lawyer does" and thus "naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary.")

A quick glance at Ms Donnelly's major work product (ECF 69 MTD 6 pages; ECF 78 MTD 6 pages; ECF 92 MTD 14 pages; ECF 101, 7 pages; ECF 106, 6 pages; ECF 109, 9 pages; ECF 132 Rule 11 10 pages; ECF 148, 4 pages; ECF 203 6 pages; ECF 226 Rule 11 24 pages), most of them are duplicative arguments and barely have over 10 pages, has demonstrated Ms Donnelly's habit and pattern of bill padding. Given the issues presented prior to trial in this case, a non-complex defamation case with no specialized knowledge required, 450 hours of attorney time is clearly excessive showing absolutely no billing judgment in light of the amount and complexity of the work involved. ECF 226, p. 24. Ms Donnelly did not even subpoena the insurance company or the bank issued the insurance refund check. Ms Donnelly simply sat back and waited for Plaintiff's subpoena result. See *Mau v. E.P.H. Corp.*, 638 P.2d 777, 779 (Colo.1981) (discussing the list of factors set forth in the Code of Professional Responsibility to be considered in determining the reasonableness of a fee, including but not limited to the time

and labor required, the novelty and difficulty of the questions involved, the skill requisite to

perform the legal service properly, the fee customarily charged in the locality for similar legal

services, the amount involved and the results obtained, the experience, reputation, and ability of

the lawyer or lawyers performing the services); *White v. GMC, Inc.*, 908 F.2d 675, 684-85 (10th

Cir. 1990) (finding the expenditure of 1263.88 attorneys' and 96.44 legal assistants' hours to

defend a suit through summary judgment[1] seems incredible and noting that the amount of fees

accumulated to secure the desired result must be reasonably related to the type and significance

of issue in dispute); *United States v. Strawser*, 581 F. Supp. 875 (C.D. Ill. 1984) (finding eight

hundred hours in the amount of $46,500 for representing a client in a drug case which never went

to trial was grossly excessive and determining that a competent attorney would have devoted

approximately one hundred fifteen hours to the case and that the highest fee charged by the

attorneys representing the client's codefendants, who went to trial, was only $12,000); *Levy v.*

*Toyota Motor Sales, U.S.A. Inc*. (1992) 4 Cal.App.4th 807 (finding attorney fees $137,459

unreasonable in connection with a lemon law case over a vehicle which had a value of $22,000.)

    Since this case did not proceed to trial, Ms Donnelly did nothing in this case more than

attending three or four status conferences and filing several motions, most of them are duplicated

(three motions to dismiss and two rule 11 motions) and her 450 hours cannot be substantiated

which suggests she made herself a windfall out of a simple defamation lawsuit. See *Bunting v.*

*Preferred Homecare*, Civil Action No. 12-cv-03327-RM-KMT, at *5 (D. Colo. Mar. 26, 2014)

(finding 20.66 hours expended over four days to discuss the incident report and to research,

---

[1] Defendant Paul Wang did not even defend this simple defamation suit through summary judgment.

analyze, write and edit Plaintiff's Motion for Sanctions and 12.5 hours expended over four days to research, analyze, write and edit Plaintiff's Reply to be inflated, likely as a result of the inexperience of the billing attorney.)

Ms Donnelly's time expended on her emergency motion to determine whether Plaintiff needs an interpreter for the deposition, ECF 187[2], totaling less than one page in length, is excessive and unreasonable. An attorney with 15 years of experience would not reasonably expend more than a total of 30 minutes researching, discussing, and drafting a one page motion.

## III.      THE ONLY DEPOSING ATTORNEY IS STEVEN D. ZANSBERG

Ms Donnelly did not conduct the deposition on September 22, 2022. The only deposing attorney on September 22, 2022 was Steven Zansberg. Decl., Luo ¶8. Double-billing should not be allowed.

"For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." *Copeland v. Marshall*, 641 F.2d at 891. Similarly, if the same task is performed by more than one lawyer, multiple compensation should be denied. *Ramos*, 713 F.2d at 554. The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services. The court should assess the possibility that reported hours include duplication by reviewing with particular care the number of lawyers present at hearings, depositions, and other discovery proceedings, and by evaluating the roles played by the lawyers in the litigation generally. The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required. Id.

Defendant provided no information or evidence showing why it was necessary to take

---

[2] ECF 187 also includes a motion to disclose the identity of the author(s).

20.4 attorney hours to prepare the deposition for a relatively straightforward issue, whether Plaintiff defrauded insurance money in 2013 by filing a false police report given the insurance records readily show that Defendant was the actual insured and claimant. See *Case v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1252-53 (10th Cir. 1998) (holding that time spent reading background material designed to familiarize an attorney with an area of law is presumptively unreasonable and rejecting "conference" billings.)

