**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
12/08/2022
**JEFFREY P. COLWELL, CLERK**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

        Plaintiff,

v.

PAUL WANG,

        Defendant.

---

### PLAINTIFF'S MOTION FOR REVIEW OF CLERK'S TAXATION AWARD TO DEFENDANT UNDER FRCP 54(d)(1)

---

Plaintiff hereby moves, pursuant to Fed. R. Civ. P. 54(d)(1), for a review of the clerk's award of costs to Defendant. ECF 247.

### CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1, Plaintiff has conferred with Defendant's counsel regarding the relief requested, which is opposed. D.C.COLO.LCivR 7.1.

### BACKGROUND

Plaintiff and Defendant attended school together in China from 1990 through 1993. ECF 85 ¶5. While Plaintiff pursued her life in China Defendant came to the United States on a student visa in 1996. Defendant completed his undergraduate education in the State of Texas. He married an obese and six-year older woman for immigration benefit to stay in this country and later divorced her. Decl., Luo ¶2.

In late 2012, Defendant returned to China to visit and reconnected with Plaintiff. They had been in a romantic relationship and Plaintiff came to the United States in July 2013 to visit

Defendant. ECF 85 ¶¶ 6-9, 37. Plaintiff ended her relationship with Defendant in October 2013. ECF 85 ¶45.

Based on the application of the discovery rule (C.R.S. § 13-80-108(1)) Plaintiff initiated this defamation action and filed the original Complaint and First Amended Complaint in pro se. ECFs 1, 47. Plaintiff filed her Second Amended Complaint (SAC) on April 22, 2021 with the assistance of court-appointed counsel. ECF 65.

In response to the SAC, Defendant filed a motion to dismiss (MTD) on May 25, 2021. ECF 69. On May 26, 2021, District Judge R. Brooke Jackson denied the motion to dismiss for failing to comply with his practice standards. ECF 70. On May 27, 2021, Defendant filed a letter in conformance with these practice standards. ECF 71. Plaintiff filed her responsive letter on June 10, 2021. ECF 75.

On June 11, 2021, Judge Jackson entered the Order unequivocally stating that "A motion to dismiss **is likely to be denied and a waste of time.** ECF 76. Notably, in the Order, the Court did not grant Defendant leave to renew the Motion to Dismiss. (*Id.*) Further, Defendant never filed a motion for reconsideration of the Order and the Court has not vacated the Order.

On July 6, 2021, this case was reassigned to Judge Rodriguez upon her appointment. ECF 77. In a veiled attempt to do an end run around this Court's Order (ECF 76), only three days after the reassignment, Defendant filed his Renewed Motion to Dismiss, a near identical copy of the motion Judge Jackson denied. ECF 78.

Plaintiff filed her Third Amended Complaint (TAC) after Defendant's renewed MTD was denied. ECF 85. On August 25, 2021 Defendant filed his motion to dismiss TAC. ECF 92. Plaintiff filed her response and Defendant filed his reply. ECFs 104, 106.

Despite his own immigration fraud, Defendant put on a classic "Thief crying 'Stop Thief'" show and fabricated in front of the magistrate judge that Plaintiff would need to marry someone to stay in this country. ECF 191.

On June 13, 2022 the Court granted Defendant's MTD in part, ECF 165, after Defendant's fourth attempt to dismiss this case. ECFs 36, 69, 78 and 92. Plaintiff moved forward with the undismissed claim related to Defendant's defamatory statement that Plaintiff filed a false police report to defraud the insurance company for money. Decl., Luo ¶15.

Feeling being bullied by Defendant, Plaintiff's court appointed counsel withdrew from this case on July 7, 2022. ECFs 174, 220.

Despite Defendant's allegation Defendant never subpoenaed any documents from the insurance company, nor from the bank that issued the insurance refund check. Decl., Luo ¶14. Despite Defendant made all the direct contact with the insurance company Defendant never disclosed his communication with the insurance company. Decl., Luo ¶17.

In fact the insurance records show that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in September 2013; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; and that Defendant, not Plaintiff, received the check and pocketed the insurance refund in September 2013. Decl., Luo ¶6-15.

In September 2022 Plaintiff traveled over 2,000 miles from California and appeared for deposition in Denver at her own expenses and risk of health.[1] Despite Plaintiff's immigration matter, which occurred after 2013, has no bearing on either liability or damages, Defendant

---

[1] Plaintiff was diagnosed with Covid right after attending the status conference held on August 24, 2022 in Denver.

continued his devious tactic[2] and probed in her immigration matter during the deposition. ECF 220.

Despite a United States magistrate judge has no contempt power under 28 U.S.C. § 636 because Plaintiff DID NOT CONSENT to have a magistrate judge conduct all proceedings in this civil action, including trial, and to order the entry of a final judgment, ECF 1-5, the magistrate judge abused his authority and held Plaintiff in direct contempt due to her refusal to disclose her immigration matter during the deposition. Only four days after the deposition, based on no evidence or foundation the magistrate judge accused Plaintiff of violating a court order by not disclosing the name of the attorney who ghostwrote Plaintiff's court filings despite Plaintiff herself authored all her court filings. Plaintiff is not going to take that from anybody, including a magistrate judge or district judge. The magistrate judge recommended to terminate the case as a sanction against Plaintiff to which Plaintiff objected. ECFs 218, 220.

On October 19, 2022, the Court adopted the magistrate judge's recommendation and entered the final judgment after an Order terminating this action with prejudice as a sanction against Plaintiff. ECFs 222, 223. Defendant filed his first proposed Bill of Costs on November 2, 2022 in violation of local rules. ECF 228. Fifteen days later, on November 17, 2022, Defendant filed another proposed bill of costs requesting reimbursement of $4,400.78. ECF 235. Plaintiff filed her objections on November 25, 2022. ECF 243. A hearing on the proposed Bill of Costs was set before Edward Butler, the designated deputy clerk, for December 1, 2022, and the Clerk's Guide to Bills of Cost Hearings was filed on the docket for the parties' reference. ECF

---

[2] Had Defendant had any legitimate defense he would not have used immigration matter to harass Plaintiff.

