IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

      Plaintiff,

v.

PAUL WANG,

      Defendant.

---

## WHEELER TRIGG O'DONNELL'S RESPONSE TO DEFENDANT'S MOTION FOR IMPOSITION OF SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AGAINST PLAINTIFF AND HER COUNSEL (ECF 226)

---

Plaintiff's former counsel, Clarissa M. Collier and David J. Schaller of Wheeler Trigg O'Donnell (collectively, "WTO"), through their counsel Holland & Hart LLP, submit their response in opposition to Defendant's Motion for Imposition of Sanctions, Pursuant to Rule 11 of the Federal Rules of Civil Procedure, Against Plaintiff and Her Counsel. ECF 226 ("Second Motion").

## <u>INTRODUCTION</u>

The axiom "no good deed goes unpunished" applies here. WTO accepted representation of Plaintiff through the Faculty of Federal Advocates Pro Bono Program. WTO represented Plaintiff vigorously, competently, and ethically for approximately 16 months before withdrawing from the case. During that time, WTO was the subject of Defendant's first motion for sanctions, which the Court denied, ECF 165, and now, months after WTO withdrew and Plaintiff's case was dismissed for reasons entirely unrelated to WTO's representation, Defendant baselessly moves yet again for sanctions against the firm and its attorneys.

Defendant's Second Motion repackages the same sanctions arguments raised and denied before, which arguments themselves were nearly identical to those made in Defendant's three motions to dismiss. ECF 69, 78, 92. Defendant's repackaged arguments are a transparent attempt to recoup the cost of his defense, which is not a proper use of Rule 11. They are also legally and factually unsupported, and they do not justify the imposition of sanctions against WTO, which complied consistently with its obligations under Rule 11 and the Rules of Professional Conduct. The Court should deny Defendant's motion.

## LEGAL STANDARD

"A Rule 11 violation occurs where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands." *Greeley Publ'g. Co. v. Hergert*, 233 F.R.D. 607, 610–11 (D. Colo. 2006); *see also Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) ("[C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment."). "The standard is one of reasonableness under the circumstances." *Anesthesia Advantage, Inc. v. Metz Grp.*, 708 F. Supp. 1180, 1182 (D. Colo. 1989), *abrogated on different grounds by Advantage, Inc. v. Metz Grp.*, 912 F.2d 397 (10th Cir. 1990). "While Rule 11 sets a threshold for the factual and legal assertions of a complaint, it is not a broad mechanism for testing the sufficiency of a plaintiff's claims." *Ross v. Mukasey*, No. 08-cv-00643-PAB-MJW, 2009 U.S. Dist. LEXIS 130020, at *3 (D. Colo. Nov. 24, 2009) (denying motion for sanctions). Motions for sanctions are inappropriate where they ask the Court, "for the first time in the case, to make factual and legal findings based on the pleadings and the conflicting evidentiary assertions of the parties." *Id.* at *5.

Further, Rule 11 is limited in time to the act of signing a filing: "By its terms, Rule 11 only authorizes sanctions for the signing of a document in violation of the Rule." *Griffen v. City of Okla. City*, 3 F.3d 336, 339 (10th Cir. 1993) (collecting numerous cases). "Rule 11's emphasis on the need for the signer to perform a reasonable inquiry before signing suggests that the Rule authorizes sanctions only for unreasonable filings, not failure to amend or withdraw a previously filed document." *Id.* "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. Therefore, "signers have no obligation under Rule 11 to make continuous updates to previously filed pleadings." *Griffen*, 3 F.3d at 340.

"Rule 11 is not designed to scare parties or attorneys away from pursuing their lawsuits or articulating creative theories of recovery." *Domenico v. Haschak*, No. 09-307 MV/CEG, 2011 U.S. Dist. LEXIS 164119, at *6 (D.N.M. Sep. 30, 2011). It "neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *FDIC v. Refco Grp.*, 989 F. Supp. 1052, 1090 (D. Colo. 1997) (quoting *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993)). "It is the obligation of counsel opposing the value of evidence, not the proponent, to expose weakness in evidence upon which an attorney relies for the filing of pleadings, motions and other papers." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104–05 (10th Cir. 1993) (reversing award of sanctions).

"The aim of Rule 11 is to deter sanctionable conduct rather than compensate the opposing party, and thus an appropriate sanction under Rule 11 must be tailored to this purpose . . . ." *Grays v. Auto Mart USA, LLC*, No. 18-cv-01761-MSK-NYW, 2019 U.S. Dist. LEXIS 187377, at *7 (D. Colo. Sep. 25, 2019) (recommending denial of motion for sanctions), *report and*

*recommendation adopted*, 2019 U.S. Dist. LEXIS 186184 (D. Colo. Oct. 28, 2019); *Liberty Savs. Bank, FSB v. Webb Crane Serv.*, No. 03-cv-02218-REB-CBS, 2006 U.S. Dist. LEXIS 67902, at *6 (D. Colo. Sept. 21, 2006) (denying motion for sanctions) ("Rule 11 is . . . [intended] to vindicate the court's interest in deterring future abuses of the Rule."). Put differently, "Rule 11 is not designed . . . to compensate the opposing party." *Stuber v. Luckys Auto Credit, LLC*, No. 2:20-cv-00007-HCN-JCB, 2021 U.S. Dist. LEXIS 8506, at *3 (D. Utah Jan. 14, 2021) (denying motion for attorney's fees under Rule 11); *Tidik v. Ritsema*, 938 F. Supp. 416, 426 (E.D. Mich. 1996) ("The case law interpreting and the amendments to Rule 11 make clear that the primary purpose of the Rule is to deter baseless filings and curb abuses of the judicial system, not to reward parties who are victimized by litigation.").

