UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

       Plaintiff,

v.

PAUL WANG,

       Defendant.

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
12/14/2022
**JEFFREY P. COLWELL, CLERK**

## RESPONSE TO DEFENDANT'S SECOND MOTION FOR IMPOSITION OF SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AGAINST PLAINTIFF AND HER FORMER COUNSEL

Plaintiff submits her response to Defendant's Second Motion for Imposition of Sanctions, Pursuant to Rule 11 of the Federal Rules of Civil Procedure (the "Motion"). ECF 226.

## INTRODUCTION

Plaintiff is entitled to pursue her claims in good faith, including discovery to support her claims and respond to Defendant's contentions. Throughout this action, Defendant has tried to deprive Plaintiff of her day in court, including through questionable litigation tactics to prevent the lawsuit from moving forward and harass Plaintiff in many ways both in and court of court. Decl., Luo ¶18-19. Rather than conducting any legitimate discovery to establish a valid defense, Defendant and his counsel have focused their time and energy on filing duplicative motions to dismiss and sanctions, depriving Plaintiff of her anonymity, and improperly seeking Rule 11 sanctions against her and her former counsel, even after the case was dismissed.

Defendant's Second Motion for sanctions presents the same legal arguments that have previously been rejected by this Court. Namely, Defendant relies here on the same arguments

asserted in three separate motions to dismiss and his first motion for sanctions but adding fraudulent evidence. ECFs 69, 78, 92, 132, 226.

Defendant's Motion is meritless with fraud, transparently attempting to harass and intimidate Plaintiff and her former counsel out of pursuing a good faith claim for relief. Neither Plaintiff nor her former counsel have violated any of the provisions of Rule 11(b). The Court should deny Defendant's Motion.

## BACKGROUND

Plaintiff previously had filed her original Complaint and First Amended Complaint (FAC) in pro se. ECFs 1, 47. Thereafter, Plaintiff's court appointed counsel and Defense counsel entered the case. ECFs 52-54. The Court scheduled a Status Conference for April 8, 2021, and requested Plaintiff to appear in person. Plaintiff did so, traveling from California to Colorado at her own expense to personally appear for a thirty-minute conference. It is during that Status Conference that Defendant began employing the litigation strategy—avoid discovery at all costs and repeatedly file identical motions on the same ground. Defendant stated his intention to seek dismissal of the FAC, but ultimately agreed to the filing of an amendment when the Court ordered defense counsel "to discuss with [Plaintiff's] counsel what you think the infirmities are" in the FAC. ECF 74. Defendant also stated he would seek a stay of discovery and challenge Plaintiff proceeding anonymously. (*Id.* at 16:9-10, 18:5-13.)

Plaintiff filed her Second Amended Complaint with the assistance of her court appointed counsel. ECF 65. On May 25, 2021, without prior conferral as ordered by the Court and requested by Plaintiff, Defendant filed his motion to dismiss (the "First MTD"). ECF 69. The Court denied the First MTD without prejudice for failing to comply with the Judge's practice

standards. ECF 70. After conferral, and pursuant to Judge Jackson's Practice Standards, Defendant filed a request for leave to re-file the First MTD. ECF 71. In the letter, Defendant made virtually the same arguments that he makes now—that Plaintiff's defamation claims are time barred and/or all of her claims are barred by the absolute litigation privilege. ECF 71 p. 2. Plaintiff responded, explaining that (1) the defamation claims are timely based on the application of the discovery rule (C.R.S. § 13-80-108(1)) and (2) the absolute litigation privilege does not apply. ECF 75.

On June 11, 2021, the Court denied Defendant leave to re-file the First MTD finding that it was "likely to be denied and a waste of time." ECF 76. The Court ordered the parties to "resolve this case or agree that plaintiff will file one more amended complaint that takes into account defendant's issues and pleads only what she believes she has evidence to prove." (*Id.*) Given the parties' inability to reach a settlement, Plaintiff attempted to comply with the order by sharing a draft of her proposed Third Amended Complaint ("TAC") with Defendant on June 18, 2021.

On July 6, 2021, the case was reassigned to Judge Rodriguez. ECF 77. In a veiled attempt to do an end run around this Court's Order (ECF 76), only three days after the reassignment, Defendant filed his Renewed Motion to Dismiss (Second MTD), a near identical copy of the motion Judge Jackson denied. ECF 78. The Court denied the Second MTD, without allowing Defendant an opportunity to reply, finding "no basis to depart from Judge Jackson's ruling," and granting Plaintiff leave to file her TAC as previously ordered. ECF 84 p. 3. Plaintiff complied by timely filing the amendment on July 28, 2021. ECF 85. The TAC asserts four causes of action: (1) defamation per se regarding Defendant's statement that Plaintiff filed a false police report

and committed insurance fraud in relation to her lost passport; (2) defamation per se regarding

Defendant's statement that Plaintiff falsely accused their acquaintance of sexual assault; (3)

intentional infliction of emotional distress/outrageous conduct; and (4) unreasonable disclosure

of private facts. ECF 85 ¶¶ 75-109.

