IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:20-cv-02765-RMR-MEH

XINGFEI LUO,

    Plaintiff,

v.

PAUL WANG,

    Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR IMPOSITION OF SANCTIONS, PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE, AGAINST PLAINTIFF AND HER COUNSEL**

---

Defendant Paul Wang respectfully submits this reply in support of his motion to impose sanctions jointly and severally on Plaintiff and her former counsel Wheeler Trigg O'Donnell, Clarissa M. Collier, and David J. Schaller (collectively, "WTO").

**Introduction**

Ms. Luo's Second Amended Complaint would have been dismissed in May or June 2021 but for the false material representations to this Court made by Ms. Luo and WTO, both in the Third Amended Complaint, Doc. 85, and thereafter.

Where pro bono counsel's "good deeds," *see* Doc 254 at 1 (WTO's description of its conduct in this case), on behalf of a vexatious litigant,[1] include submitting materially inaccurate

---

[1] During the past four years, Luo has filed at least—due to her use of pseudonyms it is not possible to confirm the exact number—55 cases (including 29 Appeals, and 2 United States

statements to our courts that needlessly expend the resources of our Courts and opposing parties (and their families), Colorado Rules of Professional Conduct compels consequences.

Mr. Wang is requesting that this Court hold WTO to the same standards that federal (and state) courts in Colorado hold the other attorneys who appear before them, including the duty to comply with court orders and to timely notify the Court of their material inaccurate submissions, *see* Colo. R. Prof. Conduct Rule 3.3(a)(3). He also asks this Court to hold Ms. Luo accountable for her inaccurate representations to this Court, which have resulted in more than two and a half years of costly vexatious litigation (which her appeals are further extending).

**Discussion**

 A. *Ms. Luo and WTO violated Court orders and did not comply with their duties*

Federal Rule of Civil Procedure 11, in its relevant part, states:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> . . .
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(3)&(4).

Further, pursuant to Colorado Rule of Professional Conduct 3.3(a)(3) "If a lawyer, the lawyer's client, or witness called by the lawyer has offered material evidence and ***the lawyer***

---

Supreme Court Petitions for Writ of Certiorari) in various courts in the United States, at least 40 of which have been dismissed to this date. *See* **Exhibit A**.

*comes to know of its falsity*, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Colo. R. Prof. Conduct Rule 3.3(a)(3). This plain language leaves no doubt that the duty is triggered when an attorney becomes aware of the falsity of the information they provided to the tribunal. *See also generally Nix v. Whiteside,* 475 U.S. 157, 168 (1986) ("These standards confirm that the legal profession has accepted that an attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct; it specifically ensures that the client may not use false evidence," addressing the similar duty to report fraud after an attorney becomes aware of it).

WTO's response completely ignores its duties under Colorado Rule of Professional Conduct 3.3(a)(1) and D.C.COLO.LAttyR 2(a). Doc. 254, *passim.*

Further, <u>WTO was under a specific order form this Court.</u> On June 11, 2021, Judge Jackson ordered WTO and Ms. Luo to "file one more amended complaint that *takes into account defendant's issues* and *pleads only what she believes she has evidence to prove*." Doc. 76 (emphasis added) (As explained below, they failed to comply with this order).

A full year later, in the June 13, 2022 order partially granting Mr. Wang's motion to dismiss and denying his motion for sanctions without prejudice, Judge Rodriguez, taking the allegations in the Third Amended Complaint as true, concluded that, because Ms. Luo did not have a duty to include the URLs for allegedly defamatory statements, "Plaintiff has, *for now*, withstood dismissal of her claims regarding the two alleged statements that were published in blog posts." Doc. 165, at 9-10 (emphasis added). The Court, however, cautioned Ms. Luo and WTO, reminding them of Judge Jackson's specific order and their duty to comply:

> [I]t strikes the Court that the Plaintiff should know what blog posts serve as the basis for her claims and that, therefore, protracted discovery should not be necessary to answer that question. Further, *the Court reminds the parties that in*

3

> *a prior order of the Court, Plaintiff was instructed to "file one more amended complaint that . . . pleads only what she believes she has evidence to prove*." ECF No. 76 (emphasis added). Therefore, if, as Defendant suggests in his Motion for Sanctions, Plaintiff knows, and has known at least since before filing the Third Amended Complaint, that the blog posts at issue were not published by Defendant, ECF No. 132 at 3–4; ECF No. 144 at 4, *or that for any other reason the claims based on the blog posts would be frivolous*, see, e.g., ECF No. 160 at 1–5, *then the Court would advise the parties to proceed with caution in any further pursuit of such claims at the expense of the time and resources of both parties and this Court*.

