Filed 1/10/23 Czodor v. Luo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TOMAS CZODOR, | |
| Plaintiff and Respondent, | G060756 |
| v. | (Super. Ct. No. 18V002374) |
| XINGFEI LUO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Michael E. Perez, Judge. Affirmed. Appellant's Motions for Judicial Notice. Denied. Appellant's Motion to Take Additional Evidence. Denied. Respondent's Motion to Strike. Granted in part. Respondent's Motion for Judicial Notice. Denied.

Xingfei Luo, in pro. per., for Defendant and Appellant.

Law Offices of Larry R. Glazer and Nicolette Glazer, for Plaintiff and Respondent.

\*     \*     \*

INTRODUCTION

Tomas Czodor obtained a domestic violence restraining order (DVRO) under the Domestic Violence Prevention Act (Fam. Code, § 6200 et. seq.; DVPA) against Xingfei Luo, with whom he had had a brief relationship. A panel of this court affirmed the DVRO. Ever since then, Luo has been on a mission to prove she never had a dating relationship with Czodor. She brought a request for an order ending the DVRO based on her declaration and exhibits which, she claimed, proved she never had a dating relationship with Czodor. The trial court denied the request to end the DVRO and entered a first amended domestic violence restraining order (the Amended DVRO), from which Luo appeals.

In this appeal, Luo continues her mission to prove she never had a dating relationship with Czodor. Not only does she argue the trial court erred by denying her request for an order ending the DVRO and should not have issued the DVRO in the first place, but she also attached more evidence to her opening brief, not presented to the trial court, which she contends disproves there was ever a dating relationship. She also filed two requests for judicial notice and a motion to take additional evidence by which she seeks to have us consider yet more evidence which she contends proves she never had a dating relationship with Czodor.

We affirm the Amended DVRO. Luo's mission to prove she never had a dating relationship with Czodor, though pursued tenaciously, was doomed from the get-go because the issue of a dating relationship was fully adjudicated against her by issuance of the DVRO. After an evidentiary hearing, at which Luo cross-examined Czodor, the trial court found that Luo had perpetrated acts of domestic violence against Czodor and, by issuing the DVRO, determined that Czodor and Luo had had a dating relationship within the meaning of the DVPA. New evidence regarding the relationship between Luo and Czodor, even if it tended to show they did not have a dating relationship, was not a change of facts that would support ending the DVRO.

2

Luo also contends a provision of the Amended DVRO enjoining her from posting abusive photographs and comments about Czodor on social media and Web sites is unconstitutional. We reject that argument and conclude that provision is not a prior restraint, is not unconstitutionally overbroad, and is not unconstitutionally vague.

## FACTS

*I. Conduct Leading to Czodor's Request for a DVRO*

Czodor and Luo met through a dating app. They went on one or two dates and had a relationship for a few weeks. Czodor believed the relationship ended; Luo apparently did not. She called and texted him numerous times using several different phone numbers. Czodor blocked those phone numbers in an effort to stop her from calling him.

Czodor sent a message to Luo through the dating Web site to ask her to stop contacting him. Luo continued to call Czodor despite the request. Luo created fake Facebook, Instagram, and Yelp accounts with Czodor's name and uploaded naked pictures of him along with "shaming comments." Luo sent those pictures to Czodor's various friends and business acquaintances. She also created a video recording with naked pictures of Czodor and uploaded it onto YouTube. Luo obtained contact information for Czodor's friends and customers and sent them messages defaming him. She posted defamatory statements about Czodor on five Web sites (all having the word "cheater" in the Web site name) and on the Web site for Czodor's business.

One evening Luo appeared at Czodor's residence unannounced and knocked and scratched his door for about 20 minutes. She claimed she wanted to talk and refused to leave when Czodor asked her to do so. Czodor called a friend and asked him to come over and witness what Luo was doing. The friend arrived at Czodor's home, and, after confronting Luo, suggested Czodor call 911, which he did. When police arrived, they suggested that Czodor obtain a restraining order.

