FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
4:36 pm, Feb 15, 2023
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02765-RMR-MEH

XINGFEI LUO,

    Plaintiff(s),

v.

PAUL WANG,

    Defendant(s).

---

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR RULE 11 SANCTIONS**

---

Plaintiff respectfully submits this reply in support of her motion to impose sanctions jointly and severally on Defendant and his counsel.

### I. DEFENDANT'S SECOND MOTION FOR RULE 11 SANCTION WAS FILED FOR IMPROPER PURPOSE

An improper purpose may be found where "a motion or paper, other than a complaint, is filed in the context of a persistent pattern of clearly abusive litigation activity." *Aetna Life Ins. Co. v. Alla Med. Servs. Inc*., 855 F.2d 1470, 1476 (9th Cir.1988). See also *Lundahl v. Am. Bankers Ins. Co*., 610 F. App'x 734, 6 (10th Cir. 2015) (affirming sanction for filing motions containing factual and legal misrepresentations in an attempt to harass and perpetrate fraud on the court.)

Defendant continues to misrepresent to this court that, during the August 24, 2022 hearing, Plaintiff admitted that she had no evidence to prove the claims were within the statute of limitations, by attaching an incomplete copy of the hearing transcript. ECF 265-4. While in fact at the hearing it has been determined that circumstantial evidence, the birth date of Defendant's

daughter, could prove the date of publication and Defendant's online statement was published within one year before Plaintiff filed suit. ECF 186.

Defendant continues to misrepresent to this court that the 2013 posting was authored by someone else as if he was not responsible. ECF 226 at 4. To establish liability for defamation, a plaintiff must show that the defendant "published or caused to be published" a defamatory statement. See CJI-Civ.4th 22:2 (2000). The post Defendant alleged he had nothing to do with states "…we cannot reveal yet…", ECF 90 at 19, indicating that there were more than one person behind the post. Defendant was clearly one of them. See *Burke v. Greene*, 963 P.2d 1119, 1122 (Colo. App. 1998) (rejecting defendant' argument that plaintiff may not recover damages resulting from the newspaper's republication of the alleged defamatory statements to police because it was the newspaper and not defendant who published the statements and holding that plaintiff could potentially recover if he could demonstrate that the newspaper's repetition of the statement was either expressly or impliedly authorized by defendant, or was a natural consequence of the defendant's original publication of the statements to the police).

Defendant continues to misrepresent to this court that a letter from Mr. Paraskevasm, ECF 265-2, which included both statements at issue in this case. In fact, nowhere in that letter stated that Plaintiff filed a false police report alleging rape. Plus, the letter does not indicate that Defendant is not responsible for his misconduct. Each statement, as a separate publication, constitutes a distinct claim for relief. *Walker v. Associated Press*, 160 Colo. 361, 417 P.2d 486 (1966). To the contrary, the letter indicates that Defendant was substantially involved in defaming Plaintiff.

Defendant continues to misrepresent Plaintiff's declaration to this court. ECF 137-9. The

Plaintiff's Reply ISO Her Motion for Rule 11 Sanction

declaration was provided related to Plaintiff's Third Amended Complaint. Plaintiff did not know that Defendant had published statements online or caused to publish, as alleged in the complaint, regarding the sexual assault or the police report she filed in relation to her lost passport until 2020.

Defendant continues to misrepresent to this court that Plaintiff was the only person who could have cashed the check despite the check was mailed to Defendant's residence and Plaintiff, as a visitor without bank account and access to Defendant's mail, was impossible to cash the check. ECF 254-1 at 12. In fact, during the deposition on September 22, 2022, through his counsel, Defendant admitted that **he was fully refunded by the insurance** and took the funds to purchase a new return flight for Plaintiff from California to China. Decl. Luo, ¶2.

Defendant continues to misrepresent to this court that Plaintiff contacted the insurance company despite Defendant himself signed and submitted the proof of claim, ECF 254-1 at 25-26, and made all the direct contact with the insurance company. ECF 254-1 at 14-15. Had the actual claimant been Plaintiff, she herself would have called for status. Had Plaintiff ever contacted the insurance company, she herself would have called for status. However, it was Defendant, not Plaintiff, called for status. ECF 254-1 at 14.

On September 3, 2013 at 3:40 PM Maja Dodik, the operator who handled the claim, initiated claim and sent email to student007@hotmail.com, email address of Defendant's, not Plaintiff's. ECF 254-1 at 15.

On September 4, 2013 at 4:25 PM email sent from student007@hotmail.com to TravelexClaims stating that "I am claiming trip interruption …. Thank you. Paul."

On September 5, 2013 at 3:20 PM Cheapoair sent email to stealthzeus@gmail.com, addressing "Dear Xingfei" which clearly shows that Defendant impersonated Plaintiff and made

contact with Cheapoair because by simply reading the name Americans cannot tell "Xingfei" was a female. ECF 254-1 at 33. The insurance record shows "gender unknown" under Plaintiff's name. ECF 254-1 at 11. Had the person who contacted Cheapoair been Plaintiff, she would have used her own email address instead of Defendant's.