The complexity and the nature of the case, and the amount in controversy does not justify double-billing, especially when providing an interpreter could have achieved the same goal of the deposition. Defendant should bear his own fees and expenses for unreasonably providing a native English speaking attorney (charging a much higher hourly rate than an interpreter) instead of an interpreter considering Defendant repeatedly asserted that Plaintiff's claims were meritless.[3] See *Hamilton v. Boise*, 519 F.3d 1197, 1207 (10th Cir. 2008) (noting that bringing in expensive out-of-town hired guns to respond to a frivolously multiplicative motion would not be reasonable.)

The Supreme Court has found non-compensable "purely clerical or secretarial tasks [which] should not be billed at a paralegal rate regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) (citation omitted). When the native English speaking attorney serving as an interpreter, Defendant should bear the extra fees and expenses for his **unreasonable choice** of a native English speaking attorney rather than an interpreter.

---

[3] "Any indication to the presiding judicial officer that a criminal defendant speaks only or primarily a language other than the English language should trigger the application of Sections (d) and (f)(1) of the Court Interpreters Act." *U.S. v. Osuna*, 189 F.3d 1289, 1291 (10th Cir. 1999).

Moreover, Defendant's unreasonable choice of a native English speaking attorney over an interpreter had violated D.C. Colo. L. Civ. R. 30.1 which requires counsel or the unrepresented party seeking the deposition shall make a good faith effort to schedule the deposition in a convenient and cost-effective manner.

Further, other than the lunch break from 12:10 p.m. to 13:00 p.m. there were several breaks taken on September 22, 2022. Decl., Luo ¶9. Defendant provided no information or evidence showing why 9.7 hours of each attorney were billed while the deposition lasted approximately 7 hours. No compensation is due for nonproductive time. As such, lunch, coffee, restroom breaks or travel are not compensable. See *Stender v. Archstone-Smith Operating Tr*., 958 F.3d 938, 945–48 (10th Cir. 2020) (concluding that Colorado's general laws for assessing costs did not apply in diversity case in federal courts).

Mr. Zansberg did not provide a summary of his relevant qualifications and experience, nor did he sign the Itemization. The failure to comply with the basic precept of substantiating the attorney's billing rate does not carry Defendant over his burden of proof and certainly dissuades the court from awarding fees for two unsubstantiated billing attorneys.

## IV.    UNREASONABLY LENGTHY DEPOSITION

The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims. *White v. GMC, Inc*., 908 F.2d 675, 684 (10th Cir. 1990) (quoting *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1092-94 (3d Cir. 1988); *Thomas v. Capital Sec. Servs., Inc*., 836 F.2d 866, 878-81 (5th Cir. 1988) (en banc).) On one hand Defendant claimed Plaintiff's claims were meritless, ECFs 132, 226, on the other hand Defendant chose in court deposition, the most expensive way to

depose Plaintiff, and used a native English speaking attorney over an interpreter who would charge a much lower rate to conduct an unreasonably lengthy deposition despite concrete evidence was readily available to show Defendant was in fact the travel insurance claimant prior to the deposition.

In light of the unambiguous documentary evidence, ECF 194, demonstrating Defendant was the insurance claimant and actual insured in 2013, and it was Defendant, not Plaintiff, received and cashed the refund check and pocketed the insurance refund in 2013, the seven-hour deposition was excessive and unnecessary given the limited number of reasonable strategies that could be pursued. Decl., Luo ¶11. See *Gomba v. McLaughlin*, 180 Colo. 232, 235–36, 504 P.2d 337, 338 (1972) (truth is an absolute defense to defamation.)

Defendant failed to establish the reasonableness of each dollar and each hour by failing to demonstrate what part of Plaintiff's testimony would change the facts that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in 2013; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, pocketed the insurance refund in 2013; and that Defendant, after pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance refund to buy a ticket flying to California from Colorado.

## V.    FEE OF EXPEDITED DEPOSITION TRANSCRIPT IS UNREASONABLE

The total award of all deposition transcripts does not include expedited, realtime, and rough draft charges, as such charges tend to be for counsel's convenience, unless there is a demonstrated need. *Stender v. Archstone-Smith Operating Tr.*, No. 07-CV-2503-WJM-MJW, 2018 WL 4635984, at *2 (D. Colo. Sept. 27, 2018).

Defendant apparently used expedited service because the transcript has approximately 250 pages which renders the deposition transcript fee as high as $10.63 per page ($2657.05/250=10.63). Ordinary transcript service is to deliver transcript within thirty (30) calendar days after a deposition. Defender ordered the transcript to be delivered within fourteen (14) calendar days after the deposition. Defendant failed to demonstrate any need for expedited deposition transcript. Therefore, expedited deposition transcript fee is neither reasonable nor recoverable.

## VI.     DUPLICATE CLAIMS OF EXPENSES

Defendant is not entitled to recover the same expense twice, such as $2,657.05 for transcript cost for 9-22-2022, $100.37 for Hotel Booking non refundable, and $334.65 for transcript copy for 8/24/2022 that he has claimed under 28 U.S.C. § 1920. See ECF 235.