236. One day before the hearing, on 11/30/2022 at 3:56 PM MST, Defendant filed his third version of proposed bill of costs, adding a breakdown of the costs paid to the reporter for the deposition. ECF 244, p. 6. After the hearing was held, costs were taxed by clerk in the amount of $3,392.61 against Plaintiff. ECF 247. This motion is timely filed under FRCP 54(d)(1).

## LEGAL STANDARDS

Allowable costs are delineated by 28 U.S.C. § 1920 which enumerates six categories of costs that may be taxed: (1) clerk and marshal fees, (2) fees for "printed or recorded transcripts necessarily obtained for use in the case," (3) expenses for printing and witnesses, (4) expenses for exemplification and necessary copies, (5) docket fees, and (6) compensation of interpreters and court-appointed experts.

If Rule 54(d) grants courts discretion to tax whatever costs may seem appropriate, then § 1920, which enumerates the costs that may be taxed, serves no role whatsoever. *Crawford Fitting Co. v. J. T. Gibbons, Inc*., 482 U.S. 437, 441 (1987).

The burden is on the prevailing parties to establish that the expenses they seek to have taxed as costs are authorized by section 1920. *English v. Colorado Department of Corrections*, 248 F.3d 1002, 1013 (10th Cir. 2001); *Griffith v. Mt. Carmel Medical Center*, 157 F.R.D. 499, 502 (D. Kan. 1994). Expenses not specifically authorized by statute are not recoverable as costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 441-42, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987); *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990).

The burden is on the party seeking costs to establish the amount of compensable costs and expenses to which it is entitled and assumes the risk of failing to meet that burden. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir. 1986).

"[I]tems proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian American Oil Co*., 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964). To be recoverable, a prevailing party's transcription and copy costs must be "reasonably necessary to the litigation of the case. *Mitchell v. City of Moore*, 218 F.3d 1190, 1204 (10th Cir.2000). Materials produced "solely for discovery" do not meet this threshold. *Furr v. AT & T Techs., Inc*., 824 F.2d 1537, 1550 (10th Cir. 1987).

"Necessarily obtained" does not mean that the materials and services obtained "added to the convenience of counsel . . . and perhaps . . . have made the task of the trial judges easier." *U.S. Industries, Inc. v. Touche Ross Co*., 854 F.2d 1223, 1245 (10th Cir. 1988) (quoting *Farmer*, 379 U.S. at 234, 85 S.Ct. at 415.

The most direct evidence of "necessity" is the actual use of materials obtained by counsel or by the court. E.g., *Mikel v. Kerr*, 499 F.2d 1178, 1182-83 (10th Cir. 1974); *A.B.C. Packard, Inc. v. General Motors Corporation*, 275 F.2d 63, 74-76 (9th Cir. 1960); *Marcoin, Inc. v. Edwin K. Williams Co., Inc*., 88 F.R.D. 588, 590 (E.D.Va. 1980); see generally Bartell, Taxation of Costs and Awards of Expenses in Federal Court, 101 F.R.D. 553, 567-75 (1984).

Even if the court finds the costs were for materials or services necessarily obtained, the amount of the award requested must be reasonable. *U.S. Industries, Inc. v. Touche Ross Co*., 854 F.2d 1223, 1245-46 (10th Cir. 1988). If costs are granted, any amount allowed must be reasonable. *Id.*

## ARGUMENT

## I.    DISCREPANCY IN DESCRIPTIONS

| Item # | Description of Requested Item | Description on Supporting Documentation | Description by the Clerk | Requested Amount | Awarded Amount |
|---|---|---|---|---|---|
| 1 | Transcript cost for the Deposition on 9-22-2022. Exhibit A-1 | Costs of expedited transcript which was produced within 14 days including numerous expenses not specifically authorized by statute. | Deposition on 9/22/22 of the plaintiff. The purpose was to seek information and evidence addressing the merits of the case. The deposition was to be used in a dispositive motion. It was reasonable and necessarily obtained for further use in the case. All costs of the deposition appear standard and necessary. | 2,657.05 | 2,657.05 |
| 3 | Cost associated with obtaining evidence for the Deposition on 9-22-2022. Exhibit A-3 | Expenses for running errands on 8/3/22 and 8/24/22, including tips, with no explanation about what evidence was obtained and how the evidence was used. | Investigative expenses incurred to obtain Plaintiff's criminal conviction records later used in motion briefing and which became part of the record. | 194.3 | 194.3 |
| 4 | Cost associated with obtaining evidence for the Deposition on 9-22-2022. Exhibit A-3 | Fees for remotely reviewing a defendant's motion to strike, motion to demurrer, and request for judicial notice filed in 2022 in an unrelated case in California, which has no bearing on the merit of this case. | Investigative expenses incurred to obtain Plaintiff's criminal conviction records later used in motion briefing and which became part of the record. | 65.81 | 65.81 |
| 5 | Transcript copy fee for the court date 8/24/2022. Exhibit A-5 | Expedited Transcript fee of status conference held on 8/24/22. | Transcript of 8/24/22 Status Conference. Plaintiff allegedly made critical admissions; the transcript was ordered | 334.65 | 251.85 |