As such, a delay in filing a Rule 11 motion until after proceedings are resolved weighs heavily against an award of sanctions:

> If defendant's counsel truly believed that plaintiff's conduct was so abusive and vexatious as to warrant service of the Rule 11 motion . . . , then defendant's counsel should have pursued that motion by filing it with the court shortly after the expiration of the 21-day safe harbor period. Instead, defendant's counsel elected to wait six months, all the while spending additional time and money in the discovery process and the summary judgment process. . . . Suffice it to say that defendant and its counsel would be better served by reexamining their own litigation tactics rather than condemning plaintiff's counsel for her litigation tactics.

*Thompson v. United Transp. Union*, 167 F. Supp. 2d 1254, 1259–60 (D. Kan. 2001). Seeking sanctions so late in the case does more than violate the purpose behind Rule 11, it contradicts Rule 11's safe harbor provision. *Hutchinson v. Pfeil*, 208 F.3d 1180, 1183–84 (10th Cir. 2000) (reversing award of sanctions) ("Further, as the motion was filed subsequent to summary judgment, long after disposition of the interlocutory disputes cited as sanctionable conduct, reliance on Rule 11 would have been untimely and in violation of the rule's twenty-one day 'safe harbor' provision . . . .'" (citation omitted)); *Waldrop v. Discover Bank*, No. 15-14689-JDL,

2017 Bankr. LEXIS 3720, at *16–17 (Bankr. W.D. Okla. Oct. 25, 2017) (quoting *In re*

*Quinones*, 543 B.R. 638, 648 (Bankr. N.D. Cal. 2015)).

## BACKGROUND

Clarissa M. Collier and David J. Schaller of WTO accepted this case through the Faculty

of Federal Advocates Pro Bono Program and entered their appearances in March 2021. ECF 51,

52, 53. While counsel worked with Plaintiff to file the Second Amended Complaint, ECF 65,

and, later, the Third Amended Complaint, ECF 85 ("TAC"), Defendant's counsel refused to

meaningfully confer on the purported concerns with the complaints. *See* ECF 137, at 3–6.

Plaintiff's claims, as alleged in the TAC, were based on Plaintiff's allegation that

Defendant disclosed false, defamatory, and extremely personal information about her to Mr.

Weamer (a defendant in an unrelated case, the "Weamer Litigation"), and/or his attorney Ms.

Dawn Ceizler and another adverse attorney Ms. Amanda Papac. TAC ¶¶ 49–50, 86, 103. In

2020, and during discovery in the Weamer Litigation, Mr. Weamer produced a written statement

from Defendant, in which Defendant stated that Plaintiff "filed a false police report claiming her

passport got stolen, and was issued a refund from the travel insurance company for half the ticket

price." *Id.* ¶ 52. In addition, Mr. Weamer propounded discovery requesting that Plaintiff:

(a) "Identify the individual in China whom YOU alleged raped you in 2012" and (b) "Identify all

allegations [she had] made against Chen GuoChang RELATED TO alleged sexual assault." *Id.*

¶ 58. Ms. Ceizler argued in connection with a motion to compel that certain discovery requests

"relate[d] to a former classmate of Plaintiff who she falsely accused of raping her." *Id.* ¶ 60.

Based on Mr. Weamer and Ms. Ceizler's possession of this extremely detailed information,

Plaintiff alleged on information and belief that they obtained this information from Defendant

because he was the only person (other than local law enforcement and Plaintiff's own mother

and attorney) who knew about Plaintiff's allegations against her assailant—Chen GuoChang. *Id.* ¶ 61. Plaintiff also alleged on information and belief that Defendant had posted the statement online based on a blog post that Plaintiff received through discovery in which an anonymous author stated that Plaintiff made false allegations of rape and filed a frivolous police report. *Id.* ¶ 62.

Defendant moved to dismiss the TAC, arguing that Plaintiff's claim related to the blog posts was time-barred and Defendant's statements in connection with the Weamer Litigation were protected by the absolute litigation privilege. ECF 92, at 4–10, 11–14. WTO, on Plaintiff's behalf, argued that the claim was not time-barred because Plaintiff discovered the statements in 2020 and the TAC did not include the dates of publication. ECF 104, at 6. Therefore, WTO/Plaintiff argued that the Court should disregard Defendant's speculation as to the dates of publication and apply the discovery rule. *Id.*

WTO further argued that the litigation privilege did not bar Plaintiff's claims for Defendant's statements in connection with the Weamer Litigation, which were indisputably not time-barred, because (1) the issue was not well-suited for resolution on a motion to dismiss, (2) the statements had been posted online **before** the Weamer Litigation even began, and (3) Defendant was not "'involved in and closely connected' with the Weamer Litigation as required to invoke the absolute litigation privilege under Colorado law." *Id.* at 7–8 (quoting *Club Valencia Homeowners Ass'n, Inc. v. Valencia Assocs.*, 712 P.2d 1024, 1027 (Colo. App. 1985)).