On August 25, 2021, Defendant filed his third Motion to Dismiss (the "Third MTD")

making virtually the same arguments presented in his prior MTDs. ECF 92. Two of these

arguments serve as the basis for Defendant's first Rule 11 Motion filed over three months after

Plaintiff filed her TAC; namely, that the statute of limitations bars Plaintiff's Second Claim for

Relief and the absolute litigation privilege bars all of her claims. ECF 132. On December 27,

2021Defendant filed a motion to stay discovery which was later denied. ECFs 148, 155.

Despite his own immigration fraud, Defendant put on a classic "Thief crying 'Stop

Thief'" show and fabricated in front of the magistrate judge that Plaintiff would need to marry

someone to stay in this country. ECF 191.

On June 13, 2022 the Court granted Defendant's MTD in part, ECF 165, after

Defendant's fourth attempt to dismiss this case. ECFs 36, 69, 78 and 92. Plaintiff moved forward

with the undismissed claim related to Defendant's defamatory statement that Plaintiff filed a

false police report to defraud the insurance company for money. Decl., Luo ¶11.

Feeling being bullied by Defendant, Plaintiff's court appointed counsel withdrew from

this case on July 7, 2022. ECFs 174, 220.

Despite Defendant's allegation Defendant never subpoenaed any documents from the

insurance company, nor from the bank that issued the insurance refund check. Decl., Luo ¶10.

Despite Defendant made all the direct contact with the insurance company Defendant never

disclosed his communication with the insurance company. Decl., Luo ¶16.

The insurance records subpoenaed by Plaintiff show that it was Defendant, not Plaintiff, signed the proof of claim as the insurance claimant in <u>September 2013</u>; that all email correspondence made to the insurance company was by Defendant, not Plaintiff; and that Defendant, not Plaintiff, received the check and pocketed the insurance refund in <u>September 2013</u>. Decl., Luo ¶2-15.

In September 2022 Plaintiff traveled over 2,000 miles from California and appeared for deposition in Denver at her own expenses and risk of health.[1] Despite Plaintiff's immigration matter, which occurred after 2013, has no bearing on either liability or damages, Defendant continued his devious tactic[2] and probed in her immigration matter during the deposition. ECF 220.

Despite a United States magistrate judge has no contempt power under 28 U.S.C. § 636 because Plaintiff DID NOT CONSENT to have a magistrate judge conduct all proceedings in this civil action, including trial, and to order the entry of a final judgment, ECF 1-5, the magistrate judge abused his authority and held Plaintiff in direct contempt due to her refusal to disclose her immigration matter during the deposition. Only four days after the deposition, based on no evidence or foundation the magistrate judge accused Plaintiff of violating a court order by not disclosing the name of the attorney who ghostwrote Plaintiff's court filings despite Plaintiff herself authored all her court filings. Plaintiff is not going to take that from anybody, including a

---

[1] Plaintiff was diagnosed with Covid right after attending the status conference held on August 24, 2022 in Denver.

[2] Had Defendant had any legitimate defense he would not have used immigration matter to harass Plaintiff.

magistrate judge or district judge. The magistrate judge recommended to terminate the case as a sanction against Plaintiff to which Plaintiff objected. ECFs 218, 220.

On October 19, 2022, the Court adopted the magistrate judge's recommendation and entered the final judgment after an Order terminating this action with prejudice as a sanction against Plaintiff. ECFs 222, 223. Defendant filed his second rule 11 motion 14 days after the final judgment was entered.

## LEGAL STANDARDS

"A Rule 11 violation occurs where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands." *Greeley Pub. Co. v. Hergert*, 233 F.R.D. 607, 610–11 (D. Colo. 2006); *see also Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990) ("[C]reative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment.") "The standard is one of reasonableness under the circumstances." *Anesthesia Advantage, Inc. v. Metz Grp.*, 708 F. Supp. 1180, 1182 (D. Colo. 1989) (citation omitted). Rule 11 should not be used to "scare parties or attorneys away from pursuing their lawsuits or articulating theories of recovery,"—its sole purpose is deterrence. *Domenico v. Haschak*, 2011 WL 13175223, at *2 (D.N.M. Sept. 30, 2011).

In considering what constitutes a claim that is frivolous, unreasonable or groundless, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978). Even when the law or the facts appear

questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. *Id*. Granting a motion to dismiss "does not mean that Plaintiff's claims [were] so unreasonable" that they had "absolutely no chance of success." *In re Merrill Lynch Tyco Rsch. Sec. Litig*., No. 03 CV 4080(MP), 2004 WL 305809, at *5 (S.D.N.Y. Feb. 18, 2004) (internal quotations and citation omitted); *Burlington Res. Oil & Gas Co. v. Colorado Oil & Gas Conservation Comm'n Dep't of Nat. Res*., 986 F. Supp. 1351, 1355–56 (D. Colo. 1997) (unpersuasive legal arguments do not warrant sanctions).

## ARGUMENT

### I.   DEFENDANT'S FAILURE TO FOLLOW THE PROCEDURES OUTLINED IN RULE 11

On October 20, 2022 Plaintiff received Defendant's notice of Rule 11 sanction with no motion attached. Decl., Luo 14. Less than 21 days after the notice, Defendant filed his second motion for rule 11 sanction on November 2, 2022.