Doc. 165, fn. 3 (emphasis added).

Instead of addressing the Court's concern, WTO moved to withdraw (on July 7, 2022).

It is telling that WTO's response mentions neither Judge Jackson's specific order, Doc. 76, [2] nor Judge Rodriquez's reminder, Doc. 165, fn.3. All attorneys, including court-appointed pro bono attorneys, have an obligation to comply with court orders. WTO does not and cannot dispute that from the time of signing the Third Amended Complaint to the day it filed its motion to withdraw—after having responded to Mr. Wang's discovery requests to produce the evidence Ms. Luo claimed she had before filing the Third Amended Complaint—it did not have *any* evidence to support the claims that Mr. Wang had made the statements at issue, Doc. 85, ¶¶ 52,[3] 62,[4] within the statute of limitations—the issue Judge Jackson had specifically ordered Ms. Luo and WTO to address, Doc. 76. *See* Doc. 254, *passim*.

---

[2] The Court ordered them to "file one more amended complaint that takes into account defendant's issues and pleads only what she believes she has evidence to prove." Doc. 76. One of Mr. Wang's main issues was the statute of limitations. Doc. 69.

[3] Plaintiff "filed a false police report claiming her passport got stolen, and was issued a refund from the travel insurance company for half the ticket price."

[4] "Plaintiff 'has [] made false allegation[s] of rape, … and filed a frivolous police report in Colorado about losing her passport.'"

4

### i. *WTO tried to avoid liability by withdrawing from the case*

On May 23, 2022, in its motion to strike Mr. Wang's supplement to his first motion for sanctions, WTO represented to the Court that the claims asserted there, which include the majority of the claims now brought in this second motion for sanctions, were new claims that the Court could not have addressed in its ruling on the first motion. Doc. 161, 3-4 (WTO alleging that "Defendant's Proposed Supplement Alleges Additional Rule 11 Violations That He Did Not Provide Proper Notice of Under Rule 11(c)(2)" . . . "Defendant's failure to provide sufficient notice of this new allegation under Rule 11 violates Plaintiff and her counsel's due process rights and, therefore, must be stricken.") (filed May 23, 2022). WTO thus bears responsibility for the factual accuracy of those claims.

On June 2, 2022, the Court issued a thirty-day stay of all discovery and briefing. Doc. 164. On June 13, 2022, the Court partially granted Mr. Wang's motion to dismiss. It also raised concern about proper compliance with Judge Jackson's order. Doc. 165, fn. 3. Considering WTO's representations in the motion to strike, Doc. 161, Mr. Wang was in the process of providing a second Rule 11 notice, as soon as the stay was lifted, to address the issue WTO had raised.

On July 7, 2022, however, just hours before the status conference scheduled on that day, WTO announced its intent to withdraw. During the July 7, 2022 hearing, Mr. Wang objected to the motion to withdraw, in part to ensure that his motion for sanctions would be addressed. He also filed a written objection the next day. Doc. 177.

On July 8, 2022, the Court, *having stated during the hearing the preceding day that allowing WTO to withdraw would not impact the Court's jurisdiction to rule on any future*

5

*motions for sanctions*, allowed WTO to withdraw. It also renewed the stay of discovery and briefing for another thirty days. Doc. 178.

When WTO withdrew, over Mr. Wang's objection, it was well aware that Mr. Wang was going to file a second Rule 11 notice and that by withdrawing it would no longer be able to participate in the case. Therefore, given the specific circumstances in this case—Judge Jackson's clear and explicit order and the timing of WTO's withdrawal—the usual considerations in analyzing the safe harbor provision do not apply in this case.

WTO violated the Court's specific order when it filed the Third Amended Complaint. It then prolonged Mr. Wang's discovery of its violation by asserting that it didn't have a duty to produce the supporting evidence until discovery started. Then when Mr. Wang raised the issue in his supplement to the first motion for sanctions, WTO asserted its due process rights and claimed that the issue should be raised after giving it notice. Now, however, it claims that it is too late to address it because it withdrew and because the case was dismissed—as a result of its vexatious client's direct disobedience of Magistrate Judge Hegarty's orders. Similar arguments also apply to Ms. Luo.