*II. The DVRO*

Czodor followed the suggestion and in September 2018 filed a request for a domestic violence restraining order against Luo. In the request, he sought to prevent Luo from contacting, harassing, threatening, stalking, or impersonating him on the Internet, electronically, or otherwise; to require Luo to stay 100 yards away from him, including on Facebook, online, or at his place of business; prevent Luo from bullying him online, contacting family and friends, sending inappropriate pictures, blogs, and videos; and to require removal of Internet content created by Luo to "destroy [Czodor's] online reputation." In the section of the request concerning the nature of the relationship, Czodor checked the box stating, "We are dating or used to date, or we are or used to be engaged to be married."

Luo filed a response opposing the issuance of a domestic violence restraining order. On the response she checked the box to indicate she agreed to having had the relationship which Czodor indicated on request for a domestic violence restraining order, that is, they dated or used to date.

The trial court conducted an evidentiary hearing on Czodor's request for a domestic violence restraining order. Both Czodor and Luo were sworn to testify, and Luo cross-examined Czodor. At the conclusion of the hearing, the court found Luo had perpetrated acts of domestic violence on Czodor and issued the DVRO, which was set to expire in October 2023. The DVRO included as "Item 23, Other Orders" an attachment stating: "Respondent [Luo] is ordered to cease posting the picture or likeness of the Moving Party [Czodor] or refer to him by name on any social media website or blog. Responding Party is further ordered to remove any picture or reference of the Moving Party from any social media website or blog she may have posted."

Luo appealed from the DVRO. A panel of this court affirmed the DVRO. (*Czodor v. Luo* (Aug. 29, 2019, G056955 [nonpub. opn.].)

*III. Luo's Request for Order Ending the DVRO; The Amended DVRO*

In August 2021 Luo filed a request for an order ending the DVRO. She alleged that she and Czodor had never had a dating relationship within the meaning of the DVPA and that item 23 of the DVRO was "overly broad, vague, ambiguous, and unlawful due to the infringement on my First Amendment rights." Attached to the request were a declaration from Luo and exhibits, including a few pages from the reporter's transcript of the hearing on Czodor's request for a domestic violence restraining order. The declaration and exhibits all concerned events which had occurred on or before the date of issuance of the DVRO and which, Luo claimed, showed she had never had a dating relationship with Czodor.

On October 1, 2021, a hearing was conducted on Luo's request for order ending the DVRO. Czodor appeared and opposed the request. He asserted that Luo had not complied with both item 23 of the DVRO and a recently issued criminal protective order because she had not removed the offending photographs and materials she posted on social media Web sites and blogs. Luo continued to insist she had never had a dating relationship with Czodor.

The trial court denied Luo's request for an order to end the DVRO[1] because Luo had not satisfied any of the criteria under Code of Civil Procedure section 533 for terminating injunctions. Based on *Molinaro v. Molinaro* (2019) 33 Cal.App.5th 824 (*Molinaro*), the court modified item 23 of the DVRO to read as follows: "Restrained Party [Luo] is further ordered to remove any pictures or references of the Protected Party [Czodor] from any social media websites or blogs she may have posted. [¶] Restrained Party shall not post any pictures or likeness of the Protected Party or refer to him by name on any social media or website or blog that would be abusive pursuant to [Family Code] § 6203 and [Family Code] § 6320."

---

[1] The court referred to two requests for an order but only one request appears in the clerk's transcript.

The Amended DVRO, which incorporated modified Item 23, was issued on October 1, 2021. Luo filed a notice of appeal on the same day. The issuance of a DVRO is appealable as an order granting an injunction. (*Molinaro, supra*, 33 Cal.App.5th at p. 831, fn. 6.)

## MOTIONS

Luo filed three motions and Czodor filed two motions with this court. We address the motions in the order in which they were filed. We deny all but one.

1. *Luo's Motion for Judicial Notice No. 1*. In this motion, Luo requests we take judicial notice of (1) five pages of the reporter's transcript of Luo's criminal trial[2] in Orange County Superior Case No. 19CM06724 and (2) the record for Case No. G061132. We deny this motion. The passages from the reporter's transcript, which are attached to Luo's exhibit to the motion for judicial notice, cover Czodor's trial testimony concerning the nature of his relationship with Luo. The reporter's transcript was not presented to the trial court in the present case. Absent exceptional circumstances not present here, the appellate court does not take judicial notice of matters that were not before the trial court. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 (*Haworth*); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) When reviewing the correctness of a trial court's judgment, we only consider matters that were part of the record at the time the court entered the judgment. "'This rule preserves an orderly system of [litigation] by preventing litigants from circumventing the normal sequence of litigation.'" (*Haworth*, at p. 379, fn. 2.) In addition, evidence of the nature of the relationship between Czodor and Luo is irrelevant to the appeal because that issue