On September 11, 2013 at 1:50 PM TravelexClaims sent email to [student007@hotmail.com](student007@hotmail.com) stating that "Dear Paul, I am writing further to our telephone conversation today." ECF 254-1 at 39.

Emmanuel Kimenyi received a call from Defendant on September 18, 2013 at 6:02 PM and stated "Insured boyfriend called for status." ECF 254-1 at 14. Emmanuel Kimenyi was the only operator indicated "Insured boyfriend." It is clear that Emmanuel Kimenyi was not the same operator who handled the claim. All other operators who handled the claim, Maja Dodik, Robert Steele, Jennifer Botelho, Brittany Bienker, and Cindy Dungavei treated Defendant as the actual insured and claimant. ECF 254-1 at 15, 19-26, 33-34. ECF 256-1 at 15.

Viewing all the record together, had Plaintiff requested the insurance refund, she could have used her own email address to communicate with the insurance company and called for status on her own. However, not a single record shows that Plaintiff herself ever called the insurance and not a single email address sent or received emails to or from the insurance company belonged to Plaintiff simply because Plaintiff never made contact with the insurance company or requested the refund. It is impossible for Plaintiff to use **Defendant's two different email addresses** to communicate with the insurance company. Defendant himself knows better than anyone else in the world that it was Defendant, not Plaintiff, requested and pocketed the insurance refund. During the deposition on September 22, 2022, through his counsel, Defendant admitted that **he was fully refunded by the insurance** and took the funds to purchase a new

return flight for Plaintiff from California to China. Decl. Luo, ¶2.

Defendant has demonstrated a persistent pattern of presenting incomplete and false information to mislead the court and filing duplicative frivolous motions, clearly abusive litigation activities. This is especially so when Defendant again and again clung to his falsified claim as true that Plaintiff requested the insurance refund despite his knowledge that the evidence central to the litigation was manipulated by himself. See *King v. Fleming*, 899 F.3d 1140, 1148 (10th Cir. 2018) (holding that Rule 11 sanctions serve to punish a knowing filing of a false and misleading pleading.)

## II. DEFENDANT'S REPEATED BASELESS RULE 11 MOTIONS ARE LITIGATION ABUSE

Rule 11 was designed to "help to streamline the litigation process by lessening frivolous claims or defenses." *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991). "The central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell*, 496 U.S. at 393, 110 S.Ct. 2447. "Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay." Id. at 398, 110 S.Ct. 2447. The central issue is whether "the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading." *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991), quoting *United Mo. Bank of Kansas City, N.A. v. Bank of N Y*, 723 F. Supp. 408, 415 (W.D.Mo. 1989) (interpreting Fed.R.Civ.P. 26(g) under Rule 11 standards).

The drafters' stated intent was to curb delay and expense caused by the filing of unsupported pleadings and motions. The two major problems to which Rule 11 was directed were the problem of "frivolous filings" and the problem of "misusing judicial procedures as a weapon for personal or economic harassment." *Zaldivar v. City of Los Angeles*, 780 F.2d 823,

Plaintiff's Reply ISO Her Motion for Rule 11 Sanction

5

830 (9th Cir. 1986).

The pleading at issue here is Defendant's second motion for rule 11 sanctions. The inquiry is whether, with reasonable investigation, Defendant could have believed, after his first motion for rule 11 sanctions was denied, such a duplicative motion was proper.

Defendant's repeated baseless motions based on false information are a prime example of the waste and distraction that result when attorneys disregard Rule 11's certifications. At the heart of this case lies Plaintiff's allegation of Defendant's misconduct. But because of the various parties unreasonably named in his motions by Defendant, this case instead was broadly manipulated to include unrelated entities and individuals that became the main focus of the litigation. ECFs 226 at 21, 265-1, 265-5. Defendant's argument to seek Rule 11 sanctions bases on discovery disputes and the outcome of Plaintiff's other litigations are baseless, neither legally nor factually warranted, all made in an apparent attempt to harass. ECF 256-1 at 89-91.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court impose sanctions, pursuant to Fed. R. Civ. P. 11, against Defendant and his counsel, jointly and severally, in the form of a penalty into court in the amount that the Court deems sufficient to deter Defendant and his counsel from future misconduct. Meanwhile, Defendant and his counsel should be enjoined from filing any new actions against Plaintiff without first obtaining leave of court.

Dated: 2/15/2023

*/s/XINGFEI LUO*

Plaintiff's Reply ISO Her Motion for Rule 11 Sanction

## DECLARATION OF PLAINTIFF XINGFEI LUO

I, XINGFEI LUO, declare and state:

1. I am the plaintiff in this case. I have personal knowledge of all facts stated herein. If called as a witness, I could and would competently testify thereto.