Defendant paid only $100.37 for the hostel, not the $102.13 as Ms Donnelly's declaration stated. Defendant is not entitled to recover the hostel expenses as he refused to stipulate to bear Plaintiff's travel expenses and caused Plaintiff to complete the travel at her own expenses. Decl., Luo ¶5-7.

Court hearing transcripts are often taken to assist practitioners with keeping track of a myriad of court rulings on pending motions, discovery matters, trial practices, or jury instructions. If a transcript is ordered to assist counsel in understanding what the court has ordered, counsel can take notes themselves or assign staff to do so – but a printed court transcript is not "necessarily obtained" in the sense of § 1920. Use of a transcript for those purposes is a matter of "convenience of counsel". The $334.65 for obtaining the transcript of the August 24, 2022 hearing is not related to the deposition. Defendant would have obtained the transcript of the

August 24, 2022 hearing even if there were no deposition taken on September 22, 2022.

Defendant failed to provide any information or evidence showing how the status conference

transcript was used in the deposition for a substantive purpose. The transcript copy fees

Defendant claims was for counsel's convenience therefore are not reasonable or recoverable.

## VII.   PLAINTIFF'S INABILITY TO PAY

Plaintiff was granted Leave to Proceed In Forma Pauperis in this case and relevant

proceedings. ECFs 2, 5, 225. Plaintiff being indigent and Defendant's unreasonably high or

unnecessary fees and costs should bar an award of fees and costs against Plaintiff.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the attorney

fees and expenses claims by Defendant in its entirety.

Dated: November 23, 2022                    Respectfully submitted,

                                            */s/ Xingfei Luo*
                                            Plaintiff in Pro Se and sole author

## DECLARATION OF XINGFEI LUO

I, Xingfei Luo, declare and state:

1.    I am the plaintiff in this case. I have personal knowledge of the facts in this declaration. If called on to testify, I could and would competently do so under oath.

2.    In 2013 I never bought a ticket flying to California to Colorado.

3.    In my entire life, I speak primarily a language other than the English language.

4.    I was granted Leave to Proceed In Forma Pauperis in this case. ECFs 2, 5. Since then my financial condition has not changed. ECF 225.

5.    On September 14, 2022 I asked Ms Donnelly to enter a stipulation that Defendant would bear all my travel expenses for the deposition on Sep 22, 2022 but she refused to do so by stating Defendant would only comply with court orders while the court did not order Defendant to pay for my travel expenses. A true and correct copy of the correspondence is attached hereto as Exhibit 1.

6.    On September 19, 2022 I informed the court that I had no sufficient financial means to complete the trip to Denver and inquire whether the court would allow remote deposition. After receiving my email Ms Donnelly did not inform me that Defendant would pay for my lodging in Denver. A true and correct copy of the correspondence is attached hereto as Exhibit 2.

7.    I did not stay in the hostel Defendant booked as he refused to enter a stipulation to bear my travel expenses. I appeared for the deposition on September 22, 2022 all at my own expenses.

8.    Ms Donnelly did not conduct the deposition on September 22, 2022. The only deposing attorney on September 22, 2022 was Steven Zansberg.

9.    On September 22, 2022 other than the lunch break from 12:10 p.m. to 13:00 p.m. we took a few short breaks.

10.  I have reviewed the transcript of the deposition on September 22, 2022. There are about 250 pages of deposition transcript and there are only approximately 20 pages related to the questioning of my immigration matter.

11.   During the deposition on September 22, 2022, Defendant used eleven exhibits. A true and correct copy of the exhibit list is attached hereto as Exhibit 3. Out of eleven exhibits, only three of them are arguably relevant to the insurance claim.

12.   My interrogatory number 11 requires Defendant to (a) state each and every fact, premise, or conclusion upon which he bases his failure to unqualifiedly admit the RFA; (b) identify each and every document and/or piece of evidence that supports his denial or failure to unqualifiedly admit the RFA, in addition to any document and/or piece of evidence that supports and/or contradicts your answers provided in response to this interrogatory; (c) identify each and every person who has knowledge of or information regarding the facts and/or documents identified in subparts (a) and (b) above, indicating which person has knowledge or information concerning each fact and/or document. Despite after lengthy meet and confer and two status conferences in May and August Defendant never provided any meaningful response to my interrogatory number 11. A true and correct copy of Defendant's discovery response is attached hereto as Exhibit 4.

13.   Defendant's discovery responses include his email to Weamer with a list of the cases that involved me as a party. A true and correct copy of Defendant's discovery response is attached hereto as Exhibit 5.

14.   On February 8, 2022 my court appointed counsel received an email from Anon Ymous. It is reasonably believed that the author and sender was Paul Wang as he did not even bother to change the presentation style. A true and correct copy of correspondence is attached hereto as Exhibit 6.

I declare under penalty of perjury, that the foregoing is true and correct.

DATED: NOVEMBER 23, 2022

*/S/ XINGFEI LUO*

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that I filed the foregoing with the Clerk of Court. The CM/ECF system will send notification of such filing to all ECF registered users.

DATED: NOVEMBER 23, 2022

*/s/ Xingfei Luo*