| | | | and used in preparation for the 9/22/22 deposition. | | |
|---|---|---|---|---|---|
| 9 | Pacer Fee Usage From 10-1-2021 to 12-31-2021. Exhibit A-9 | Supporting documentation has no explanation what was downloaded and how they were used for deposition or dispositive motion exhibits. Using Pacer's figure of $0.1 per copy, this translates to 554 pages. This appears to be a grossly excessive number. There is no showing of the reasonableness of hundreds of copies. No copies were proven necessary to Defendant's cause. See *Case v. Unified School District No. 233*, 157 F.3d 1243, 1258-59 (10th Cir. 1998). | PACER charges treated as copying charges under 28 USC § 1920(2). While PACER charges are not normally awarded, the documents obtained through PACER were of records of proceedings in other federal cases involving Plaintiff, and those records were obtained and used as part of the discover process (Scheduling Order entered by the Court 12/1/21, so PACER charges for discovery awarded after that date). | 55.4 | 55.4 |
| 10 | Pacer Fee Usage From 1-1-2022 to 3-31-2022. Exhibit A-10 | Supporting documentation has no explanation what was downloaded and how they were used for deposition or dispositive motion exhibits. Using Pacer's figure of $0.1 per copy, this translates to 232 pages. This appears to be a grossly excessive number. There is no showing of the reasonableness of hundreds of copies. No copies were proven | PACER charges treated as copying charges under 28 USC § 1920(2). While PACER charges are not normally awarded, the documents obtained through PACER were of records of proceedings in other federal cases involving Plaintiff, and those records were obtained and used as part of the discover process | 23.2 | 23.2 |

| | | necessary to Defendant's cause. See *Case v. Unified School District No. 233*, 157 F.3d 1243, 1258-59 (10th Cir. 1998). | (Scheduling Order entered by the Court 12/1/21, so PACER charges for discovery awarded after that date). | | |
|---|---|---|---|---|---|
| 11 | Pacer Fee Usage from 4-1-2022 to 6-30-2022. Exhibit A-11 | Supporting documentation has no explanation what was downloaded and how they were used for deposition or dispositive motion exhibits. Using Pacer's figure of $0.1 per copy, this translates to 639 copies. This appears to be a grossly excessive number. There is no showing of the reasonableness of hundreds of copies. No copies were proven necessary to Defendant's cause. See *Case v. Unified School District No. 233*, 157 F.3d 1243, 1258-59 (10th Cir. 1998). | PACER charges treated as copying charges under 28 USC § 1920(2). While PACER charges are not normally awarded, the documents obtained through PACER were of records of proceedings in other federal cases involving Plaintiff, and those records were obtained and used as part of the discover process (Scheduling Order entered by the Court 12/1/21, so PACER charges for discovery awarded after that date). | 63.9 | 63.9 |
| 12 | Pacer Fee Usage from 7-1-2022 to 9-30-2022. Exhibit A-12 | Supporting documentation has no explanation what was downloaded and how they were used for deposition or dispositive motion exhibits. Using Pacer's figure of $0.1 per copy, this translates to 523 copies. This appears to be a grossly excessive number. | PACER charges treated as copying charges under 28 USC § 1920(2). While PACER charges are not normally awarded, the documents obtained through PACER were of records of proceedings in other federal cases involving | 52.3 | 52.3 |

| | | There is no showing of the reasonableness of hundreds of copies. No copies were proven necessary to Defendant's cause. See *Case v. Unified School District No. 233*, 157 F.3d 1243, 1258-59 (10th Cir. 1998). | Plaintiff, and those records were obtained and used as part of the discover process (Scheduling Order entered by the Court 12/1/21, so PACER charges for discovery awarded after that date). | | |
|---|---|---|---|---|---|
| 13 | Transcript copy fee for the court date 4/8/2021. Necessary to brief the issues. Exhibit A-13 | Expedited transcript for status conference on 4/8/2021. | The 4/8/21 Status Conference Transcript. Plaintiff's counsel, before withdrawal, cited extensively from that hearing in a response to a motion to dismiss. Defendant would logically need a copy for adequate preparation of a response. | 28.8 | 28.8 |
| | | | | Total | 3,392.61 |

## II.     EXPEDITED DEPOSITION TRANSCRIPT (ITEM 1)

Reasonableness must be based on the "particular facts and circumstances at the time the expense was incurred" and not with the "benefit of hindsight." *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009). When a deposition was reasonably necessary to the litigation, the resulting costs are generally allowable. *Ramos v. Lamm*, 713 F.2d 546, 560 (10th Cir. 1983). However, if the deposition was taken simply for discovery purposes, then costs are not recoverable. *Manildra Milling Corp. v. Ogilvie Mills, Inc*., 878 F. Supp. 1417, 1427 (D.Kan. 1995), aff'd, 76 F.3d 1178 (Fed. Cir. 1996). See also *Crandall v. City County of Denver,*

*Colo.*, 594 F. Supp. 2d 1245, 1248 (D. Colo. 2009) (stating that "because the transcripts duplicated information that was available elsewhere . . . the transcripts . . . were not 'necessarily obtained'").

Long before the deposition was taken, and even long before being sued, Defendant was well aware of the facts that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in September 2013; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, received the check and pocketed the insurance refund in September 2013; and that Defendant, after pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance refund to buy a ticket flying to California from Colorado while Plaintiff never flew to California from Colorado in 2013. Decl., Luo ¶6-15. By failing to demonstrate any of Plaintiff's testimony would change any of those facts Defendant failed to establish why the taking of seven-hour deposition would be reasonably necessary. Therefore, the purpose of the deposition was not to seek information and evidence addressing the merits of the case.