One and a half weeks after moving to dismiss the TAC, Defendant served his first motion for sanctions ("First Motion"). ECF 132. The First Motion was substantially duplicative of the motion to dismiss, with Defendant arguing that because of legal deficiencies with Plaintiff's claims, both Plaintiff and her counsel should be required to pay Defendant's fees as a sanction.

*Id.* at 8–10. Defendant argued that "[i]n light of Plaintiff's assertions of being indigent (such that the Court has appointed *pro bono* counsel to represent her), Mr. Wang has no choice but to request that the Court hold Plaintiff's counsel accountable for their failure to comply with their Rule 11 obligations." *Id.* at 9.

On June 13, 2022, the Court granted in part Defendant's Motion to Dismiss. ECF 165, at 2. The Court reasoned that "statements made in connection with the Weamer Litigation are protected by the absolute litigation privilege." *Id.* at 13. However, the Court concluded that Plaintiff's TAC withstood dismissal with respect to the two alleged statements published in blog posts. *Id.* at 10. The Court advised that protracted discovery should not be necessary to resolve the question of the date of the posts' publication. *Id.* at 10 & n.3.

In the same Order, the Court denied Defendant's First Motion for Sanctions. *Id.* at 14–15. In doing so, the Court noted that Defendant's First Motion was based largely on the same grounds as the Motion to Dismiss. *Id.* at 14. The Court concluded that it was "not inclined to impose sanctions, particularly not against counsel who appear as appointed pro bono counsel." *Id.* at 15.

Less than one month after dismissal of the claims based on statements made in connection with the Weamer Litigation, on July 7, 2022, WTO moved to withdraw as counsel. ECF 174, at 2. The next day, Defendant objected to the motion, arguing that WTO should not be permitted to withdraw without taking "remedial action to correct the material inaccurate representations made in this case" and threatening WTO with another sanctions motion. ECF 177, at 1. The same day, and over Defendant's objection, Magistrate Judge Hegarty granted the motion to withdraw without WTO having to file a reply. ECF 178, at 1. On July 12, 2022, Defendant served a copy of his Second Motion on WTO. *See* Second Motion, at 1 n.1. Since

WTO's withdrawal, Defendant has continued to litigate this case while Plaintiff has appeared pro se and also received limited pro bono representation from separate counsel in connection with her deposition. *See* ECF 197, at 1–2 (notice of pro bono appointment); 218, at 6 (recommending dismissal with prejudice).

After over two years of litigation, three motions to dismiss and one sanctions motion, Defendant took Plaintiff's deposition. The deposition took place on September 22, 2022 in Judge Hegarty's courtroom. ECF 218 at 1, 3–4. According to Judge Hegarty's recommendation, at the deposition, Plaintiff refused to answer a relevant question, following an order from Judge Hegarty to do so and advisement that refusal to answer could be construed as contempt of court and result in dismissal of her case. *Id.* at 4. Judge Hegarty explained in the recommendation that Plaintiff continued to refuse to answer on grounds of "relevance." *Id.* Judge Hegarty concluded that Plaintiff "intentionally and knowingly" violated the Court's order, and he recommended dismissal with prejudice as a discovery sanction under Fed. R. Civ. P. 37. *Id.* at 4–5. Judge Hegarty further recommended that Defendant be awarded his fees and expenses for the deposition. *Id.* at 5–6. Judge Hegarty reasoned that Plaintiff had engaged in a variety of "contumacious" litigation conduct, including failing to provide contact information to the Court, filing documents drafted by an unidentified third party in violation of the Court's order, and attempting to avoid her deposition. *Id.* at 1–3. He further stated that Plaintiff was "knowingly, personally, and solely responsible for her actions" and that "her culpability is without question." *Id.* at 5. Judge Rodriguez adopted the recommendation and dismissed the action with prejudice. ECF 222, at 14.

Only after the Court dismissed Plaintiff's action with prejudice, based on Judge Hegarty's ruling that Plaintiff violated a Court order, did Defendant file the present Motion. He

once again seeks monetary sanctions against Plaintiff and WTO. *See generally* Second Motion. Plaintiff has since filed her own motion for sanctions against Defendant and his counsel for violating Rule 11 by filing the Second Motion, arguing that it is largely duplicative of the First Motion that this Court already denied. *See generally* ECF 241.

## ARGUMENT

WTO has complied with its obligations under Rule 11 at every stage of this case. In fact, discovery largely bore out the allegations in the TAC. Now, Defendant attempts to twist factual disputes into a basis for sanctions in support of his latest attempt to have his fees covered by WTO. He also tries to impose on WTO an obligation to continually update Plaintiff's pleadings, which Rule 11 does not require. *Griffen*, 3 F.3d at 340. As described below, Defendant's factual disputes and the law do not support his argument that WTO violated Rule 11 or the Rules of Professional Conduct. *See Cook v. Rockwell Int'l Corp.*, 147 F.R.D. 237, 248 (D. Colo. 1993) ("Defendants' disputes with Plaintiffs' factual contentions . . . are not [a] proper basis for a dismissal under Rule 11"). As such, the Second Motion should be denied.