Defendant's second motion for rule 11 sanction should be denied for failure to comply with the safe-harbor provision. See *Mellott v. MSN Communications, Inc.*, 492 F. App'x 887, 4 (10th Cir. 2012) (holding that it is an abuse of discretion to grant Rule 11 sanctions if the defendant did not comply with the safe-harbor provision and reaffirming the *Roth* holding.)

### II.   DEFENDANT'S SECOND MOTION FOR RULE 11 SANCTION IS UNTIMELY AND PROCEDURALLY IMPROPER

Rule 11 focuses only on a challenged pleading or written motion. *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006). A motion for sanctions must be filed as soon as practicable after discovery of a Rule 11 violation. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1027 (7th Cir. 1999). Courts have uniformly denied Rule 11 motions where a motion was not filed until after the case was dismissed. See *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006)

(motions for Rule 11 sanctions filed after district court dismissed complaint should have been denied; quoting *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc*., 369 F.3d 385, 389 (4th Cir.2004) ("Because the rule requires that the party submitting the challenged pleading be given an opportunity to withdraw the pleading, sanctions cannot be sought after summary judgment has been granted."); *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir.2000) (affirming denial of motion for Rule 11 sanctions made after completion of trial); *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir.1998) (holding that a party cannot wait until after summary judgment to move for sanctions, even if that party informally warned the offending party about the potential of Rule 11 sanctions); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir.1997) (holding that "a party cannot wait until after summary judgment to move for sanctions under Rule 11"); *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528-29 (10th Cir.1997) (concluding that Rule 11 sanctions were unavailable to defendant who moved for sanctions after plaintiff moved to voluntarily dismiss its claims against defendant.). See also *Kramer v. Pollock-Krasner Found*., 890 F. Supp. 250, 259 (S.D.N.Y. 1995) (denying sanctions after granting motion to dismiss because evaluating the complaint's factual basis would "waste scarce judicial resources.")

The courts have reasoned that to grant Rule 11 sanctions based on a motion filed postdismissal would defeat the purpose of the safe harbor provision. The advisory committee notes to Rule 11 provide strong support for this conclusion:

> Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely . . . . Given the "safe harbor" provisions . . . [in Rule 11(c)(2)], a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments). A leading federal

practice treatise explains the rationale for this rule: "if the court disposes of the offending contention within the 21-day safe-harbor period after service, it becomes impossible under the provision of Rule 11(c)(2) to file the motion or otherwise present it to the court." 2 James Wm. Moore et al., Moore's Federal Practice § 11.22[1][c] (3d ed. 2014); see also 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1337.2, at 727 (3d ed. 2004) ("[S]ervice of a sanctions motion after the district court has dismissed the claim or entered judgment prevents giving effect to the safe harbor provision or the policies and procedural protections it provides, and it will be rejected.")

Here, as early as July 12, 2022 Defendant knew the purported Rule 11 violation. Defendant offered no equitable considerations to explain his 113-day delay in filing his second Rule 11 motion. After receiving Plaintiff's Rule 11 motion on August 7, 2022, Decl. Luo, ¶13, and being informed that courts uniformly denied Rule 11 motion filed after dismissal, Defendant still filed his second meritless Rule 11 motion which warrants sanctions. See *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) (affirming sanctions for filing a frivolous motion for sanctions); *Love v. Kwitny*, 772 F. Supp. 1367, 1378 (S.D.N.Y. 1991) (prevailing plaintiff nevertheless sanctioned for filing frivolous motion for sanctions.)

## III.   PLAINTIFF HAS COMPLIED WITH RULE 11

### A.   Plaintiff Did Not Present Her TAC for An Improper Purpose

Plaintiff filed the TAC after the Court deemed Defendant's First MTD a "waste of time" and granted her leave to do so since the parties did not settle. ECF 76. Defendant has presented absolutely no evidence that Plaintiff filed the TAC to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." In fact, if anyone has caused "unnecessary delay" or

"needlessly increased the cost of litigation" in this case, it is Defendant himself. Therefore, Plaintiff has not violated Rule 11(b)(1).

### B.    Plaintiff's First Claim for Relief Is Not Time Barred

No reasonable person would call his unborn daughter as **a young daughter**. Defendant came to the United States in 1996 on a student visa and received undergraduate education in the State of Texas. ECF 249-1. Then Defendant married an obese older woman for immigration benefit to stay in this country. Defendant is not an illiterate foreign born immigrant who does not understand the difference between an unborn daughter and a young daughter. Indeed, Defendant is cunning and skillful at manipulation. In his defamatory statement, he states "I got married in 2015, and have a young daughter now." Decl., Luo ¶11. Defendant did not state "my wife is pregnant with a daughter now" or "my wife and I are welcoming a daughter now." The magistrate judge confirmed that the publication date was supported by such circumstantial evidence where Defendant's daughter was born on December 3, 2019.[3] ECF 186. As of today, over two years since this case was commenced, Defendant presented not a single piece of evidence showing that Plaintiff's first claim for relief was time barred.

### C.    Plaintiff's Second Claim for Relief Is Not Time Barred

To establish liability for defamation, a plaintiff must show that the defendant "published or caused to be published" a defamatory statement. See CJI-Civ.4th 22:2 (2000); see also *Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo. 1994) (defamation "is a communication that holds an individual up to contempt or ridicule" (emphasis added)).