> **ii.** Ms. Luo and WTO violated Judge Jackson's order because they did not have *any* evidence to even suggest that her claims were within the statute of limitations

Mr. Wang's first motion to dismiss raised the issue of the statute of limitations. Doc. 69. Judge Jackson's order was clear: address Mr. Wang's issues and only plead the claims you have evidence establishing that they are not time-barred. Doc. 76. WTO not only violated the order but, despite Mr. Wang's pleas, refused to provide the evidence it claimed it had at the time (stating that it had no obligation to produce that evidence until discovery). More than a year later,

before close of discovery, it withdrew—*without producing a single piece of evidence to prove the claims it plead were within the statute of limitations*.[5]

            **iii.**    Ms. Luo and WTO withheld other material information, including some that, on its face, established that the publication was outside the statute of limitations

The documents produced in both *Weamer* and *El Monte* included the URLs for the statements at issue in this case. Doc. 144-5, ¶ 4 ("[W]e provided O.L. the unredacted links to all websites cited in my declaration and unredacted copies of their contents were attached as exhibits to the declaration."); Doc. 162, Exhibit B (Declaration of Dawn Ceizler Esq., (similar disclosures to Ms. Luo in *Weamer*)). In Ms. Luo's discovery responses, however, relevant pages, including material information, were missing and the URLs were removed. The URL for the statement at issue in paragraph 62 of the Third Amended Complaint bears a 2013 time stamp. https://xingfeiluo.wordpress.com/2013/12/16/xingfei-luo-better-known-as-ophelia-luo-and-her-chinese-scam/.

Similarly, Ms. Luo did *not* produce the page she had created about Mr. Wang, to which the quote in ¶ 52 of the Third Amended Complaint responded—a material fact, *see* Doc. 144, Exhibit 4 (WEAMER 0003-0009, Exh 5 at 1, ¶ 4).[6] Neither did she produce the document

---

[5] During the August 24, 2022 hearing, Ms. Luo admitted that she had no evidence. **Exhibit D**.

[6] Ms. Luo continues to deny that she published the original blog. As explained in detail in Mr. Wang's motion challenging the pseudonymity and its attachment, the evidence against Ms. Luo is overwhelming and continues to grow. Compare Docs. 94-96; Doc. 94, Attachment. K; Doc. 106-109; Doc. 162, Exhibit B at 4 (WEAMER 00003) *with* **Exhibit E** (Order of the California Court of Appeal in *Czodor v. Luo*, Case No. G060756 (Super. Ct. No. 18V002374) (issued January, 10, 2023) ("Luo obtained contact information for Czodor's friends and customers and sent them messages defaming him. She posted defamatory statements about Czodor on five Web sites (all having the word "cheater" in the Web site name) and on the Web site for Czodor's business."). These uncanny similarities establish her pattern of behavior.

authored by Mr. Morgann Paraskevas, which contained the quote in ¶ 62. During the August 24, 2022 hearing, Ms. Luo admitted that she was in possession of Mr. Paraskevas' letter and that she redacted it before posting it on her blog **in 2013**. *See* **Exhibit B** (Mr. Paraskevas's letter) and **Exhibit C** (Transcript of the August 24, 2022 hearing, where Ms. Luo admits that she received the letter, redacted it, and published it on https://cserinusa.wordpress.com. *See* Doc. 160, Exhibit A (Ms. Luo discovery response to Request for Admission No. 3.) (The letter from Mr. Morgann Paraskevas, *posted on December 17, 2013*, included information about both statements at issue—statements that her complaint claims no one but Mr. Wang knew about. *See* Exhibit 8 to Reply in Support of Sanctions Motion.)

          **iv.**    Ms. Luo and WTO continued to represent to this Court that Ms. Luo learned about the statements at issue in this case for the first time in 2020

Both Ms. Luo and WTO during the entire course of its work on this case continued to represent to the Court that Ms. Luo first became aware of the statements at issue in this case in 2020. Doc. 85 (Third Amended Complaint), ¶¶ 78, 87; Doc. 137-9 (Declaration In Support Of Response To Motion For Sanctions) ("I did not know that Defendant Paul Wang had made any false statements regarding the sexual assault or the police report I filed in relation to my lost passport until 2020.").

On August 24, 2022, however, Ms. Luo admitted that *in 2013* she received a letter from Mr. Paraskevasm, **Exhibit B**, which included both statements at issue in this case. **Exhibit C**. She also admitted that she redacted and published the letter at https://cserinusa.wordpress.com in 2013. *See id*.

8

       **v.**    WTO did not notify the Court when it learned that its representations to the Court regarding the insurance claim were false

Even in its response to this motion WTO continues to represent to the Court that Mr. Wang was "the only person who ever communicated with the insurance company." Doc. 254, at 18. The undisputed evidence proves otherwise.