---

[2] As a result of her conduct at Czodor's home, Luo was charged with and convicted of three misdemeanor counts: (1) vandalism causing damage under $400 (Pen. Code, § 594, subds. (a)-(b)(2)(A)); (2) violation of a protective order (Pen. Code, § 273.6, subd. (a)); and disorderly conduct — dissemination of private videos and recordings (Pen. Code, § 647, subd. (j)(4)(A)).

was fully adjudicated when the trial court granted Czodor's request for a domestic violence restraining order.

Luo has provided no information about case No. G061132 (other than the case number) or explained how the record in that matter is relevant to this appeal. (See Cal. Rules of Court, rule 8.252(a)(A) [movant must explain why matter to be noticed is relevant to appeal].)[3] Case No. G061132 appears to be Luo's habeas corpus proceeding in this court.

2. *Luo's Motion to Take Additional Evidence.* In this motion, Luo requests that we accept as additional evidence the five pages of reporter's transcript that are an object of her motion for judicial notice No. 1. We deny this motion. Code of Civil Procedure section 909 grants the Court of Appeal authority to take additional evidence, however, that authority must be used sparingly, only in exceptional circumstances, and only to affirm. (*Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213; *City of Petaluma v. Cohen* (2015) 238 Cal.App.4th 1430, 1438 fn. 7.) Luo's request to take additional evidence in this case does not meet that standard. Further, as we shall explain, evidence of the nature of the relationship between Czodor and Luo is irrelevant to this appeal.

3. *Czodor's Motion to Strike Luo's Declaration and References to the Declaration in the Appellant's Opening Brief.* We grant this motion in part. Attached to Luo's opening brief are two items: (1) a declaration from Luo regarding a transcript of a recorded telephone conversation she had with Czodor and (2) the purported transcript of that conversation. Luo offered the transcript of the conversation to the court at the hearing on her request for an order ending the DVRO, but the court declined to receive the transcript into evidence because Luo could have testified about the conversation at the hearing on Czodor's request for a domestic violence restraining order but did not do so.

---

[3] Further references to rules are to the California Rules of Court.

7

"A party filing a brief may attach copies of exhibits or other materials *in the appellate record*." (Rule 8.204(d), italics added.) Luo's declaration postdates the Amended DVRO and therefore was not presented to the trial court and is not part of the appellate record. "'An appellate court's review is limited to consideration of the matters contained in the appellate record.'" (*Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 684.) "'Appellate review is generally limited to matters contained in the record. Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs.'" (*In re Bailey* (2022) 76 Cal.App.5th 837, 860.) It therefore was improper for Luo to attach her declaration to her opening brief.

The transcript of the telephone conversation is deemed to be part of the appellate record because it is an exhibit that was "admitted in evidence, *refused*, or lodged." (Rule 8.122(a)(3), italics added.) However, Luo was required to "specify that exhibit by number or letter in the notice of designation" and to comply with the rules for securing transmission of the exhibits to the reviewing court that are set out in rule 8.224. She did not so specify the transcript in her designation of record and did not comply with rule 8.224. The transcript of the telephone conversation therefore is not properly before us, cannot be attached to a brief, and must be stricken from Luo's opening brief.

As we are striking Luo's declaration and the transcript of the telephone conversation, they cannot be used as support for any factual assertions made in Luo's appellate briefs. Rule 8.204(a)(1)(C) requires that any "reference to a matter in the record" must be supported by "a citation to the volume and page number of the record where the matter appears." (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 [appellant "must provide citations to the appellate record directing the court to the evidence supporting each factual assertion"].) Factual assertions in Luo's opening brief that are supported only by citations to the Luo declaration and the transcript of the telephone conversation therefore do not comply with rule 8.204(a)(1)(C).

8

We have the discretion to strike Luo's opening brief with leave to file a new brief, or to strike or disregard passages of the brief that do not comply with rule 8.204(a)(1)(C). (Rule 8.204(e)(2).) Rather than strike the entire appellant's opening brief or passages from it, we exercise our discretion to disregard those parts of the brief that mention or are supported only by citations to the Luo declaration or the telephone conversation transcript. We also exercise our discretion to disregard all other passages in the opening brief that do not comply with rule 8.204(a)(1)(C). (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990.)