2. During the deposition on September 22, 2022, Defendant told his counsel and admitted that Defendant was fully refunded by the insurance and took the funds to purchase a new return flight for me from California to China. A true and correct copy of the transcript is attached hereto as Exhibit 1.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/15/2023

*/s/ Xingfei Luo*
Plaintiff, In Pro Per

Plaintiff's Reply ISO Her Motion for Rule 11 Sanction

7

EXHIBIT 1

Page 118

```
 1       Q.   It just happened to be made out to you.
 2   Okay.  And you signed it over to Mr. Wang for him to
 3   cash with his account, correct?
 4       A.   Yes.
 5       Q.   We're talking about the final
 6   disbursement.  And that's because Mr. Wang had
 7   purchased your round-trip airfare ticket from China;
 8   isn't that correct?
 9       A.   Yes.
10       Q.   And he had purchased the insurance on
11   that ticket, and so this was a refund to him for his
12   purchase of your ticket; isn't that correct?
13       A.   Yes.
14       Q.   All right.  And then using the proceeds
15   from the refunded return ticket that you didn't use to
16   return to China, because your passport was lost or
17   stolen, Mr. Wang purchased a new airfare for you to go
18   to California; isn't that correct?
19       A.   No.
20       Q.   That's not correct?
21       A.   Can you repeat your question?
22       Q.   Did you fly to California after leaving
23   Mr. Wang's residence here in 2013?
24       A.   In 2013?  You mean where did I go to
25   after leaving --
```

Page 119

```
 1       Q.   I asked -- I'm not asking where you
 2   went.
 3            I asked, did you fly to California?
 4       A.   I don't remember.
 5       Q.   You don't remember flying to California
 6   after leaving Mr. Wang's residence?
 7       A.   I remember.  I didn't use the
 8   insurance -- the insurance money to buy a ticket to
 9   California.
10       Q.   No, you didn't.  Mr. Wang did.
11       A.   No.
12       Q.   No?
13       A.   He didn't.
14            MR. ZANSBERG:  We're going to take a
15   very short break.
16            (Discussion off the record.)
17            MR. ZANSBERG:  Ah, thank you.  I --
18   whew, I'm glad I got corrected.
19            MS. DONNELLY:  That's what happens when
20   you have a U.S.-born attorney present for a
21   deposition.
22            MR. ZANSBERG:  Yeah.  I misunderstood.
23   I will correct the record.
24       Q.   (BY MR. ZANSBERG)  Mr. Wang did not
25   purchase your flight to California.  I'm told that you
```

Page 120

```
 1   did so with a special Sprint ticket or an $80 ticket.
 2            Mr. Wang paid for your return flight
 3   from California to China; isn't that correct?
 4       A.   Yes.
 5       Q.   Okay.  I'm glad we clarified that.
 6            So from the proceeds deposited from his
 7   refund of the round-trip ticket part 2, the return
 8   flight that you signed over to him on this trek, he
 9   then ==took a portion of those funds== -- ==I'm told it was==
10   ==less== -- ==and paid for your return flight from==
11   ==California to China;== is that correct?
12       A.   He took all the funds, not a portion of
13   the funds.
14       Q.   Right.  So ==he was fully refunded the==
15   ==fare that you didn't use==, and then he took some subset
16   of that and purchased a new -- a new return flight for
17   you from California to China, correct?
18       A.   What do you mean by "subset"?
19       Q.   It was less than $673, is what I mean.
20       A.   I don't know the amount.
21       Q.   All right.  So it could have been more,
22   it could have been less, but he purchased for you a
23   return flight for you from California to China; is
24   that correct?
25       A.   Yes.
```

Page 121

```
 1       Q.   Thank you.
 2            Now, you first learned of the
 3   CheaterLand posting at -- Mr. Wang's response to it,
 4   004, you say on August 3, 2020, correct?
 5       A.   Huh?  Where is --
 6       Q.   No, no.  That's where -- I'm trying to
 7   remember exactly where that was said.
 8            MR. ZANSBERG:  Is it in the complaint,
 9   or is it in her response to the --
10            MS. DONNELLY:  (Inaudible.)
11            MR. ZANSBERG:  She claims to have first
12   learned of Mr. Wang's posting on August 3, 2020, just
13   on the eve of filing her lawsuit in September 2020.
14   Let me see where that is.  I'm pretty sure it's in the
15   complaint.
16            MS. DONNELLY:  Is this it?
17            MR. ZANSBERG:  Yeah.  What is this?
18   Yeah, paragraph 49.
19       Q.   (BY MR. ZANSBERG)  All right.  I'll just
20   have you clarify this for the record.
21            I remember you earlier testified that
22   you were unaware of what is called WEAMER 4, page 2 of
23   Depo Exhibit 10, until it was produced to you in the
24   Weamer litigation.
25       A.   Yes.
```

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that I filed the foregoing with the Clerk of Court. The CM/ECF system will send notification of such filing to all ECF registered users.

Dated: 2/15/2023

                                                         */s/ Xingfei Luo*