Just because a lawyer can deploy any number of tools on behalf of their client's case, it does not follow that all of those tools are necessary for the defense or prosecution and must be included in a cost award under 28 U.S.C.A § 1920(2). Lawyers need to have sense of proportion in terms of how they spend money in furtherance of a client's position. The court is charged with limiting the scope of discovery to what is "proportional to the needs of the case," considering, among other things, "the importance of the issues at stake in the action," and "the amount in controversy." *Kulasa v. Wyndham Vacation Rentals N. Am., LLC*, Civil Action No. 19-cv-00561-NRN, at *7 (D. Colo. Dec. 23, 2020). In this case, which was a relatively simple defamation case

11

brought by a pro se plaintiff, the insurance company's record was all that was necessary for the defense which renders the deposition of Plaintiff unnecessary. Even when a deposition was necessary Defendant still bears the burden to establish the necessity of the length of the deposition in a case of this magnitude. See *Allison v. Bank One-Denver*, 289 F.3d 1223, 1249 (10th Cir. 2002) (finding simply a list of deposition transcript charges for individuals identified by the parties as possible witnesses at trial inadequate to support the claim of reasonable necessity); *Baker v. Echostar Communications Corporation*, Civil Action No. 06-cv-01103-ZLW-BNB, at *4 (D. Colo. Dec. 11, 2008) (holding that deposition transcript costs are not automatically recoverable if the deponent appeared on the witness list when the depositions were not cited in Defendants' summary judgment motion, and were not used at trial.) The seven-hour deposition stretched between Plaintiff's education in English, employment, financial situation, litigation history (although available elsewhere), immigration, and relationships with wholly unrelated third parties, all of which had zero effect on any legitimate defense. See *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1550 (10th Cir. 1987) (holding that depositions taken solely for discovery are not taxable as costs); *Romero v. CSX Transportation, Inc.*, 270 F.R.D. 199, 202 (D.N.J. 2010) (holding that deposition transcripts merely for investigatory or discovery purposes, which merely provide useful background information but are not necessarily used for use in [sic] prosecution of a party's claims, are not taxable or recoverable.)

As such, Defendant's claim of deposition transcript cost should be denied because he provided nothing more than the identification of Plaintiff as a witness. See *Romero v. CSX Transp., Inc.*, 270 F.R.D. 199, 202 (D.N.J. 2010) (denying award of the entire amount of deposition transcripts costs due to failure to provide the Court with information upon which the

Court may differentiate between those depositions which were taken merely for investigatory purposes and those which appeared to be necessary for use in the case.)

Further, Defendant did not become a prevailing party because he prevailed on the merit of the case. See *Howell Petroleum Corp. v. Samson Res. Co*., 903 F.2d 778, 783 (10th Cir. 1990) (holding that the district court was within its discretion to refuse to award costs to a party which was only partially successful). While Plaintiff's refusal to disclose her immigration matter during deposition contributed to Defendant becoming the "prevailing party", it cannot be said that the entire seven-hour deposition has been necessary in light of what was at stake in this case. Had it gone to trial or had Defendant filed his motion for summary judgment, none of Plaintiff's testimony during deposition would change the facts that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in September 2013; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, received the check and pocketed the insurance refund in September 2013; and that Defendant, after pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance refund to buy a ticket flying to California from Colorado while Plaintiff never flew to California from Colorado in 2013. Therefore, the 9/22/22 deposition cannot be used in a dispositive motion or at trial. See *Baker v. Echostar Communications Corporation*, Civil Action No. 06-cv-01103-ZLW-BNB, at *4 (D. Colo. Dec. 11, 2008) (denying to award costs of depositions that were not cited in Defendants' summary judgment motion, and were not used at trial.)

Moreover, the total award of all deposition transcripts shall not include expedited, realtime, and rough draft charges, as such charges tend to be for counsel's convenience, unless

13

there is a demonstrated need. *Stender v. Archstone-Smith Operating Tr.*, No. 07-CV-2503-WJM-

MJW, 2018 WL 4635984, at *2 (D. Colo. Sept. 27, 2018).

The fact that the supporting documentation omits the word "expedited" does not change

the nature of the expedited service. ECF 244, p. 6. Defendant apparently used expedited service

because the transcript has approximately 250 pages which was produced within fourteen (14)

calendar days after the deposition while ordinary transcript service is to deliver transcript within

thirty (30) calendar days after a deposition. Decl., Luo ¶21. Defendant failed to demonstrate any

need for expedited deposition transcript. Therefore, expedited deposition transcript fee is neither

reasonable nor recoverable.

The breakdown of the deposition costs shows numerous expenses not specifically

authorized by statute, such as non-traditional hours, administration fee, reporter appearance [3],

shipping, waiting time, parking, rough draft, etc. ECF 244, p.6. Condensed transcript tends to be

for counsel's convenience instead of for necessary use in the case. Despite the transcript has only

250 pages the reporter charged 308 pages.

## III. ERRAND EXPENSES SUGARCOATED AS COST ASSOCIATED WITH OBTAINING EVIDENCE FOR THE DEPOSITION (ITEM 3)

Despite the clerk indicated that this item was investigative expenses incurred to obtain

Plaintiff's criminal conviction records later used in motion briefing, the supporting

documentation shows otherwise. ECF 235, p. 9. The supporting documentation, in fact, shows

expenses for running errands on 8/3/22 and 8/24/22, including tips, with no explanation about

---

[3] Despite the deposition lasted approximately 7 hours the reporter charged 8.5 hours. Combined with 0.5 hour waiting time, the reporter charged a total of 9 hours for a seven-hour deposition. Standard $3.65 per page charge already includes reporter appearance. ECF 247, p. 2. Any expenses exceeding the market rate are unreasonable.

what evidence was obtained, how the evidence was obtained, where the evidence was used for what purposes, why the errand expenses were necessarily incurred in this case, and HOW those costs contributed to Defendant becoming the prevailing party. See *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002) (the party seeking costs must provide "an adequate explanation for the necessity of the requested costs.") Plaintiff was convicted in July 2021 and Defendant has had Plaintiff's criminal conviction records since as early as July 2021. ECF 94. These errand expenses incurred on 8/3/22 and 8/24/22 (over one year after Plaintiff's criminal conviction) are obviously not associated with obtaining Plaintiff's criminal conviction records later used in motion briefing as the clerk stated.