### I.      WTO HAS COMPLIED WITH RULE 11.

#### A.      The TAC Did Not Violate Rule 11.

At its core, Defendant's Second Motion argues that Plaintiff and WTO should have withdrawn Plaintiff's remaining claims because the two web postings were filed outside the statute of limitations. Second Motion, at 4. After the Court rejected Plaintiff's argument that the litigation privilege did not apply, ECF 165, at 13–14, and that the statute of limitations began running when Plaintiff discovered the statements rather than when they were published, *id.* at 10–11, Plaintiff's only remaining claims related to two internet posts for which the date of publication was not listed in the TAC. *Id.* at 10. Defendant argues that Plaintiff's claims in the TAC are premised on "two web postings published outside the statute of limitations," and that

any defamation claim based on those posts is "unquestionably time-barred." Second Motion, at 4–5, 7.

However, in filing the TAC, Plaintiff reasonably relied on the "discovery rule" of tort law to argue that the statute of limitations began to run when Plaintiff knew or should have known of the wrongful act. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 923 (Colo. 1993). Further, the statements made in connection with the Weamer Litigation unquestionably fell within the statute of limitations, and Plaintiff and WTO had a reasonable argument that these statements were not protected by the litigation privilege. *See* ECF 104, at 6–7. As such, Plaintiff and WTO had a reasonable basis for bringing the claims despite the fact that some of the statements may have occurred in 2013. "In other words, defendant's argument was certainly not a 'slam dunk' and plaintiff," and her counsel "acted competently and reasonably in pursuing her claims against defendant." *See Thompson*, 167 F. Supp. 2d at 1260–61.

Further, Defendant cannot rely on the legal landscape that existed after the Court's order granting in part the motion to dismiss, ECF 165, in pursuing sanctions against WTO. Rule 11 does not impose an obligation on WTO "to make continuous updates to previously filed pleadings." *Griffen*, 3 F.3d at 340. Defendant asks the Court to apply hindsight following his cherry-picked characterizations of how discovery unfolded, but in applying Rule 11 "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.

Moreover, by the time Defendant served his Second Motion, WTO had already withdrawn from the case. *Compare* Second Motion, at 1 n.1 & Ex. A, *with* ECF 178. While withdrawal does not shield an attorney who violated Rule 11 in filing a complaint, the filing of

the TAC did not violate Rule 11. *See supra* Argument, Section I(A). And because WTO had

withdrawn when the Second Motion was served, WTO could not have withdrawn the claims, and

pursuing sanctions now is "untimely and in violation of the rule's twenty-one day 'safe harbor'

provision, . . . which is intended 'to give the parties at whom the motion is directed an

opportunity to withdraw or correct the offending contention.'" *Hutchinson*, 208 F.3d at 1184

(reversing award of sanctions) (citation omitted). In short, by the time Defendant served WTO

with the Second Motion, the claims were not WTO's to withdraw.

For all of these reasons, Defendant's core complaint animating the Second Motion cannot

support his request for sanctions.

### B.    WTO's Investigation was Reasonable.

Defendant also faults WTO's investigation prior to filing the TAC. However, Rule 11

"requires inquiry, not proof," and the inquiry need not be "such a thorough investigation that

discovery will be unnecessary." *See US Sprint Commc'ns Co. v. Kaczmarek*, 121 F.R.D. 414,

416 (D. Kan. 1988). The "factual allegations do not need to be perfect." *Id.* Further, Rule 11

"does not abrogate a signer's ability to plead on the basis of information and belief, which is

generally permitted" under the Rules. *Id*. In fact:

> Pleading on information and belief is a desirable and necessary expedient when
> matters that are necessary to complete the statement of a claim are not within the
> knowledge of the plaintiff but [she] has sufficient data to justify interposing an
> allegation on the subject . . . . The same is true whenever the pleader must rely on
> information furnished [her] by others.

*Id*. Defendant identifies two investigative steps he believes WTO should have taken prior to

filing the TAC. These additional steps were unnecessary and would not have revealed new or

different information.

First, Defendant takes issue with the TAC's allegation that Mr. Wang's statements "are

also publicly accessible online." Second Motion, at 6, 10. In essence, Defendant faults WTO for

failing to publicly search for information it already possessed and had already turned over to Defendant's counsel. In connection with threatening the First Motion for Sanctions, Defendant's counsel emailed WTO to request that, as part of its initial disclosures, WTO provide a link to the web posts at issue. ECF 132-1, at 1–2. WTO responded that it had produced all documents in its possession, custody or control which Plaintiff may use to support her claims. *Id.* WTO further responded "My office produced the document you are referencing in the same form that it was provided to us and I did not retrieve the document from the internet. So your request for a 'link' is puzzling, especially in light of your knowledge of the bases for my client's claim." *Id.* In fact, as Defendant admits, the statements *were* publicly accessible online. Second Motion, at 6–7 (indicating Defendant's counsel located the documents by a simple Google search). This representation was not false, and WTO was not obligated to seek out documents it already had in its possession to satisfy its Rule 11 obligations. WTO also had no obligation to produce the blog posts in numerous different formats. *See* Fed. R. Civ. P. 34(b)(2)(E)(iii) ("A party need not produce the same electronically stored information in more than one form.").