Republication occurs when (1) the original publication was modified; or (2) the

---

[3] Defendant initially alleged his daughter was born in September 2019. ECF 186.

republication was directed to a new, different audience. In *Davis v. Mitan* (*In re Davis*), the United States District Court for the Western District of Kentucky held that "where substantive material is added to a website, and that material is related to defamatory material that is already posted, a republication has occurred." 347 B.R. 607, 612 (W.D. Ky. 2006). Similarly, in *Larue v. Brown*, the Court of Appeals of Arizona held that republication occurs on a website when an "update or modification [of an internet publication] affects the substance of the allegedly defamatory material." 235 Ariz. 440, 333 P.3d 767, 772 (Ariz. Ct. App. 2014), finding that the defendants' responses to readers' comments—posted directly below the original articles—not only repeated the earlier defamatory allegations, but "also added to and altered the substance of the original material." Id. at 773. The court held that when the statement itself is substantively altered or added to, or the website is directed to a new audience, the statement will be considered to be "republished."

As Defendant admits that on its face the online statement shows 2013 as its initial publication date but the content of the statement reveals that it was altered or modified in 2020 which indicates a conscious intent to induce the public or any individual to read the alleged libels. The statute of limitations begins anew with each republication. Plaintiff's second claim is well within the statute of limitations as a matter of law. As such, the person who failed to make a reasonable inquiry under the circumstances is Defendant, not Plaintiff.

[A]ll persons who cause or participate in the publication of [defamatory] matters are responsible for such publication. *Van Horne v. Muller*, 185 Ill. 2d 299, 308 (1998) (quoting 33A Ill. L. & Prac. Slander and Libel § 83 (1970)). The originator of defamatory matter may be liable for each "repetition" of the defamatory matter by a second party "if he could reasonably have

foreseen the repetition." *McKinney v. County of Santa Clara*, 110 Cal. App. 3d 787, 795, 797 (1980); See also *Mitchell v. Superior Court*, 37 Cal. 3d 268, 281 (1984). "The rationale for making the originator of a defamatory statement liable for its foreseeable republication is the strong causal link between the actions of the originator and the damage caused by the republication." *Churchey v. Adolph Coors*, 759 P.2d 1336, 1344 (Colo. 1988).

The heart of Plaintiff's Second Claim is that Defendant made oral *or* written statements or caused those statements to be published that Plaintiff falsely accused Chen GuoChang of sexual assault. Plaintiff has several objectively reasonable bases for her claim. On June 17, 2020, the defendant (known as "Weamer" in this case) in unrelated litigation propounded discovery relating to Plaintiff's allegations against Chen based on Weamer's "belief" that Plaintiff falsely accused Chen of sexual assault. ECF 137-9, Pl. Decl. ¶ 3. Plaintiff reasonably believes that Weamer received this information from Defendant because Defendant was the only person in the United States who knew about Plaintiff's allegations against Chen and knew Chen was the perpetrator. (*Id.* at ¶ 4.)[4] Then, in January 2021, Plaintiff received another document containing the *same* defamatory statement through discovery in a federal lawsuit involving two Californian cities. (*Id.* at ¶ 4; ECF 137-10, Pl. _000037). The document also states that Plaintiff filed a false police report in relation to her lost passport.[5] Plaintiff reasonably believes that Defendant authored this statement not only for the reasons above, but also because Defendant is the only person who knew that Plaintiff had filed a police report regarding her lost passport and knew her

---

[4] Weamer also produced a statement from Defendant Wang regarding Plaintiff's lost passport, which serves as the basis for her First Claim for Relief. (*Id.* at ¶ 5.) Defendant has ignored that statement in the Motion and the Third MTD. Further, to date, Defendant has not denied that he authored that statement.

[5] Again, this is the *exact* same statement that serves as the basis for Plaintiff's First Claim for Relief, which Defendant had *never* denied making or argued that it was time barred prior to filing his second motion for rule 11 sanctions. *Supra* n. 6.

specific travel dates to San Francisco. Defendant knew of Plaintiff's specific travel dates because Defendant purchased Plaintiff's airline ticket. (ECF 137-9, Pl. Decl. ¶ 7.) In other words, Plaintiff reasonably relies on the information she received from Weamer in June 2020 *and* the written statement that she received in the City litigation in January 2021, as the bases for her Second Claim. It is of no moment that Plaintiff currently only possesses one physical document to support her Second Claim—especially where she alleges defamation and not just libel. That is more than sufficient for purposes of Rules 8 and 11. Additionally, prior to the filing of the TAC, Defendant did not argue that he had made no defamatory statements about Plaintiff and presented no evidence that Plaintiff knew of his defamatory statements prior to 2020.[6] Plaintiff is entitled to discovery on these issues.

Nevertheless, Defendant argues that Plaintiff's Second Claim lacks all evidentiary support based on two issues of fact. First, Defendant claims that his written statement was published in 2013.[7] Second, Defendant claims that the written statement was authored by someone else. (ECF 226 p. 4.) With respect to the former, it does not matter when the written

---

[6] Plaintiff anticipates that, if the Court denies the Third MTD, Defendant will then use "truth" as a defense. (ECF 115 p. 3) (Defendant stating he will "pursue all defenses available to him."); *see also Gomba v. McLaughlin*, 180 Colo. 232, 235–36, 504 P.2d 337, 338 (1972) (truth is an absolute defense to defamation).