On July 12, 2021 the insurance company advised Mr. Wang that it would only "release claims documentation to the named *insured* on the policy", i.e., Ms. Luo. In response, Mr. Wang issued a document hold to ensure preservation of this record. Doc. 254-1 (Travelex CheapOair records) at 37-38 (emphasis added). The undisputed evidence Mr. Wang preserved establishes not only that the insurance check was issued in Ms. Luo's name—meaning, she was the only person who could have cashed the check— but also, contrary to WTO's continuing assertions, Mr. Wang was *not* the only person who ever communicated with the insurance company; that is, that Ms. Luo did contact the insurance company. The claims documentation specifically notes that the *insured*, XingFei Luo, *id.* at 10, 11, 13—to be distinguished from Paul Wang—[7] called on 09/04/2013 at 04:52 PM ("Insured called with general process questions - advised. Advised claim forms sent by e-mail not yet registered." *Id*. at 15.

In sum, WTO asks the Court to ignore its continuing violations of the Court's order and Rule 3.3 merely because it was a court-appointed pro bono counsel. Although our courts appreciate the service of appointed pro bono attorneys, they hold them to the same professional

---

[7] The insurance company's record refers to Mr. Wang as Paul or Paul Wang, Doc. 254-1, 15 (Travelex CheapOair records), at 15, 14. ("Claim initiated. Paul requested TINM emailed to: student007@hotmail.com. He advised passport was stolen. Advised of report."; "Sept 11, 2013 Note from Paul Wang CC Statement."), or insured's boyfriend or friend. *Id.* at 14.

and ethical standards that they hold retained attorneys. *See, e.g., Matter of Olsen*, 2014 CO 42, 326 P.3d 1004; *see also* C.R.P.C. 3.3(a)(1); D.C.COLO.LAttyR 2(a).

### *B.   The Court should grant Mr. Wang the reasonable attorney's fees and costs that he incurred as a result of violations of Ms. Luo and WTO*

Federal Rule of Civil Procedure 11, in relevant part, states:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; ***or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation***.

Fed. R. Civ. P. 11.(c)(4) (emphasis added).

At the time that Mr. Wang retained counsel, the Court, based on her inaccurate statements, had granted Ms. Luo's motion to proceed under a pseudonym . She continued that approach with the assistance of WTO for another sixteen months. This made it necessary for Mr. Wang to spend many hours to uncover her schemes, including criminal conviction for similar acts, and to prove that she was not entitled to the protections reserved for victims, who certainly deserve such protections.[8] Every step that Mr. Wang was forced to take over a year and half of

---

8

> O.L. has filed similar cases in other courts involving different individuals and municipalities. In those other cases, as here, she proceeds either as Jane Doe or by initials (which may or may not be her own). While O.L. makes it difficult to track her cases because she uses initials or pseudonyms, we caution that flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.

*O.L. v. Jara*, 2022 WL 1499656, *3 n.1 (9th Cir. May 12, 2022) (cleaned up) (The Ninth Circuit's reaction to Ms. Luo's conduct).

financially costly and emotionally exhausting litigation was made necessary because WTO chose to enable Ms. Luo, who filed this frivolous action to intimidate Mr. Wang and to pressure him to withdraw from testifying against her in cases against other defendants (most of which ultimately were dismissed or are in the process of being dismissed). **Exhibit A**. *But for WTO's violations* of Judge Jackson's order, of Colorado Rule of Professional Conduct 3.3(a)(1), and of D.C.COLO.LAttyR 2(a), *this case would have been dismissed in May or June of 2021*.

### Conclusion

This motion is not intended to malign any lawyer's character or reputation. It simply seeks remedy from the Court to obtain compensation for the completely unnecessary expenses that Mr. Wang has incurred as a result of the conduct of Ms. Luo and her former counsel. Mr. Wang respectfully requests that this Court impose sanctions, pursuant to Fed. R. Civ. P. 11, against Plaintiff and her former counsel, jointly and severally, in the form of reimbursing Mr. Wang for all costs and reasonable attorney's fees and costs.

Respectfully submitted this 1st day of February 2023.

> */s/ Katayoun A. Donnelly*
> Katayoun A. Donnelly (#38439)
> Azizpour Donnelly, LLC
> 2373 Central Park Blvd., Suite 100
> Denver, CO  80238
> Tel. (720) 675-8584
> katy@kdonnellylaw.com
>
> *Attorney for Paul Wang*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, I served an electronic copy of the foregoing via email on:

*Plaintiff*:

Xingfei Luo
co20_2765@mail.com

*Counsel for Wheeler Trigg O'Donnell LLP*:

Craig Stewart P.C.
HOLLAND & HART LLP
555 17th Street, Suite 3200, Denver, CO 80202
cstewart@hollandhart.com
T: (303) 295-8478
M: (720) 220-9982

                                                  */s/ Katayoun A. Donnelly*
                                                  Katayoun A. Donnelly