4. *Czodor's Request for Judicial Notice*. Czodor requests we take judicial notice of the Orange County Superior Court Appellate Division opinion filed in Case No. 30-2021-01216615 on April 27, 2022 which affirmed Luo's conviction for misdemeanor vandalism, violation of a protective order, and disorderly conduct. We deny this motion. Although we may take judicial notice of this opinion as a record of a court of this state (Evid. Code, § 452, subd. (d)), Czodor does not offer any explanation for why this opinion is relevant, other than to say the trial court took judicial notice of Luo's trial and conviction. (See Rule 8.252(a)(A) [movant must explain why matter to be noticed is relevant to appeal].) We see no relevance to the opinion, which was issued after issuance of the Amended DVRO, to any issue raised by this appeal. Further, we have explained that absent exceptional circumstances we do not take judicial notice of matters that were not before the trial court, and, in reviewing the correctness of a trial court's judgment, we only consider matters that were part of the record at the time the court entered the judgment. (*Haworth, supra*, 50 Cal.4th at p. 379, fn. 2.)

5. *Luo's Motion for Judicial Notice No. 2*. By this motion, Luo requests we take judicial notice of her request for an order terminating the Amended DVRO that she filed in the trial court on June 14, 2022. We deny this motion. Luo contends this request for an order is relevant because her declaration attached to the request shows she

never had a dating relationship with Czodor. This request for an order is not the proper subject of a request for judicial notice because it was not and could not have been presented to the trial court in connection with Luo's request for an order that is the subject of the appeal. (*Haworth*, 50 Cal.4th at p. 379, fn. 2; *Vons Companies, Inc. v. Seabest Foods, Inc., supra*, 14 Cal.4th at p. 444, fn. 3.)

In addition, Luo's most recent request for an order ending the Amended DVRO is irrelevant to the issues raised by this appeal because the nature of the relationship between Czodor and Luo was fully adjudicated when the trial court granted Czodor's request for a domestic violence restraining order. While we have discretion to take judicial notice of the request for order as a court record (Evid. Code, 452, subd. (d)), we may not take judicial notice of the truth of any facts alleged in it or in Luo's declaration (*People v. Franklin* (2016) 63 Cal.4th 261, 280; *Espinosa v. Calva* (2008) 169 Cal.App.4th 1393, 1396).

## DISCUSSION

*I. The Trial Court Did Not Err by Denying Luo's Motion to Dissolve the DVRO*

A. Standard of Review

Luo's appeal, though taken from the Amended DVRO, challenges the trial court's order denying Luo's request for an order ending the DVRO. We review an order denying a request to end a domestic violence restraining order under the abuse of discretion standard. (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505 (*Loeffler*).) "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." (*Ibid.*) Whether the trial court applied the correct legal standard to a particular issue is a question of law subject to de novo review. (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509.)

10

### B. Luo Did Not Make the Requisite Showing to End the DVRO

A DVRO is a type of injunction because it is an "order requiring a person to refrain from a particular act." (Code Civ. Proc., § 525 [defining "injunction"]; *Loeffler, supra*, 174 Cal.App.4th at pp. 1503-1504.) By requesting an order ending the DVRO, Luo was seeking to dissolve an injunction. (*Loeffler,* at p. 1504.)

Code of Civil Procedure section 533 sets forth the grounds on which a court may dissolve an injunction: "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."(*Ibid.*) In short, an injunction may be dissolved upon a showing of (1) a material change in facts, (2) a change in the law, or (3) the ends of justice would be served. (*Loeffler, supra*, 174 Cal.App.4th at p. 1504.) The restrained party bears the burden of showing by a preponderance of the evidence that one of the three circumstances is present and justifies a termination of the restraining order. (*Ibid.*)

Luo insists the original DVRO, and by extension the Amended DVRO, were unlawful and should not have been issued because she never had a dating relationship with Czodor that would make her subject to the DVPA. The issue whether Czodor and Luo once had a dating relationship was fully adjudicated by issuance of the DVRO. Czodor alleged in his request for a domestic violence restraining order that he and Luo once had a dating relationship, and, in her response, Luo agreed they had had a dating relationship. An evidentiary hearing was conducted, both Czodor and Luo were sworn to testify, and Luo cross-examined Czodor. The trial court, when granting Czodor's request for a domestic violence restraining order, found that "acts of domestic violence have occurred and that [Luo] is the perpetrator, and [Czodor] is the victim." As