The clerk's description is also contradicted to the description of the requested item (Cost associated with obtaining evidence for the Deposition on 9-22-2022). ECF 247 at 2.

Further, Plaintiff's criminal conviction records were never used by the Court in deciding any motions and Defendant failed to explain how Plaintiff's criminal conviction in 2021 would change the facts that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in September 2013; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, received the check and pocketed the insurance refund in September 2013; and that Defendant, after pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance refund to buy a ticket flying to California from Colorado while Plaintiff never flew to California from Colorado in 2013.

## IV. EXPENSES ON OBTAINING TWO MOTIONS FILED IN CALIFORNIA SUGARCOATED AS COST ASSOCIATED WITH OBTAINING EVIDENCE FOR THE DEPOSITION (ITEM 4)

Despite the clerk indicated that this item was investigative expenses incurred to obtain Plaintiff's criminal conviction records later used in motion briefing, the supporting documentation shows something else. ECF 235, p. 11. The supporting documentation, in fact, shows expenses [4] for obtaining a defendant's motion to strike, motion to demur, request for judicial notice filed in 2022 in an unrelated case in California, all of which were not included in any deposition exhibits or court filings. See *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002) (the party seeking costs must provide "an adequate explanation for the necessity of the requested costs.") The two motions and related documents Defendant reviewed from LA Court can never lead to any admissible evidence, nor can they even be introduced in support of any motions or at trial. Indeed, those documents were never admitted into evidence or necessarily attached to a document required to be filed and served in support of any motions in this case, neither were introduced at the request of the court.

The clerk's description is also contradicted to the description of the requested item (Cost associated with obtaining evidence for the Deposition on 9-22-2022). ECF 247 at 2.

First, Plaintiff's criminal conviction records were never used by the Court in deciding any motions. Secondly, Defendant failed to explain (1) how he used these two motions in an unrelated case for the Deposition on 9-22-2022 while none of the deposition exhibits include these two motions; and (2) how these 2022 motion filings in an unrelated case would change the facts that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in September 2013; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, received the check and pocketed the

---

[4] Similar to PACER charges.

insurance refund in September 2013; and that Defendant, after pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance refund to buy a ticket flying to California from Colorado while Plaintiff never flew to California from Colorado in 2013. Defendant failed to point to any existing record showing the actual use of the motion to strike, motion to demur, and request for judicial notice filed in California.

There is no authority for the recovery of costs related to the copying of "pleadings" and motions. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 484 (D. Colo. 1997). Any and all court documents are reviewable free of charge at the court house. Reviewing court documents remotely for a fee is merely for the convenience of counsel. Remotely reviewing court documents (two motions and related documents) filed in California is not recoverable merely for the convenience of counsel.

If Defendant simply wanted to read the court filings of any cases involving Plaintiff, he could have made a request for production of documents and Plaintiff could have produced those documents free of charge. Therefore, Defendant's expenses for reviewing two motions and related documents in an unrelated case in California were incurred as legal research rather than for use in the case. While there were a couple of options[5] to receive the copies free of charge, the reviewing costs were unreasonably incurred.

V.    **THE 8/24/22 STATUS CONFERENCE TRANSCRIPT (ITEM 5)**

In awarding the 8/24/22 Status Conference Transcript (Item 5), the clerk reasoned that Plaintiff allegedly made critical admissions; the transcript was ordered and used in preparation for the 9/22/22 deposition. Such reasoning is vague and lacks merit.

---

[5] Options include viewing the court filings at court public terminal and requesting from Plaintiff.

Fees for printed or electronically recorded transcripts necessarily obtained for use in the case may be taxed as costs. 28 USC § 1920(2). The phrase "for use in the case" refers to materials actually prepared for use in presenting evidence to the court. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 484 (D. Colo. 1997).

Defendant failed to establish what Plaintiff's critical admissions at the 8/24/22 conference contributed to Defendant becoming the prevailing party. Defendant made no effort to explain what Plaintiff's critical admissions at the 8/24/22 conference would change the facts that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in September 2013; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, received the check and pocketed the insurance refund in September 2013; and that Defendant, after pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance refund to buy a ticket flying to California from Colorado while Plaintiff never flew to California from Colorado in 2013.

Defendant failed to provide any information or evidence showing how the court hearing or conference transcripts were used in this case for a substantive purpose. None of the deposition exhibits include any court hearing or conference transcripts. Decl., Luo ¶20.

While none of the deposition exhibits have anything to do with the 8/24/22 conference, Defendant failed to demonstrate how the 8/24/22 Status Conference Transcript was used in preparation for the 9/22/22 deposition. Defendant failed to point to any existing record showing how the 8/24/22 Status Conference Transcript was actually prepared for use in presenting evidence to the court. See *Baker v. Echostar Communications Corporation*, Civil Action No. 06-cv-01103-ZLW-BNB, at *2 (D. Colo. Dec. 11, 2008) (holding that Defendants were not

prevented from obtaining the entire transcript, but they will be reimbursed only for the cost of those portions of the transcript that were actually used in support of their motion.)

Court hearing or conference transcripts are often taken to assist practitioners with keeping track of a myriad of court rulings on pending motions, discovery matters, trial practices, or jury instructions. If a transcript is ordered to assist counsel in understanding what the court has ordered, counsel can take notes themselves or assign staff to do so – but a printed court transcript is not "necessarily obtained" in the sense of § 1920. Use of a transcript for those purposes is a matter of "convenience of counsel." ECF 236, p. 26.