Second, Defendant makes a strained argument that WTO should have contacted Ms. Ceizler and Ms. Papac—who were adverse to its client in other contentious lawsuits—to inquire about their source for the information they used against Plaintiff. Second Motion, at 6–7 (citing Ms. Ceizler and Ms. Papac's declarations at ECF 144-4 & 144-5). It is unreasonable to expect WTO to contact counsel adverse to its own client under such circumstances. Further, discovery fully bore out Plaintiff's allegations that Defendant was the source for the information used against her in the Weamer and El Monte Litigations. *See infra* Section I(C)(2). Despite Defendant's groundless attempts to muddy the waters, WTO conducted a reasonable investigation into Plaintiff's claims prior to filing the TAC.

C.      **The Representations Were Not False.**

Defendant alleges that various statements made by Plaintiff and/or her counsel were false. The allegedly false statements principally stem from two court filings: the TAC, ECF 85, and Plaintiff's Motion to Strike Defendant's Supplement to Reply in Support of Defendant's [First] Motion of Sanctions, ECF 161 (denied as moot, *see* ECF 165, at 15). These statements center around three central themes:

1.      **That Plaintiff believed Defendant authored the 2013 blog posts.**

The TAC alleged, on information and belief, that Defendant authored the blog posts defaming Plaintiff.[1] This allegation was based on two sets of facts: that Defendant was the only person in the United States who knew about Plaintiff's rape, her lost passport and associated police report, and details related to those two issues;[2] and that Plaintiff only discovered Defendant's statements in 2020 and 2021.[3]

In a difficult-to-decipher series of URLs and screenshots, Defendant alleges that Mr. Paraskevas was the person responsible for the blog post that Plaintiff alleged, upon information

---

[1]      TAC ¶ 51 ("On information and belief, Defendant posted this written statement online before Plaintiff filed the Weamer Litigation."); ¶ 62 ("On information and belief, Defendant also posted this same statement online. Specifically, on January 4, 2021, Plaintiff received a blog post through the course of litigation wherein the author states that Plaintiff "has [] made false allegation[s] of rape, . . . and filed a frivolous police report in Colorado about losing her passport."); ¶ 63 ("On information and belief, Defendant authored this blog post because, again (other than local law enforcement, Plaintiff's own mother and attorney), he was the only person who knew about Plaintiff's rape allegations against Mr. Chen. Further, he is the only person who knew that Plaintiff filed a police report regarding her passport and would know the specific dates of her travel since he purchased her original airline ticket."); ¶ 103 ("His statements are also publicly accessible online").

[2]      TAC ¶ 55 ("Before Defendant posted this statement online, he was the only person who knew that Plaintiff reported her passport lost/stolen with the Aurora Police Department."); ¶ 64 ("On information and belief, prior to Defendant revealing this information, no one in the United States knew of Mr. Chen's sexual assault of Plaintiff."); *see also* ¶ 63.

[3]      ECF 137, at 10 (Plaintiff allegedly discovered Mr. Wang's statements in 2020 & 2021).

and belief, was written by Defendant. Second Motion, at 14–17. This connection appears to be based on the fact that a username that appeared in Plaintiff's blog in 2013 (in which she posted and discussed a letter from Mr. Paraskevas), also *commented* on the blog post that Plaintiff believed was written by Defendant. *See id.* This is not the smoking gun that Defendant claims. Neither party deposed Mr. Paraskevas during the litigation. Further, Defendant did not submit an affidavit from Mr. Paraskevas in support of this allegation. Based on self-serving inference, Defendant argues that both Plaintiff and her counsel falsely represented that Plaintiff believed Defendant to be the author. This is, at best, the kind of circumstance that merits explanation through a fulsome discovery process that Defendant chose not to pursue. Indeed, to award sanctions, the Court would need to make a factual finding that Defendant was not the anonymous author of the 2013 blog post. The Court should not resolve such factual issues through a sanctions motion. *Ross*, 2009 U.S. Dist. LEXIS 130020, at *5 ("Rule 11 lacks a framework under which factual issues may be settled").

Defendant also claims that because Plaintiff posted on a blog in 2013 that she "kn[e]w where [Mr. Morgann Paraskevas] got [my private information] from," her statements that she learned that Mr. Wang shared the information in 2020 and 2021 were false. Second Motion, at 8–10. Defendant did not address this perceived inconsistency through discovery by deposing Plaintiff and asking her what she meant in the 2013 post. In fact, Defendant did not even seek to depose Plaintiff until over two years after the litigation began. Instead, Defendant chose questionable litigation tactics while relying on the 2013 blog post not specifying who Plaintiff believed was the source of the information in 2013, as some kind of proof-positive that Plaintiff's allegations in the TAC were false. It is not. Instead, it is an ambiguous statement from nearly a decade ago that Defendant failed to explore in discovery prior to serving the Second

Motion. This is not sufficient to support a claim for sanctions against WTO. *See Grays*, 2019 U.S. Dist. LEXIS 187377, at *16 (denying sanctions and reasoning that "even though some documents appear to contradict Defendants' position in this matter, nothing suggests sanctions are warranted").