[7] Contrary to Defendant's contention, Plaintiff did not deny the "trustworthiness" of the alleged date of publication in her response to Defendant's Third MTD. (ECF 132 p. 7.) Rather, she properly noted that the Court should not consider it because that date was not referred to in the TAC, and the Court may only consider matters within the complaint on a motion to dismiss. (ECF 104 p. 6) Further, although Plaintiff understands from third parties that the document originally came from the internet, she did not originally receive it from the internet or from a link, such as Defendant continues to demand. She received the information in the form of a document that was attached to a declaration in unrelated litigation. Plaintiff has produced both the document *and* the declaration. That document properly serves as one legitimate basis for Plaintiff's Second Claim for Relief. Therefore, that is what she produced with her disclosures even though Defendant continues to claim that Plaintiff has "refused" to provide the same.

statement was published because Plaintiff initially relied on the discovery rule in determining

when the limitations period began to run. Even if the discovery rule does not apply, Plaintiff's

Second Claim is not time barred because the publication was altered in 2020 which retriggered

the statute of limitations. Surely, if Plaintiff were as vexatious of a litigant as Defendant makes

her out to be and she had learned of this statement in 2013, she would have filed suit then.

Regardless, if Defendant believes that Plaintiff learned of this information before 2020 or 2021,

then he should conduct discovery on that issue. *See Abbondanza v. Weiss*, No. 19-CV-00328-

JLK, 2019 WL 10255013, at *8 (D. Colo. Oct. 23, 2019) (refusing to impose sanctions "before

the parties have even had a chance to conduct discovery").

Similarly, if Defendant claims he is not the author of the statement, then the parties

should conduct discovery on that issue and, Plaintiff should be able to use discovery to find out

the full extent of Defendant's direct or indirect involvement in the post. Defendant's "side-by-

side" review of a separate blog post to show the similarities between it and the document at

issue, and his own self-serving statements do not show that Plaintiff's Second Claim lacks any

evidentiary support. To the contrary, they merely show that there is a factual dispute, which is

not appropriate for the Court to resolve on a Rule 11 motion or motion to dismiss. *See e.g.,*

*Profita v. Puckett,* No. 15-CV-01237-DME-CBS, 2017 WL 1491003, at *27 (D.Colo. Apr. 25,

2017), report and recommendation adopted, 2017 WL 4225451 (D.Colo. June 6, 2017) ("Rule 11

... is not an appropriate vehicle for resolving legal or factual disputes.") (internal quotation

omitted); *Cook v. Rockwell Intern. Corp.,* 147 F.R.D. 237, 248 (D.Colo.1993) ("Defendants'

disputes with Plaintiffs' factual contentions ... are not [a] proper basis for a dismissal under Rule

11"). Defendant's position is akin to telling Plaintiff to "take his word for it or else" and it is far

from unreasonable for Plaintiff to refuse to take her adversary's "word for it."

### D.     The Absolute Litigation Privilege Does Not Render Plaintiff's Claims Meritless

Even if a legal position in a pleading is clearly contrary to current law, it is not sanctionable if the position is warranted "by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed.R.Civ.P. 11(b)(2). See also *Predator Int'l, Inc. v. Gamo Outdoor U.S., Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015).

The actions of a potential witness are not absolutely immune merely because he labels himself a potential witness. Immunity analysis rests on functional categories, not on the defendant's status. *Briscoe v. LaHue*, 460 U.S. 325 (1983). The supreme court was careful to emphasize that witness immunity does not extend to "all activity that a witness conducts" before testifying, and noted in particular that it had "accorded only qualified immunity to law enforcement officials who falsify affidavits." *Rehberg v. Paulk*, 566 U.S. 356, 369 n. 1 (2012) (treating law enforcement officers the same as private  witnesses; citing *Kalina v. Fletcher*, 522 U.S. 118, 129–131 (1997), and *Malley v. Briggs*, 475 U.S. 335, 340–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Plaintiff has alleged that Defendant fabricated that Plaintiff committed several crimes which are unfounded. ECF No. 85 ¶¶ 51–52, 75–83, 57–62, 84–92. Defendant's fabrication was not made to achieve any legitimate purpose of litigation but simply to cause harm to Plaintiff. The circumstances presented here fall squarely outside the carefully limited holding of *Rehberg*.

A pretrial, out-of-court effort to ... fabricate evidence ... is not "inextricably tied"—or tied at all—to any witness' own testimony, even [i]f a potential witness does happen to be involved. *Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001).

When defendants have "dual roles as witness and fabricator," extending protection from the testimony to the fabricated evidence "would transform the immunity from a shield to ensure candor into "a sword allowing them to trample the statutory and constitutional rights of others." *Lisker v. City of Los Angeles*, 780 F.3d 1237, 1243 (9th Cir. 2015). Therefore, Plaintiff's position on the absolute litigation privilege is not unwarranted by existing law.

## IV.   SANCTION AGAINST PLAINTIFF OR HER FORMER COUNSEL WILL NOT SERVE THE INTERESTS OF JUSTICE

Rule 11 grants district courts substantial discretion to craft their orders to serve the interests of justice. *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996). Rule 11(c) includes justice as a consideration by requiring courts to impose an "appropriate sanction." *Id*.