11

relevant here, Family Code section 6211 defines "domestic violence" as "abuse perpetrated" against any person "with whom the [perpetrator] is having or has had a dating or engagement relationship." (*Id*., subd. (c).) Thus, by finding that Luo had committed acts of domestic violence, the trial court of necessity also found that Czodor and Luo had or once had a dating relationship.

Accordingly, whether Czodor and Luo ever had a dating relationship was not a change in facts that would permit termination of the DVRO. Luo has not attempted to show a change in facts after issuance of the DVRO, rather, she presented what she claimed was new evidence pertaining to a fact adjudicated by the trial court in issuing the DVRO. New evidence about facts adjudicated by issuance of the DVRO is not a change in facts permitting its dissolution. Luo has not shown the ends of justice would be served by dissolving the DVRO. The trial court did not abuse its discretion by denying Luo's request for an order terminating the DVRO.

*II. Item 23 of the Amended DVRO Does not Violate Luo's Right to Free Speech*

    A.  Standard of Review

Luo argues item 23 of both the DVRO and Amended DVRO are unconstitutional prior restraints of speech and are unconstitutionally vague and overbroad. We need not address item 23 of the DVRO because it has been superseded by item 23 of the Amended DVRO.

The grant or denial of a restraining order under the DVPA is reviewed for abuse of discretion. (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 601.) We review any factual findings under the substantial evidence standard of review. (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143.) We accept as true all facts supporting the trial court's findings and resolve all conflicts in the evidence in support of the trial court's decision. (*Id.* at p. 1144.) Whether a restraining order infringes constitutional rights of speech and expression is a question of law subject to de novo review, and facts relevant to the

12

constitutional analysis likewise must be reviewed de novo, independent of the trial court's findings. (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 889-890; *Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1166.)

### B. Item 23 of the Amended DVRO Is Not an Unconstitutional Prior Restraint

Item 23 of the Amended DVRO states that Luo "shall not post any pictures or likeness of the Protected Party or refer to him by name on any social media or website or blog that would be abusive pursuant to [Family Code] § 6203 and [Family Code] § 6320."

Under the DVPA, a court may issue a restraining order to prevent domestic violence or abuse if the party seeking the order "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (Fam. Code, § 6300; see Fam. Code, § 6220.) As relevant here, "abuse" under the DVPA means "[t]o place a person in reasonable apprehension of imminent serious bodily injury to that person or to another," and "[t]o engage in any behavior that has been or could be enjoined pursuant to [Family Code] Section 6320." (Fam. Code, § 6203, subd. (a)(3) & (4).) A court may issue a restraining order "described in Family Code section 6320 enjoining specific acts of abuse." (Fam. Code, § 6218, subd. (a)). Family Code section 6320, in turn, identifies specific acts of abuse to include "disturbing the peace of the other party." (*Id.*, subd. (a).) The phrase "disturbing the peace of the other party" in section 6320 means "conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (Fam. Code, § 6320, subd. (c); see *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1424 (*Evilsizor & Sweeney*); *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.)

The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment (*Near v. Minnesota* (1931) 283 U.S. 697, 732), declares that "Congress shall make no law . . . abridging the freedom of speech." (U.S. Const., 1st Amend.) A prior restraint is an administrative or judicial order that forbids certain speech in advance of it being made. (*Alexander v. United States* (1993) 509 U.S. 544, 550.) "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." (*Ibid.*) Prior restraints are not unconstitutional per se. (*Southeastern Promotions, Ltd. v. Conrad* (1975) 420 U.S. 546, 558.) "Any system of prior restraint, however, 'comes to this Court bearing a heavy presumption against its constitutional validity.'" (*Ibid.*)

The doctrine of prior restraints applies only to speech and expressive conduct that is protected by the First Amendment. "'[T]here are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."'" (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1147, quoting *Bose Corp. v. Consumers Union of U. S., Inc.* (1984) 466 U.S. 485, 503.) An injunction prohibiting the repetition of expression that has been adjudicated to be unlawful does not constitute a prohibited prior restraint of speech. (*Lemen,* at p. 1153.) "'Once specific expressional acts are properly determined to be unprotected by the first amendment, there can be no objection to their subsequent suppression or prosecution.'" (*Id.* at p. 1156.)