Transcript that is used as a means to summarize a court's rulings, that seems to duplicate information available elsewhere, or one not used by the court in reaching a decision have been grounds for a court's denial of costs for court transcripts. *Crandall v. City & Cty. of Denver, Colo.*, 594 F. Supp. 2d 1245, 1248 (D. Colo. 2009).

Therefore, the 8/24/22 Status Conference Transcript was used solely for the convenience of counsel which is not reasonably necessary to the case. A losing party should not pay for the laziness of oppsing counsel not wanting to take notes.

## VI.     PACER FEE IS NOT THE EQUIVALENT OF "COPYING" (ITEM 9 - 12)

Defendant claimed $194.8 in Pacer[6] charges incurred between 10-1-2021 and 9-30-2022 with no explanation of what specific federal cases involving Plaintiff caused the charges. The clerk treated these Pacer charges as copying charges under 28 USC § 1920(2). ECF 247, p. 2. The clerk is incorrect.

Electronic searches of previous filings or other cases – such searches are a form of

---

[6] Public Access to Court Electronic Records (Pacer) users are billed on a quarterly basis if they accrue more than $30 in the previous quarter.

Computer-Assisted Legal Research (CALR) not permissible under 28 U.S.C. § 1920. Computer-Assisted Legal Research (CALR) – fee-paid services through Westlaw, Lexis/Nexis, Bloomberg, Casemaker, Colorado Courts E-Filing (analogous to California Courts E-Filing), and PACER – are not awardable under 28 U.S.C. § 1920. *Sorbo v. U.P.S.*, 435 F.3d 1169, 1180 (10th Cir. 2005); *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995).

Electronic records and paper court records retained at the court can be viewed for free at the court public terminal. There is a fee of 10 cents per page to access a file through Pacer, with <u>a maximum charge of $3.00 per document</u>. Using Pacer's figure of $0.1 per copy, the claimed Pacer charges translate to more than 3,500 copies due to the maximum charge per document and $30 per quarter free service. [(55.4+23.2+63.9+52.3)/$0.1=1,948 copies; 30/$0.1*4 quarters=1200 copies; 1948+1200=3148 copies in total.]

If Defendant simply wanted to read the court filings of any federal cases involving Plaintiff, he could have made a request for production of documents and Plaintiff could have produced those documents free of charge. Therefore, Defendant's Pacer charges for over 3,500 pages of court filings were incurred as legal research rather than for use in the case. While there were a couple of options[7] to receive the copies free of charge, the "copying" costs were unreasonably incurred.

The clerk stated that while PACER charges were not normally awarded, the documents obtained through PACER were of records of proceedings in other federal cases involving Plaintiff, and those records were obtained and used as part of the discover process (Scheduling

---

[7] Options include viewing the court filings at court public terminal and requesting from Plaintiff.

Order entered by the Court 12/1/21, so PACER charges for discovery awarded after that date).
ECF 247, p. 2.

Fees for printed or electronically recorded transcripts necessarily obtained for use in the case may be taxed as costs. 28 USC § 1920(2). Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case may also be taxed as costs. 28 USC § 1920(4). The phrase "for use in the case" refers to materials actually prepared for use in presenting evidence to the court. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd*., 174 F.R.D. 479, 484 (D. Colo. 1997). Materials produced "solely for discovery" do not meet the threshold of "reasonably necessary to the litigation of the case." *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009). E-discovery is not authorized under 28 U.S.C. § 1920. *Rimini St., Inc. v. Oracle USA, Inc*., 139 S. Ct. 873, 878, 203 L. Ed. 2d 180 (2019).

Even when the Pacer charges can be arguably treated as copying costs, the burden is on the prevailing parties to establish the amount of compensable costs and expenses to which they are entitled. Prevailing parties necessarily assume the risks inherent in a failure to meet that burden. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir. 1986). There is no authority for the recovery of costs related to the copying of "pleadings" and motions. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 174 F.R.D. 479, 484 (D. Colo. 1997).

First, other federal cases involving Plaintiff between 10-1-2021 and 9-30-2022 have no bearing on the merit of this case. Defendant failed to establish the reasonableness by failing to demonstrate how other federal cases involving Plaintiff between 10-1-2021 and 9-30-2022 would change the facts that it was Defendant, not Plaintiff, signed the proof of claim as the

insurance claimant in September 2013; that all email correspondence made to the insurance

company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, received the check and

pocketed the insurance refund in September 2013; and that Defendant, after pocketing the

insurance refund, spread libel that Plaintiff defrauded the insurance and used the insurance

refund to buy a ticket flying to California from Colorado while Plaintiff never flew to California

from Colorado in 2013. Notably, other federal cases involving Plaintiff did not contribute to

Defendant becoming the prevailing party.

Second, over 3,500 copies is a grossly excessive number in a case of this magnitude.

Defendant provided no information or evidence showing what specific federal cases contributed

to these 3,500 copies. See *Allison v. Bank One-Denver*, 289 F.3d 1223, 1249 (10th Cir. 2002)

(Denying award of photocopying charges due to failure to establish through a voluminous

amount of supporting documentation or other itemization that the charges were reasonably

necessary for trial); *Karsian v. Inter-Regional Financial Group, Inc*., 13 F. Supp. 2d 1085, 1093

(D. Colo. 1998) (Denying copying costs where prevailing party did not "demonstrate[] with

sufficient specificity why these costs were necessarily obtained for use in this case"); *United Fire

Casualty Co. v. Boulder Plaza Residential*, Civil Action No. 06-cv-00037-PAB-CBS, at *5-6 (D.

Colo. Mar. 29, 2011) (denying copying costs for failure to "specify what these various copies

were, even in broad categories, ... provides no basis for the Court to find that these copies were

necessarily incurred in litigating this case" and failure to provide sufficient details as to the

nature of these documents to determine whether they were necessary for use in the case.)