Defendant argues, essentially, that WTO should have agreed with his characterization of ambiguous evidence to the degree that it should have viewed the allegations in the TAC as falsehoods. But "[i]t is the obligation of counsel opposing the value of evidence, not the proponent, to expose weakness in evidence upon which an attorney relies for the filing of pleadings, motions and other papers." *Coffey*, 1 F.3d at 1104–05. Defendant cannot, through multiple sanctions motions, shift that obligation to WTO. Instead, these issues could have been resolved through discovery, and to the extent Plaintiff did not cooperate in discovery, Rule 37 sanctions were an available remedy. *See* ECF 218 (recommending dismissal of case as sanction under Rule 37). The Court should reject Defendant's invitation to apply the "wisdom of hindsight," based on unestablished facts, to help Defendant recoup his fees against Plaintiff's pro bono counsel. *See* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.

### 2. That Defendant disclosed false information to persons involved in the Weamer and El Monte Lawsuits.[4]

In the Weamer Litigation, the defendant pursued discovery related to (1) a police report Plaintiff filed regarding a missing passport and (2) Plaintiff's allegations that she was raped in

---

[4] TAC ¶ 47 ("In 2020, Plaintiff learned through a separate lawsuit, Doe v. Weamer, . . . that is wholly unrelated to her allegations against Defendant in this case, that Defendant made several false and incredibly damaging statements against Plaintiff."); ¶ 48 ("First, Defendant stated that Plaintiff filed a false police report in relation to her lost passport. Specifically, in the Weamer Litigation, Plaintiff propounded written discovery that requested 'Copies of any and all e-mails, chat history, or other electronically stored information that contain your communication discussing or commenting upon Plaintiff. This includes documents, communications or correspondence sent or received by you.'"); ¶ 57 ("Second, Defendant stated that Plaintiff falsely accused Mr. Chen of sexual assault."); ECF 161, at 6–8 (Motion to Strike) (alleging Defendant

China in 2012. *See* TAC ¶¶ 56, 58. The TAC alleged "[o]n information and belief," that Defendant made false and defamatory statements to persons involved in the Weamer Litigation because Defendant was one of very few people who knew about the allegations. TAC ¶ 61.

During discovery, Defendant produced text messages in which he texted persons involved in the Weamer Litigation about the Plaintiff, including her rape by a former classmate and the allegedly false police report concerning a stolen passport. Although the Court ultimately dismissed the portions of Plaintiff's claims that were based on Defendant's statements from 2020, the text messages cited in the Second Motion **support** Plaintiff's allegation that Mr. Wang made statements about Plaintiff to Mr. Weamer. *See* Second Motion, at 19–20. In Plaintiff's Motion to Strike, ECF 161, at 5–8, WTO set out the text messages at length to argue that discovery substantiated Plaintiff's allegations. Defendant argues in the Second Motion that one statement in the text chain—that Plaintiff "had accused someone else who was a middle school class mate of raping her," was not false, and therefore WTO's representation that the text chain supported her allegations was a material misrepresentation to the Court. There are two flaws with this argument.

First, Ms. Ceizler (Mr. Weamer's attorney) argued in connection with a motion to compel that a discovery request "relate[d] to a former classmate of Plaintiff who she **falsely** accused of raping her." TAC, ¶ 60 (emphasis added). As such, Plaintiff reasonably believed that someone indicated to persons involved with the Weamer Litigation that the sexual assault allegations were false. Plaintiff did not have the text messages between Mr. Weamer and Defendant prior to filing the TAC, and as such WTO could not have parsed the messages' language to determine which

---

made actionable statements to Mr. Weamer and including pictures of text messages between Defendant and Mr. Weamer about Plaintiff).

statements crossed the line to defamation. At the time of filing, Plaintiff and WTO only knew that Mr. Weamer and his counsel believed the rape allegations to be false, and that someone had fed them details known to very few people, including Defendant.

Second, Defendant completely ignores Defendant's texts to Mr. Weamer accusing Plaintiff of filing a **false** police report. *Compare* Second Motion, at 19, *with* ECF 161, at 6–8. Plaintiff has maintained that the police report was not false, and whether the statements are false is a dispute of fact that is not appropriate for determination via a sanctions motion. *See e.g.*, *Profita v. Puckett*, No. 15-CV-01237-DME-CBS, 2017 U.S. Dist. LEXIS 63168, at *72 (D. Colo. Apr. 25, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 199956 (D. Colo. June 6, 2017) ("Rule 11 . . . is not an appropriate vehicle for resolving legal or factual disputes." (internal quotations omitted)). Therefore, WTO had a reasonable basis to assert that Defendant **did** disclose private and potentially defamatory information to third parties.