### A.   Defendant's Presentation of Evidence Reaches to The Point of Being Misleading And Fraudulent

Defendant knows better than anyone else that it was Defendant himself who submitted the insurance claim and pocketed the insurance refund. Then Defendant presented a fraudulent version of the insurance records. (Comparison of ECF 226-3 versus the exhibits attached to this response.)

ECF 226-3 contains at least four indicators of fraud—(1) omitted the proof of claim showing Defendant was the actual insured and the claimant; (2) omitted all direct correspondence between Defendant and the insurance company; (3) falsely alleged that Plaintiff made an insurance claim while she never did; and (4) omitted the facts that the insurance refund check was mailed to Defendant's residence, Defendant received and cashed the check. Defendant has received all the insurance records since July 7, 2022. Decl., Luo ¶10. And the insurance

records were submitted to the court multiple times. ECFs 193, 194, 207. Not a single time

Defendant objected to the authenticity of the insurance records. Defendant never alleged that the

signature on the proof of claim was not his. Neither did he allege the emails sent to the insurance

company were not authored by him. Most notably, Defendant never denied he cashed the check

issued by the insurance. ECF 194, p. 5-6. This is not a case of failure to make a reasonable

inquiry. This is an outright fraud in light of the overwhelming evidence. This is especially so

when Defendant again and again clung to his falsified claim as true that Plaintiff made an

insurance claim despite his knowledge that the evidence central to the litigation was manipulated

by himself. Defendant even presented his fraud after being confronted with the fact that he was

the claimant of the insurance and continued to promote the manipulated evidence with

knowledge of the manipulation. Decl., Luo ¶2-13. Defendant's presentation of fraudulent

evidence to a federal district court significantly interfered with the judicial process. There is no

doubt Defendant would continue to abuse the judicial process by using manipulated evidence

and thus continue to drain judicial resources. Defendant's insistence on filing his second motion

for rule 11 sanction despite the denial of his first one warrants sanction.

### B. Defendant's Gamesmanship During Discovery and Litigation

Defendant was well aware of the facts that it was Defendant, not Plaintiff, signed the

proof of claim as the insurance claimant in September 2013; that all email correspondence made

to the insurance company was by Defendant, not Plaintiff; that Defendant, not Plaintiff, received

the check and pocketed the insurance refund in September 2013; and that Defendant, after

pocketing the insurance refund, spread libel that Plaintiff defrauded the insurance and used the

insurance refund to buy a ticket flying to California from Colorado while Plaintiff never flew to

California from Colorado in 2013. However, Defendant never disclosed his communication with the insurance company in 2013.

    As early as December 2020 Defendant was well aware of this litigation. ECF 74, p. 3. However, Defendant repeatedly stalled the discovery and waited until September 2022 to allege that the website hosting company has been down. ECFs 148, 203. As a result of his delay tactic, he subpoenaed all of Plaintiff's cell phone data to accomplish his speculation that Plaintiff used her cell phone to post a blog Defendant commented on. By implementing his tactic, Defendant provided no information or evidence how searching all of Plaintiff's cell phone data would determine whether she posted a blog. See *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, Civil Action No. 17-cv-00803-CMA-NYW, at *13 (D. Colo. Sep. 27, 2017) (Quashing a subpoena for the forensic image of a personal cell phone where the party requesting the image failed to identify protocols that would limit the scope of the search and the subpoena presented issues of overbreadth, privacy, and privilege.)

    Throughout the litigation, Defendant did not try to prove his statement of facts was true. Defendant did not bother to subpoena the insurance company or the issuing bank of the refund check, rather, he tried to build his defense by claiming his defamatory statement was a comment on Plaintiff's blog. However, online commentary can be actionable if it states or implies false and defamatory facts. *Balla v. Hall* (2021) 59 Cal.App.5th 652, 682; *Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 865.

    Plaintiff's interrogatory number 11 requires Defendant to (a) state each and every fact, premise, or conclusion upon which he bases his failure to unqualifiedly admit the RFA; (b) identify each and every document and/or piece of evidence that supports his denial or failure to

unqualifiedly admit the RFA, in addition to any document and/or piece of evidence that supports and/or contradicts your answers provided in response to this interrogatory; (c) identify each and every person who has knowledge of or information regarding the facts and/or documents identified in subparts (a) and (b) above, indicating which person has knowledge or information concerning each fact and/or document. Despite going through lengthy meet and confer and two status conferences in May and August, 2022 Defendant never provided any meaningful response to Plaintiff's interrogatory number 11. Decl., Luo ¶16-17.

On February 8, 2022 Defendant posed as "Anon Ymous" and harassed Plaintiff by sending an email to her court appointed counsel. Decl., Luo ¶18-19. The email contains the exact same information Defendant sent to Weamer. Decl., Luo ¶18-19. Defendant was bold enough that he did not even change his presentation style. And the email contains substantial incorrect and incomplete information in order to put Plaintiff in a false light. Decl., Luo ¶18-19. The incorrect legal information in the harassing email shows that the author is not an attorney as any attorney should have known that: By expressly limiting the definition of "litigation," for purposes of the vexatious litigant statutes, to "any civil action or proceeding," the Legislature excluded criminal cases from the ambit of Code of Civil Procedure section 391 et seq. Thus, the vexatious litigant statutes may properly be employed **only in civil cases**. (See *McColm v. Westwood Park Assn*. (1998) 62 Cal.App.4th 1211, 1216-1219; *In re Bittaker* (1997) 55 Cal.App.4th 1004, 1009; *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 992; *Camerado Ins. Agency, Inc. v. Superior Court* (1993) 12 Cal.App.4th 838, 843-844.) They may not be used in criminal cases. (See *In re Bittaker*, supra, 55 Cal.App.4th at pp. 1009-1012 [Code Civ. Proc., § 391 et seq. inapplicable to petitions for writ of habeas corpus].) It is another living

19

example that Defendant is a thief crying "Stop thief!"