The Court of Appeal in *Evilsizor & Sweeney* held that conduct adjudicated to constitute abuse under the DVPA is not constitutionally protected. (*Evilsizor & Sweeney, supra*, 237 Cal.App.4th at pp. 1427-1428.) In that case, husband downloaded the contents of wife's cell phones. (*Id.* at p. 1419.) When dissolution proceedings were instituted a few months later, husband filed with the court copies of some downloaded

14

text messages. (*Ibid.*) Wife sought, and the trial court granted, a restraining order under the DVPA enjoining husband from further disseminating the downloaded information. (*Ibid.*) On appeal, husband argued the restraining order constituted an unconstitutional prior restraint of his right of free speech. (*Id*. at p. 1427.) The court concluded the restraining order was not a prior restraint because husband's conduct in disseminating material downloaded from wife's cell phones had been determined to constitute abuse under the DVPA. (*Id.* at p. 1428; see *Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 853-854 [if First Amendment claim had been preserved, court would conclude speech that constitutes abuse under DVPA is not protected].)

Item 23 of the Amended DVRO is not a prior restraint because it does not prohibit Luo from engaging in expressive conduct protected by the First Amendment. Item 23 enjoins Luo from posting pictures or likenesses of, or references to Czodor that constitute abuse under Family Code section 6203 or 6230. Conduct that is abusive under the DVPA is not protected by the First Amendment. The trial court, when issuing the DVRO, found that Luo had engaged in abusive conduct by, among things, posting photographs and nasty comments about Czodor on social media, blogs, and Web site. Item 23 of the Amended DVRO simply enjoins Luo from engaging in conduct which the court had earlier determined to be abusive.

C. *Item 23 of the Amended DVRO Is Not Overbroad or Unconstitutionally Vague*

Luo argues item 23 of the Amended DVRO is overbroad. We disagree. Luo argues item 23 imposes "a blanket prohibition of speech on all contents, subjects, viewpoints, and images related to [Czodor] or his online reputation." But that is simply untrue. Item 23 of the Amended DVRO was drafted to specifically refer to Family Code sections 6203 and 6320 and to enjoin Luo from posting material about Czodor that would constitute abuse under those code sections.

15

*Molinaro, supra*, 33 Cal.App.5th 824, illustrates what is — and what is not — an overbroad restraining order under the DVPA. The Court of Appeal struck down as overbroad and constituting impermissible prior restraint of speech, a restraining order prohibiting husband from posting anything on Facebook about his pending divorce case. (*Id.* at p. 829.) The restraining order was not necessary to protect the minor children because husband's Facebook posts were not specifically directed to them and husband's earlier posts had not directly disparaged wife or tried to alienate her from the children. (*Id*. at p. 833.) Unlike the restraining order in *Molinaro*, item 23 of the Amended DVRO does prohibit all social postings about Czodor, but only those that are abusive under the DVPA.

Luo argues item 23 of the Amended DVRO is unconstitutionally vague because the term "disturbing the peace" is itself vague. We disagree. To withstand a constitutional challenge on the ground of vagueness, an order must be sufficiently definite to inform the person subject to the order of what conduct is required or prohibited. (*People v. Hall* (2017) 2 Cal.5th 494, 500 [probation conditions].) The vagueness doctrine demands "'no more than a reasonable degree of certainty.'" (*Id*. at p. 503.) The meaning of the phrase "disturbing the peace" can be ascertained with relative ease and to a reasonable degree of certainty by reference to Family Code section 6320, subdivision (c), which both defines the phrase "disturbing the peace" and describes conduct falling within the definition.[4]

---

[4] In part, Family Code section 6320 subdivision (c) reads: "As used in this subdivision (a), 'disturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party. This conduct may be committed directly or indirectly, including through the use of a third party, and by any method or through any means including, but not limited to, telephone, online accounts, text messages, internet-connected devices, or other electronic technologies. This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty."

## DISPOSITION

The Amended DVRO and the order denying Luo's request for an order ending the DVRO are affirmed. Czodor shall recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.