Defendant made no attempt to justify the extraordinary number of copies his cost request

indicates, other than a vague assertion of being obtained and used as part of the discover process.

See *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995) (finding no abuse of discretion where district court "apparently" found certain photocopying charges were not reasonably necessary for trial).

Defendant has the burden to prove that the copies for which he sought reimbursement were necessarily obtained for use in this case by pointing to the existing record or supplementing it with additional proof, and the amount of his request must have been reasonable. See *U.S. Ind., Inc. v. Touche Ross Co*., 854 F.2d 1223, 1245 (10th Cir. 1988). Nothing provided by Defendant shows how over 3,500 copies were actually prepared for use in presenting evidence to the court or in support of any motions. Defendant made no effort on his part to prove either that the copies were necessarily obtained for use in the case or that the remarkable number of copies he generated was reasonable. Defendant failed to carry his burden of showing that any of his copying costs were reasonable or necessary to the case. No copies were proven necessary to Defendant's cause. Defendant did not meet his burden to support the substantial weight of 3,500 copies or any lesser amount. See *Case v. Unified School District No. 233*, 157 F.3d 1243, 1258- 59 (10th Cir. 1998). Notably, the over 3,500 copies were never used by the Court in deciding any motions. None of the 3,500 copies were admitted into evidence or necessarily attached to a document required to be filed and served in support of any motions, neither the copies were introduced at the request of the court.

Moreover, any and all court documents are reviewable free of charge at the court house. Remotely reviewing court documents for a fee is merely for the convenience of counsel. Pacer Fees for reviewing court documents remotely are not recoverable merely for the convenience of counsel.

## VII.   THE 4/8/21 STATUS CONFERENCE TRANSCRIPT (ITEM 13)

In awarding the 4/8/21 Status Conference Transcript, the clerk reasoned that Plaintiff's counsel, before withdrawal, cited extensively from that hearing in a response to a motion to dismiss (MTD). Defendant would logically need a copy for adequate preparation of a response. This reasoning is flawed.

First and foremost, Plaintiff's former counsel did not cite extensively from the 4/8/21 hearing in a response to a motion to dismiss and nowhere shows that the transcript was used by the court in reaching a decision. ECFs 079, 104, 165. Plaintiff's response to Defendant's MTD was filed respectively on July 20, 2021 (over three months after the 4/8/21 conference) and September 14, 2021 (five months after the 4/8/21 conference) but Defendant requested expedited transcript after the 4/8/21 conference, which indicates the transcript was not obtained to prepare Defendant's reply to Plaintiff's response to MTD.

Defendant did not address the 4/8/21 conference in his reply in support of (ISO) MTD. ECF 106. Nor did he address the 4/8/21 conference in his reply ISO his motion to reconsider the November 10, 2020 order. ECF 109. Secondly, Defendant was only partially successful in his motion to dismiss. Third, court hearing or conference transcripts are often taken to assist practitioners with keeping track of a myriad of court rulings on pending motions, discovery matters, trial practices, or jury instructions. If a transcript is ordered to assist counsel in understanding what the court has ordered, counsel can take notes themselves or assign staff to do so – but a printed court transcript is not "necessarily obtained" in the sense of § 1920. Use of a transcript for those purposes is a matter of "convenience of counsel." ECF 236, p. 26.

Transcript that is used as a means to summarize a court's rulings, that seems to duplicate

information available elsewhere, or one not used by the court in reaching a decision have been grounds for a court's denial of costs for court transcripts. *Crandall v. City & Cty. of Denver, Colo.*, 594 F. Supp. 2d 1245, 1248 (D. Colo. 2009).

The 4/8/21 Conference Transcript was used solely for the convenience of counsel which was not reasonably necessary to the case. A losing party should not pay for the laziness of oppsing counsel not wanting to take notes.

Further, charges for expedited transcripts are not recoverable. ECF 235, p. 30.

## VIII.   DEFENDANT CANNOT RECOVER THE SAME EXPENSE TWICE

Defendant is not entitled to recover the same expense twice, such as transcript cost for 9-22-2022 and transcript copy for 8/24/2022 conference that he has claimed pursuant to October 19, 2022 order. See ECF 227.

## IX.   AN AWARD OF COSTS TO AN INDIGENT PARTY SHOULD BE BARRED

"Circumstances in which a district court may properly deny costs to a prevailing party include when (1) the prevailing party is 'only partially successful,' (2) the prevailing party was 'obstructive and acted in bad faith during the course of the litigation,' (3) damages are 'only nominal,' (4) the nonprevailing party is indigent, (5) costs are 'unreasonably high or unnecessary,' or (6) the issues are 'close and difficult.'" *Debord v. Mercy Health System of Kansas, Inc*., 737 F.3d 642, 659–60 (10th Cir. 2013) (quoting *Cantrell v. Int'l Bhd. of Elec. Workers*, AFL-CIO, Local 2021, 69 F.3d 456, 458 (10th Cir. 1995)).

Plaintiff was granted Leave to Proceed In Forma Pauperis in this case and relevant proceedings. ECFs 2, 5, 225. Plaintiff being indigent and Defendant's unreasonably high or unnecessary costs should bar an award of costs against Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Defendant failed to meet his burden to provide adequate explanation, establish necessity and reasonableness of the amount spent, Plaintiff respectfully requests the Court order that no costs are awarded to Defendant or, in the alternative, issue an order limiting those costs of taking deposition for the perpetuation of Plaintiff's testimony refusing the disclosure of her immigration matter.

Dated: December 8, 2022                    Respectfully submitted,

                                                    _/s/ Xingfei Luo_
                                                    Plaintiff in Pro Se and sole author

## DECLARATION OF XINGFEI LUO

I, Xingfei Luo, declare and state:

1.    I am the plaintiff in this case. I have personal knowledge of the facts in this declaration. If called on to testify, I could and would competently do so under oath.