### 3.    That Plaintiff did not have travel insurance in 2013.[5]

Defendant takes issue with the TAC's allegation that Plaintiff did not purchase or have travel insurance in 2013, ¶ 67, while ignoring the related allegation that Defendant had purchased Plaintiff's airline ticket and "presumably the travel insurance," ¶ 54. Defendant's hyperfocus on the allegation that Plaintiff did not purchase or have travel insurance advocates "an overly literal reading of [this] factual statement." *FDIC*, 989 F. Supp. at 1090 (citation omitted). The core of Plaintiff's allegation was that if she had travel insurance, it had been purchased by Defendant. Defendant propounded discovery asking Plaintiff to admit that she received a check from an insurance company to reimburse her for a trip to China which she did not take, which discovery Plaintiff denied. *See* Second Motion, at 11–13. Before serving those responses, Plaintiff's

---

[5]    TAC ¶ 67 (alleging that plaintiff did not purchase or have travel insurance in 2013).

counsel issued a subpoena to the insurance company for records associated with the claimed travel insurance. *See generally* Second Motion Ex. D. One of the subpoenaed documents was a check made out to Plaintiff, but issued at **Defendant's request**, which Defendant contends renders Plaintiff's statement in paragraph 67 of the TAC false. Second Motion, at 12–13. However, the subpoenaed documents overwhelmingly supported Plaintiff's position that Defendant had taken out travel insurance for Plaintiff, apparently without her involvement. *See* Subpoenaed Documents, attached as **Exhibit 1**. Based on the documents produced by the insurance company, Defendant paid for the original flight, *id.* at 21–24; made the claim on the insurance policy, *id.* at 25–26 ("Claimant's Name: Wang, Paul"); and is the only person who ever communicated with the insurance company, *id.* at 13–15, 20, 33–42. Given that the documents reveal Defendant alone procured the travel insurance referenced in the TAC, ¶¶ 54, 67, the subpoenaed documents indicate that the allegations in the TAC were true.

### D.   Defendant cannot raise discovery issues as a basis for Rule 11 sanctions.

Defendant also raises various discovery issues in support of his argument for sanctions. *See* Second Motion, at 7–8 (alleging Plaintiff failed to produce certain documents), 9 (alleging Plaintiff misrepresented that she has no responsive documents and that counsel failed to correct the representation), 11 (alleging Plaintiff failed to produce letter and improperly denied request for admission), and 7–8 (taking issue with representation at ECF 137, at 9 n.9 (in which WTO represented documents were produced in same form they'd been provided)). By Rule 11's plain terms, the Rule is inapplicable to "disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). "Rule 11(d) is logical, 'as it prevents the court from imposing sanctions under Rule 37(c) and Rule 11 for the same offense.'" *Flynn v. City of Las Cruces*, No. CV 15-00195 KG/WPL, 2016 U.S. Dist. LEXIS 71587, at *7–8 (D.N.M.

May 31, 2016) (quoting *Tom v. S.B., Inc.*, 280 F.R.D. 603, 612 (D.N.M. 2012)) (denying

Plaintiff's request for sanctions and entering sanctions against Plaintiff's counsel for making

"extremely serious allegations against counsel" and multiplying the proceedings in the case

unreasonably and vexatiously); *Grays*, 2019 U.S. Dist. LEXIS 187377, at *16 (denying sanctions

based, in part, on purported violations of Rule 26). Defendant could have moved to compel

and/or sought sanctions under Rule 37, but instead Defendant is belatedly raising these issues

after Plaintiff's case has already been dismissed with prejudice and after WTO has withdrawn.

As such, none of these issues form a basis for sanctions against WTO.

## II.     AWARDING SANCTIONS AGAINST WTO WOULD NOT SERVE THE PURPOSE OF RULE 11.

In addition to the factual issues with Defendant's motion addressed above, sanctioning

WTO would fail to further the purpose of Rule 11: deterrence. Where Rule 11 sanctions do not

further this essential purpose, they will be denied. *See Grays*, 2019 U.S. Dist. LEXIS 187377, at

*7 (recommending denial of motion for sanctions); *Liberty Savs Bank*, 2006 U.S. Dist. LEXIS

67902, at *6. Nothing in the record of this case indicates that WTO, Ms. Collier, or Mr. Schaller

needs to be deterred from future litigation abuses. Instead, counsel undertook this extremely

complex and contentious case pro bono, and competently and ethically represented Plaintiff until

the Court granted their withdrawal. Sanctioning WTO would not deter litigation abuse. Instead, it

would deter counsel from accepting pro bono appointments. Necessarily, cases in which pro

bono counsel is appointed midstream are not straightforward factually or legally; indeed, these

are the cases that may benefit from additional counsel the most. Imposing sanctions here will

impact the entire pro bono appointment mechanism by penalizing attorneys who, without

compensation, enter into such cases at the Court's request.