## V.   THE COURT SHOULD DENY DEFENDANT'S REQUEST FOR ATTORNEY'S FEES AND COSTS

Defendant has not and cannot show a violation of Rule 11(b). But, even if he had, he has

utterly failed to show that Defendant's egregious demand for payment of $170,000 in attorneys'

fees and costs would be an appropriate sanction.[8] *See Alcohol Monitoring Sys., Inc. v. Actsoft,*

*Inc.,* No. 07-CV-02261-PAB-MJW, 2012 WL 4476623, at *1 (D.Colo. Sept. 28, 2012) (denying

request for fees where party "failed to articulate why an award of attorney's fees, ... [was] the

most appropriate sanction ..."). "Rule 11 sanctions are an extraordinary remedy." *Greeley Pub.*

*Co*., 233 F.R.D. at 611. Thus, Rule 11(c)(4) provides that any "sanction imposed ... must be

limited to what suffices to deter repetition of the conduct" and provides other deterrents.

Sanctions are limited because the "rule 'is not intended to chill an attorney's enthusiasm or

creativity in pursuing factual or legal theories.'" *Davis,* 906 F.2d at 538 (11th Cir. 1990). The

sanction requested by Defendant would do exactly that. Moreover, Defendant has established

none of the circumstances required to levy monetary sanctions against Plaintiff or her former

counsel.  *See Greeley Pub. Co.*, 233 F.R.D. at 610-611 (setting forth six considerations for

---

[8] Plaintiff reserves the right to object to the purported reasonableness of defense counsel's fees and whether such fees were incurred in relation to the purported Rule 11 issues claimed by Defendant. Defense counsel had spent an inordinate amount of time arguing with Plaintiff's prior counsel (oftentimes over things the Court had already ordered), filing serial motions to dismiss, and depriving Plaintiff of her anonymity. Therefore, any declaration submitted by defense counsel will be objected to for reasonableness, if appropriate. *See* Fed.R.Civ.P. 11(c)(4) ("The sanction may include . . . an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses **directly resulting from the violation**.") (emphasis added); *Watson v. City of Salem,* 934 F. Supp. 666, 667 (D.N.J. 1996) ("The purpose of Rule 11 is to deter wrongful attorney conduct and not to act as a general fee shifting statute."); *Greeley Pub. Co.*, 233 F.R.D. at 612 (in denying motion for sanctions, court noted it was "struck by the time, energy and expense expended in litigating the Rule 11 issues" where the "efforts" did not "materially advance[] the litigation or any party's interests. Counsel are reminded that Rule 11 should never be used as a litigation tactic.").

"assessing the appropriateness of" monetary sanctions versus a reprimand).

The injured party has a duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims. *White v. GMC, Inc*., 908 F.2d 675, 684 (10th Cir. 1990) (quoting *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1092-94 (3d Cir. 1988); *Thomas v. Capital Sec. Servs., Inc*., 836 F.2d 866, 878-81 (5th Cir. 1988) (en banc).) On one hand Defendant claimed Plaintiff's claims were meritless, on the other hand Defendant filed his motion to reconsider the pseudonym order while he suffered no actual prejudice, subpoenaed all Plaintiff's private data on her entire cell phone, chose in court deposition, the most expensive way to depose Plaintiff, and used a native English speaking attorney over an interpreter who would charge a much lower rate to conduct an unreasonably lengthy deposition despite concrete evidence was available to show Defendant was in fact the travel insurance claimant.

The only person who burdened Defendant with the cost of this case is Defendant himself. Therefore, the Court should deny Defendant's request for fees and costs.

**CONCLUSION**

Plaintiff requests that the Court deny Defendant's Second Rule 11 Motion with prejudice. Denial with prejudice is warranted based on Defendant's prior conduct in this case, which demonstrates he will not hesitate to file the exact same motion twice—even if denied. Denial with prejudice will ensure that Plaintiff will not have to fend off the same motion at a later date.

Dated: December 14, 2022

Respectfully submitted,

*/s/ Xingfei Luo*
Plaintiff in Pro Se and Sole Author

## DECLARATION OF PLAINTIFF XINGFEI LUO

I, XINGFEI LUO, declare and state:

1. I am the plaintiff in this case. I have personal knowledge of all facts stated herein. If called as a witness, I could and would competently testify thereto.

2. On Sep 2, 2013 proof of claim was signed and submitted by Paul Wang as claimant. A true and correct copy of the signed proof of claim is attached hereto as Exhibit 1.