2.    Defendant Paul Wang came to the United States on a student visa in 1996. He completed undergraduate education in the State of Texas. He married an obese and six-year older woman for immigration benefit to stay in this country and later divorced her.

3.    In 2013 I never bought a ticket flying to California to Colorado. In 2013 I never flew to California to Colorado.

4.    In my entire life, I speak primarily a language other than the English language.

5.    I was granted Leave to Proceed In Forma Pauperis in this case and relevant proceedings. ECFs 2, 5, 225.

6.    On Sep 2, 2013 proof of claim was signed and submitted by Paul Wang as claimant. A true and correct copy of the signed proof of claim is attached hereto as Exhibit 1.

7.    On Sep 3, 2013 at 3:40 pm Claim was initiated by Paul Wang. Email was sent to student007@hotmail.com, the exact same email address he provided to this court. See Dkt. 28. A true and correct copy of the correspondence is attached hereto as Exhibit 2.

8.    On Sep 4, 2013 Paul at 4:25 pm Wang emailed Travelex to claim trip interruption with attachment of police report. On Sep 5, 2013 Paul Wang emailed Travelex the cancellation of reservation.  A true and correct copy of the email correspondence is attached hereto as Exhibit 3.

9.    September 5, 2013 was a Thursday which means it was Paul Wang's work day. On September 5, 2013 at 5:24 pm Defendant sent email, using stealthzeus@gmail.com, to the insurance company TravelexClaims before he left work. He used his cell phone Samsung Galaxy Note II to email Travelex. I never used Samsung Galaxy Note II in my entire life. I never used stealthzeus@gmail.com in my entire life. On September 6, 2013 Travelex acknowledged the receipt of Paul Wang's email and stated "email from insured." A true and correct copy of the correspondence is attached hereto as Exhibit 4.

10.   The email address stealthzeus@gmail.com is Paul Wang's personal email address. A true and correct copy of Paul Wang's text message telling WEAMER stealthzeus@gmail.com was his email address is attached hereto as Exhibit 5.

11.   On Sep 11, 2013 at 2:34pm Paul called to check status. Email was sent to student007@hotmail.com, the exact same email address he provided to this court. See Dkt. 28. A true and correct copy of the call log is attached hereto as Exhibit 2.

12.   On Sep 11, 2013 at 2:59 pm Paul Wang emailed his credit card statement to Travelex, indicating that he paid $1337 for the air tickets and $62 for the insurance. A true and correct copy of the email correspondence is attached hereto as Exhibit 6.

13.   On Sep 18, 2013 at 6:02 pm Paul called for status and insisted on the inquiry of the claim amount. A true and correct copy of the call log is attached hereto as Exhibit 2.

14.   Defendant never subpoenaed any documents from the insurance company, nor from the bank that issued the insurance refund check. All of the above insurance related documents were disclosed to Defendant and his counsel on July 7, 2022.

15.   A true and correct copy of defendant's online statement is attached hereto as Exhibit 7.

16.   In 2013 I was a foreign visitor in the U.S. which was well aware by defendant Paul Wang. I did not have a social security number in 2013. I did not have a bank account in 2013 in the U.S. I did not receive any check from the insurance company. The mailing address on the check was Paul Wang's residence, not mind. I did not have access to Paul Wang's mail box.  The person who received the insurance refund check was Paul Wang. I did not cash the check issued by the insurance company. In fact, Paul Wang cashed the check and took the money. I received not a single dime from the insurance company. I never made any contact with the insurance company for any claim. Everything was done and controlled by Paul Wang. Had I called or contacted the insurance company in any manner I would have left my personal email address to follow up the claim. All email addresses on the insurance company's record are Paul Wang's email addresses. Had I called or contacted the insurance company in any manner I would have signed and submitted the proof of claim by myself. My name appears on the record simply because I

was the traveller on the ticket. The actual insured was Paul Wang.

17.   Despite Defendant made all the direct contact with the insurance company Defendant never disclosed his communication with the insurance company. A true and correct copy of his initial disclosure is attached hereto as Exhibit 8.

18.   I do not possess any letters to or from Morgann Parakevas.

19.   My interrogatory number 11 requires Defendant to (a) state each and every fact, premise, or conclusion upon which he bases his failure to unqualifiedly admit the RFA; (b) identify each and every document and/or piece of evidence that supports his denial or failure to unqualifiedly admit the RFA, in addition to any document and/or piece of evidence that supports and/or contradicts your answers provided in response to this interrogatory; (c) identify each and every person who has knowledge of or information regarding the facts and/or documents identified in subparts (a) and (b) above, indicating which person has knowledge or information concerning each fact and/or document. Despite after lengthy meet and confer and two status conferences in May and August Defendant never provided any meaningful response to my interrogatory number 11. A true and correct copy of Defendant's discovery response is attached hereto as Exhibit 9.

20.   During the deposition on September 22, 2022, Defendant used eleven exhibits, a total of 28 pages. ECF 244, p. 6. A true and correct copy of the exhibit list is attached hereto as Exhibit 10.

21.   The transcript of the deposition on September 22, 2022 was produced on October 5, 2022. I have reviewed the transcript of the deposition. There are about 250 pages of deposition transcript and there are only approximately 20 pages related to the questioning of my immigration matter. A true and correct copy of the transcript production notification is attached hereto as Exhibit 11.

22.   A true and correct copy of the parties' conferral is attached hereto as Exhibit 12.

I declare under penalty of perjury, that the foregoing is true and correct.

DATED: December 8, 2022                          */s/ Xingfei Luo*

## **CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that I filed the foregoing with the Clerk of Court. The CM/ECF system will send notification of such filing to all ECF registered users.


DATED: December 8, 2022

*/s/ Xingfei Luo*