Defendant's purpose in pursuing sanctions against WTO is quite transparently and improperly to use Rule 11 as a fee-shifting mechanism now that he has obtained a favorable result. Defendant's Second Motion repeatedly laments the "unjustifiable costs on the Defendant" in defending this case. Second Motion, at 21–22. Defendant, for the second time, even uses Plaintiff's indigence as a basis for seeking sanctions against WTO—a crystal-clear indication that his goal is not to deter some future litigation abuse by WTO, but rather to recoup the costs of his defense. *Id.* at 22 ("Particularly, in light of Plaintiff's assertions that she is indigent (which prompted the Court to appoint *pro bono* counsel to represent her), Mr. Wang has no choice but to request that the Court hold Plaintiff's counsel accountable . . . ."); *see also* ECF 132, at 9. Unfortunately for Defendant, Rule 11 simply is not a fee-shifting provision. *Stuber*, 2021 U.S. Dist. LEXIS 8506, at *3 (denying motion for attorney's fees under Rule 11). "The case law interpreting and the amendments to Rule 11 make clear that the primary purpose of the Rule is to deter baseless filings and curb abuses of the judicial system, not to reward parties who are victimized by litigation." *Tidik*, 938 F. Supp. at 426. Defendant clearly considers himself a victim of Plaintiff's lawsuit, but that does not entitle him to fees—particularly from Plaintiff's withdrawn, pro bono counsel.

As further evidence that Defendant is attempting to use Rule 11 to shift fees, he waited four months after serving the Second Motion—until Plaintiff had already been sanctioned under Rule 37 and her case dismissed with prejudice—before filing the Second Motion. "If defendant's counsel truly believed that plaintiff's conduct was so abusive and vexatious as to warrant service of the Rule 11 motion . . . , then defendant's counsel should have pursued that motion by filing it with the court shortly after the expiration of the 21-day safe harbor period." *Thompson*, 167 F. Supp. 2d at 1259. "Instead, defendant's counsel elected to wait [] months, all the while spending

additional time and money in the discovery process . . . ." *Id.* Defendant's delay in bringing the Second Motion until after the case is dismissed with prejudice seeks to turn "Rule 11 from a powerful tool for the deterrence of abusive litigation practices to a mere fee shifting statute, a transformation that the language of the statute disclaims and the cases interpreting Rule 11 condemn." *Waldrop*, 2017 Bankr. LEXIS 3720, at *16–17.

Finally, in sanctioning Plaintiff and dismissing the case Judge Hegarty reasoned that Plaintiff was "knowingly, personally, and solely responsible for her actions." ECF 218, at 5. WTO had no ability to influence the case following its withdrawal, when according to Judge Hegarty's recommendation, the conduct resulting in discovery sanctions occurred. *See id.* As such, there is no basis for requiring withdrawn, pro bono counsel to cover Defendant's attorney fees. WTO therefore asks that the Court deny Defendant's belated and improper attempt to impose sanctions on respected pro bono counsel for the purpose of recouping his attorney fees.

### III.    DEFENDANT'S ATTORNEYS' FEES ARE NOT REASONABLE.

Defendant's Second Motion fails to establish any Rule 11 violations. Even aside from that, the fees he seeks are not reasonable. "Imposing all of the costs the opposing party incurred during the course of litigation is, *ipso facto*, fee-shifting and should be reserved for only the most egregious situations." *Gelt v. Janowitz*, 166 B.R. 706, 719 (D. Colo. 1994) (reversing award of sanctions).

Defendant has expended significant legal time and money pursuing unfruitful avenues for litigation to satisfy his personal vendetta, including seeking reconsideration of the order permitting Plaintiff to proceed under a pseudonym to protect her privacy, litigating motions to dismiss, and seeking sanctions rather than pursuing discovery to support his characterization of the underlying facts. Defendant's expenditures were not necessary and did not bring this case any closer to resolution. In fact, none of his expenditures resulted in dismissal of the case on the

merits. "Suffice it to say that defendant and its counsel would be better served by reexamining their own litigation tactics rather than condemning plaintiff's counsel for her litigation tactics." *Thompson*, 167 F. Supp. 2d at 1260. Defendant is not entitled to use Rule 11 as a fee-shifting mechanism, particularly as against WTO—pro bono counsel who competently and ethically represented Plaintiff for as long as they appeared in this case.

## CONCLUSION

Defendant's Second Motion is the latest round in an ugly, exceedingly personal dispute. WTO served as pro bono counsel in a complex case, consistently satisfying its obligations to the Court and the Plaintiff. It fulfilled all of its ethical and Rule 11 obligations. For the above reasons, the Second Motion should be denied.

Dated:  December 14, 2022.

Respectfully submitted,

*s/ Craig Stewart*

Craig Stewart
Hannah E. Armentrout
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8000
cstewart@hollandhart.com
hearmentrout@hollandhart.com
**ATTORNEYS FOR WHEELER TRIGG O'DONNELL LLP**

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, I have caused the foregoing to be served on the following via email:

Xingfei Luo
co20_2765@mail.com
**Plaintiff**

Katayoun A. Donnelly
Azizpour Donnelly, LLC
2373 Central Park Blvd., Suite 100
Denver, CO 80238
Tel. (720) 675-8584
katy@kdonnellylaw.com
**Attorney for Defendant Paul Wang**

*s/ Craig Stewart*
HOLLAND & HART LLP

19626830