3. On Sep 3, 2013 at 3:40 pm Claim was initiated by Paul Wang. Email was sent to student007@hotmail.com, the exact same email address he provided to this court. See Dkt. 28. A true and correct copy of the correspondence is attached hereto as Exhibit 2.

4. On Sep 4, 2013 Paul at 4:25 pm Wang emailed Travelex to claim trip interruption with attachment of police report. On Sep 5, 2013 Paul Wang emailed Travelex the cancellation of reservation. A true and correct copy of the email correspondence is attached hereto as Exhibit 3.

5. September 5, 2013 was a Thursday which means it was Paul Wang's work day. On September 5, 2013 at 5:24 pm Defendant sent email, using stealthzeus@gmail.com, to the insurance company TravelexClaims before he left work. He used his cell phone Samsung Galaxy Note II to email Travelex. I never used Samsung Galaxy Note II in my entire life. I never used stealthzeus@gmail.com in my entire life. On September 6, 2013 Travelex acknowledged the receipt of Paul Wang's email and stated "email from insured." A true and correct copy of the correspondence is attached hereto as Exhibit 4.

6. The email address stealthzeus@gmail.com is Paul Wang's personal email address. A true and correct copy of Paul Wang's text message telling WEAMER

stealthzeus@gmail.com was his email address is attached hereto as Exhibit 5.

7. On Sep 11, 2013 at 2:34pm Paul called to check status. Email was sent to

student007@hotmail.com, the exact same email address he provided to this court. See Dkt.

28. A true and correct copy of the call log is attached hereto as Exhibit 2.

8. On Sep 11, 2013 at 2:59 pm Paul Wang emailed his credit card statement to Travelex,

indicating that he paid $1337 for the air tickets and $62 for the insurance. A true and correct

copy of the email correspondence is attached hereto as Exhibit 6.

9. On Sep 18, 2013 at 6:02 pm Paul called for status and insisted on the inquiry of the claim

amount. A true and correct copy of the call log is attached hereto as Exhibit 2.

10. Despite his allegation Defendant never subpoenaed the insurance company or the bank issued

the refund check. All of the above insurance related documents were disclosed to Defendant

and his counsel on July 7, 2022.

11. A true and correct copy of defendant's online statement is attached hereto as Exhibit 7.

12. In 2013 I was a foreign visitor in the U.S. which was well aware by defendant Paul Wang. I

did not have a social security number in 2013. I did not have a bank account in 2013 in the

U.S. I did not receive any check from the insurance company. The mailing address on the

check was Paul Wang's residence, not mine. I did not have access to Paul Wang's mail box.

The person who received the insurance refund check was Paul Wang. I did not cash the

check issued by the insurance company. In fact, Paul Wang cashed the check and took the

money. I received not a single dime from the insurance company. I never made any contact

with the insurance company for any claim. Everything was done and controlled by Paul

Wang. Had I called or contacted the insurance company in any manner I would have left my

personal email address to follow up the claim. All email addresses on the insurance

company's record are Paul Wang's email addresses. Had I called or contacted the insurance

company in any manner I would have signed and submitted the proof of claim by myself. My

name appears on the record simply because I was the traveller on the ticket. The actual

insured was Paul Wang.

13. On August 7, 2022 I served Defendant my motion for Rule 11 Sanction. A true and correct

copy of the motion is attached hereto as Exhibit 8.

14. On October 20, 2022 I received Defendant's notice of Rule 11 sanction with no motion

attached. After receiving Defendant's notice I informed him that I would file my Rule 11

motion. A true and correct copy of the correspondence is attached hereto as Exhibit 9.

15. I do not possess any letters to or from Morgann Parakevas.

16. Despite Defendant made all the direct contact with the insurance company Defendant never

disclosed his communication with the insurance company. A true and correct copy of his

initial disclosure is attached hereto as Exhibit 10.

17. My interrogatory number 11 requires Defendant to (a) state each and every fact, premise, or

conclusion upon which he bases his failure to unqualifiedly admit the RFA; (b) identify each

and every document and/or piece of evidence that supports his denial or failure to

unqualifiedly admit the RFA, in addition to any document and/or piece of evidence that

supports and/or contradicts your answers provided in response to this interrogatory; (c)

identify each and every person who has knowledge of or information regarding the facts

and/or documents identified in subparts (a) and (b) above, indicating which person has

knowledge or information concerning each fact and/or document. Despite after lengthy meet

and confer and two status conferences in May and August Defendant never provided any

meaningful response to my interrogatory number 11. A true and correct copy of Defendant's

discovery response is attached hereto as Exhibit 11.

18. Defendant's discovery responses include his email to Weamer with a list of the cases

involved me as a party. A true and correct copy of Defendant's discovery response is

attached hereto as Exhibit 12.

19. On February 8, 2022 my court appointed counsel received an email from Anon Ymous. It is

reasonably believed that the author and sender was Paul Wang. A true and correct copy of

correspondence is attached hereto as Exhibit 13.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Date: December 14, 2022

*/s/ Xingfei Luo*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 14, 2022 the foregoing was electronically served upon the following persons:

Katayoun Donnelly <u>katy@kdonnellylaw.com</u>

Craig Stewart <u>CStewart@hollandhart.com</u>

Hannah E. Armentrout <u>HEArmentrout@hollandhart.com</u>

Dated: December 14, 2022

*/s/ Xingfei Luo*